UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 15-cv-20782-MARTINEZ/GOODMAN

DENNIS L. MONTGOMERY,

        Plaintiff,

v.

JAMES RISEN, HOUGHTON MIFFLIN
HARCOURT PUBLISHING CO., MIFFLIN
HARCOURT CO., HMH HOLDINGS, INC.,

        Defendants.

_____/

### DECLARATION OF JAMES RISEN

I, James Risen, declare:

        1.     I am a defendant in the above-captioned action.  I make this declaration in support of Defendants' Motion to Dismiss or Transfer for Lack of Personal Jurisdiction over Risen and Houghton Mifflin Harcourt Company, Dismiss or Transfer for Improper Venue, or Transfer Under 28 U.S.C. § 1404(a).  Unless otherwise indicated, I make the following statements based on my own personal knowledge, and if called as a witness, I could and would testify competently to these facts under oath.

        2.     I am a resident of Derwood, Maryland.  I have worked for the *New York Times* in its Washington, D.C. bureau since 1998.

        3.     I am not a Florida resident.  I do not own or rent any real estate in Florida.  I do not maintain any records in Florida.  I do not have a bank account in Florida.  I do not pay, and

1

am not required to pay, taxes in Florida. I do not have any agents in Florida. I have not filed any lawsuits in Florida.

4.      I am the author of *Pay Any Price: Greed, Power, and the Endless War* (the "Book"). Defendant Houghton Mifflin Harcourt Publishing Co. published the Book on October 14, 2014. Among other things, Chapter 2 of the Book is about Plaintiff Dennis L. Montgomery.

5.      During my preparation of the Book, I did not believe that Montgomery had any connection to Florida and Montgomery gave me no reason to believe that he had any connection to Florida. Chapter 2, about Montgomery's efforts to sell software technology to the CIA and the Pentagon, discussed events in Washington, D.C., Nevada, California, and Washington State, but did not mention Florida.

6.      I interviewed Montgomery by phone and email for Chapter 2 starting in 2011 or 2012. I understood he was living in California and/or Washington State at the time. The telephone number I had for him was a California exchange.

7.      Until I read the allegations of the complaint in this case, I had not been aware that Montgomery claimed to be a citizen of Florida.

8.      I gathered documents and information, including about Montgomery, while working in Washington, D.C. and Maryland. I conducted much of the newsgathering for Chapter 2 about Montgomery in Washington, D.C. for a February 19, 2011 *New York Times* article entitled *Hiding Details of Dubious Deal, U.S. Invokes National Security*, which I co-authored with Eric Lichtblau. Lichtblau also worked and continues to work in the Washington, D.C. bureau of the *New York Times*. Lichtblau and I interviewed sources located in the

Washington, D.C. area, California, New York, Nevada and Washington State by phone, email, or in person.

9.     With one possible minor exception, I did not have any contact with Florida, whether by telephone, written communications, or in person, in preparing the Book.  The Chapter quotes one line from the spokesman for the United States Special Operations Command who may have been in Florida when I contacted him, saying "The technology did not meet our requirements," referring to Montgomery's software.  (Chapter 2 at 48.)

10.     Many of the past and current government officials who have knowledge of Montgomery, his intelligence information and his reputation, and who either were interviewed or otherwise referenced in Chapter 2, are currently, to the best of my knowledge, located in or within a 100-mile radius of Washington, D.C., including:

a.     Current and former CIA officials, such as CIA press spokespersons and Donald Kerr, then chief of the CIA's Science and Technology Directorate. (Chapter 2 at 39, 40, 42, 43, 46.)  Some of these current and former CIA officials provided information to me showing that Montgomery's technology was revealed to be a hoax.

b.     John Brennan, then head of the Terrorist Threat Integration Center, who, in his confirmation for Director of the CIA, testified that Montgomery's software "was determined not to be a source of accurate information." (Chapter 2 at 47.)

c.     George Tenet, Director of the CIA at the time, who, the Book says, "allowed [scientists] to circumvent the CIA's normal reporting and vetting

channels, and rushed the raw material fed to the agency by Montgomery directly to the president." (Chapter 2 at 43-44, 46.)

    d.    Former Pentagon officials, including Joseph Liberatore, an Air Force official. (Chapter 2 at 52.)

    e.    Former White House officials, including Samantha Ravich, then advisor to Vice President Dick Cheney, who met with Montgomery. (Chapter 2 at 51.)

    f.    Former or current members of Congress and staff on relevant intelligence committees. (Chapter 2 at 38-39.)

11.    Other potential government witnesses who have knowledge of Montgomery, his intelligence information, and his reputation, are currently, to the best of my knowledge, located within a 100-mile radius of D.C., include Paul L. Haraldsen, who led the Air Force Special Investigation Inquiry into Montgomery's software, and Jose Rodriguez, who was at the time in charge of the CIA's Counterterrorism Center and has been quoted in a 2012 *Defense News* article as saying the Counterterrorism Center viewed Montgomery's intelligence as "crazy." Aram Roston, *Obama's Counterterror Czar, Gave Bogus Intel to Bush White House*, http://www.defensenews.com/article/20121001/C4ISR01/310010001 (Oct. 1, 2012).

12.    Other potential witnesses in D.C. who are referenced in Chapter 2 are:

    a.    Abbe Lowell, former Congressman Jim Gibbons' attorney in the criminal investigation in which Gibbons was cleared of charges of bribery made by Montgomery in connection with the sale of Montgomery's software. (Chapter 2 at 50.)

b.    Letitia White, a lobbyist in Washington, D.C., hired by eTreppid to get government contracts for Montgomery's software.  (Chapter 2 at 38.)

13.    Other persons who have knowledge of Montgomery, his software, and his reputation, and who were either interviewed or otherwise referenced in Chapter 2, are, to the best of my knowledge, not located in Florida:

a.    Michael Flynn, Montgomery's former lawyer, located in California. (Chapter 2 at 36.)

b.    Tim Blixseth, the ex-husband of Montgomery's former business partner, located in Washington State, who observed a demonstration of Montgomery's software in Palm Springs, California.  (Chapter 2 at 50-52.)

c.    Edra Blixseth, Montgomery's former business partner in Blxware, the Washington State company.  She is located in California.  (Chapter 2 at 50-52.)

d.    Warren Trepp, Montgomery's former partner in the Nevada-based business, eTreppid Technologies.  He is located in Nevada.  (Chapter 2 at 34-50.)

e.    Employees of e-Treppid who gave interviews to the FBI discussing the phony demonstrations Montgomery staged and their beliefs that Montgomery's software was not real.  (Chapter 2 at 48.)

f.    Former member of the House Intelligence Committee, then Governor, Jim Gibbons, who was cleared of charges of bribery made by Montgomery in connection with the sale of Montgomery's software.  He is located in Nevada.  (Chapter 2 at 38-39, 49-50.)

14.     The radio and television interviews I have given to promote the Book following publication also have not been conducted in Florida or by Florida media.  The interviews, like Chapter 2 in the Book, made no reference to Florida.

6

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 13, 2015.

James Risen