UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-20782-MARTINEZ/GOODMAN

DENNIS MONTGOMERY,

    Plaintiff,

v.

JAMES RISEN et al.,

    Defendants.
_____/

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ENTERING THE PROPOSED PROTECTIVE ORDER

| | |
|---|---|
| **HOLLAND & KNIGHT LLP** | **DAVIS WRIGHT TREMAINE LLP** |
| Sanford L. Bohrer | Laura R. Handman (admitted *pro hac vice*) |
|   Sandy.Bohrer@hklaw.com |   laurahandman@dwt.com |
| Brian W. Toth | Micah J. Ratner (admitted *pro hac vice*) |
|   Brian.Toth@hklaw.com |   micahratner@dwt.com |
| 701 Brickell Avenue, Suite 3300 | 1919 Pennsylvania Ave., NW, Suite 800 |
| Miami, Florida  33131 | Washington, D.C.  20006 |
| Tel: (305) 374-8500 | Tel.: (202) 973-4200 |
| Fax: (305) 789-7799 | Fax: (202) 973-4499 |

*Counsel for Defendants*

Per the Court's order of June 30, 2015, ECF No. 80, Defendants file this memorandum on the relevant legal issues in support of entering Defendants' protective order. *See* Ex. A.

## I.     BACKGROUND

In this action, Plaintiff alleges Defendants defamed him by writing and publishing in the book *Pay Any Price: Greed, Power, and Endless War* that Plaintiff sought to get rich off the federal government in the post–September 11 era by selling bogus counterterrorism software.

The parties have engaged in discovery. On April 24, 2015, the parties exchanged initial disclosures, and Plaintiff produced approximately 60 pages of documents. *See* ECF Nos. 44, 55-1. On June 1 Defendants served their first set of interrogatories and requests for production of documents (together, the "written discovery requests"). On June 4 Defendants produced over 4,000 pages of documents. On June 19 Plaintiff's counsel deposed Defendant James Risen. On July 1 Plaintiff served written responses to Defendants' written discovery requests. And on July 6 Plaintiff served his first request for the production of documents.

With this discovery, however, have come discovery disputes. First, although Defendants had complied with their obligations, Plaintiff moved to compel the production of initial-disclosure documents. ECF No. 45. Second, Plaintiff unilaterally scheduled Risen's deposition for a date on which neither Risen nor his counsel were available, filed a motion to compel that deposition to take place, and noticed a telephonic hearing thereon. All this, even though, as the Court observed, "the matter *did not* require the intervention of the Court, because … a mutually agreeable date to hold the deposition of Defendant James Risen did exist," ECF No. 74—a date offered by Defendants long before to which Plaintiff only acceded at the hearing, *see* ECF No. 65-2. Third, in clear violation of the Court's instructions, ECF No. 48, Plaintiff, in his written responses to Defendants' written discovery requests, made boilerplate, indiscriminate objections,

responded to virtually no interrogatories, and otherwise failed to turn over any actual documents or state what documents he would be producing and which he was holding back.[1] On July 6 and on July 8, the parties' counsel had calls to try to resolve Plaintiff's frivolous and unreasonable objections; limited progress has been made, and Plaintiff's counsel agreed by July 15 to serve updated written responses and objections and certain documents that *he* considers to be relevant.

The parties are also engaged in the dispute now before the Court. Defendants have and will produce or disclose confidential, proprietary, or sensitive information. To facilitate its timely production, to protect its confidentiality and use, and to avoid court intervention, Defendants seek the entry of the protective order. Because Plaintiff incorrectly believes the protective order "will tie this case up with needless disputes over the confidentiality of documents," Plaintiff opposes its entry and wants to "try to agree on confidentiality on a document by document basis." Ex. B: E-mail from Larry Klayman to Sandy Bohrer (June 12, 2015, 5:01 p.m.).

## II.   ARGUMENT

A "court may, for good cause," enter a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way." Fed. R. Civ. P. 26(c)(1)(G). The Eleventh Circuit "has identified four factors for ascertaining the existence of good cause" for the entry of a protective order designed to "preserve the confidentiality of sensitive materials." *In re Alexander Grant &*

---

[1] This is not surprising. Plaintiff's counsel has a lengthy and noted history of discovery abuse. *See, e.g.*, *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 139 (D.D.C. 2011) (granting sanction because of Mr. "Klayman's consistent pattern of engaging in dilatory tactics, his disobedience of Court-ordered deadlines, and his disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court"); *Klayman v. Barmak*, 2009 WL 4722803, at *1 (D.D.C. Dec. 4, 2009) (noting that the court "imposed monetary sanctions" on Mr. Klayman for failing "to comply with even the most basic of discovery requirements"); *Alexander v. FBI*, 186 F.R.D. 188, 190 (D.D.C. 1999) ("The court has grown weary of [Mr. Klayman's] use—and abuse—of the discovery process.").

*Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987). They include: "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" *Id.* (internal quotation marks omitted). Each factor supports entering the protective order in this case.

