IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-cv-20782-Martinez-Goodman

DENNIS MONTGOMERY,

        Plaintiff,

v.

RISEN, ET AL.

        Defendants.
_____/

### PLAINTIFF'S OPPOSITION TO NOTICE OF SUPPLEMENTAL AUTHORITY CONCERNING DEFENDANTS' MOTION TO DISMISS OR TRANSFER

Plaintiff Dennis Montgomery hereby opposes Defendants' Notice Of Supplemental Authority Concerning Defendants' Motion To Dismiss Or Transfer on the following grounds:

First, Defendants filed their so-called supplemental authority, which is in reality a new brief in support of their motion to dismiss after the pleading deadline had closed, without seeking the consent of Plaintiff and leave of court. This is in violation of 7.1(a)(3) of the Local Rules of this Court. All that Plaintiff's counsel was told is that Defendants intended to file an unspecified pleading that contained information from the transcript that had been designated as confidential. They then asked if Plaintiff would remove the confidential designation and Plaintiff's counsel replied that he would check with his client in this regard. The confidential designation was subsequently removed.

Second, while defense lead counsel seeks to disparage the credibility of Plaintiff and his counsel, as this Court will recollect from the initial status conference, *pro hac vice* attorney Laura Handman – whose office is in Washington, D.C. – misrepresented to this Court under oath that Plaintiff had not registered to vote in Florida. Plaintiff's counsel raises this because before

1

the status conference of April 14, 2015, he had asked Ms. Handman to correct this misrepresentation. However, she failed to do so later when she attempted to argue that Plaintiff had, incredulously, no ties to Florida. Later misrepresentations occurred during a hearing with Magistrate Judge Jonathan Goodman when she attempted to make up facts concerning the deposition of James Risen. Attached as Exhibit 1 is the Miami-Dade County voter registration. Thus, for defense counsel to viciously attack Plaintiff and his counsel in their supplemental authority motion is the "pot calling the kettle black" and unprofessional.

Third, these attacks are consistent with lead *pro hac vice* defense counsel's flippant, condescending and insensitive remarks about the health of Mr. Montgomery at the status conference before this Court. Below are quotes by the Court in response to what Ms. Handman said about Plaintiff's health in trying to get this case delayed or moved to a venue which she considers more to her liking, such as Washington, D.C., where cases drag on for years and where there was at the time an anti-Slapp statute which has since been ruled inapplicable in federal court. *See Abbas v. Foreign Policy Group*, LLC (No. 13-7171, Apr. 24, 2015). Defense counsels' strategy throughout this case has been to throw a monkey wrench into the case by whatever means.

> THE COURT: I don't think they can with aneurysms. And I am a world class hypochondriac and I am very familiar with almost all medical problems, but I'm particularly up to date on aneurysms because my sister is in the hospital right no undergoing test for an operation that is imminent for aneurysm. So I'm familiar with them, and I know that they can go any time.  I mean, it's not a question of predictability, it's a question of keeping an eye on them and if they start growing, that's really bad. But they could go without growing. I mean, I don't know that the fact that he's done so well this long really portends that he's going to continue to do well. But I'm not sure that it makes any difference for our purposes.

Transcript of Status Conference of April 14, 2015 at pp. 12.

Fourth, and most importantly, notwithstanding the unprofessional conduct of *pro hac vice* lead defense counsel, is that Mr. Montgomery is a citizen of Florida and has set up residency there. Notwithstanding his voter registration at his deposition, Plaintiff described his efforts to get a permanent residence. However, due to his failing health caused by his severe brain aneurism with attendant strokes, he has not been able to do this. Exhibit 2 – which will be filed separately with the Court once it is "declassified" as to confidentiality – is his complete, not distorted or cropped testimony, as submitted by Defendants and their counsel to try again to prejudice this Court. As can be gleaned from the transcript, Mr. Montgomery does indeed have a residence in Florida. Indeed, in attending his deposition in Miami, he did so because of a prearranged meeting with agents of the Federal Bureau of Investigation at its local headquarters in Miramar, Florida, and also to pursue a permanent abode in Miami-Dade County. That he could not travel to Nevada or California in the weeks prior was due to his health at the time. That lead defense counsel Ms. Handman would use Mr. Montgomery's health to disparage him and try to prejudice this Court against him, was also manifest during Mr. Montgomery's deposition, which from his health standpoint was difficult and physically painful. For example, during one instance, Ms. Handman mocked Mr. Montgomery when he made reference to his physical condition, suggesting that this was his problem since he brought the lawsuit.

> MR. MONTGOMERY: It's hard to sit here when you're sitting in your own excrement when you're giving depositions. I don't have my family around t take care of me and realize what's going on when I can't control my bladder or my bowels. I'm doing the best I can under what I consider some pretty tough conditions.
> MS. HANDMAN: Well, you chose to bring this lawsuit, Mr. Montgomery.

Transcript of Deposition of Dennis Montgomery at pp. 180-81, lines 23-25, 1-7.

