UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-20782-MARTINEZ/GOODMAN

DENNIS MONTGOMERY,

        Plaintiff,

v.

JAMES RISEN et al.,

        Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S OBJECTION TO PORTIONS
OF THE MAGISTRATE JUDGE'S AUGUST 22, 2015 ORDER**

| | |
|---|---|
| **HOLLAND & KNIGHT LLP** | **DAVIS WRIGHT TREMAINE LLP** |
| Sanford L. Bohrer | Laura R. Handman (admitted *pro hac vice*) |
|   Sandy.Bohrer@hklaw.com |   laurahandman@dwt.com |
| Brian W. Toth | Micah J. Ratner (admitted *pro hac vice*) |
|   Brian.Toth@hklaw.com |   micahratner@dwt.com |
| 701 Brickell Avenue, Suite 3300 | 1919 Pennsylvania Ave., NW, Suite 800 |
| Miami, Florida 33131 | Washington, D.C. 20006 |
| Tel: (305) 374-8500 | Tel.: (202) 973-4200 |
| Fax: (305) 789-7799 | Fax: (202) 973-4499 |

*Counsel for Defendants*

Defendants James Risen ("Risen"), Houghton Mifflin Harcourt Publishing Company ("HMH"), and Houghton Mifflin Harcourt Company ("HMHC"), improperly sued as HMH Holdings, Inc., (collectively "Defendants"), file this Opposition to Plaintiff's Objection to Portions of Magistrate Judge's August 22 Order. (ECF No. 125.)

## I. PRELIMINARY STATEMENT

The Court should overrule Plaintiff's objection ("Objection") to paragraphs 5 and 6 of Magistrate Judge Jonathan Goodman's August 22, 2015 discovery order (ECF No. 107, ¶¶ 5-6) (the "Discovery Order"), for the following reasons:

*First*, Plaintiff's Objection does not cite, or provide any argument for how he overcomes, the "very difficult" standard of review to overturn a magistrate judge's discovery order as clearly erroneous or contrary to law. Indeed, the Objection does not cite a single case for any proposition it offers – not one.

*Second*, Judge Goodman's Discovery Order finding that Plaintiff's software is "highly relevant" to the element of falsity, which Plaintiff must prove in this libel suit, is not clearly erroneous or contrary to law. Judge Goodman correctly rejected Plaintiff's argument that, because Risen did not rely on the software at issue, it is not relevant. What Risen relied upon before publication is relevant to fault and the fair report privilege, but it does not matter for falsity. What matters for falsity, as Judge Goodman correctly held, is whether the software works – as Plaintiff claims in his Amended Complaint – or whether it does not work – as suggested in Chapter 2 ("Chapter") of Risen's book, *Pay Any Price: Greed, Power, and the Endless War* (the "Book").

*Third*, the Court should reject Plaintiff's assertion that Defendants waived the right to have an expert test and testify about the software. As Judge Goodman found in denying Plaintiff's motion to stay the Discovery Order pending his Objection, this argument is "circular

and unconvincing" because Defendants were unable to provide a full expert report *only* because Plaintiff has refused to produce the software.

## II.     FACTUAL BACKGROUND

### A.     Defendants' Request for Production of the Relevant Software and Plaintiff's Refusal to Produce It

This is a libel action Plaintiff brought against author James Risen, his publisher, and its holding company, arising from statements in Chapter 2 that report allegations Plaintiff defrauded the federal government by selling it useless software.[1]  To defend against Plaintiff's claim that statements in the Book are false because the software allegedly works, Defendants requested a copy of the software, the software's current location, and other information about the software.[2] Plaintiff refused to produce this software and related information, even under the protective order, asserting that he is not legally permitted to produce "secret" classified information.[3]

### B.     Plaintiff's Past Cases Show the Software Is Not Classified and His Pattern of Refusing to Produce the Software

As Defendants explained in a memorandum to Judge Goodman (ECF No. 94), orders in Plaintiff's previous cases show that his software is *not* classified.  In a case in which Plaintiff's former employer, eTreppid, sued Plaintiff for allegedly misappropriating the subject software, the U.S. government moved for and obtained a protective order under the state secrets privilege to protect certain classified information from discovery ("U.S. Protective Order").[4]  However,

