UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-20782-MARTINEZ/GOODMAN

DENNIS MONTGOMERY,

    Plaintiff,

v.

JAMES RISEN et al.,

    Defendants.

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTION TO LIMITED PORTIONS OF MAGISTRATE JUDGE'S POST-DISCOVERY HEARING ORDER**

| | |
|---|---|
| **HOLLAND & KNIGHT LLP** | **DAVIS WRIGHT TREMAINE LLP** |
| Sanford L. Bohrer | Laura R. Handman (admitted *pro hac vice*) |
|   Sandy.Bohrer@hklaw.com |   laurahandman@dwt.com |
| Brian W. Toth | Micah J. Ratner (admitted *pro hac vice*) |
|   Brian.Toth@hklaw.com |   micahratner@dwt.com |
| 701 Brickell Avenue, Suite 3300 | 1919 Pennsylvania Ave., NW, Suite 800 |
| Miami, Florida  33131 | Washington, D.C.  20006 |
| Tel: (305) 374-8500 | Tel.: (202) 973-4200 |
| Fax: (305) 789-7799 | Fax: (202) 973-4499 |

*Counsel for Defendants*

In accordance with Magistrate Judge Rule 4(a)(1), Defendants James Risen, Houghton Mifflin Harcourt Publishing Company ("HMH"), and Houghton Mifflin Harcourt Company ("HMHC"), improperly sued as HMH Holdings, Inc., (together, "Defendants"), respond to Plaintiff Dennis Montgomery's Objection to Limited Portions of Magistrate Judge Goodman's Post-Discovery Hearing Order (the "Order").  ECF No. 143.  As relevant here, the Order forbids Plaintiff from deposing HMH and HMHC's 30(b)(6) representatives about net worth and about alleged manipulation of corporate stock and failure to disclose to the Securities and Exchange Commission potential liability from this lawsuit, because both subjects are irrelevant to "any party's claim or defense."  Fed. R. Civ. P. 26(b)(1) (stating the scope of discovery).  Although Plaintiff objects to those portions of the Order, Plaintiff has not shown that either is clearly erroneous or is contrary to law.  For this reason and for those that follow, the Court should overrule Plaintiff's objection.

## I.      BACKGROUND

The facts relevant to Plaintiff's objection are as follows.

### A.      Plaintiff's 30(b)(6) notices of depositions on HMH and HMHC

On August 28, 2015, Plaintiff, in accordance with Federal Rule of Civil Procedure 30(b)(6), served notices of taking deposition on HMH and on HMHC.  *See* Ex. A.  Each notice contained nine identical topics of examination.  Of those nine topics, just two are relevant here: topic 8 ("corporate Defendants' net worth from 2013 through the present") and topic 9 ("Manipulation of corporate stock and failure to disclose potential liability in this lawsuit and filings with and to the Securities and Exchange Commission ('SEC') and related communications with, to and from the SEC.").

### B. Defendants objected to topics 8 and 9

Defendants objected to Plaintiff's seeking to depose the 30(b)(6) representatives of HMH and HMHC on topics 8 and 9 and scheduled a hearing before Judge Goodman to resolve the objections. *See* Defs.' Notice of Hearing, ECF No. 114.[1]

### C. Judge Goodman's September 11 hearing on the objections

On September 11, 2015 Judge Goodman held a hearing on the objections. At the hearing, the parties' counsel and Judge Goodman generally addressed topic 9 before addressing topic 8.

Regarding topic 9, Plaintiff's counsel asserted that SEC rules require that HMH and HMHC "list[]" this case

> and the amount of damages that are being requested . . . . [W]e wanted to be able to depose them with regard to issues involving why they were not listed on the SEC filings . . . and whether that bears on the profitability of this book which would bear on punitive damages and other damages in this case.

Hr'g Tr. 12:8–16, Sept. 11, 2015 (Ex. B). Plaintiff's counsel then asserted that the HMH and HMHC's Executive Vice President and General Counsel, William Bayers, who signed certain SEC filings, would be

> the one to be able to testify as to why this case was not disclosed to the American people when shares of stock were being offered to be sold on the New York Stock Exchange [sic], and whether that bears on the issue of damages here in terms of punitive damages by failing to disclose material information. And whether this would then raise their profits because the shares were sold under false pretenses.

*Id.* 13:7–15.

