# EXHIBIT B

1                 UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
2
                  15-20782-CV-MARTINEZ/GOODMAN
3

4
DENNIS L. MONTGOMERY,          )
5                              )
                PLAINTIFF,     )
6                              )
        VS.                    )
7                              )
JAMES RISEN, ET AL,            )
8                              )
                DEFENDANTS.    )
9  _____)

10                     (TRANSCRIPT BY DIGITAL RECORDING)

11

12         TRANSCRIPT OF MOTION HEARING HAD BEFORE THE HONORABLE

13  JONATHAN GOODMAN, IN MIAMI, MIAMI-DADE COUNTY, FLORIDA, ON

14  SEPTEMBER 11, 2015, IN THE ABOVE-STYLED MATTER.

15

16
APPEARANCES:
17
FOR THE PLAINTIFF:  LARRY E. KLAYMAN, ESQ.
18                      2520 CORAL WAY, SUITE 2017
                        MIAMI, FL 33145 - 305 595-0800
19
FOR THE DEFENDANTS: LAURA R. HANDMAN, ESQ.
20                      DAVIS WRIGHT & TREMAINE
                        1919 PENNSYLVANIA AVENUE, NW, SUITE 800
21                      WASHINGTON, DC 20006 - 202 973-4200

22

23                  CARL SCHANZLEH, RPR - CM
                    CERTIFIED COURT REPORTER
24                     9960 SW 4TH STREET
                    PLANTATION, FLORIDA 33324
25                     954 424-6723

```
 1   APPEARANCES CONTINUED:

 2   FOR THE DEFENDANTS:   BRIAN W. TOTH, ESQ.
                          HOLLAND & KNIGHT
 3                        701 BRICKELL AVENUE, SUITE 3000
                          MIAMI, FL 33131 - 305 374-8500
 4

 5

 6                        TABLE OF CONTENTS

 7   WITNESSES:                    DIRECT  CROSS REDIRECT RECROSS

 8
                          INDEX TO EXHIBITS
 9
     EXHIBITS                      MARKED FOR         RECEIVED
10                                 IDENTIFICATION    IN EVIDENCE

11   DESCRIPTION               PAGE      LINE    PAGE     LINE

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          THE CLERK:  CALLING CASE 15-20782-CIVIL-MARTINEZ,

 2   MONTGOMERY VERSUS RISEN, ET AL.

 3          THE COURT:  GOOD AFTERNOON, FOLKS.  THIS IS JONATHAN

 4   GOODMAN.

 5          LET ME HAVE APPEARANCES STARTING FIRST WITH THE

 6   PLAINTIFF.

 7          MR. KLAYMAN:  GOOD AFTERNOON, YOUR HONOR.  LARRY

 8   KLAYMAN FOR THE PLAINTIFF DENNIS MONTGOMERY.

 9          THE COURT:  AND, MR. KLAYMAN, WHERE ARE YOU PHYSICALLY

10   LOCATED THIS AFTERNOON?

11          MR. KLAYMAN:  I AM IN NORTHERN CALIFORNIA.

12          THE COURT:  WHAT'S THE WEATHER LIKE THERE IN NORTHERN

13   CALIFORNIA?

14          MR. KLAYMAN:  VERY HOT.  PROBABLY ALMOST LIKE MIAMI

15   97.

16          THE COURT:  MY DAUGHTER LIVES OUT IN LOS ANGELES AND

17   SHE WAS -- AT LEAST TEMPORARILY AND SHE WAS COMPLAINING THE

18   OTHER DAY THAT IT WAS CLOSE TO A HUNDRED.

19          MR. KLAYMAN:  IT'S BEEN UNBELIEVABLY HOT.  IT'S ALL

20   OVER THE COUNTRY.  I GUESS MAYBE EL NINO.

21          THE COURT:  ALL RIGHT.  WELL, THANK YOU FOR PHONING

22   IN.

23          AND WHO IS HERE FOR THE DEFENDANTS?

24          MS. HANDMAN:  LAURA HANDMAN (UNINTELLIGIBLE) DAVID

25   TREMAINE IN WASHINGTON, D.C., YOUR HONOR.  AND BRIAN TOTH I
```

 1   BELIEVE IS PRESENT IN THE COURTROOM.

 2        THE COURT:  HE IS PHYSICALLY AND ALSO SPIRITUALLY

 3   PRESENT AS WELL.

 4        MR. TOTH:  GOOD AFTERNOON, YOUR HONOR.

 5        THE COURT:  ALL RIGHT.  GOOD AFTERNOON.

 6        WHAT WAS THE NAME OF THE GENTLEMAN WHO JUST SPOKE?

 7        MISS HANDMAN, I THINK YOU INTRODUCED A COLLEAGUE OF

 8   YOURS?

 9        MS. HANDMAN:  JUST BRIAN TOTH.

10        THE COURT:  NO.  BUT IN ADDITION TO BRIAN TOTH IS

11   THERE SOMEBODY ELSE?

12        MS. HANDMAN:  NO.  NO.  THERE IS A PARALEGAL SITTING

13   IN THE OFFICE HERE WITH ME BUT MR. MICHAEL RATNER IS NOT

14   PRESENT TODAY.

15        THE COURT:  I SEE.  OKAY.  FAIR ENOUGH.

16        ALL RIGHT, FOLKS.  SO LET'S GET TO IT.  WHICH ISSUE

17   WOULD YOU LIKE TO ADDRESS FIRST?

18        MS. HANDMAN:  YOUR HONOR, WE NOTICED THE ISSUE AND THE

19   PARTIES HAVE CONFERRED AND BEEN UNABLE TO REACH AGREEMENT ON

20   THE FILING MATTERS.

21        PLAINTIFF HAS REFUSED TO WITHDRAW --

22        THE COURT:  WAIT.  WAIT.  WAIT.  MISS HANDMAN, I AM

23   NOT ASKING FOR A LIST OF ALL FIVE.

24        MY QUESTION WAS, WHAT ISSUE WOULD YOU LIKE TO ADDRESS

25   FIRST.  SO ALL YOU NEED TO DO IS TELL ME THAT ONE ISSUE, WHICH

1    ONE?

2          MS. HANDMAN:  I WOULD LIKE TO ADDRESS FIRST THE TWO

3    DEPOSITIONS TO LINDA ZECHER, THE PRESIDENT AND CEO, AND THAT OF

4    WILLIAM BAYERS, THE GENERAL COUNSEL AND EXECUTIVE

5    VICE-PRESIDENT OF THE CORPORATE DEFENDANTS AS THE APEX

6    DEPOSITION AS IT WERE.

7          THE COURT:  ALL RIGHT.  SO WE ARE TALKING ABOUT THE

8    APEX DOCTRINE.  ALL RIGHT.

9          AND THESE ARE DEPOSITIONS, MR. KLAYMAN, THAT YOU

10   WARRANT TO TAKE OF THESE FOLKS INDIVIDUALLY AS NAMED DEPONENTS,

11   NOT AS A 30(B)(6) DEPOSITION, CORRECT?

12         MR. KLAYMAN:  CORRECT, YOUR HONOR.

13         THE COURT:  ALL RIGHT.  SO, MISS HANDMAN, WHY ARE

14   THESE TWO FOLKS OFF LIMITS?

15         MS. HANDMAN:  WELL, FIRST OF ALL, THEY WERE NOT

16   DIRECTLY INVOLVED IN THE PUBLICATION OF THE BOOK, AND JUDGE

17   AFTER JUDGE IN THIS COURT, JUDGE SELTZER IN BROWN VERSUS BRANCH

18   BANKING IN 2014; JUDGE SIMONTON IN LITTLE LEAGUE BASEBALL,

19   DEKPALAN IN 2009; JUDGE SULLIVAN IN CARNIVAL CORPORATION V.

20   ROSEWORTH IN 2010 TO NAME JUST THREE HAVE MADE CLEAR THAT

21   COURTS PROTECT SUCH HIGH RANKING OFFICERS FROM BEING DEPOSED

22   BECAUSE, AS JUDGE SELTZER SAID, THEY ARE VULNERABLE TO NUMEROUS

23   REPETITIVE, HARASSING AND ABUSIVE DEPOSITIONS.

24         THE COURT:  AND BY THE WAY --

25         MS. HANDMAN:  AND THESE COURTS --

6

```
 1        THE COURT:  AND BY THE WAY, WHEN YOU SAY THAT ONE OF
 2 THE PROPOSED DEPONENTS IS PRESIDENT AND CEO AND THE OTHER IS
 3 GENERAL COUNSEL, ARE THEY OFFICERS OF THE SAME CORPORATE
 4 DEFENDANT OR DIFFERENT DEFENDANTS?
 5        MS. HANDMAN:  THEY ARE OFFICERS OF BOTH CORPORATE
 6 DEFENDANTS, THE PUBLISHING COMPANY, THE OPERATING COMPANY AND
 7 THE HOLDING COMPANY.
 8        THE COURT:  ALL RIGHT.  SO THAT --
 9        (BOTH TALKING AT THE SAME TIME)
10        MS. HANDMAN:  SO THAT --
11        THE COURT:  SEE, THIS IS WHY I DON'T LIKE TELEPHONE
12 HEARINGS BECAUSE WE ARE BOTH TALKING OVER EACH OTHER BECAUSE
13 YOU ARE NOT REALIZING I'M SPEAKING AND I'M NOT REALIZING THAT
14 YOU'RE SPEAKING, AND I JUST FIND IT VERY PROBLEMATIC,
15 ESPECIALLY WITH SOMEBODY WHO TALKS QUICKLY.  I KNOW YOU TALK
16 QUICKLY AND PERHAPS I TALK A LITTLE BIT QUICKLY.
17        SO WHAT YOU'RE SAYING, MISS HANDMAN, IS THAT BOTH OF
18 THESE PROPOSED DEPONENTS ARE OFFICERS OF BOTH HOUGHTON MIFFLIN
19 HARCOURT PUBLISHING COMPANY AND HMH HOLDINGS, INC., CORRECT?
20        MS. HANDMAN:  CORRECT, YOUR HONOR.
21        AND THERE ARE GOING TO BE 30(B)(6) DEPOSITIONS ON
22 SEPTEMBER 18TH OF BOTH THE PUBLISHING COMPANY AND THE HOLDING
23 COMPANY.  SO THIS IS IN ADDITION TO THOSE TWO DEPOSITIONS THAT
24 ARE PLANNED FOR SEPTEMBER 18TH.
25        THE COURTS ARE CLEAR THAT THE PARTIES SEEKING TO
```