*First*, the severity and likelihood of the perceived harm is strong. For example, Defendants have produced the publishing agreement between Risen and Defendant Houghton Mifflin Harcourt Publishing Company ("HMH"), which contains confidential, proprietary information belonging to HMH that is competitively sensitive. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[C]ourts have refused to permit their files to serve as … sources of business information that might harm a litigant's competitive standing …." (citations omitted)). For another, certain portions of Risen's deposition transcript have been designated and must remain confidential, for they contain information about privileged newsgathering, Risen's net worth, and whom he voted for (among other sensitive, irrelevant, immaterial, or inadmissible information). And certain of the information that Plaintiff may or has already designated as confidential—such as his "Address and Miami-Dade phone number" and the "Fatwah … placed on Plaintiff Montgomery's head on his family"—will surely be regarded by Plaintiff as harmful if disclosed. *See* Am. Compl. (Redacted) at 1 n.1; *id.* ¶ 95, ECF No. 44.

*Second*, the protective order protects from disclosure only proprietary, confidential, or sensitive information, and it otherwise permits broad access to all discovery materials. *See* Ex. A. ¶¶ 2–3. This is just what the Eleventh Circuit requires, which has found that the terms of a protective order "were precisely drawn" where the "parties enjoyed liberal access to all of the discovery materials and were prohibited from disseminating to non-litigants only those items designated by another party as confidential." *In re Alexander Grant*, 820 F.2d at 356. The

3

protective order also contains safeguards to ensure that only appropriately designated confidential information is maintained as such; for example, any party may seek review of any confidential designation and may seek relief from or modification of any term or condition thereof. *See* Ex. A. ¶ 15. In addition, nothing in the protective order limits the relevance, discoverability, or admissibility into evidence of any documents or information produced during discovery. *See id.* at 1 (second unnumbered paragraph).

    ***Third***, no less onerous alternative reasonably exists. The protective order would permit the parties to designate as confidential portions of deposition transcripts. It would impose clearly defined procedures to govern the use and exchange of confidential information. And it would permit the parties to easily produce all documents without delay. In light of the extra-tight discovery schedule, *see* Hr'g Tr. 23:25–24:1, May 27, 2015 ("I don't know if tight is a powerful enough adjective."), by which all discovery must be completed by September 16, 2015, *see* ECF No. 48, producing discovery quickly and without impediment is critical.

    Addressing confidentiality on a document-by-document basis, as Plaintiff suggests, is more onerous and creates uncertainty. It is more onerous because it creates more work. Because no protective order is in place, the parties' counsel have had to enter into stopgap stipulations to maintain as confidential certain documents and designated portions of Risen's transcript until further resolution by the parties or by the Court. These stipulations require counsel to agree if the material is to stay confidential and, if they can't agree, to seek relief from the Court. In addition to the burden that that places on counsel, "[b]usy courts are simply unable to hold hearings every time someone wants to obtain judicial review concerning the nature of a particular document." *In re Alexander Grant*, 820 F.2d at 356. It is thus better to leave it up to the parties to designate in good faith what they consider to be confidential, and to shift the "burden of raising the issue of

confidentiality … to the other party." *Id.*[2] And Plaintiff's approach creates uncertainty because it leaves many loose ends untied. For example, Defendants have produced the publishing agreement only on the representation that Plaintiff would maintain it as confidential. But many questions remain unaddressed: What may Plaintiff use the publishing agreement for? To whom may he disclose it? And what must he do with it after this action is over? The protective order answers these and similar questions. *See* Ex. A ¶¶ 5–12.

***Fourth***, the duration of the protective order is limited—as drafted, the confidentiality requirements are effective only until 60 days after the conclusion of this action, after which the parties will return or destroy any confidential information. *See* Ex. A. ¶ 12.

***Last***, courts in defamation actions concerning the media have entered similar protective orders. Ex. C: *Reid v. Viacom Int'l Inc.*, No. 14-cv-01252-WBH (N.D. Ga. Sept. 30, 2014), ECF No. 30.[3]

## III. CONCLUSION

For the reasons herein, Defendants respectfully request that the Court enter the protective order, which is attached hereto as Exhibit A.

---

[2] *See In re Alexander Grant*, 820 F.2d at 356 ("Under the provisions of umbrella orders, the burden of proof justifying the need for the protective order remains on the movant; only the burden of raising the issue of confidentiality with respect to individual documents shifts to the other party.").

[3] On the July 6 meet-and-confer call, Plaintiff's counsel suggested that the protective order would permit Defendants to maintain as confidential anything they wanted. This is not true, and Defendants—being in the media—take very seriously the "common-law right of access to judicial proceedings." *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Plaintiff's counsel misunderstands why Defendants want a protective order entered—namely, to create clear procedures and guidelines for the use and disclosure of properly designated confidential information and to permit the easy flow of discovery without needless work by the parties and unnecessary intervention by the Court. Indeed, that Defendants have thus far designated as confidential subject to resolution of this dispute only a few of the 4,000 pages of documents produced speaks to the irrationality of Plaintiff's counsel's surmise about Defendants' over-designating documents as confidential.

5

Dated: July 8, 2015                            Respectfully submitted,

                                              s/Brian W. Toth
Sanford L. Bohrer
Florida Bar No. 160643
sbohrer@hklaw.com
Brian W. Toth
Florida Bar No. 57708
brian.toth@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Fax: (305) 789-7799

– and –

Laura R. Handman (admitted *pro hac vice*)
laurahandman@dwt.com
Micah J. Ratner (admitted *pro hac vice*)
micahratner@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, D.C.  20006
Tel.: (202) 973-4200
Fax: (202) 973-4499

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I certify that on July 8, 2015, I filed this document with the Clerk of Court using CM/ECF, which will serve this document on all counsel of record.

                                              s/Brian W. Toth