Plaintiff will also file in hard copy the video of Mr. Montgomery's deposition which visually shows his pain being deposed for seven hours. This lack of respect is consistent with *pro*

*hac vice*'s lead counsel's comments about Mr. Montgomery's health at the initial status conference.

Fifth, as for the law, which is something which Defendants and their *pro hac vice* lead defense counsel choose to ignore, it is clear that Mr. Montgomery has established his Florida citizenship, as the Sunshine State, of which his counsel is also a Florida citizen, is an "intent state."

For an individual, citizenship for diversity purposes is equivalent to domicile. *McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002). "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" *Id.* (*citing Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir. 1974), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.E.2d 70 (1974)).

To determine a person's domicile, the courts consider a number of factors including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes. *Lew v. Moss,* 797 F.2d 747, 749-750 (9th Cir. 1986).

"[D]iversity and jurisdiction are determined on the basis of the facts at the time the suit was filed, and subsequent facts or changes in the domicile of either party do not affect jurisdiction." *Smith v. Sperling*, 354 U.S. 91, 93 (1957). A plaintiff need only show a preponderance of the evidence that he is a citizen of a state. *Scoggins v. Pollock*, 727 F.2d 1025, 1026 (11th Cir. 1984). "The district court's finding of domicile will not be disturbed unless clearly erroneous." *Combee v. Shell Oil Co.*, 615 F.2d 698 (5th Cir. 1980).

As importantly, Plaintiff has always had, even prior to establishing citizenship and domicile, significant contacts with Florida as set forth in his affidavits, which are consistent with his testimony at his deposition. Attached as Exhibit 3 are the affidavits which he submitted in opposition to Defendants' motion to dismiss.

Finally, venue is proper in Florida even if Mr. Montgomery were not a citizen of Florida, as the defamation was projected into this state, as set forth in his affidavits, and as Defendants not only have a presence in Florida through their holding company in Orlando, but promote and sell the libelous book at issue, Pay Any Price, here. Indeed, Florida, with its huge military and national security presence of readers, is one of the largest if not *the largest* market for Defendants. The depositions of the Defendant publishers, Linda K. Zecher, William Bayers, Houghton Mifflin Harcourt Company, Houghton Mifflin Harcourt Publishing Company, and Houghton Mifflin Harcourt Publishing Company in Orlando, Florida, which have been scheduled, will bear this out. There is thus no dispute that Plaintiff was defamed in Florida, a massive market for Defendants, especially when Plaintiff has had significant contacts, work relationships, and business over the years in Florida, as set forth under oath in his affidavits.

Moreover, a defendant's physical presence is not required in order to commit a tortious act, such as defamation, in Florida. *Exhibit Icons, LLC v. XP Cos., LLC*, 609 F. Supp. 2d 1282, 1297 (2009). In *Hartoy Inc. v. Thompson*, a trademark and unfair competition case, the Court ruled that a Wisconsin resident's operation of a business website through which Florida residents had placed orders established personal jurisdiction over the Wisconsin resident in Florida. *Hartoy Inc. v. Thompson*, 2003 U.S. Dist. LEXIS 3185 (S.D. Fla. Jan. 29, 2003).

Similarly, in *Bloom v. A. H. Pond Co.*, a non-resident corporation's conducting of business through an employee in the forum state satisfied the requisite nexus for personal

5

jurisdiction over it. *Bloom v. A. H. Pond Co.*, 519 F. Supp. 1162 (S.D. Fla. 1981). In *Tobinick v. Novella*, the exercise of personal jurisdiction over defendant was proper where plaintiffs' claims stemmed from content posted by defendant on a website accessible in a forum state. *Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 72467 (S.D. Fla. June 4, 2015); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) (holding that:"[i]f Dot Com had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple – it could have chosen not to sell its services to Pennsylvania residents").

Here, there is no doubt that the Defendants intended to sell books in Florida. After all, the Defendants have an office in Orlando, Florida for the purpose of soliciting business in Florida and to Florida residents.

For all of these compelling reasons, Defendants and their lead *pro hac vice* Washington D.C. counsel's personally offensive supplement, filed for tactical reasons, is improper, untimely as the pleadings on their motion to dismiss had closed, and non-meritorious and must respectfully be rejected by this Court.

Dated: September 10, 2015

Respectfully Submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
FL Bar No. 246220
7050 W Palmetto Park Rd.
Suite 15-287
Boca Raton, FL 33433

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September 2015, a true and correct copy of the foregoing was served via CM/ECF upon the following:

**Sanford Lewis Bohrer**
**Brian Toth**
Holland & Knight, LLP
Suite 3000
701 Brickell Ave
Miami, FL 33131
Email: sbohrer@hklaw.com
Email: brian.toth@hklaw.com

**Laura R. Handman**
**Micah Ratner**
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington D.C. 20006-3401
Email: laurahandman@dwt.com
Email: MicahRatner@dwt.com

*Attorneys for Defendants*

                                              */s/ Larry Klayman*
                                              Larry Klayman, Esq.