---

[1] (ECF No. 44, Am. Compl. ¶¶ 120-27, 181-84, 202-21, 230-36.)
[2] (ECF No. 90-1, Defs.' Interrogs. 9-15 & Reqs. for Produc. 7-15, 26-32, 36-47, 53.)  On August 3, Defendants identified to Plaintiff an expert qualified to test the software, and thus complied with the scheduling order (ECF No. 48) to the extent possible given Plaintiff's failure to produce the software.
[3] (ECF No. 90-2, Pl.'s Resp. & Objections to Interrogs. 9-15) (objecting that "the interrogatory calls for information some of which the Plaintiff is not legally permitted to disclose as being confidential or secret"); (*Id.*, Pl.'s Resp. & Objections to Reqs. for Produc. 7-15, 26-32, 36-47, 53) (objecting on grounds of "legal restrictions on the Plaintiff responding" or that "he is not legally permitted to disclose all documents or information").
[4] (*Montgomery v. eTreppid Technologies, Inc.*, 3:06-cv-00056-PMP-VPC ("*eTreppid*"), ECF No.

the U.S. Protective Order specifically *excluded* Plaintiff's software from its scope, stating that "[t]his Order does not preclude the Parties from serving or taking any discovery . . . relating to . . . [t]he computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties."[5] Thus, the magistrate judge in Nevada found that "[t]he clear understanding in drafting and issuing th[e] [U.S.] protective order was that the parties would be discussing the nature and capabilities of the technology, and the type of work each party performed for the government."[6]

Nonetheless, Plaintiff refused to produce the software and related information in both the Nevada litigation and in his later bankruptcy proceedings in which the U.S. Protective Order was also entered. In the Nevada action, the magistrate and district judges repeatedly ordered Plaintiff to produce the software, but he refused.[7] Thus, the district judge held Plaintiff in contempt, imposing a penalty of $2,500 per day until he produced the software.[8] Instead of producing the software, Plaintiff settled the action and signed confessions of judgment for $25 million.[9] Then, Plaintiff declared bankruptcy and continued to refuse to produce or describe the software in bankruptcy.[10] Following this same pattern here, Plaintiff is withholding the software again when

---

253 (D. Nev. Aug. 29, 2007), attached as Exhibit 2 to Defs.' Pre-Discovery Hearing Mem., ECF No. 94-2.)
[5] (*Id.* at 2-3, ¶ 4(c).)
[6] (*eTreppid*, ECF No. 645, at 6 n.3, attached as Exhibit 3 to Defs.' Pre-Discovery Hearing Mem., ECF No. 94-3.)
[7] (*Id.*, ECF No. 645, & *eTreppid*, ECF Nos. 728, 765, 769, attached as Exhibit 4 to Defs.' Pre-Discovery Hearing Mem., ECF No. 94-4.)
[8] (*eTreppid*, ECF No. 815, at 3-5, attached as Exhibit 5 to Defs.' Pre-Discovery Hearing Mem., ECF No. 94-5.)
[9] (*eTreppid*, ECF Nos. 897, 898, attached as Exhibit 6 to Defs.' Pre-Discovery Hearing Mem., ECF No. 94-6.)
[10] In his bankruptcy case deposition, Plaintiff either testified that he did not have the software or it was subject to the U.S. Protective Order, or he refused to testify under the Fifth Amendment privilege against self-incrimination (*In re Dennis and Brenda Montgomery*, No. 2:10-bk-18510-BB, Dep. Tr. 61:10-62:15; 79:7-80:5; 193:10-194:24; 234:3-22; 267:20-269-17; 333:16-21 (Bankr. C.D. Cal.), attached as Exhibit 7 to Defs.' Pre-Discovery Hearing Mem., ECF No. 94-7.) Department of Justice ("DOJ") lawyers who attended his deposition, however, did not object to the questions under the U.S. Protective Order. Ultimately, Plaintiff was denied discharge in

it is central to his burden to prove falsity and Defendants' defense on that element.[11]

### C. The August 21 Hearing and August 22 Order

On August 21, Judge Goodman held a hearing on the adequacy of Plaintiff's responses and objections to Defendants' discovery requests, including on the dispute over Plaintiff's refusal to produce the software.[12] At the hearing, which occurred the day after Defendants' counsel deposed Plaintiff, Plaintiff's counsel confirmed what Plaintiff testified about at his deposition – that on August 18 or August 19, Plaintiff, ***without seeking leave of court or informing Defendants***, turned over to the Federal Bureau of Investigation ("FBI") and to the Department of Justice what he claimed was the ***one and only*** copy of the software that Defendants have ***since June 1*** requested from Plaintiff in this action. Judge Goodman "agree[d] with [Defendants] that the software is highly relevant for the case." (Hr'g Tr. 32:23-24, ECF No. 111-1.)[13] And so Judge Goodman "order[ed] Mr. Montgomery to turn over that software and to take advantage of his right of continued access to nonclassified information." (*Id.* 79:24-80:1.)