In response, Defendants' counsel stated that this action "does not state a claim for an SEC violation," that Plaintiff "would have no standing to make such a claim," and that "whether or

---

[1] Defendants also objected to Plaintiff's seeking to depose two of HMH and HMHC's high-ranking executives as well as Plaintiff's seeking to depose the Orlando office of HMHC.

2

not the SEC filings were accurate ha[s] no bearing on the issues in this case." *Id.* 14:12–14, 15:12–14.

Judge Goodman gave Plaintiff's counsel a full opportunity to explain the relevancy of topic 9:

> Why would you be entitled to obtain discovery on that issue? Why isn't it a purely collateral matter beyond the scope of discovery? I mean, maybe if Mr. Montgomery were a shareholder in these two corporations, or if you represented other shareholders, or someone wanted to bring a potential class action securities lawsuit it might be relevant. But in a defamation case why would it matter one way or the other whether or not the Defendants[] properly or improperly made or did not make an SEC filing?

*Id.* 15:24–16:8. Plaintiff's counsel listed two reasons. "First of all it deals with credibility and truthfulness and veracity." *Id.* 16:12–13. "Secondly, it deals with profitability and the monies that were reaped out of selling this book." *Id.* 16:17–18. Defendants' counsel summed up: "This is a pure harassment, a pure fishing expedition. It has nothing to do with whether or not the publisher knew when they published this book that it was false and had false statements. That's the issue that liability turns on." *Id.* 18:15–19.

Regarding topic 8, argument was interwoven with topic 9 and was relatively brief. Defendants' counsel asserted that "the net worth of the company is published." *Id.* 18:22–23. "But more importantly to get punitive damages you have to show them liable that there was actual malice and common law malice." *Id.* 18:24–19:1. Defendants' counsel—relying on *Haaf v. Flager Constr. Equip., LLC*, 2011 WL 1871159, at *3 (S.D. Fla. May 16, 2011) (Goodman, J.), in which the court denied without prejudice a plaintiff's request for net-worth discovery—stated that the "net worth inquiry" is premature. Hr'g Tr. 19:12, 20:1–5.

3

### D. Judge Goodman's rulings

At the hearing, Judge Goodman ruled that topic 9 "will not be a proper subject for your 30(b)(6) deposition." *Id.* 21:4–5.  And Judge Goodman ruled that topic 8

> is premature at this time.  I'm not saying you will never be able to obtain discovery about net worth.  I am not saying that you will never be able to take a 30(b)(6) deposition on that topic.  However, it is premature at this time.  In addition the net worth for public companies should be readily available. . . . So category number eight, or topic number eight on your 30(b)(6) list, is for the time being stricken without prejudice.

*Id.* 21:9–21.

On September 15, 2015 Judge Goodman memorialized his rulings in a Post-Discovery Hearing Order.  ECF No. 136.  "Topic number 8 for Plaintiff's 30(b)(6) depositions of the corporate Defendants is stricken without prejudice as premature."  Order 2.  And "[t]opic number 9 for Plaintiff's depositions of the corporate Defendants is stricken without prejudice as an improper subject for deposition at this time."  *Id.*[2]

### E. Plaintiff's objections

On September 29, 2015 Plaintiff timely filed an objection to the portion of the Order striking without prejudice topics 8 and 9.

### II. STANDARD OF REVIEW

A "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has

---

[2] Judge Goodman also denied without prejudice Plaintiff's seeking to depose two of HMH and HMHC's high-ranking executives and denied Plaintiff's seeking to depose the Orlando office of HMHC.  Judge Goodman awarded $250 in fees to Defendants as the prevailing party under Fed. R. Civ. P. 37(a)(5)(A) in connection with his denial of the deposition on the Orlando office and examination on topic 9, the allegations regarding SEC filings and stock manipulation.  Order 3.

4

been shown that the magistrate judge's order is clearly erroneous or contrary to law."); S.D. Fla. Magistrate Judge R. 4(a)(1) (same).

A magistrate judge's ruling is "clearly erroneous" only when the district court "is left with the definite and firm conviction that a mistake has been committed." *Salazar v. Wells Fargo Bank, N.A.*, 2011 WL 379145, at *3 (S.D. Fla. Feb. 2, 2011). "Clear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005). "The district court may not undo the magistrate judge's" non-dispositive order "'simply because it is convinced that it would have decided the case differently.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 2012 WL 4192987, at *2 (S.D. Fla. Sept. 18, 2012) (quoting *Holton*, 425 F.3d at 1351). "'An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Summit Towers Condo. Ass'n v. QBE Ins. Corp.*, 2012 WL 1440894, at *1 (S.D. Fla. Apr. 4, 2012) (citation omitted).