1 | DEPOSE THE TOP EXECUTIVES HAVE THE BURDEN OF SHOWING THAT THEIR
2 | DEPOSITIONS ARE NECESSARY, THAT THEY HAVE PERSONAL KNOWLEDGE
3 | AND MUST FIRST EXHAUST LESS INTRUSIVE MEANS, BE IT
4 | INTERROGATORIES, 30(B)(6) DEPOSITIONS, SUCH AS ARRANGED
5 | ALREADY, DEPOSITIONS OF LESS HIGH-RANKING EMPLOYEES OR
6 | ACCEPTING DECLARATIONS FROM HIGH-RANKING EXECUTIVES IN LIEU OF
7 | DEPOSITIONS.
8 |          HERE, AS I SAID --
9 |          THE COURT:  SO, MISS HANDMAN, THANK YOU FOR THAT
10 | CITATION TO THE LAW.  I'M PRETTY FAMILIAR WITH THE APEX
11 | DOCTRINE AND THE REQUIREMENTS OF IT.  IT COMES UP VERY
12 | FREQUENTLY.
13 |          SO YOU'RE NOT WRITING ON A CLEAN SLATE HERE.  I
14 | ACTUALLY KNOW SOME LAW.  SO THANK YOU FOR CITING THE BASICS TO
15 | ME BUT I'M ALREADY UP TO SPEED TO THAT.
16 |          SO, MR. KLAYMAN, EXPLAIN TO ME WHY YOU THINK THESE TWO
17 | DEPOSITIONS, AT LEAST AT THIS POINT ARE PERMISSIBLE?
18 |          MR. KLAYMAN:  IT IS VERY IMPORTANT, YOUR HONOR.
19 |          WE SUBMITTED TO YOU A PACKAGE OF MATERIALS YESTERDAY
20 | EVENING.  AND, OF COURSE, YOU'VE SEEN OUR E-MAIL WHERE WE ARE
21 | TRYING TO RESOLVE THE ISSUE SO AS NOT TO INVOLVE YOU WHERE YOU
22 | DON'T NEED TO BE.
23 |          BUT THESE TWO INDIVIDUALS, LINDA ZECHER, CEO, AND A
24 | DIRECTOR, WILLIAM BAYERS, EXECUTIVE VICE-PRESIDENT, WE -- UNDER
25 | FLORIDA STATUTE 770.02, WHICH IS REQUIRED, WE FILED A LETTER --

1  WE SENT THEM A LETTER INITIALLY ASKING THEM TO CORRECT THE

2  LIBELOUS STATEMENTS.  AND, IN FACT, THE RESPONSE THAT WAS GIVEN

3  WHICH REFUSED TO DO THAT, THESE TWO INDIVIDUALS WERE COPIED ON

4  THAT RESPONSE.

5       SO THEY ARE DIRECTLY INVOLVED IN THIS CASE.  THE

6  COMPANY ITSELF -- THESE COMPANIES HAVE CONCEDED THAT BY THE

7  VERY FACT THAT THEY COPIED THEM ON THOSE LETTERS.  AND THEY DO

8  HAVE INFORMATION WHICH EITHER IS RELEVANT OR WHICH MAY LEAD TO

9  RELEVANT EVIDENCE AS TO THE LIBELOUS STATEMENTS AS TO WHETHER

10 OR NOT CONFIDENTIAL INFORMATION WAS OBTAINED FROM GOVERNMENT

11 SOURCES.  THEY CAN PROVIDE INFORMATION WHO ELSE IN THE

12 CORPORATION PLAYED A ROLE IN FACT CHECKING THESE SOURCES.

13      AND IT'S VERY IMPORTANT AS YOU KNOW.  I HAVE BEEN A

14 LAWYER LIKE YOU FOR A WHILE AND LIKE MISS HANDMAN, IS THAT

15 30(B)(6) DEPOSITIONS GENERALLY WHAT THEY SEND A 30(B)(6)