On August 22, in a written order, Judge Goodman ordered Plaintiff to "use his self-described right of continued access to non-classified information (in relation to his turning over the subject software to the FBI) and produce the software to Defendants." (Discovery Order ¶ 6, ECF No. 107.)[14] Notwithstanding statements in Plaintiff's Objection to the contrary, the Discovery Order did *not* require Plaintiff to produced classified software. (Pl.'s Objection, at 6.)

---

bankruptcy. (*eTreppid*, ECF Nos. 1206, ¶ 22, 1208, ¶ 22, attached as Exhibit 8 to Defs.' Pre-Discovery Hearing Mem., ECF No. 94-8.)
[11] *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986).
[12] Plaintiff first served his responses and objections to Defendants' discovery requests on July 1. Plaintiff served his amended responses and objections on July 15.
[13] The Discovery Order noted that, if Plaintiff filed any objection, this Court should review the hearing transcript because it "outlines" Judge Goodman's "reasoning." (Discovery Order, at 1 n.1, ECF No. 107.) Yet Plaintiff's Objection does not cite or rely upon the hearing transcript.
[14] Plaintiff's counsel informed the general counsel of the FBI and an Assistant U.S. Attorney of this directive. (*See* Letter from Larry E. Klayman to James A. Baker and Deborah Curtis (Aug. 26, 2015), ECF No. 108-1).)

Rather, Judge Goodman credited Defendants' argument that the court in Nevada found the software was not classified. (Hr'g Tr. 30:18-23; 40:7-47:1, ECF No. 111-1.)

Relevant here, the Discovery Order also required Plaintiff to produce "all documents concerning" Defendants' request for production number 7 about communications with persons who know about the software and of its location, "which would now include documents related to the disclosure and production of the subject software to the FBI," (Discovery Order ¶ 5, ECF No. 107.) The Discovery Order required Plaintiff to "turn over all documents . . . related to the disclosure and production of the subject software to the FBI" by August 31, 2015, and "to produce the software to Defendants" by September 4, 2014. (*See id.* ¶¶ 5-6.)

### D.  Plaintiff's Unsuccessful Motion to Stay the Order to Produce the Software Pending His Objection

On August 31, 2015, Plaintiff did not produce the documents about production of the software to the FBI. Instead, Plaintiff moved for a stay of the portion of the Discovery Order that required him to produce the software and related documents pending his forthcoming Objection. (ECF No. 112.) On September 3, 2015, Defendants filed their opposition to the motion to stay. (ECF No. 121.) That same day, the Judge Goodman issued an order denying Plaintiff's motion to stay. (Stay Order, ECF No. 122.) Judge Goodman reiterated that "Montgomery shall produce by September 4, 2015 all documents encompassed in paragraph 6 of the Discovery Order and shall also produce the software by using the self-described right of continued access to the software which he turned over to the FBI without maintaining a copy for himself." (*Id.* at 2.) Incredibly, Plaintiff fails to even mention, much less address, the denial of the stay that forcefully rejected all the grounds raised by Plaintiff in his Objection filed just two hours later. (ECF No. 125.) To date, Plaintiff has not complied with the provisions of the Discovery Order that he unsuccessfully sought to stay.

Judge Goodman found that Plaintiff was not likely to succeed on the merits of his objection that "the software is not relevant (and therefore not discoverable) because Defendant James Risen, who wrote the book Plaintiff is challenging as defamatory, 'effectively admitted that he did not have access to any classified information.'" (Stay Order, ECF No. 122, at 4.) Judge Goodman was "not at all persuaded by Montgomery's argument," and instead "agreed with Defendants' position that the software is 'highly relevant' . . . ." (*Id.* at 5.) Judge Goodman recognized that "the theme" of Plaintiff's Amended Complaint is that "Risen falsely accused Montgomery of being a con man and a fraud who tricked the Government into purchasing unworkable object recognition software and who asked that tests of the software be falsified." (*Id.*) Judge Goodman rejected Plaintiff's argument, reasoning that "Plaintiff's burden to prove falsity does not hinge on whether he [Risen] ever had a copy of the software" but rather "the critical fact is whether in fact the software worked." (*Id.*) Judge Goodman concluded that "[a]ccordingly, Defendants have a right to inspect and test the software"; "It is highly relevant and Montgomery must produce it." (*Id.*) "In fact," Judge Goodman found, the software "is critical" evidence. (*Id.* at 6.)