This standard is "'a very difficult one to meet.'" *Manno*, 2012 WL 4192987, at *2 (citation omitted); *accord Tai-Pan, Inc. v. Keith Marine, Inc.*, 1997 WL 714898, at *11 (M.D. Fla. May 13, 1997) ("The standard for overturning a Magistrate [Judge's] Order is a very difficult one to meet.").

### III.   ARGUMENT

Plaintiff has not met—and cannot meet—the very difficult standard of showing that the portions of the Order forbidding inquiry at this time into net worth and alleged manipulation of corporate stock and failure to disclose to the Securities and Exchange Commission potential liability from this lawsuit are clearly erroneous or contrary to law. Defendants will address each of Plaintiff's arguments, in the order set forth in Plaintiff's objections, in turn.

### A.     Topic 9

Plaintiff first asserts that because his action seeks "$120 million in compensatory damages plus $350 million in punitive damages" and because this "exceed[s] ten percent of the Defendants' current assets," "then requirement for disclosure under SEC regulations is triggered."  Pl.'s Obj. 7.  Next, Plaintiff, alleging "insider trading" on the part of Bayers, speculates that he "appears to have dumped shares of corporate stock which he held after being notified of the prospective and then actual lawsuit,"[3] and asserts, authoritatively but without *any* citation or declaration under oath, that the "SEC is currently investigating this likely violation of its civil and criminal statutory provisions for failure to disclose and insider trading."  *Id.* 8.[4]  According to Plaintiff, testimony in this area "would be useful at a minimum for impeachment purposes of the corporate defendants."  *Id.*

For two principal reasons, the Court should overrule this objection.

*First*, Plaintiff's objection merely rehashes the same arguments that he made before Judge Goodman.  But Plaintiff does not show—or even attempt to show—how Judge Goodman's ruling prohibiting inquiry into this matter is clearly erroneous or is contrary to law.  Plaintiff's failure to do so precludes this Court from modifying or setting aside Judge Goodman's

---

[3] Plaintiff's Objections misstate the date of Plaintiff's lawyer's first communication with Defendants as November 2015.  Pl.'s Obj. 1, 6.  In fact, it was January 14, 2015.  The January 2015 letter alleged that the book was defamatory, threatened legal action, demanded to know whether classified documents were received, and threatened to go to the FBI with criminal charges if the civil claims were not resolved.  Fla. R. of Professional Conduct 4-3.4(g) ("A lawyer must not . . . . present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter").  The Associate General Counsel responded, denying the allegations of publishing defamatory statements and criminal conduct.  By letter dated February 13, 2015, Plaintiff's counsel demanded a retraction under the Florida retraction statute.  On February 24, 2015, Plaintiff commenced this action, claiming $427 million in compensatory and punitive damages.

[4] Notably, HMHC has not been notified of any investigation by the SEC and has no reason to anticipate such an investigation will take place.

ruling, as court after court faced with similar objections has ruled.  *See, e.g.*, *Edmonds v. Seavey*, 2009 WL 2150971, at *3 (S.D.N.Y. July 20, 2009) ("Plaintiff's objections merely repeat the same arguments put before Judge Francis as to why Defendants' sanctions motion should not have been granted in the first instance; they do not, however, reveal anything clearly erroneous about Judge Francis's factual findings, or any misapplication of the relevant law to those findings."); *Matos v. Wojnarowicz*, 2008 WL 892365, at *2 (E.D.N.Y. Apr. 2, 2008) ("Defendant's objections to the [order] merely repeat the arguments made to Magistrate Judge Orenstein and do not establish that the [order] is clearly erroneous or contrary to law. . . ."); *United States v. Ionia Mgmt. S.A.*, 499 F. Supp. 2d 166, 168 (D. Conn. 2007) ("In its Objection, Ionia rehashes the arguments it offered to Magistrate Judge Fitzsimmons concerning unavailability, but does not offer any new information or legal authority demonstrating that her conclusion was clearly erroneous or contrary to law.").

*Second*, even if reviewed de novo, Judge Goodman's ruling is plainly correct.  That is so because information on SEC disclosures and alleged insider trading is wholly irrelevant to what this defamation action is all about, and Plaintiff's argument is premised on factually and legally baseless and outlandish assertions.  Judge Goodman was right to forbid Plaintiff from asking about it.