16 DEPOSITIONS ARE PEOPLE WHO DON'T HAVE FIRSTHAND KNOWLEDGE.

17 THEY KIND OF GET EDUCATED BY EVERYBODY ELSE AND THEY ARE THERE

18 TO TESTIFY AND THEY FREQUENTLY DON'T HAVE THE RELEVANT FACTS.

19      SO THAT'S IMPORTANT --

20      THE COURT:  WAIT.  WAIT A SECOND, MR. KLAYMAN.

21      IF THEY DON'T HAVE THE RELEVANT INFORMATION IN A

22 30(B)(6) DEPOSITION AND THEY ARE NOT PREPARED TO GIVE ADEQUATE

23 RESPONSES TO TOPICS THAT YOU HAVE LISTED THEN THEY HAVEN'T DONE

24 THEIR JOB AND YOU WOULD BE ABLE TO WITHOUT MUCH EFFORT AT ALL

25 CONVINCE ME TO RECONVENE A 30(B)(6) DEPOSITION.

1    SO I AM HOPEFUL THAT WHEN MISS HANDMAN, OR MR. TOTH,

2   OR OTHER MEMBERS OF THE DEFENSE TEAM GET THEIR 30(B)(6)

3   DESIGNEE OR DESIGNEES READY THAT THEY ARE GOING TO DO A GOOD

4   JOB.  AND THAT THE DESIGNEE OR DESIGNEES WILL IN FACT BE ABLE

5   TO ADEQUATELY RESPOND TO QUESTIONS ON EVERY SINGLE TOPIC THAT

6   YOU HAVE LISTED BECAUSE IF THEY DON'T YOU ARE GOING TO HAVE THE

7   OPPORTUNITIES TO RECONVENE THE DEPOSITION.

8    SO I'M JUST FLAGGING A POTENTIAL ISSUE FOR EVERYBODY.

9    PLEASE CONTINUE.

10    MR. KLAYMAN:  THESE PEOPLE -- THESE TWO CORPORATE

11   OFFICERS WHERE DIRECTLY INVOLVED IN THE LETTER WHICH WAS SENT

12   TO THEM ASKING FOR THE RETRACTION.  THEY WERE DIRECTLY

13   INVOLVED.  IN FACT, I MADE TELEPHONE CALLS IN THAT REGARD AND

14   THEY ARE IN THE LINE OF FIRE.

15    AND, YOU KNOW, FLORIDA LAW, AND THERE IS ANOTHER CASE

16   THAT -- MISS HANDMAN NEGLECTED TO PROVIDE THIS CASE.  PERHAPS

17   YOU KNOW OF IT.

18    FLORIDA DISCOVERY RULES DO NOT CONTAIN A REQUIREMENT

19   THAT A HIGH LEVEL OFFICER HAS UNIQUE OR SUPERIOR KNOWLEDGE

20   BEFORE THAT OFFICER CAN BE DEPOSED.  AN THAT'S CITIGROUP VERSUS

21   HOLTSBERG, 915 SO.2D 1265, 1269 TO 70 2005.

22    AND BY ANALOGY, FLORIDA RULES OF CIVIL PROCEDURE

23   1.310, AND THE FEDERAL COURTS IN FLORIDA, STATE COURTS REAL

24   REALLY PRETTY MUCH TRACK EACH OTHER IN THIS AREA, HAVE

25   EXPLAINED THAT EVEN AN APEX OFFICIAL, QUOTE, PRESTIGIOUS

 1  POSITION IS AN UNIMPRESSIVE PAPER BARRIER SHIELDING THEM FROM

 2  THE JUDICIAL PROCESS.  DISCOVERABLE INFORMATION NEED NOT BE

 3  ADMISSIBLE AT THE TRIAL IF THE DISCOVERY APPEARS REASONABLY

 4  CALCULATED TO LEAD TO DISCOVERY OF ADMISSIBLE EVIDENCE.

 5       SO THEY ARE IN THE LINE OF FIRE, YOUR HONOR, AND

 6  CERTAINLY WE ARE ENTITLED TO TAKE THEM.  WE WROTE TO THEM.

 7  THEY RESPONDED TO US AND --

 8       THE COURT:  WO WO WO.  EXCUSE ME, MR. KLAYMAN.

 9       WHEN YOU SAY, THEY RESPONDED TO YOU, ARE YOU

10  SUGGESTING THAT EITHER OR BOTH OF THESE TWO SPECIFIC

11  INDIVIDUALS RESPONDED THEMSELVES?

12       MR. KLAYMAN:  WELL, THEY DIRECTED SOMEONE TO RESPOND

13  TO THEM.  AND, IN FACT, THEY ARE CREEPED ON THE RESPONSE WHICH

14  REFUSES TO DO THE RETRACTIONS.  SO THERE HAD TO BE

15  COMMUNICATION BETWEEN THEM AND THE INDIVIDUAL WHO WAS

16  RETRACTING.  THEY ARE REFUSING TO RETRACT.

17       MS. HANDMAN:  YOUR HONOR, MAY I --

18       THE COURT:  NO.  NO.

19       MS. HANDMAN:  -- SPEAK TO THAT?

20       THE COURT:  NO YOU MAY NOT BECAUSE I AM PREPARED TO

21  RULE.

22       ALL RIGHT.  SO, MR. KLAYMAN --

23       MR. KLAYMAN:  YES.

24       THE COURT:  -- SO FOR RIGHT NOW I AM REJECTING YOUR

25  REQUEST TO TAKE THESE TWO DEPOSITIONS BECAUSE I CONSIDER THEM

1  TO BE PREMATURE APEX TYPE DEPOSITIONS.

2       I AM NOT DENYING IT WITH PREJUDICE.  I AM SIMPLY

3  REJECTING IT AT THE CURRENT TIME WITHOUT PREJUDICE.  YOU CAN

4  REVISIT THE ISSUE LATER ONCE YOU HAVE TAKEN THE OTHER STEPS TO,

5  FOR EXAMPLE, EXHAUST LESS INTRUSIVE MEANS, ET CETERA.

6       SO YOU HAVE THE ABILITY TO LATER RAISE THIS ISSUE IF

7  YOU THINK YOU'VE MET THE PREREQUISITES.

8       AND I NOTE, BY THE WAY, BECAUSE I KIND OF KEEP TRACK

9  OF THE DOCKET IN THIS CASE, I NOTE THAT JUDGE MARTINEZ HAS NOW

10 CONTINUED THIS CASE FOR SEVERAL MONTHS.  I ALSO NOTE THAT HE

11 DENIED, MR. TOTH, YOUR MOTION TO STAY, THE ONE THAT YOU THOUGHT

12 WAS SO POWERFUL AND YOU PREDICTED IMPLICITLY THAT IT WOULD BE

13 GRANTED.  AND, MY GOSH, THE MOTION TO STAY WAS DENIED.  IMAGINE

14 THAT.

15      BUT, IN ANY EVENT, SO YOU HAVE SOME ADDITIONAL TIME,

16 SEVERAL MORE MONTHS, MR. KLAYMAN, TO OBTAIN DISCOVERY.  SO YOU

17 WILL PROCEED IN AN ORDERLY WAY AND MAYBE -- MAYBE YOU WILL BE

18 ABLE LATER ON TO TAKE ONE OR BOTH OF THESE DEPOSITIONS BUT NOT

19 NOW.

20      SO NOW WE'LL GO -- WHAT'S YOUR NEXT ISSUE,

21 MISS HANDMAN, ISSUE NUMBER TWO?

22      MR. KLAYMAN:  I DON'T WANT TO INTERRUPT

23 (UNINTELLIGIBLE) THE OTHER ISSUE IN THIS REGARD BECAUSE IT'S

24 NOT RELATED TO 30(B)(6) OR ANY POTENTIAL OVERLAP.

25      IF YOU MAY INDULGE ME TO RAISE ONE OTHER ISSUE HERE IF

1    THAT WOULD BE ALL RIGHT.

2            THE COURT:  IS IT SOMETHING THAT WAS LISTED ON THE

3    AGENDA?

4            MR. KLAYMAN:  IT'S RELATED TO WHY WHICH ARE TAKING THE

5    CORPORATE REPS, THE CORPORATE OFFICIALS, WE WOULD LIKE TO TAKE

6    THEM AT THIS TIME.

7            IT DEALS WITH SEC FILINGS.  WE DID PROVIDE THAT TO

8    YOU.  AND ON THESE SEC FILINGS, ACCORDING TO THE SEC RULES

9    THERE HAS TO BE A LISTING OF THIS CASE AND THE AMOUNT OF

10   DAMAGES THAT ARE BEING REQUESTED.  AND IT'S OVER 10 PERCENT.

11           AND, OF COURSE, THE DAMAGES THAT ARE REQUESTED HERE

12   ARE OVER 10 PERCENT AND WE WANTED TO BE ABLE TO DEPOSE THEM

13   WITH REGARD TO ISSUES INVOLVING WHY THEY WERE NOT LISTED ON THE

14   SEC FILINGS (INAUDIBLE) OUR CASE AND WHETHER THAT BEARS ON THE

15   PROFITABILITY OF THIS BOOK WHICH WOULD BEAR ON PUNITIVE DAMAGES

16   AND OTHER DAMAGES IN THIS CASE.

17           THE COURT:  SO I THINK --

18           MR. KLAYMAN:  SO THAT'S ONE OF THE REASONS WHY WE --

19           (BOTH TALKING AT THE SAME TIME)