Judge Goodman also found Plaintiff's argument that Defendants waived their right to have an expert test and opine about the software is "circular and unconvincing." (*Id.* at 5.) Judge Goodman reasoned that "Defendants could not provide an expert report because *Montgomery* refused to provide the software which Defendants have been requesting since discovery began." (*Id.*) Moreover, Judge Goodman found that "the overall equities of the discovery dispute and the Discovery Order at issue further militate against Montgomery's position because he recently, and secretly, turned over the software to the FBI – without keeping a copy, without advising Defendants of his plan to do so, without advising this Court of his

6

strategy and without seeking leave of Court . . . ." (*Id.*) Plaintiff's purpose, Judge Goodman found, was "to, in effect, seek to sequester what could be the most important evidence in the entire case." (*Id.*) Thus the Court denied the stay because, in part, Plaintiff was unlikely to succeed on this Objection.

### E.     Plaintiff's Continued Efforts to Avoid Producing the Software

Plaintiff has now defied Judge Goodman's two orders by failing to produce the software by September 4. Rather, that day, Plaintiff filed this Objection. (ECF No. 125.)

On September 8, 2015, James A. Baker, the General Counsel of the FBI wrote a letter to Plaintiff's counsel, and copied Judge Goodman, to "correct any misunderstandings about the conditions under which the FBI took possession of the materials from Mr. Montgomery" and to address the means by which Plaintiff "will be afforded access to the materials he provided to the FBI." (ECF No. 126, at 1.)

*First*, Mr. Baker stated that, beside materials Plaintiff gave to the FBI purportedly as whistleblower, Plaintiff "had other materials that were wholly irrelevant to the FBI inquiry that may be on the drives" such as the software at issue. (*Id.* at 2.) But Plaintiff "wished to turn over every computer drive in his possession" to the FBI. (*Id.*) Plaintiff and the FBI agreed to establish a procedure to provide Plaintiff access to non-classified information did "not unduly burden the FBI nor interfere with the ongoing review process." (*Id.*) But Plaintiff "did not associate the potential retrieval of this information with any pending civil litigation." (*Id.*) Further complicating the task for the FBI, Plaintiff told the FBI that "Top Secret, compartmented information may reside throughout the hard drives," leading the FBI to treat all Plaintiff's hard drives as "presumptively classified." (*Id.* at 3.) In "stark contrast" to Plaintiff's counsel's representations to Judge Goodman, Plaintiff "never asked, and the FBI never agreed, for the Government to undertake a classification review of [the] software" at issue. (*Id.*)

7

*Second*, Mr. Baker told Plaintiff that the August 26 letter Plaintiff's counsel provided to the FBI was insufficient. "[N]otably absent is any information which would assist the Government in locating and producing the software at issue in *Montgomery v. Risen*." (ECF No. 126, at 3.) Mr. Baker explained that a letter Plaintiff gave the FBI on August 19, 2015 said that "the hard drives contained **51.6 million files amounting to 600 million pages.**" (*Id.*) Combined with Plaintiff's claim to the FBI "that classified information was contained throughout the hard drives," this "massive amount of information on the hard drives" means "there is no reasonable way for the Government to locate and provide the alleged software, absent specific instructions from" Plaintiff. (*Id.* at 3-4.)[15]

*Third*, although ordered to produce all "documents related to the disclosure and production of the software to the FBI" by August 31 (Discovery Order ¶ 5), Plaintiff has not complied. He has not produced the July 28 and August 12, 2015 letters specifically referenced in Mr. Baker's September 8 letter, any response to Mr. Baker's request for further information to locate the software, or any other documents required under this portion of the Discovery Order, except Plaintiff's counsel's August 26 letter forwarding the Discovery Order to the government.