To begin with, Plaintiff's argument that he should be entitled to question HMH and HMHC on SEC disclosure and alleged insider trading—ironically—highlights just how irrelevant any of this information is to "any party's claim or defense" in the action.  Fed. R. Civ. P. 26(b)(1).  This action is primarily for defamation arising out of statements in the book *Pay Any Price: Greed, Power, and Endless War* that report allegations that Plaintiff sought to get rich off the federal government in the post–September 11 era by selling bogus counterterrorism

7

software. *See* Am. Compl., ECF No. 52. Neither it—nor any of Defendants' defenses—has anything to do with disclosures to the SEC or to alleged insider trading, and Plaintiff has failed to show just how he could "impeach" HMH or HMHC thereby. Judge Goodman was correct not to permit Plaintiff to engage in an obviously harassing fishing expedition that has nothing to do with the issues in this defamation case.

Indeed, Plaintiff asserts that because the action seeks over $470 million in damages, which, he states, exceeds 10 percent of HMH and HMHC's[5] current assets, then they were required to disclose the action in its SEC filings in accordance with 17 C.F.R § 229.103 (Item 103). *See* Pl.'s Obj. 7. Even if Plaintiff were correct about his interpretation of this federal regulation—which he is not—the Court need not get drawn into an unnecessary legal review of that regulation because it is wholly irrelevant to Plaintiff's lawsuit for a variety of causes of action sounding in defamation and conspicuously not in any violation of federal securities laws. This topic is simply immaterial and collateral to Plaintiff's claims.

Even if somehow relevant, just because a plaintiff includes an outlandish, inflated *ad damnum* claim, does *not* make the action material and a defendant required to report it. Plaintiff cites no law to support his position and, indeed, the law is otherwise. The regulation requires one to "[d]escribe briefly any *material* pending legal proceedings, *other than routine litigation incidental to the business*, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject." 17 C.F.R. § 229.103 (emphasis added). Plaintiff does not explain why HMHC must disclose his particular defamation suit, which one would expect for a publisher like HMH would be "routine litigation incidental to the business." *Id.* And the word

---

[5] Plaintiff refers to HMH and HMHC collectively in his arguments about their alleged obligations under SEC regulations. HMHC is a publicly-traded holding company subject to SEC regulation, but HMH, the operating company that published the book, is not. Thus, Defendants refer to HMHC rather than to HMH in their arguments about SEC regulation.

8

"material," the regulations instruct, "limits the information required to those matters as to which an average prudent investor ought reasonably to be informed before buying or selling any security of the particular company." 17 C.F.R. § 270.8b-2. With all due respect to Plaintiff, an average prudent investor ought not reasonably to be informed about this defamation action—one that faces critical factual and legal hurdles on both liability and damages—before buying or selling any HMHC security. Thus, HMHC was under no obligation to disclose it. No plaintiff, unilaterally and in self-service, may trigger a reporting requirement under Item 103.[6]

Finally, Plaintiff hurls accusations at Bayers, asserting that he "appears to have dumped shares of corporate stock which he held after being notified of the prospective and then actual lawsuit," and that the "SEC is currently investigating this likely violation of its civil and criminal statutory provisions for failure to disclose and insider trading." Pl.'s Obj. 8. Whether or not Plaintiff has communicated with the SEC and thus imagines that the SEC must be investigating his concerns, HMHC has not been notified of any such inquiry, as would be expected in the

---

[6] Paragraph 2 of the Instructions to Item 103 states, "No information need be given with respect to any proceeding that involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis." Contrary to Plaintiff's assertion, this paragraph does not "trigger" a requirement to disclose a proceeding just because it involves a claim for damages that exceeds 10 percent of a registrant's assets. See Pl.'s Obj. 7. Instead, by its plain language, it only *excludes* any requirement to disclose such proceedings that do not exceed that 10 percent mark. See 5 Alan R. Bromberg et al., *Bromberg & Lowenfels on Securities Fraud* § 7:31 (2d ed. 2015) ("SEC's required disclosures in registration or other filed statements sometimes depend on relative quantity. Required legal proceedings disclosure *need not include* claims of less than 10 percent of current assets." (emphasis added)). If Plaintiff's interpretation of paragraph 2 of the instructions to Item 103 were correct, then a company would be required to disclose any proceeding—no matter how arbitrary, capricious, or frivolous—based solely on the amount that *the plaintiff seeks* therein. Such a requirement, as Plaintiff's own argument demonstrates, would be absurd.