20           MR. KLAYMAN:  -- WANT TO DEPOSE THEM.

21           THE COURT:  SO I THINK WHAT YOU'RE SAYING IS, AND

22   CORRECT ME IF I'M WRONG.

23           I THINK YOU'RE SAYING, LISTEN, THIS ISSUE OF THE SEC

24   FILINGS AND WHETHER OR NOT THE DEFENDANTS PROPERLY LISTED THIS

25   LAWSUIT AND THE AMOUNT OF DAMAGES, THAT'S ONE OF THE TOPICS

1  THAT YOU HAVE LISTED FOR THE UPCOMING 30(B)(6) DEPOSITIONS.

2       I'M ASSUMING THAT THE DEFENDANTS HAVE OBJECTED, AND

3  THEREFORE YOU WANTED ME TO RULE ON WHETHER OR NOT THAT'S A

4  PERMISSIBLE 30(B)(6) TOPIC, IS THAT RIGHT?

5       MR. KLAYMAN:  WELL, OBVIOUSLY THEY'RE GOING TO RAISE

6  THAT ISSUE.

7       WHAT I'M SAYING IS, IS THAT THE INDIVIDUAL WHO SIGNED

8  THESE SEC FILINGS WERE MR. BAYERS, AND HE'S THE ONE TO BE ABLE

9  TO TESTIFY AS TO WHY THIS CASE WAS NOT DISCLOSED TO THE

10  AMERICAN PEOPLE WHEN SHARES OF STOCK WERE BEING OFFERED TO BE

11  SOLD ON THE NEW YORK STOCK EXCHANGE, AND WHETHER THAT BEARS ON

12  THE ISSUE OF DAMAGES HERE IN TERMS OF PUNITIVE DAMAGES BY

13  FAILING TO DISCLOSE MATERIAL INFORMATION.  AND WHETHER THIS

14  WOULD THEN RAISE THEIR PROFITS BECAUSE THE SHARES WERE SOLD

15  UNDER FALSE PRETENSES.

16       THEY MADE A TREMENDOUS AMOUNT OF PROFIT ON THIS BOOK

17  WHICH THEY MAY NOT HAVE MADE IF THEY HAD MADE PROPER

18  DISCLOSURES UNDER THE -- UNDER 17 CFR 229.103, WHICH REQUIRED

19  THEM TO MAKE THOSE DISCLOSURES.

20       THE COURT:  WELL, IF YOU DO GET THE OPPORTUNITY LATER

21  TO TAKE THE APEX DEPOSITION OF THIS GENTLEMAN WHO SIGNED THE

22  SEC FILING THEN MAYBE YOU'LL HAVE AN OPPORTUNITY TO ASK HIM

23  QUESTIONS ABOUT THE SEC FILING.

24       BUT IN ORDER TO NIP A POTENTIAL ISSUE IN THE BUD, IS

25  THIS TOPIC, NAMELY THE SEC FILING AND WHETHER OR NOT THIS

 1  LAWSUIT WAS LISTED PROPERLY OR NOT, IS THAT ONE OF THE 30(B)(6)

 2  TOPICS FOR THE SEPTEMBER 18TH 30(B)(6) DEPOSITIONS OR NOT?

 3          MR. KLAYMAN:  IT IS.  YES, IT IS.

 4          THE COURT:  ALL RIGHT.  AND HAS THERE BEEN AN

 5  OBJECTION RAISED TO THAT, MISS HANDMAN?

 6          MS. HANDMAN:  YES, THERE HAS, YOUR HONOR.

 7          THE COURT:  ALL RIGHT.

 8          MS. HANDMAN:  IT'S ITEM NUMBER NINE ON THE LIST OF

 9  SUBJECT MATTER, AND WE DID RAISE IT AS ONE OF THE KEY SUBJECT

10  MATTER AREAS THAT WE OBJECTED TO.  AND IF I MIGHT SAY.  FIRST

11  OF ALL, IT IS NOT LISTED WITH VERY SPECIFIC PARTICULARITY.

12          BUT MORE IMPORTANTLY, THIS ISSUE OBVIOUSLY DOES NOT

13  STATE A CLAIM FOR AN SEC VIOLATION.  INDEED, MONTGOMERY WOULD

14  HAVE NO STANDING TO MAKE SUCH A CLAIM (UNINTELLIGIBLE) OR

15  FAILURE TO DISCLOSE A MATERIAL LIABILITY OR ANY OTHER SEC

16  VIOLATION.

17          AND I --

18          THE COURT:  SO --

19          MS. HANDMAN:  THE SEC -- I'M SORRY, YOUR HONOR.

20          THE COURT:  I SAID SO WHAT?

21          I MEAN, DOESN'T THE SEC FILING REQUIRE A PUBLIC

22  COMPANY TO MAKE A DISCLOSURE ABOUT A LAWSUIT WHICH WOULD BE

23  DEEMED MATERIAL AND SIGNIFICANT?

24          I MEAN, LET'S JUST SAY THAT YOU HAVE A COMPANY LIKE --

25  OH GOSH, I DON'T KNOW, DOW CHEMICAL AND THERE IS A MASSIVE

1    TOXIC TORT LAWSUIT FILED WHICH IS SEEKING ONE HUNDRED BILLION

2    DOLLARS BECAUSE ONE HUNDRED FARMERS HAVE DIED IN SOUTH DAKOTA

3    AS A RESULT OF A DOW CHEMICAL.  THAT HAS NOTHING TO DO WITH

4    STOCK MANIPULATION OR SECURITIES FRAUD.  IT'S SIMPLY A PRODUCTS

5    LIABILITY CLAIM.

6         SO ARE YOU TELLING ME THAT SINCE THAT CLAIM IS NOT A

7    STOCK MANIPULATION CLAIM THAT DOW CHEMICAL WOULDN'T BE REQUIRED

8    TO LIST IN AN SEC FILING A LAWSUIT SEEKING ONE HUNDRED BILLION

9    DOLLARS IF THAT IS IN EXCESS OF 10 PERCENT OF THE FIRM'S

10   ASSETS, IS THAT WHAT YOU'RE TELLING ME?

11        MS. HANDMAN:  NO, YOUR HONOR.

12        WHAT I'M SAYING IS THAT, FIRST OF ALL, THIS -- WHETHER

13   OR NOT THE SEC FILINGS WERE ACCURATE HAVE NO BEARING ON THE

14   ISSUES IN THIS CASE.

15        WHETHER THE BOOK CONTAINED FALSE STATEMENTS OF FACT,

16   WHICH AT THE TIME THEY WERE PUBLISHED THE DEFENDANTS KNEW WERE

17   FALSE OR HAD SERIOUS DOUBTS AS TO THE TRUTH OR WERE PUBLISHED

18   WITH ANY OTHER APPLICABLE LEVEL OF FAULT.

19        THAT'S THE (UNINTELLIGIBLE) FILED WITH THE SEC HAD

20   ZERO BEARING ON THAT ISSUE.  IT IS A WHOLLY COLLATERAL MATTER

21   THAT WOULDN'T EVEN GO TO EVIDENCE OF CREDIBILITY.

22        THE COURT:  SO, MR. --

23        MS. HANDMAN:  FURTHER, THIS ACTION -- SORRY.

24        THE COURT:  SO, MR. KLAYMAN, WHY WOULD YOU BE ENTITLED

25   TO OBTAIN DISCOVERY ON THAT ISSUE?  WHY ISN'T IT A PURELY

1  COLLATERAL MATTER BEYOND THE SCOPE OF DISCOVERY?

2      I MEAN, MAYBE IF MR. MONTGOMERY WERE A SHAREHOLDER IN

3  THESE TWO CORPORATIONS, OR IF YOU REPRESENTED OTHER

4  SHAREHOLDERS, OR SOMEONE WANTED TO BRING A POTENTIAL CLASS

5  ACTION SECURITIES LAWSUIT IT MIGHT BE RELEVANT.  BUT IN A

6  DEFAMATION CASE WHY WOULD IT MATTER ONE WAY OR THE OTHER

7  WHETHER OR NOT THE DEFENDANTS' PROPERLY OR IMPROPERLY MADE OR

8  DID NOT MAKE AN SEC FILING?

9      MR. KLAYMAN:  WELL, ACTUALLY, MISS HANDMAN IRONICALLY

10  FIRST HIT THE NAIL IN THE HEAD.  I MEAN, THERE ARE A VARIETY OF

11  REASONS AND I WILL GO THROUGH THEM FOR YOU, YOUR HONOR.

12      BUT FIRST OF ALL IT DEALS WITH CREDIBILITY AND

13  TRUTHFULNESS AND VERACITY.  THESE SEC FILINGS ARE FILED UNDER

14  OATH.  THEY ARE -- CONSEQUENTLY IT COULD BE USED TO SHOW A

15  PATTERN OF UNTRUTHFUL BEHAVIOR, SUCH AS OCCURRED WITH REGARD TO

16  THIS BOOK WHICH LIBELED OUR CLIENT.

17      SECONDLY, IT DEALS WITH PROFITABILITY AND THE MONIES

18  THAT WERE REAPED OUT OF SELLING THIS BOOK.  THIS WAS A MAJOR

19  EFFORT ON THEIR PART.  MR. MONTGOMERY WAS THE SCAPEGOAT TO HELP

20  THEM SELL BOOKS.

21      THE FACT THAT NOW THEY'RE COVERING UP THAT THERE IS A

22  LAWSUIT WHICH CLAIMS -- WHICH HAS A CLAIM FOR FOUR HUNDRED AND

23  SEVENTY MILLION DOLLARS IN COMPENSATORY AND PUNITIVES IS QUITE

24  TELLING IN TERMS OF NOT JUST THE PROFITABILITY OF THE COMPANY

25  AND HOW THEY WERE TOUTING THIS BOOK, BUT ALSO THE COVER UP OF

 1  THE LIBELOUS STATEMENTS COUPLED WITH EVERYTHING ELSE.

 2          AND AS YOUR HONOR KNOWS, AND I DON'T NEED TO TELL YOU,

 3  IS THAT DISCOVERY IS THAT WHICH IS RELEVANT OR WHICH MAY LEAD

 4  TO RELEVANT EVIDENCE, YOU ARE GOING TO HAVE AN OPPORTUNITY OR

 5  JUDGE MARTINEZ AT TRIAL TO DETERMINE WHETHER THIS SHOULD COME

 6  INTO EVIDENCE AT ALL.

 7          WE HAVE A PROTECTIVE ORDER IN PLACE WITH REGARD TO

 8  CONFIDENTIALITY.  THEY CAN CLAIM CONFIDENTIALITY.  AND THERE IS

 9  CERTAINLY NO HARM TO LET US ASK QUESTIONS WHICH MAY LEAD TO

10  RELEVANT EVIDENCE.  AND JUST TO LIMIT IT ARTIFICIALLY,

11  PARTICULARLY WHEN THERE IS A PROTECTIVE ORDER WHICH THEY ASKED

12  FOR, FOR THINGS SUCH AS THIS DOESN'T MAKE A LOT OF SENSE FROM

13  THEIR PERSPECTIVE FROM WHAT THEY HAVE SAID BEFORE.

14          SO THE BOTTOM LINE IS, IT DEALS WITH THEIR

15  CREDIBILITY, THEIR TRUTHFULNESS.  IT DEALS WITH SIGNING

16  SOMETHING UNDER OATH.  UNDER FEDERAL LAW UNDER 18, USC, A FALSE

17  STATEMENT, EVEN AN OMISSION CAN GET YOU 10 YEARS FOR DOING

18  SOMETHING LIKE THAT.  IT IS SERIOUS.

19          WE ARE NOT LOOKING TO PROSECUTE ANY SECURITIES

20  VIOLATION IN THE CONTEXT OF THIS CASE.  BUT WE ARE LOOKING TO

21  BE ABLE TO GET TO THEIR CREDIBILITY AND THEIR PROFITABILITY

22  WHICH THEY ARE FAILING TO DISCLOSE IN THIS CASE OBVIOUSLY

23  INCREASED AND I WANT TO BE ABLE TO ASK QUESTIONS ABOUT THAT.

24          AGAIN THIS IS DISCOVERY AND WE SHOULD BE GIVEN SOME

25  LATITUDE HERE, PARTICULARLY WITH REGARD TO A 30(B)(6) GIVEN THE

1 | FACT THAT YOUR HONOR HAS MADE A RULING THAT WE ARE GOING TO

2 | HOLD OFF ON THE CORPORATE EXECUTIVES.

3 | THE COURT:  MISS HANDMAN, ANYTHING FURTHER?

4 | MS. HANDMAN:  YES, YOUR HONOR, I DO.

5 | I MEAN, THE QUESTION OF WHETHER THERE IS MATERIAL

6 | LIABILITY HERE, FIRST OF ALL, IT IS COVERED BY INSURANCE, AS

7 | MR. KLAYMAN KNOWS.  AND THIS INVOLVES THE (UNINTELLIGIBLE)

8 | EVALUATION THAT ATTORNEYS DO AT THE RISK OF LIABILITY OR NOT.

9 | AND IF THERE WAS REFERENCE TO PENDING LITIGATION I

10 | WILL SAY THE DOCUMENTS THAT MR. KLAYMAN HAS SUBMITTED TO YOUR

11 | HONOR YESTERDAY HAVE NOTHING TO DO WITH IT.  THIS HAS TO DO

12 | WITH THE ACQUISITION OF A COMPANY, AT LEAST AN ACQUISITION AND

13 | JUST CONFIRMING THE ACQUISITION OF THE COMPANY.  IT HAS NOTHING

14 | TO DO WITH EVEN DISCLOSING LIABILITY.

15 | SO IT IS -- THIS IS A PURE HARASSMENT, A PURE FISHING

16 | EXPEDITION.  IT HAS NOTHING TO DO WITH WHETHER OR NOT THE

17 | PUBLISHER KNEW WHEN THEY PUBLISHED THIS BOOK THAT IT WAS FALSE

18 | AND HAD FALSE STATEMENTS.  THAT'S THE ISSUE THAT LIABILITY

19 | TURNS ON.

20 | AND AS FAR AS PUNITIVE DAMAGES GO -- AND THIS GETS TO

21 | OUR SECOND POINT WHICH IS THE OTHER SUBJECT THEY WANT TO LOOK

22 | AT WHICH IS NET WORTH ON THAT SUBJECT.  AGAIN, THE -- FIRST OF

23 | ALL THE NET WORTH OF THE COMPANY IS PUBLISHED.