In response to the letter of the General Counsel for the FBI, Plaintiff's counsel and his paralegal filed self-serving declarations denying Mr. Baker representations. (ECF No. 127.) It is plain that Plaintiff's meritless Objection is but a further attempt to avoid producing the software. The software needs to be reviewed by Defendants' expert, so any delay only further impedes the orderly conduct of this litigation.

---

[15] Mr. Baker therefore asked Plaintiff to provide the FBI: "(1) the number or designation of the drive on which the software is present"; (2) the file name of the software; (3) the creation date of the software; and (4) any other identifier(s) for the software." (*Id.* at 4.) Defendants have not seen any written correspondence, if any, from Plaintiff to the FBI responding to the FBI's request.

### III.     ARGUMENT

#### A.     The Court Should Overrule Plaintiff's Objection Because the Discovery Order Is Not Cleary Erroneous or Contrary to Law

Plaintiff does not even mention, much less meet, the onerous standard to overturn a magistrate judge's non-dispositive order.  "A district court reviewing a magistrate judge's discovery order" may "revers[e] that order only if it is 'clearly erroneous or contrary to law.'" *SEC v. Merkin*, 283 F.R.D. 699, 700 (S.D. Fla. 2012) (quoting 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72); S.D. Fla. Magistrate Judge R. 4(a)(1) ("The District Judge . . . shall set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law."). Plaintiff does not identify any portion of the Discovery Order that is clear erroneous or contrary to law.

"'An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Summit Towers Condo. Ass'n v. QBE Ins. Corp.*, 2012 WL 1440894, at *1 (S.D. Fla. Apr. 4, 2012) (citation omitted).  A magistrate judge's ruling is "clearly erroneous" only when the district court "'is left with the definite and firm conviction that a mistake has been committed.'" *Salazar v. Wells Fargo Bank, N.A.*, 2011 WL 379145, at *3 (S.D. Fla. Feb. 2, 2011) (citation omitted). "Clear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005). "The district court may not undo the magistrate judge's" non-dispositive order "'simply because it is convinced that it would have decided the case differently.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 2012 WL 4192987, at *2 (S.D. Fla. Sept. 18, 2012) (quoting *id.* at 1351).

Plaintiff's Objection does not come close to meeting this standard of review, which is "a very difficult one to meet." *Manno*, 2012 WL 4192987, at *2 (internal quotation marks and

citation omitted); *Tai-Pan, Inc. v. Keith Marine, Inc.*, 1997 WL 714898, at *11 (M.D. Fla. May 13, 1997) ("The standard for overturning a Magistrate's Order is a very difficult one to meet.").

### B. Judge Goodman's Finding that the Software Is Highly Relevant to the Element of Falsity Is Not Clearly Erroneous or Contrary to Law

Plaintiff argues that "the software at issue is irrelevant" because Risen's book "was based on previously published article by Bloomberg News and Playboy and non-classified public court and congressional records." (Pl.'s Objection, at 3.) Put differently, Plaintiff argues that, because Risen did not have access to the software when he wrote the Chapter and Defendants moved to dismiss under the fair report privilege and for failure to plausibly allege fault based on the prior articles and official records Risen had relied upon, the software is irrelevant at summary judgment and trial.[16] (*Id.* at 3-5.) As Judge Goodman found, Plaintiff is plainly incorrect.

Risen's reliance on these prior publications and official records is relevant to the element of fault and the fair report privilege defense, issues raised on Defendants' motion to dismiss, while the software is wholly relevant to the element of falsity, an issue not raised on the Rule 12(b)(6) motion. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (holding that states may not impose "liability without fault" in libel cases brought against the media). (*See also* Defs' Mot. to Dismiss or Transfer, at 27-29, 31-39.) An element of a claim for defamation, of course, is "a *false* and defamatory statement concerning another." Restatement (Second) of Torts § 558 (June 2015) (emphasis added). If the statements or implications that Plaintiff's software did not work are not *false*, then Plaintiff will not be able to prove his defamation claim. *See Hepps*, 475 U.S. at 776-77.

Here, Plaintiff's Objection is meritless because it ignores the basis for Judge Goodman's ruling that the software is "highly relevant" to the element of "substantial falsity of the claim in

---

[16] Contrary to Plaintiff's representation, Defendants never said that the software is not necessary to "try this case before a jury." (Pl.'s Objection, at 5.)

the book that the software did not work." (Hr'g Tr. 32:23-24, ECF No. 111-1.) Contrary to Plaintiff's unsupported assertion (Pl.'s Objection, at 6), Judge Goodman correctly found that the falsity does not depend on whether Risen had a copy of the software at the time, but whether, in fact, the software works or not. (Hr'g Tr. 24:1-20, ECF No. 111-1.)