9

normal course.⁷ These accusations are nothing more than random arguments designed to deflect from Plaintiff's weak case.

### B. Topic 8

Regarding topic 8, Plaintiff states that Judge Goodman's "strange ruling was based on a representation by *pro hac vice* defense counsel that the information could be gleaned from public SEC filings. However, given the falsity of these filings, SEC filings cannot be used as the sole source of obtaining evidence of net worth, which is needed for Plaintiff's punitive damages claims." Pl.'s Obj. 11. Plaintiff bases his objection on an inaccurate description of the hearing, an inaccurate description of Judge Goodman's ruling, and on pure speculation. It should be overruled.

At the hearing, Defendants' counsel did state that the company's net-worth information was publicly available, but she also asserted that Plaintiff's request for net-worth discovery was premature because Plaintiff had not shown that Defendants acted with actual malice and common-law malice, prerequisites for punitive damages.⁸ Defendants' counsel also urged Judge

---

⁷ *See Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272 (S.D.N.Y. 2012) (explaining that, typically, "[t]he SEC provides a target of an investigation with a Wells Notice 'whenever the Enforcement Division staff decides, even preliminarily, to recommend charges.'") (quoting *In re Initial Public Offering Sec. Litig.*, 2004 WL 60290, at *1 (S.D.N.Y. Jan. 12, 2004)); Thomas L. Hazen, *Treatise on the Law of Securities Regulation*, 6 Law Sec. Reg. § 16.2 (July 2015) ("The SEC practice has been to invite targets of investigations to respond informally to the Commission.").

⁸ *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974) ("[W]e hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."); *Hunt v. Liberty Lobby*, 720 F.2d 631, 650 (11th Cir. 1983) ("The determination that punitive damages are available . . . in a constitutional sense does not end our inquiry. The states are free to impose an additional burden upon plaintiffs who seek punitive damages in libel actions. . . . Our research confirms that Florida is one of those states that requires a form of common law malice to sustain an award for punitive damages. The Florida courts have concluded that 'In order to award punitive damages in a libel action, ill will, hostility or an evil intention to defame and injure, must be present.'"

Goodman to take the same approach he had taken in *Haaf*, 2011 WL 1871159, at *3, in which he had denied without prejudice a request to discover net-worth information claimed to be relevant to a claim for punitive damages. And Judge Goodman ruled only that inquiry into matter 8 was "premature at this time," and that, "*[i]n addition* the net worth for public companies should be readily available." Hr'g Tr. 21:13–14 (emphasis added). Accordingly, it is clear from the transcript that Judge Goodman's ruling was based not on the fact that the net-worth information was publicly available, but primarily, if not exclusively, on the fact that Plaintiff's request for such information was premature—a basis that Plaintiff does not challenge. *Cf. Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012) (holding that a failure to challenge an "independent, alternative ruling" of a lower court's ruling "abandon[s] any contention that the court erred [in its ruling] on that ground"). Thus, here, Judge Goodman's ruling that the inquiry into Defendants' net worth is premature—being uncontested—should resolve the objection against Plaintiff.

Once again, Plaintiff has failed to show that Judge Goodman's ruling—forbidding *without prejudice* Plaintiff's request for net-worth information—was clearly erroneous or was contrary to law.

## IV.     CONCLUSION

In sum, Plaintiff has failed to meet the very difficult standard of showing that the portions of the Order to which he objects are clearly erroneous or contrary to the law. For this reason, the Court should overrule Plaintiff's objection.

---

(quoting *Matthews v. Deland State Bank*, 334 So. 2d 164, 166 (Fla. Dist. Ct. App. 1976)));
*Vassilades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 593 (D.C. 1985) (same).

Dated: October 16, 2015

Respectfully submitted,

s/Brian W. Toth
Sanford L. Bohrer
Florida Bar No. 160643
sbohrer@hklaw.com
Brian W. Toth
Florida Bar No. 57708
brian.toth@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Fax: (305) 789-7799

– and –

Laura R. Handman (admitted *pro hac vice*)
laurahandman@dwt.com
Micah J. Ratner (admitted *pro hac vice*)
micahratner@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, D.C. 20006
Tel.: (202) 973-4200
Fax: (202) 973-4499

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on October 16, 2015, I filed this document with the Clerk of Court using CM/ECF, which will serve this document on all counsel of record.

s/Brian W. Toth