24 | BUT MORE IMPORTANTLY TO GET PUNITIVE DAMAGES YOU HAVE

25 | TO SHOW THEM LIABLE THAT THERE WAS ACTUAL MALICE AND COMMON LAW

1  MALICE.  AND HERE -- AND THAT'S TRUE UNDER FLORIDA LAW, THAT'S

2  TRUE UNDER D.C. LAW.  AND AS YOU KNOW, YOUR HONOR, WE HAD MADE

3  A MOTION TO DISMISS THAT SAID THAT THIS CASE DOESN'T EVEN STATE

4  A CLAIM FOR ACTUAL MALICE.

5       SO WHETHER THEY GET PAST A MOTION TO DISMISS, THEY

6  THEN HAVE TO GET PAST THE MOTION FOR SUMMARY JUDGMENT AND THEN

7  TO A JURY ON PUNITIVE DAMAGES, BOTH ACTUAL MALICE AND COMMON

8  LAW MALICE, AND THERE IS ABSOLUTELY ZERO EVIDENCE OF THAT.

9       SO TO ALLOW AN INQUIRY FIRST OF ALL ON A COLLATERAL

10  MATTER LIKE DISCLOSURE TO THE SEC ABOUT THIS LITIGATION IS

11  COMPLETELY IRRELEVANT TO THE ISSUES AT HAND, AND IT DOESN'T --

12  AND THE NET WORTH INQUIRY IS SIMILARLY PRETTY MATURE AS YOUR

13  HONOR HAS SAID ABOUT THE APEX DEPOSITION.

14       THE COURT:  AS A PRACTICAL MATTER, MISS HANDMAN, IF

15  THE CORPORATION'S NET WORTH IS A MATTER OF PUBLIC RECORD WHAT'S

16  THE BIG DEAL ABOUT PERMITTING MR. KLAYMAN TO LIST IT AS TOPIC

17  NUMBER EIGHT IN A 30(B)(6) DEPOSITION?

18       IF IT'S PUBLIC AND IT'S GOING TO TAKE, YOU KNOW, THREE

19  OR FOUR QUESTIONS AND NET WORTH IS RELEVANT TO PUNITIVE

20  DAMAGES, WHY IS THAT SUCH A HORRIBLE SCENARIO?  WHY IS THAT SO

21  OUTRAGEOUS?

22       MS. HANDMAN:  WELL, BECAUSE FIRST OF ALL WE OBVIOUSLY

23  DO HAVE TO PREPARE SOMEONE.  AND IF MR. HANDMAN IS GOING TO USE

24  IT AS AN AVENUE TO GO DOWN TRACKS LIKE SEC FILINGS, THAT OPENS

25  THE DOOR TO FAR MORE EXPLORATION.

 1          BEYOND THAT, THE LAW IS PRETTY CLEAR.  I TAKE YOUR

 2  HONOR'S OWN CASE, THE -- I THINK IT WAS THE HATCH VERSUS

 3  FLAGLER CONSTRUCTION WHERE YOU SAID THAT THE PLAINTIFF HAD TO

 4  SHOW SOME EVIDENCE TO SUPPORT A CLAIM FOR PUNITIVE DAMAGES

 5  BEFORE DISCOVERY OF NET WORTH IS PERMITTED.

 6          AND WE WOULD SUGGEST THAT THAT WOULD BY TRUE HERE TOO,

 7  AND ALL THE MORE SO WHERE THE STANDARD FOR PUNITIVE DAMAGES IN

 8  A LIABLE CASE IS SO HIGH AND REQUIRES SUCH A SHOWING THAT HERE

 9  IS TOTALLY SPECULATIVE EVEN AT THIS POINT.

10          AND, AS I SAID, WE HAVE A PENDING MOTION TO DISMISS

11  THAT SAYS HE DIDN'T EVEN STATE A CLAIM FOR ACTUAL MALICE.

12          THE COURT:  I KNOW.  I KNOW.

13          IT IS THE SAME MOTION TO DISMISS THAT YOU -- YOU AND

14  MR. TOTH TOLD ME WAS A SLAM DUNK AND WOULD CERTAINLY CAUSE THE

15  COURT TO STAY ALL DISCOVERY.  AND I SORT OF SUBTLY SUGGESTED TO

16  YOU THAT MAYBE THAT WOULDN'T BE HAPPENING AND AS IT TURNED OUT

17  THE MOTION TO STAY WAS DENIED.

18          SO I'M NOT IN ANY WAY COMMENTING ON THE MERITS OR LACK

19  OF MERITS ON YOUR MOTION TO DISMISS.  BUT I CAN TELL YOU THAT

20  IN THIS DISTRICT ANYWAY MOTIONS TO DISMISS ARE REGULARLY FILED,

21  AND THE MERE PENDENCY OF A MOTION TYPICALLY DOESN'T RELATE TO A

22  STAY OF DISCOVERY, NOR USUALLY DOES IT CAUSE ANY PARTICULAR

23  DISCOVERY REQUEST TO BE PUT ON HOLD PENDING RESOLUTION FOR THE

24  MOTION TO DISMISS.

25          BUT HERE ARE THE RULINGS ON TOPICS NUMBER EIGHT AND

1  NINE OF MR. KLAYMAN'S 30(B)(6) NOTICE.

2         MR. KLAYMAN, NUMBER NINE, MANIPULATION OF CORPORATE

3  STOCK AND FAILURE TO DISCLOSE POTENTIAL LIABILITY IN THE

4  LAWSUIT AND FILINGS WITH THE SEC, THAT WILL NOT BE A PROPER

5  SUBJECT FOR YOUR 30(B)(6) DEPOSITION.  SO YOU WILL NOT BE ABLE

6  TO ASK THE 30(B)(6) DESIGNEES THOSE QUESTIONS AND THE

7  DEFENDANTS WILL NOT NEED TO HAVE A DESIGNEE OR DESIGNEES TO

8  PROVIDE TESTIMONY ON THAT TOPIC.

9         LIKEWISE, NUMBER EIGHT IS PREMATURE AT THIS TIME.  I'M

10  NOT SAYING YOU WILL NEVER BE ABLE TO OBTAIN DISCOVERY ABOUT NET

11  WORTH.  I AM NOT SAYING THAT YOU WILL NEVER BE ABLE TO TAKE A

12  30(B)(6) DEPOSITION ON THAT TOPIC.  HOWEVER, IT IS PREMATURE AT

13  THIS TIME.  IN ADDITION THE NET WORTH FOR PUBLIC COMPANIES

14  SHOULD BE READILY AVAILABLE.

15         SO TO THE EXTENT THAT YOU NEED THAT IN ORDER TO

16  PRESENT IT FOR A PUNITIVE DAMAGES ARGUMENT YOU WOULD BE ABLE TO

17  GET THAT INFORMATION WITHOUT NECESSARILY TAKING A 30(B)(6)

18  DEPOSITION ON IT.

19         SO CATEGORY NUMBER EIGHT, OR TOPIC NUMBER EIGHT ON

20  YOUR 30(B)(6) LIST, IS FOR THE TIME BEING STRICKEN WITHOUT

21  PREJUDICE.

22         WHAT'S YOUR NEXT DISCOVERY ISSUE, MISS HANDMAN?

23         MS. HANDMAN:  THIS IS OUR FINAL ONE, YOUR HONOR.  AND

24  I'M SURE YOU WILL BE GLAD TO HEAR.

25         THERE WAS A THIRD DEPOSITION, A THIRD 30(B)(6)

1  DEPOSITION THAT PLAINTIFF NOTICED FOR THE PUBLISHING COMPANY'S

2  ORLANDO OFFICE AND WE OBJECT FOR FOUR REASONS.

3      THERE ARE TWO CORPORATE DEFENDANTS HOUGHTON MIFFLIN

4  HARCOURT PUBLISHING COMPANY AND THE HOLDING COMPANY.  THE

5  PUBLISHING COMPANY HAS VARIOUS DOMESTIC AND INTERNATIONAL

6  OFFICES, AND ONE OF THOSE HAPPENS TO BE ORLANDO.

7      PLAINTIFF PURPORTS TO NOTICE THE 30(B)(6) DEPOSITION

8  OF THE ORLANDO OFFICE AS IF IT WAS A SEPARATE DEFENDANT AND AN

9  ENTITY SEPARATE AND APART FROM THE PUBLISHING COMPANY.  IT IS

10  NOT.  THAT MAKES -- THAT WOULD BE LIKE TWO 30(B)(6) OF THE

11  PUBLISHING COMPANY AND THAT IS NOT PERMISSIBLE.

12      SECOND, THE FEDERAL RULES, AND YOUR HONOR IN QBE

13  INSURANCE TREATISE ON 30(B)(6) DEPOSITIONS MAKES CLEAR THAT

14  IT'S THE COMPANY THAT GETS TO DECIDE THE DESIGNATION AND NOT

15  THE PARTY SEEKING THE DEPOSITION.

16      AND IF THE PLAINTIFF WANTS TO ASK QUESTIONS ABOUT THE

17  ORLANDO OFFICE THE PROPER METHOD WOULD BE TO ISSUE A CORRECTED

18  OR AMENDED NOTICE OF THE 30(B)(6) DEPOSITION ON THE PUBLISHING

19  COMPANY MENTIONING A DESCRIPTION OF THE ORLANDO OFFICE.

20      BUT I WOULD ADD ONE LAST THING.  NOTABLY THE

21  PUBLISHING COMPANY IS NOT CONTESTING PERSONAL JURISDICTION.  SO

22  THE FACT THAT IT HAS AN ORLANDO OFFICE IS NOT AN ISSUE, AND THE

23  ORLANDO OFFICE IS NOT INVOLVED IN PUBLICATION OF THIS BOOK.

24  INDEED, IT IS NOT EVEN INVOLVED IN PUBLICATION OF TRADE BOOKS

25  IN GENERAL.

1          SO IT IS SUCH A REACH TO REQUIRE A WHOLE SEPARATE

2    DEPOSITION OF THE ORLANDO OFFICE.  WE WOULD HAVE TO SEND

3    SOMEONE FROM THE PUBLISHING COMPANY TO THE ORLANDO OFFICE TO

4    EVEN ANSWER THE QUESTIONS THAT ARE POSED TO THE ORLANDO OFFICE

5    BECAUSE THEY DON'T HAVE ANYONE THERE WHO COULD ANSWER THEM.

6          THE COURT:  MR. KLAYMAN, UNDER THE RULES YOU CAN'T

7    NOTICE A 30(B)(6) DEPOSITION OF, QUOTE, AN OFFICE.

8          YOU HAVE TO DESIGNATE OR SCHEDULE A 30(B)(6)

9    DEPOSITION OF A CORPORATION OR AN LLC, OR A PARTNERSHIP, OR A

10   LEGAL ENTITY WHICH YOU HAVE DONE ALREADY FOR THE TWO CORPORATE

11   DEFENDANTS.

12         SO YOU CAN'T JUST SAY, I WANT TO TAKE THE DEPOSITION

13   OF AN OFFICE BECAUSE AN OFFICE IS JUST A PHYSICAL LOCATION.  IT

14   IS NOT A SEPARATE LEGAL ENTITY.

15         ARE YOU SUGGESTING THAT THE ORLANDO OFFICE IS IN FACT

16   A SEPARATE LEGAL ENTITY?

17         THE COURT:  WHAT I'M SUGGESTING IS, YOUR HONOR -- AND

18   LET ME BACKTRACK IF I MAY.

19         MISS HANDMAN, YOU KNOW, TESTIFIES AS IF SHE IS THE

20   PERSON WHO IS TESTIFYING AND WE ARE SUPPOSED TO ACCEPT AS TRUE

21   WHAT SHE SAYS.

22         THIS IS DISCOVERY.  THEY HAVE MAINTAINED THAT THEY

23   DON'T PROJECT THEMSELVES INTO FLORIDA.  THEY MAINTAIN THAT THEY

24   DON'T DO SIGNIFICANT SALES IN FLORIDA.  THEY HAVE BASICALLY

25   WRITTEN FLORIDA OUT OF THE ENTIRE UNITED STATES, WHETHER IT

1  COMES TO MY CLIENT OR TO WHAT THEY DO.  AND, OF COURSE, WE KNOW

2  IT'S A VERY LARGE MARKET.

3       SO I WANT TO BE ABLE TO DEPOSE SOMEONE, PRESUMABLY A

4  REPRESENTATIVE IN THAT OFFICE, TO EXPLAIN WHAT THEY DO IN THE

5  OFFICE, THE BUSINESS THAT THEY DO, THE SALES, THE PROMOTION IN

6  FLORIDA OF THIS BOOK AND I THINK THAT'S QUITE REASONABLE.

7       BUT TO LISTEN TO MISS HANDMAN TESTIFY, AND WE ARE

8  SUPPOSED TO ACCEPT WHAT SHE SAYS IS TRUE, I JUST SIMPLY WANT TO

9  TAKE THE REPRESENT -- THE DEPOSITION OF A REPRESENTATIVE OF THE

10  ORLANDO PUBLISHER AND I THINK THAT'S QUITE LEGITIMATE.

11       AS I SAID BEFORE, DISCOVERY IS THAT WHICH IS RELEVANT

12  AND WHICH MAY LEAD TO RELEVANT EVIDENCE.

13       THE COURT:  MR. KLAYMAN --

14       MR. KLAYMAN:  I DON'T SEE WHAT'S UNREASONABLE ABOUT

15  THAT.

16       THE COURT:  MR. KLAYMAN, DO YOU REMEMBER MY QUESTION,

17  SIR?

18       MR. KLAYMAN:  YES.  YOU ARE SAYING THAT SOMEONE ELSE

19  FROM ANOTHER OFFICE CAN TESTIFY TO THAT IN EFFECT FROM THE

20  PUBLISHER GENERALLY.

21       THE COURT:  NO.  NO, MR. KLAYMAN, THAT'S NOT MY

22  QUESTION AND I DON'T APPRECIATE YOU RECASTING MY QUESTION IN

23  THAT WAY.

24       SO I --

25       MR. KLAYMAN:  I APOLOGIZE IF I MISUNDERSTOOD IT.

1    THE COURT:  SO IN THE EVENT THAT YOU WEREN'T PAYING

2  ATTENTION, WHICH WOULD SURPRISE ME BECAUSE YOU ARE A VERY

3  BRIGHT MAN WHO PAYS VERY CLOSE ATTENTION TO EVERYTHING, BUT I

4  WILL ASK MY QUESTION AGAIN.

5    DOW HAVE ANY INFORMATION TO SUGGEST THAT THE ORLANDO

6  OFFICE IS MORE THAN SIMPLY AN OFFICE BUT INSTEAD IS A SEPARATE

7  LEGAL ENTITY SUCH AS A NEW OR SEPARATE CORPORATION, LLC,

8  PARTNERSHIP, ET CETERA?  DO YOU HAVE ANY SUCH EVIDENCE?

9    MR. KLAYMAN:  NOT UNTIL I TAKE THE DEPOSITION.

10    THE COURT:  SO I AM GOING TO CONSTRUE THAT AS A NO.

11    SO, THEREFORE, YOU MAY NOT TAKE A THIRD 30(B)(6)

12  DEPOSITION OF, QUOTE, AN OFFICE, UNQUOTE.

13    IF YOU WANT TO TRY TO LIST IN AN AMENDED 30(B)(6)

14  SCHEDULE ANOTHER TOPIC, LIKE TOPIC NUMBER 10, SUCH AS REVENUES

15  OF, OR ACTIVITIES IN THE ORLANDO OFFICE, OR THAT KIND OF THING

16  THEN YOU ARE CERTAINLY FREE TO ISSUE AN AMENDED NOTICE.

17    THEN IF THE DEFENDANTS DON'T OBJECT AND BRING IT

18  BEFORE ME THEN THEY WILL NEED TO PREPARE AND PRODUCE AN

19  APPROPRIATE DESIGNEE OR DESIGNEES TO ANSWER QUESTIONS ON TOPIC

20  NUMBER 10, OR 11, OR WHATEVER YOU CHOOSE TO NUMBER IT.

21    BUT THAT'S A 30(B)(6) DEPOSITION OF THE TWO OF -- OF

22  ONE OF THE TWO NAMED CORPORATE ENTITIES, NOT AN OFFICE WHICH IS

23  NOT A LEGAL ENTITY.  SO THAT 30(B)(6) NOTICE, THE THIRD ONE, IS

24  STRICKEN AND YOU WILL NOT BE ABLE TO TAKE A THIRD SEPARATE

25  30(B)(6) DEPOSITION.