It is well-established that "it makes no difference [if] the true facts were unknown" at the time of publication, because "truth—not just known truth—is a complete defense to defamation." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) (Posner, J.) (citations omitted); Restatement (Second) of Torts § 581A cmt. h (1977) ("[I]f the defamatory matter is true . . . it is enough that it turns out to be true."). Plaintiff would have this Court bless Plaintiff's attempts "to sequester what could be the most important evidence" of truth. (Stay Order, ECF No. 122, at 5.) But Plaintiff "does not have a legally protected right to a reputation based on the concealment of the truth." *Haynes*, 8 F.3d at 1228. Rather, as Judge Goodman stated, the software is "highly relevant," and indeed, "critical" to truth and falsity. (Hr'g Tr. 32:23-24, ECF No. 111-1; Stay Order, ECF No. 122, at 6.) Thus, Plaintiff fails to show "that the Magistrate Judge, in the exercise of his broad discretion, was clearly erroneous in concluding that the" software "is relevant" to the element of falsity and must be produced. *Merkin*, 283 F.R.D. at 700.[17]

### C. Plaintiff Provides No Basis Why Defendants' Inability to Provide a Full Expert Report Due to Plaintiff's Own Refusal to Produce the Software Could Justify Overturning the Discovery Order

Plaintiff argues that Defendants somehow waived their right to have an expert test the software and testify and that purported waiver somehow justifies overturning the Discovery

---

[17] Nor has Plaintiff provided any basis to conclude that the part of the Discovery Order requiring him to produce documents related to the location of the software, including documents related to the "secret," unauthorized hand-over to the FBI of the only copy of the software, is clearly erroneous.

Order.  (Pl.'s Objection, at 7-8.)  But Plaintiff does not provide the basis for this suggestion, and in any event, his argument is "circular and unconvincing."  (Stay Order, ECF No. 122, at 5.)  As Judge Goodman correctly found, Defendants identified the expert by the deadline on August 3, but "Defendants could not provide an expert report because *Montgomery* refused to provide the software which Defendants have been requesting since discovery began." (*Id.*)  Thus, the expert had nothing to test, and no opinions to offer or support with information about his qualifications without the software which Plaintiff had failed to produce.  Plaintiff did not object and has failed to identify a rebuttal expert by the deadline of August 24.[18]

For Plaintiff to suggest that Defendants' expert should be excluded (Pl.'s Objection, at 8) is the ultimate in chutzpah, particularly when it was Plaintiff's unilateral decision to "recently and secretly turn [ ] over the software to the FBI without keeping a copy, without advising Defendants of his plan to do so, without advising this Court of his strategy, and without seeking leave of Court . . . ."  (*Id.*)

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court overrule Plaintiff's Objection to the August 22, 2015 Discovery Order.

Dated:  September 21, 2015               Respectfully submitted,

                                         s/Brian W. Toth
                                         Sanford L. Bohrer
                                         Florida Bar No. 160643
                                         sbohrer@hklaw.com
                                         Brian W. Toth
                                         Florida Bar No. 57708
                                         brian.toth@hklaw.com

---

[18] Defendants served a partial report with the expert's qualifications on Plaintiff on September 3, 2015, after becoming aware through Plaintiff's motion to stay that he wanted it.  Any purported error is thus harmless.  *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011).

12

                HOLLAND & KNIGHT LLP
                701 Brickell Avenue, Suite 3300
                Miami, Florida 33131
                Telephone: (305) 374-8500
                Fax: (305) 789-7799

                – and –

                Laura R. Handman (admitted *pro hac vice*)
                laurahandman@dwt.com
                Micah J. Ratner (admitted *pro hac vice*)
                micahratner@dwt.com
                DAVIS WRIGHT TREMAINE LLP
                1919 Pennsylvania Ave., NW, Suite 800
                Washington, D.C.  20006
                Tel.: (202) 973-4200
                Fax: (202) 973-4499

                *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

       I certify that on September 21, 2015, I filed this document with the Clerk of Court using CM/ECF, which will serve this document on all counsel of record.

                s/Brian W. Toth