1    WHAT'S YOUR NEXT ISSUE, MISS HANDMAN, OR THAT WAS IT?

2         MS. HANDMAN:  THAT WAS IT, YOUR HONOR.

3         THANK YOU.

4         MR. KLAYMAN:  WE HAVE SOMETHING, YOUR HONOR, IF I MAY

5    ADDRESS IT?

6         THE COURT:  SURE.  GO AHEAD.

7         MR. KLAYMAN:  IT DEALS WITH THE ISSUE OF THE

8    THUMBDRIVE.

9         AND YOUR HONOR, YOU KNOW, IN HIS ORDER OF MAY 2O --

10   EXCUSE ME, OF AUGUST 22ND DEALT WITH THE THUMBDRIVE --

11        THE COURT:  RIGHT.

12        MR. KLAYMAN:  -- AND ALLOWED MR. RISEN TO FILE AN

13   AFFIDAVIT WHICH DOES NOT RESOLVE THE ISSUE.

14        COUPLED WITH THAT WE HAVE BEEN ATTEMPTING TO GET THE

15   THUMBDRIVE THROUGH MR. FLYNN, OUR CLIENT'S PRIOR LAWYER,

16   WHERE HE, YOU KNOW, HAS MADE VARIOUS STATEMENTS ABOUT OUR

17   CLIENT DESPITE THE FACT THAT HE WAS HIS LAWYER THAT ARE

18   DEROGATORY AND WHO TURNED OVER APPARENTLY 20,000 PAGES OF

19   DOCUMENTS, INCLUDING ATTORNEY/CLIENT AND WORK PRODUCT.

20        NOTWITHSTANDING THIS LAWYER PROBABLY WON'T BE A LAWYER

21   MUCH LONGER, WE HAVE SOUGHT THROUGH A SUBPOENA DUCES TECUM TO

22   TAKE HIS TESTIMONY AND TO GET THE THUMBDRIVE.  HE WAS SERVED.

23        I GAVE YOUR HONOR A COPY OF A MOTION THAT WE ARE BEING

24   FORCED TO FILE AT GREAT EXPENSE IN THE SOUTHERN DISTRICT OF

25   CALIFORNIA, PERHAPS NOT (UNINTELLIGIBLE) DEFENDANTS' COUNSEL

 1  HAS --

 2            (BACKGROUND NOISE)

 3            THE COURT:  WAIT.  WAIT.

 4            SIR, FOR SOME REASON THE LAST THREE SENTENCES WERE

 5  GARBLED AND I ALSO HEARD A BEEP WHICH WORRIES ME BECAUSE IT

 6  SUGGESTS THAT PERHAPS MISS HANDMAN MAY HAVE DROPPED OFF OF THE

 7  LINE.

 8            MISS HANDMAN, ARE YOU STILL THERE?

 9            (NO RESPONSE)

10            THE COURT:  I SUSPECTED THAT'S WHAT HAPPENED.

11            AGAIN, ANOTHER REASON WHY I DON'T LIKE TELEPHONE

12  HEARINGS WHICH LAST FOR MORE THAN 1O MINUTES.  THIS KIND OF

13  THING HAPPENS FAR TOO OFTEN.

14            SO I GUESS WE WILL WAIT 3O SECONDS OR SO FOR

15  MISS HANDMAN TO PHONE BACK IN.  I DON'T KNOW AT WHAT POINT SHE

16  WILL REALIZE THAT SHE IS NO LONGER ON THE LINE.

17            MR. TOTH, DO YOU HAVE THE ABILITY TO SEND HER A TEXT

18  MESSAGE, AN E-MAIL, AN INSTAGRAM, OR SOMETHING?

19            MISS HANDMAN, IS THAT YOU PHONING BACK IN?

20            MS. HANDMAN:  YES.  I APOLOGIZE.  YES.

21            THE COURT:  WHAT HAPPENED THERE?

22            MS. HANDMAN:  THE PHONE FELL OFF OF THE HOOK THERE

23  WHILE I WAS REACHING FOR MY FLYNN FILE.

24            THE COURT:  ALL RIGHT.

25            SO, MR. HANDMAN, WHY DON'T YOU JUST REPEAT THE LAST

1  FEW THINGS THAT YOU WERE SAYING.  ALL RIGHT?

2          I UNDERSTAND THAT YOU MENTIONED TO ME THAT YOUR

3  CLIENT'S FORMER ATTORNEY, MR. FLYNN, APPARENTLY DISCLOSED

4  20,000 PAGES OF DOCUMENTS INCLUDING PRIVILEGED DOCUMENTS, THAT

5  YOU PREDICT THAT HE WON'T BE A LAWYER TOO MUCH LONGER.

6          BY THE WAY, TO WHOM DID HE TURN OVER THESE DOCUMENTS?

7          MR. KLAYMAN:  MR. RISEN.

8          THE COURT:  OKAY.

9          MR. KLAYMAN:  THIS IS WHAT -- AND THERE IS AN E-MAIL

10 FROM MR. LICHTBLAU WHO WAS MR. RISEN'S ASSOCIATE AT THE

11 NEW YORK TIMES WHO WAS DOING THE RESEARCH.  AND THAT E-MAIL, WE

12 ADDRESSED THE LAST TIME AND YOUR HONOR HAD A COPY OF IT, SAID

13 THAT MR. LIKE BALL, YOU KNOW, HAD GOTTEN A GREAT FIND IN

14 EFFECT --

15         THE COURT:  I REMEMBER.

16         MR. KLAYMAN:  -- I'M PARAPHRASING

17         THE COURT:  I REMEMBER.

18         MR. KLAYMAN:  -- 20,000 PAGES OF DOCUMENTS WERE BEING

19 SENT TO MR. RISEN IN A THUMBDRIVE.

20         THE COURT:  GO YES.  OKAY.  BUT LET'S GET BACK TO WHAT

21 YOU WERE TALKING ABOUT.

22         YOU SAY THAT MR. FLYNN, YOU SERVED HIM I GUESS WITH A

23 DUCES TECUM SUBPOENA IN CALIFORNIA, YOU HAD TO GO THROUGH THE

24 EXPENSE OF PROCESS OF FILING SOME KIND OF A MOTION IN COURT IN

25 CALIFORNIA.  AND THEN AT THAT POINT WHATEVER YOU SAID AFTER

1  THAT WE JUST COULDN'T HEAR BECAUSE IT WAS GARBLED.

2       MR. KLAYMAN:  YES.  HE WAS SERVED BUT PERHAPS NOT

3  COINCIDENTALLY, AND I'M NOT MAKING ANY ACCUSATIONS.  DEFENDANTS

4  EVEN HAD A TELEPHONE CALL WITH HIM, DEFENSE COUNSEL, THEY

5  ADMITTED THAT TO US THE OTHER DAY AT A MEET AND CONFER, BUT I

6  CAN'T GET HIM ON THE PHONE.

7       AND MR. FLYNN TOLD THEM, ACCORDING TO WHAT THEY

8  REPEATED, I BELIEVE IT WAS EITHER MR. TOTH OR MR. RATNER, THAT

9  HE WAS GOING ON A VACATION.  OKAY?  SO OBVIOUSLY TO AVOID, IN

10  MY VIEW, BEING DEPOSED SINCE HE WOULDN'T EVEN RETURN MY CALL

11  AND WOULDN'T ACKNOWLEDGE SERVICE.

12       HE HAD TOLD DEFENSE COUNSEL THAT HE WASN'T SERVED WHEN

13  WE KNOW THAT HE WAS.  SO I DID MAKE AN EFFORT TO TRY TO GET

14  THAT THUMBDRIVE FROM MR. FLYNN.  I MEAN, GOD KNOWS WHERE HE IS.

15  HE MAY BE IN SYRIA FOR ALL I KNOW.

16       AND THE REALITY IS, IS THAT THE DECLARATION OF

17  MR. RISEN, STATUS QUO, I DO NOT RECALL EVER POSSESSING A

18  THUMBDRIVE ERIC LICHTBLAU DESCRIBED AS CONTAINING 20,000 PAGES

19  OF DOCUMENTS IN HIS JANUARY 7TH, 2011 E-MAIL TO ME.  I DO NOT

20  KNOW THE PRESENT LOCATION OF THIS THUMBDRIVE.

21       WELL, THAT'S -- YOU KNOW, THAT'S VERY EVASIVE, THAT

22  RESPONSE.  AND, AS I SAY AGAIN, AND AS YOUR HONOR KNOWS,

23  DISCOVERY IS THAT WHICH MAY LEAD TO RELEVANT EVIDENCE.  SO I

24  WOULD LIKE -- AND I WOULD LIKE TO ASK YOUR HONOR FOR LEAVE TO

25  TAKE A TELEPHONE DEPOSITION OF MR. RISEN JUST FOR A HALF HOUR.

 1        I WANT TO ASK HIM, YOU KNOW, WHERE HE LOOKED FOR THE

 2   THUMBDRIVE.  I WANT TO ASK HIM WHERE HE THINKS IT POSSIBLY

 3   COULD BE AND.  YOU KNOW, OTHER INFORMATION FOR SIMPLY ONE HALF

 4   HOUR BY PHONE, NO INCONVENIENCE TO HIM, TO CROSS-EXAMINE HIM ON

 5   THIS AFFIDAVIT BECAUSE WE DON'T SEEM TO BE ABLE TO GET IT.

 6        AND THE DIFFICULTY INVOLVED, YOU KNOW, IS GETTING TO

 7   THE EXTENT IS COSTING US A LOT OF MONEY HERE.  SO I ASK YOUR

 8   HONOR FOR THE INDULGENCE TO BE ABLE TO DEPOSE HIM FOR ONE HALF

 9   HOUR JUST ASKING HIM QUESTIONS AS TO WHERE IT MIGHT BE.

10        THE COURT:  MISS HANDMAN?

11        MS. HANDMAN:  YES.  WE REQUEST THAT -- WE OPPOSE THAT

12   REQUEST FOR TWO REASONS.

13        AS YOUR HONOR KNOWS, WE HAVE BEEN DOWN THIS ROAD ONLY

14   THREE WEEKS AGO AND YOUR HONOR ADDRESSED EXACTLY THE POINT

15   MR. KLAYMAN HAS RAISED AGAIN TODAY.

16        I'M LOOKING AT YOUR HONOR'S AUGUST 21ST HEARING

17   TRANSCRIPT WHERE YOU SAY, ALL RIGHT, SO HERE IS WHAT WE'RE

18   GOING TO DO BECAUSE I JUST DO NOT HAVE THE TIME TO REVIEW AN

19   ENTIRE DEPOSITION TRANSCRIPT AND THE SUMMATION IS GOING TO BE

20   ONE WHICH WILL NOT REQUIRE A SIGNIFICANT AMOUNT OF EFFORT BY

21   ANYONE.

22        SO, MISS HANDMAN, BY NEXT FRIDAY YOU WILL SUBMIT

23   EITHER AN AFFIDAVIT OR A DECLARATION FROM MR. RISEN STATING

24   UNEQUIVOCALLY ONE WAY OR THE OTHER WHETHER HE WAS EVER IN

25   POSSESSION OF THE THUMBDRIVE MENTIONED IN MR. LICHTBLAU'S

1  E-MAIL, AND REGARDLESS OF WHETHER HE WAS EVER IN POSSESSION OF

2  IT IF HE KNOWS THE CURRENT LOCATION.

3          AND THEN THAT WAS MEMORIALIZED IN YOUR HONOR'S ORDER

4  OF THE NEXT DAY.  AND ON FRIDAY, AUGUST 27TH, A DECLARATION

5  SIGNED BY MR. RISEN WAS FILED WHICH SAID, AS MR. KLAYMAN SAID,

6  I DO NOT RECALL EVER POSSESSING THE THUMBDRIVE ERIC LICHTBLAU

7  DESCRIBED CONTAINING 20,000 PAGES OF DOCUMENTS IN HIS JANUARY

8  7, 2011 E-MAIL TO ME.  I DO NOT KNOW THE PRESENT LOCATION OF

9  THIS THUMBDRIVE.

10         SO WE FULLY COMPLIED WITH THE COURT'S ORDER.  NOW,

11 MR. RISEN COULD ONLY SAY THAT TO THE BEST OF HIS RECOLLECTION

12 HE NEVER HAD THE THUMBDRIVE GIVEN TO HIS COLLEAGUE AT THE

13 NEW YORK TIMES MORE THAN FOUR YEARS AGO IS EXACTLY CONSISTENT

14 WITH WHAT HE TESTIFIED TO REPEATEDLY AT HIS DEPOSITION.  AND WE

15 WOULD BE HAPPY TO PROVIDE YOUR HONOR WITH THE RELEVANT PAGES.

16 BUT HERE IS JUST ONE QUOTE FROM PAGE 121.

17         AS I SAID, I DON'T RECALL A THUMBDRIVE.  I RECALL

18 GOING THROUGH THE DOCUMENTS AND GETTING THE DOCUMENTS FROM

19 ERIC.  I DON'T REMEMBER EXACTLY HOW I GOT THEM.

20         THAT'S MR. RISEN HAS BEEN EXAMINED BY MR. KLAYMAN ON

21 THIS QUESTION REPEATEDLY AT HIS DEPOSITION.

22         AND THIRDLY HE SAID THAT WE HAVE PRODUCED ALL THE

23 DOCUMENTS THAT MR. FLYNN -- THAT MR. FLYNN GAVE MR. RISEN.  AND

24 WE MADE A PRODUCTION AS PART OF OUR INITIAL DISCLOSURE OF WHAT

25 DOCUMENTS WE WERE GOING TO RELY ON, AND THOSE INCLUDE THE

1  DOCUMENTS RECEIVED FROM FLYNN.

2          FOLLOWING MR. RISEN'S DEPOSITION WE RECEIVED A REQUEST

3  FOR DOCUMENTS FROM THE PLAINTIFF ASKING FOR ALL DOCUMENTS THAT

4  RISEN HAD RECEIVED FROM FLYNN.  WE SUPPLEMENTED OUR PRIOR

5  PRODUCTION AND WE ALSO IDENTIFIED THE BATE STAMPED DOCUMENTS WE

6  HAD PREVIOUSLY PRODUCED THAT WERE FLYNN DOCUMENTS.

7          NOW, SINCE THEN PLAINTIFF HAS ISSUED SUBPOENAS TO BOTH

8  ERIC LICHTBLAU AT THE NEW YORK TIMES FOR DOCUMENTS AND MICHAEL

9  FLYNN FOR TESTIMONY AND DOCUMENTS BOTH FOCUSED ON THIS

10  THUMBDRIVE.

11          WE ARE NOT COUNSEL TO EITHER ONE OF THESE GENTLEMEN.

12  MR. FLYNN -- MR. KLAYMAN HAD SCHEDULED MR. FLYNN UNILATERALLY

13  WITHOUT CONSULTATION TO BE DEPOSED ON ROSH HASHANAH, AND WE

14  ADVISED MR. KLAYMAN THAT WE COULD NOT DO IT THAT DAY.  WE

15  SUGGESTED EITHER THE 9TH, 10TH, OR 11TH OF SEPTEMBER.  THIS WAS

16  WHEN DISCOVERY WAS GOING TO CLOSE ON THE 16TH.

17          WHEN WE DIDN'T HEAR AND WE WOULD HAVE TO TRAVEL OUT TO

18  CALIFORNIA FOR THIS DEPOSITION WE REACHED OUT TO MR. FLYNN VIA

19  E-MAIL AND SAID, PLEASE CONTACT US ABOUT THE SUBPOENA THAT WAS

20  SERVED ON YOU AND HE WROTE US BACK AND, I HAVE NEVER BEEN

21  SERVED.

22          SO WE ASKED MR. KLAYMAN, DO YOU HAVE A PROOF -- AN

23  AFFIDAVIT OF SERVICE THAT SAYS THAT HE WAS SERVED?  AND IN THE

24  FILINGS THAT WERE MADE LAST NIGHT TO YOUR HONOR, AND I DON'T

25  BELIEVE THEY HAVE BEEN FILED IN COURT YET, AT LEAST WE HAVEN'T

1  SEEN IT OR BEEN SERVED, THE PLAINTIFF DOES NOT ATTACH ANY

2  AFFIDAVIT OF SERVICE.  HE SAYS THAT HE LOST WHAT WAS EVER FAXED

3  TO HIM AND THAT THE PROCESS SERVER IS NOW ILL.  AND SO HE

4  HASN'T BEEN ABLE TO OBTAIN A COPY OF THE ALLEGED AFFIDAVIT OF

5  SERVICE.

6       SO AT THIS POINT WE HAVE NO IDEA WHETHER MR. FLYNN WAS

7  SERVED OR NOT SERVED AND WHETHER HE HAS THE THUMBDRIVE OR NOT

8  AND WHAT IT CONTAINS.

9       I WILL SAY MR. RISEN ALSO TESTIFIED THAT TO THE BEST

10  OF HIS KNOWLEDGE THERE WEREN'T 20,000 PAGES OF DOCUMENTS, THAT

11  THEY WERE MOSTLY COURT RECORDS.  HE DID NOT RECALL ANYTHING

12  BEYOND THAT AND HE WAS AGAIN CROSS-EXAMINED AT LENGTH AT THE

13  DEPOSITION ON THOSE SUBJECTS.

14       SO WE RESPECTFULLY SUBMIT THAT ANY FURTHER DEPOSITION

15  OF MR. RISEN WOULD BE TOTALLY UNNECESSARY AND IMPROPER --

16       MR. KLAYMAN:  YOUR HONOR --

17       MS. HANDMAN:  -- AND IT LASTED SEVEN HOURS IF I MIGHT

18  ADD.

19       MR. KLAYMAN:  MAY I ADDRESS THAT BECAUSE THERE WERE

20  SOME STATEMENTS THAT WERE MISLEADING AND I WANT TO CORRECT

21  THEM.

22       NUMBER ONE, WHEN WE NOTICED THE DEPOSITION WE LET IT

23  BE KNOWN THAT WE WERE WILLING TO CHANGE THE DATES OF THE

24  DEPOSITION.  OKAY?  IT WAS INADVERTENT THAT HE WAS NOTICED ON

25  ROSH HASHANAH.  I THOUGHT PERHAPS THERE WERE SOME NON JEWISH

1  LAWYERS INVOLVED.  APPARENTLY EVERYBODY IS JEWISH, AND THERE

2  WERE ALTERNATIVE DATES THAT WERE PROVIDED.

3       WE THEREFORE CONTACTED -- TRIED TO CONTACT MR. FLYNN

4  TO SEE WHO WAS AVAILABLE ON THE ALTERNATIVE DATES THAT

5  MISS HANDMAN PROVIDED.  SO SHE IS TRYING TO, YOU KNOW,

6  PREJUDICE YOUR HONOR'S FEELINGS WITH THIS.  I'M A JEWISH

7  (UNINTELLIGIBLE) TOO SO I'M SENSITIVE TO THAT.  OKAY?

8       SECONDLY, AT THE DEPOSITION OF MR. RISEN I ASKED HIM

9  -- BECAUSE I HAD THE DOCUMENTS THAT HAD BEEN PROVIDED.  I

10  SHOWED HIM THE DOCUMENTS.  I WAS GOING TO SHOW HIM AND I SAID,

11  WILL YOU -- ARE THESE THE DOCUMENTS THAT MR. LICHTBLAU GAVE TO

12  YOU THAT YOU THEN GAVE TO YOUR LAWYER THAT WERE PRODUCED?

13       AND MISS HANDMAN PREVENTED HIM FROM ANSWERING THAT

14  QUESTION.  ACTUALLY INSTRUCTED HIM NOT TO ANSWER, ESSENTIALLY

15  TO PROTECT HERSELF AS TO WHETHER OR NOT EVERYTHING HAD BEEN

16  PRODUCED.  AND I DIDN'T KNOW.  THAT WAS NOT SOMETHING LEADING

17  INTO ATTORNEY/CLIENT PRIVILEGE IN TERMS OF JUST A GENERAL

18  QUESTION WHETHER EVERYTHING WAS PRODUCED.  I WAS BLOCKED ON

19  THAT.  OKAY?  AND THAT'S THE OTHER MISLEADING STATEMENT THAT

20  HAS JUST BEEN MADE.

21       THIRDLY, WITH REGARD TO SIMPLY -- AND SHE IS TRYING TO

22  OBFUSCATE THINGS BY TALKING ABOUT ALL THESE OTHER THINGS.

23       ALL I'M ASKING FOR, BECAUSE THIS WAS NOT AN

24  UNEQUIVOCAL STATEMENT IN MR. RISEN'S AFFIDAVIT, THAT I DO NOT

25  RECALL.  OKAY?  HE DOESN'T KNOW THE PRESENT LOCATION.

1    ALL I'M ASKING FOR IS ONE HALF HOUR AT MAXIMUM TO SEE

2  WHERE IT MIGHT BE.  AND THE ISSUE IS NOT SIMPLY THE THUMBDRIVE.

3  THE ISSUE IS THE DOCUMENTS THEMSELVES, IF THERE WERE COPIES

4  THAT WERE MADE THAT WERE NOT PRODUCED TO US.  AND THERE IS NO

5  WAY TO CONFIRM OR DENY AT THIS POINT WHETHER WE GOT ALL OF

6  THESE 20,000 DOCUMENTS.

7    IF YOU LOOK BACK AT THAT E-MAIL, MR. LICHTBLAU WAS

8  ELATED THAT HE GOT 20,000 PAGES OF DOCUMENTS.  WELL, WHERE DID

9  THEY GO?  AND I DON'T THINK IT'S UNREASONABLE TO ASK FOR ONE

10  HALF HOUR, YOUR HONOR.

11    WE ARE IN DISCOVERY.  AND MISS HANDMAN WOULD LIKE TO

12  PUT HERSELF IN THE POSITION OF BEING THE JUDGE IN THIS CASE AND

13  DECIDING WHAT FACTS ARE TRUE AND WHAT FACTS ARE NOT AND, IN

14  FACT, SUGGESTING THAT SHE IS MAKING RULINGS ON WHETHER I COULD

15  TAKE SIMPLY DISCOVERY.

16    WELL, I DON'T THINK THIS IS UNREASONABLE TO SIMPLY TO

17  ASK HIM SOME FOLLOW UP QUESTIONS AT A DEPOSITION.  THE JUDGE'S

18  ORDER IS AN UNEQUIVOCAL STATEMENT, YOU DID, YOUR HONOR, AND THE

19  STATEMENT IN THIS AFFIDAVIT WHICH I PROVIDED TO YOU LAST NIGHT

20  IS NOT UNEQUIVOCAL.

21    THE COURT:  ALL RIGHT, FOLKS, I HAVE CONSIDERED THESE

22  ARGUMENTS.

23    MR. KLAYMAN, UNDER THE RULES OF CIVIL PROCEDURE YOU

24  ARE ONLY ALLOWED TO TAKE THE DEPOSITION OF A PERSON ONE TIME

25  ABSENT LEAVE OF COURT.  YOU HAVE ALREADY TAKEN A FULL

1  DEPOSITION OF MR. RISEN.

2       I APPRECIATE THE FACT THAT YOU ARE ENCOUNTERING

3  DIFFICULTY IN OBTAINING A DEPOSITION FROM MR. FLYNN IN

4  CALIFORNIA.  YOU THINK HE'S DODGING SERVICE, YOU THINK HE'S

5  BEING DIFFICULT, YOU THINK HE HAS VIOLATED THE ATTORNEY/CLIENT

6  PRIVILEGE.

7       BUT TO THE EXTENT THAT YOU ARE HAVING PROBLEMS WITH A

8  NON PARTY FACT WITNESS IN THE CASE, THERE ARE CERTAIN AVENUES

9  OF RELIEF THAT YOU CAN TAKE, MOST LIKELY OUT IN CALIFORNIA.

10      BUT THE MERE FACT THAT YOU ARE HAVING DIFFICULTY WITH

11 ANOTHER WITNESS DOESN'T MEAN THAT YOU GET TO TAKE A SECOND BITE

12 AT THE APPLE AND TAKE MR. RISEN'S DEPOSITION A SECOND TIME,

13 WHETHER IT IS FOR 30 MINUTES, OR 50 MINUTES, OR IN PERSON, OR

14 BY SKYPE, OR BY VIDEO.  IT DOESN'T MATTER.  YOU ALREADY HAD

15 YOUR SHOT AT MR. RISEN AND YOU HAVE NOT PROVIDED TO ME

16 SUFFICIENTLY COMPELLING REASONS TO TAKE ANOTHER DEPOSITION.

17      SO THAT REQUEST WILL BE DENIED.

18      SO THOSE ARE THE DISCOVERY ISSUES FOR TODAY, FOLKS.

19      I HAD CAUTIONED ALL OF YOU BEFORE THE HEARING THAT I

20 FOLLOW FEDERAL RULE OF CIVIL PROCEDURE 37, WHICH BASICALLY SAYS

21 THAT THE LOSING PARTY PAYS FEES AND THE PREVAILING PARTY WINS.

22 THE ONLY EXCEPTION IS IF YOUR POSITION IS SUBSTANTIALLY

23 JUSTIFIED OR OTHER CIRCUMSTANCES MAKE AN AWARD UNJUST.

24      SO BASICALLY, MR. KLAYMAN, YOU HAVE LOST ON PRETTY

25 MUCH EVERY SINGLE ISSUE HERE TODAY.  SOME OF THEM I AM NOT

1  GOING TO BE AWARDING FEES ON.

2       I UNDERSTAND THE APEX DEPOSITION YOU THINK YOU WERE

3  ENTITLED TO IT AND MISS HANDMAN DISAGREED.  I THINK THAT

4  REASONABLE PEOPLE COULD DIFFER ABOUT THAT ONE.  SO THAT WAS

5  SUBSTANTIALLY JUSTIFIED.

6       THE ISSUE OF THE SEC FILINGS AND WHETHER OR NOT YOU

7  CAN TAKE A DEPOSITION ON WHETHER OR NOT A PURELY COLLATERAL

8  MATTER HAPPENED, I THINK YOU ARE GOING TO HAVE TO PAY FEES FOR

9  THAT DISCOVERY DISPUTE.

10       YOUR REQUEST FOR NET WORTH, ALTHOUGH I RULED AGAINST

11  YOU I THINK THAT WAS A LEGITIMATE ISSUE.

12       YOUR POSITION THAT YOU ARE ENTITLED TO TAKE A THIRD

13  30(B)(6) DEPOSITION OF AN OFFICE, I DON'T THINK THAT WAS

14  SUBSTANTIALLY JUSTIFIED.

15       AND THE FINAL POSITION THAT YOU GET TO TAKE ANOTHER

16  DEPOSITION OF MR. RISEN, IT'S PRETTY CLOSE.  IT'S PROBABLY

17  BORDERING ON NOT BEING SUBSTANTIALLY JUSTIFIED BUT I UNDERSTAND

18  YOUR VIEW.  AND SO, I AM NOT GOING TO BE DEEMING THAT ISSUE TO

19  FALL IN THE CATEGORY OF ATTORNEY'S FEES.

20       SO FOR THOSE ISSUES FOR WHICH YOU HAVE NOT PREVAILED

21  UPON, WHICH YOU HAVE LOST ON, I AM GOING TO BE REQUIRING YOU

22  PERSONALLY, MR. KLAYMAN, AS THE ATTORNEY TO PAY $250 TO THE

23  DEFENDANTS BY NEXT FRIDAY.

24       AND BY NEXT MONDAY, THE FOLLOW MONDAY AFTER THAT YOU

25  MUST FILE IN MY E-FILE INBOX AN AFFIDAVIT OF COMPLIANCE

1  CONFIRMING THAT YOU HAVE IN FACT PAID THE $250.

2  I WILL BE ISSUING, MR. KLAYMAN, AN ADMINISTRATIVE

3  ORDER SUMMARIZING MY RULINGS TODAY.  AND WHENEVER I DO THAT FOR

4  FEES, AND I DO THAT QUITE FREQUENTLY, JUST SO YOU KNOW THIS

5  AFTERNOON SO YOU ARE NOT JAZZED UP THIS WEEKEND, IN THE

6  ADMINISTRATIVE ORDER I WILL INCLUDE A FOOTNOTE WHICH BASICALLY

7  SAYS THE FOLLOWING.

8  THIS FEE AWARDING AGAINST COUNSEL IS NOT, N-O-T, A

9  DISCIPLINARY SANCTION NOR A FINDING OF BAD FAITH, NOR

10  UNPROFESSIONAL CONDUCT.  INSTEAD, IT IS MERELY A FEE SHIFTING,

11  COST SHIFTING MECHANISM PROVIDED FOR UNDER RULE 37.

12  THEREFORE, IF YOU WHEREVER TO BE ASKED, FOR EXAMPLE,

13  BY A CLIENT, A PROSPECTIVE CLIENT, AN INSURANCE CARRIER, A

14  JUDICIAL NOMINATING COMMISSION, ET CETERA, WHETHER YOU HAVE

15  EVER BEEN SANCTIONED OR DISCIPLINED BY A COURT, THIS FEE AWARD

16  WOULD NOT REQUIRE YOU TO SAY YES.

17  SO MOST LAWYERS WHO ARE ON THE RECEIVING END OF A FEE

18  AWARD APPRECIATE THAT FOOTNOTE.  SO I AM MENTIONING THAT TO YOU

19  NOW.

20  ANY OTHER DISCOVERY MATTERS THIS AFTERNOON FROM EITHER

21  SIDE?

22  MR. KLAYMAN:  NO, YOUR HONOR.

23  MAY I PUT SOMETHING ON THE RECORD THOUGH JUST FOR THE

24  RECORD?  IS THAT PERMISSIBLE?

25  THE COURT:  SURE.

1       MR. KLAYMAN:  WITH REGARD TO THE SEC ISSUE.  OKAY?  I

2  AM NOT GOING TO RELITIGATE THE ARGUMENT THAT I MADE TO YOU.

3       BUT MISS HANDMAN MADE ANOTHER MISREPRESENTATION, AND

4  IT WAS WITH REGARD THAT THIS WAS THE ONLY FILING WHERE IN WAS

5  NO DISCLOSURE OF THIS LAWSUIT.

6       IN FACT, THAT'S FALSE.  THE FORM 10-2 DATED MARCH

7  31ST, 2015 FILED WITH THE SEC MAKES NO MENTION OF THIS LAWSUIT

8  AS IS REQUIRED.  FORM 8K-1A CAPITAL A, DATED MAY 20 9TH, 2015

9  FAILS TO DISCLOSE THIS LAWSUIT AND THE AMOUNT OF DAMAGES

10  REQUESTED.  AND FORM 8K DATED AUGUST 6, 2015, MAKES NO MENTION

11  OF THE LAWSUIT AND WHAT IS REQUESTED IN TERMS OF DAMAGES.

12       AND AGAIN, JUST REALLY BRIEFLY, I DON'T WANT TO TAKE

13  UP YOUR TIME BECAUSE I KNOW YOU MAY HAVE SOMETHING BEHIND THIS.

14  THIS DOES BEAR ON TRUTHFULNESS AND CREDIBILITY.

15       SO THERE IS A PATTERN OF DISHONEST AND ILLEGAL CONDUCT

16  WHICH IS RELEVANT AND WHICH MAY LEAD TO RELEVANT EVIDENCE.  AND

17  I RESPECTFULLY -- AND I KNOW YOUR HONOR DENIED MY REQUEST

18  WITHOUT PREJUDICE -- WOULD LIKE TO REVISIT THIS AT A LATER TIME

19  BECAUSE IT IS RELEVANT TO THE CONDUCT OF THE CORPORATE OFFICERS

20  AND THE CORPORATIONS HERE.

21       THE COURT:  THANKS EVERYBODY FOR PHONING IN.

22       WE WILL BE IN RECESS.  TAKE CARE.

23       MR. KLAYMAN:  THANK YOU, YOUR HONOR.  HAVE A NICE

24  WEEKEND.

25       THE COURT:  ALL RIGHT.

```
 1

 2

 3                     C E R T I F I C A T E

 4

 5

 6  UNITED STATES OF AMERICA

 7  SOUTHERN DISTRICT OF FLORIDA

 8

 9

10        I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED

11  STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO

12  HEREBY CERTIFY THAT THE FOREGOING 39 PAGES CONSTITUTE A TRUE

13  TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN

14  THE CITY OF MIAMI, FLORIDA, IN THE MATTER THEREIN STATED.

15        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 3RD

16  DAY OF OCTOBER 2015.

17

18                              /S/CARL SCHANZLEH
                                CARL SCHANZLEH, RPR-CM
19                              CERTIFIED COURT REPORTER
                                9960 SW 4TH STREET
20                              PLANTATION, FL 33324
                                TELEPHONE 954 424-6723
21

22

23

24

25
```