UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-20782-MARTINEZ/GOODMAN

DENNIS MONTGOMERY,

      Plaintiff,

v.

JAMES RISEN et al.,

      Defendants.

_____/

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S OCTOBER 19, 2015 ORDER

**HOLLAND & KNIGHT LLP**
Sanford L. Bohrer
  Sandy.Bohrer@hklaw.com
Brian W. Toth
  Brian.Toth@hklaw.com
701 Brickell Avenue, Suite 3300
Miami, Florida  33131
Tel: (305) 374-8500
Fax: (305) 789-7799

**DAVIS WRIGHT TREMAINE LLP**
Laura R. Handman (admitted *pro hac vice*)
  laurahandman@dwt.com
Micah J. Ratner (admitted *pro hac vice*)
  micahratner@dwt.com
1919 Pennsylvania Ave., NW, Suite 800
Washington, D.C.  20006
Tel.: (202) 973-4200
Fax: (202) 973-4499

*Counsel for Defendants*

Under Magistrate Judge Rule 4(a)(1), Defendants James Risen, Houghton Mifflin Harcourt Publishing Company ("HMH"), and Houghton Mifflin Harcourt Company ("HMHC"), improperly sued as HMH Holdings, Inc., (collectively "Defendants"), file this Opposition to Plaintiff's Objection to Magistrate Judge's October 19 Order.  (ECF No. 164.)

## I.        PRELIMINARY STATEMENT

The Court should overrule Dennis Montgomery's ("Montgomery") objection ("Objection") to Magistrate Judge Jonathan Goodman's October 19, 2015 discovery order (ECF No. 164) (the "Discovery Order") ordering that Montgomery produce his software at issue in this case and documents relating to its location, for the following reasons:

*First*, Montgomery's Objection does not cite, or provide ***any*** argument for how he overcomes, the "very difficult" standard of review to overturn a magistrate judge's discovery order as clearly erroneous or contrary to law.

*Second*, Judge Goodman's Discovery Order finding that Montgomery's software is "highly relevant" to the element of falsity, which Montgomery must prove in this libel suit, is not clearly erroneous or contrary to law.  Montgomery merely repeats arguments that Judge Goodman has already rejected three times.  Moreover, Judge Goodman correctly rejected Montgomery's specious argument that, because Risen did not rely on the software at issue, it is not relevant.  What Risen relied upon before publication is relevant to fault and the fair report privilege, but it does not matter for falsity.  What matters for falsity, as Judge Goodman correctly held, is whether the software works – as Montgomery claims in his Amended Complaint – or whether it does not work – as suggested in Chapter 2 ("Chapter") of Risen's book, *Pay Any Price: Greed, Power, and Endless War* (the "Book").

*Third*, the Court should reject Montgomery's suggestion that he now somehow does not have possession, custody, or control over his own software that lies at the heart of his burden to prove falsity.  Montgomery waived this argument by waiting to assert it almost three months after he served his objections to Defendants' discovery requests.  But even if the Court considered this untimely argument, it does not provide a basis for overturning the Discovery

Order.  Not surprisingly, he does not state that he lacks control over his **own** software, so he must produce it. And his argument is just the latest change of story that shows his bad faith.

*Fourth*, the Court should reject Montgomery's assertion that Defendants waived the right to have an expert test and testify about the software.  As Judge Goodman found in denying Montgomery's motion to stay the August 22 discovery order pending his objection, this argument is "circular and unconvincing" because Defendants were unable to provide a full expert report **only** because Montgomery has refused to produce the software.

*Finally*, the Court should deny Montgomery's request for a stay because he fails to put forth any argument or cite any authority to support his request for a stay pending the Objection, much less overcome the high standard of likelihood of success.

## II.   FACTUAL BACKGROUND

### A.   Defendants' June 1 Request for the Location of the Relevant Software and its Production, and Montgomery's July 1 and 15 Refusals to Comply

On February 24, 2015, Montgomery brought this libel action against author James Risen, his publisher, and its holding company, alleging that statements in the Chapter that report allegations that Montgomery defrauded the federal government by selling it useless software were false.[1]  To defend against Montgomery's claim that statements in the Book are false because the software allegedly works, on June 1, Defendants requested a copy and the locations of the software referred to in the Amended Complaint, including Al Jazeera software (noise filtering software), the object recognition software, and video compression software mentioned in the Chapter.[2]

On July 1, Montgomery's counsel objected to the request to produce the software as "vague," "ambiguous," "overly broad," and "burdensome," and the request to disclose the

---

[1] (ECF No. 44, Am. Compl. ¶¶ 23, 48, 49, 65, 120-27, 181-84, 202-21, 230-36, 245-48, 259, 262.)  A motion to dismiss or transfer (for lack of jurisdiction, improper venue, transfer under 28 U.S.C. § 1404(a), and failure to state a claim) has been fully submitted since June 11, 2015. (ECF No. 77.)  Defendants intend to move for summary judgment by or before December 14, 2015, after discovery closes on November 19, 2015, arguing, *inter alia*, Montgomery's failure to produce evidence that would permit a reasonable jury to find substantial falsity.

[2] (ECF No. 90-1, Defs.' Interrogs. 9-15 & Reqs. for Produc. 7-15, 26-32, 36-47, 53.)

locations as "largely irrelevant."[3]  After Defendants warned Montgomery's counsel that his broad, boilerplate objections violate the local rules, on July 15, Montgomery objected to Defendants' discovery again, refusing to "respond concerning the location of the relevant software."[4]  He also refused "to produce a copy of any software," even under the protective order, asserting that he is not legally permitted to produce "secret" classified information.[5]  He did not object on grounds that the software was not in his possession, custody, or control.

**B.**     **Defendants Show Montgomery's Past Cases Find the Software Is Not Classified and His Pattern of Refusing to Produce the Software**

On August 4, 2015, Defendants explained in their Pre-Hearing Memorandum to Judge Goodman that orders in Montgomery's previous cases show that his software is *not* classified, yet he has repeatedly refused to produce it.  (ECF No. 94.)  In a case in which Montgomery's former employer, eTreppid, sued Montgomery for allegedly misappropriating the subject software, the U.S. government moved for and obtained a protective order under the state secrets privilege to protect certain classified information from discovery ("U.S. Protective Order").[6]  However, the U.S. Protective Order specifically *excluded* Montgomery's software from its scope.[7]  Thus, the judge in Nevada found that "[t]he clear understanding in drafting and issuing th[e] [U.S.] protective order was that the parties would be discussing the nature and capabilities of the technology, and the type of work each party performed for the government."[8]

Nonetheless, Montgomery refused to produce the software in both the Nevada litigation and in his later bankruptcy proceedings in which the U.S. Protective Order was also entered.  In

---

[3] (Pl.'s July 1 Resp. & Objections to Interrog. 9 & Reqs. for Produc. 8, Defs.' Mem. in Supp. of Sanctions Ex. 5, ECF No. 166-1.)

[4] (ECF No. 90-2, Pl.'s July 15 Resp. & Objections to Interrog. 9.)

[5] (*Id.* 9-15) (objecting that "the interrogatory calls for information some of which the Plaintiff is not legally permitted to disclose as being confidential or secret"); (*Id.*, Pl.'s July 15 Resp. & Objections to Reqs. for Produc. 7-15, 26-32, 36-47, 53) (objecting on grounds of "legal restrictions on the Plaintiff responding" or that "he is not legally permitted to disclose all documents or information").

[6] (*Montgomery v. eTreppid Technologies, Inc.*, 3:06-cv-00056-PMP-VPC ("*eTreppid*"), ECF No. 253 (D. Nev. Aug. 29, 2007), Defs.' Pre-Hearing Mem. Ex. 2, ECF No. 94-2.)

[7] (*Id.* at 2-3, ¶ 4(c) (stating that "[t]his Order does not preclude the Parties from serving or taking any discovery . . . relating to . . . [t]he computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties.").

[8] (*eTreppid*, ECF No. 645, at 6 n.3, Defs.' Pre-Hearing Mem. Ex. 3, ECF No. 94-3.)

the Nevada action, the magistrate and district judges repeatedly ordered Montgomery to produce the software, but he refused.[9] Thus, the district judge held Montgomery in contempt, imposing a penalty of $2,500 per day until he produced the software.[10] Instead of producing the software, Montgomery settled the action and signed confessions of judgment for $25 million.[11] Then, Montgomery declared bankruptcy, continued to refuse to produce or describe the software in bankruptcy, and was thus denied discharge.[12] Following this same pattern here, Montgomery is withholding the software again when it is central to his burden to prove substantial falsity.

### C.     Montgomery Testifies in His August 20 Deposition that He Gave the Software to the FBI and Did Not Keep a Copy

In Montgomery's August 20, 2015 deposition, he testified that he searched for the software in response to Defendants' discovery requests and gave his ***only*** copy of the software to the FBI on August 19, 2015.  (Pl.'s Dep. Tr. 127:12-15; 128:1-25; 129:1-4; 131:12-22; 132:21-23, Defs.' Mem. in Supp. of Sanctions Ex. 2, ECF No. 166-2.)  Notably, Montgomery testified:

> Q:  Do you have the software that you used for the Al Jazeera work?
> A:  No.
> Q:  Where is it?
> A:  I gave it to the government.

(Pl.'s Dep. Tr. 127:13-16.)  Thus, Montgomery testified under oath less than two months ago that he gave the software to the government.

### D.     Montgomery's Counsel Represents to Judge Goodman in the August 21 Hearing that Montgomery Gave the FBI the Only Copy of the Software Days Before

On August 21, Judge Goodman held a hearing on the adequacy of Montgomery's responses and objections to Defendants' discovery requests, including the dispute over Montgomery's refusal to produce the software.  At the hearing, Montgomery's counsel confirmed what Montgomery testified about at his deposition the day before – that on August 18 or August 19, Montgomery, ***without seeking leave of court or informing Defendants***, turned

---

[9] (*Id.*, ECF No. 645; *eTreppid*, ECF Nos. 728, 765, 769, Defs.' Pre-Hearing Mem. Ex. 4, ECF No. 94-4.)
[10] (*eTreppid*, ECF No. 815, at 3-5, Defs.' Pre-Hearing Mem. Ex. 5, ECF No. 94-5.)
[11] (*eTreppid*, ECF Nos. 897, 898, Defs.' Pre-Hearing Mem. Ex. 6, ECF No. 94-6.)
[12] (*eTreppid*, ECF Nos. 1206, ¶ 22, 1208, ¶ 22, Defs.' Pre-Hearing Mem. Ex. 8, ECF No. 94-8.)

over to the FBI and to the Department of Justice what he claimed was the ***one and only*** copy of

the software that Defendants have ***since June 1*** requested from Montgomery in this action.

Montgomery's counsel represented the following to Judge Goodman:

> THE COURT: The FBI has the software?
> MR. KLAYMAN: They have the software, yes.
> THE COURT: How did they get it?
> MR. KLAYMAN: Because Mr. Montgomery provided it to them.
> THE COURT: When?
> MR. KLAYMAN: He provided it to them three days ago. It has been in the
> process to provide that to them and he provided them a lot of other information
> too, which they are looking at because it is classified information and he is a
> whistleblower.
>
> ***
>
> THE COURT: And you did mention to me three days ago either you had or
> Mr. Montgomery submitted the software so the FBI so the FBI could confirm one
> way or the other if the software contained classified information; is that correct?
> MR. KLAYMAN: That is correct.
> THE COURT: And so when this software was turned over three days ago, did
> either you, or Mr. Montgomery, keep a copy, or you just gave the software?
> MR. KLAYMAN: We just gave it to them.
> THE COURT: No copies?
> MR. KLAYMAN: It was just the software and relative to this case the software is
> included.

(Aug. 21 Hr'g Tr. 6:25; 7:1-10; 8:7-18, ECF No. 111-1.)  Montgomery's counsel thus

represented to Judge Goodman that he gave the software to the FBI and did not keep a copy.

The judge "agree[d] with [Defendants] that the software is highly relevant for the case."

(*Id*. 32:23-24.)  He credited the Nevada court's finding that the software was not classified.  (*Id*.

30:18-23; 40:7-47:1.)  Relying on Montgomery's counsel's representation that they gave the FBI

the software, the judge then "order[ed] Mr. Montgomery to turn over that software and to take

advantage of his right of continued access to nonclassified information."  (*Id*. 79:24-80:1.)

### E.     The August 22 Order to Produce the Software and Obtain It from the FBI

On August 22, Judge Goodman entered a written order requiring Montgomery to "use his

self-described right of continued access to non-classified information (in relation to his turning

over the subject software to the FBI) and produce the software to Defendants."  (Aug. 22 Order ¶

6, ECF No. 107.) The order also required him to produce "all documents concerning" Defendants' request for production number 7 about communications with persons who know about the software and of its location, "which would now include documents related to the disclosure and production of the subject software to the FBI" (*id.* ¶ 5). It required him to "turn over all documents . . . related to the disclosure and production of the subject software to the FBI" by August 31, and "to produce the software to Defendants" by September 4. (*Id.* ¶¶ 5-6.)

      **F.**      **Montgomery Fails to Comply with the August 31 Deadline**

On August 31, 2015, although ordered to produce all "documents related to the disclosure and production of the software to the FBI" by that day (Aug. 22 Order ¶ 5), Montgomery failed to comply. Instead, Montgomery moved for a stay of the part of the August 22 order requiring him to produce the software and related documents pending his objection. (ECF No. 112.)

      **G.**      **The September 3 Denial of Montgomery's Motion to Stay the Order to Produce the Software**

On September 3, 2015, Judge Goodman issued an order denying Montgomery's motion to stay. (Stay Order, ECF No. 122.) Judge Goodman reiterated that "Montgomery shall produce by September 4, 2015 all documents encompassed in paragraph 6 of the [d]iscovery [o]rder and shall also produce the software by using the self-described right of continued access to the software which he turned over to the FBI without maintaining a copy for himself." (*Id.* at 2.)

Judge Goodman found that Montgomery was not likely to succeed on the merits of his objection that "the software is not relevant" because Risen did not have the software when he wrote the Chapter. (*Id.* at 4.) Judge Goodman was "not at all persuaded by Montgomery's argument" and instead "agreed with Defendants' position that the software is 'highly relevant.'" (*Id.* at 5.) Judge Goodman recognized that "the theme" of Montgomery's Amended Complaint is that "Risen falsely accused Montgomery of being a con man and a fraud who tricked the Government into purchasing unworkable object recognition software and who asked that tests of the software be falsified." (*Id.*) Judge Goodman rejected Montgomery's argument, advanced again here, reasoning that "Plaintiff's burden to prove falsity does not hinge on whether he

[Risen] ever had a copy of the software" but rather "the critical fact issue is whether in fact the software worked." (*Id.*) "Accordingly, Defendants have the right to inspect and test the software," Judge Goodman concluded; "It is highly relevant and Montgomery must produce it." (*Id.*) "In fact," Judge Goodman found, the software "is critical" evidence. (*Id.* at 6.)

Judge Goodman also found Montgomery's argument that Defendants waived their right to have an expert test the software is "circular and unconvincing." (*Id.* at 5.) The judge reasoned that Defendants, who had identified the expert, "could not provide an expert report because *Montgomery* refused to provide the software which Defendants have been requesting since discovery began." (*Id.*) The judge also found that "the overall equities of the discovery dispute and the [d]iscovery [o]rder at issue further militate against Montgomery's position because he recently, and secretly, turned over the software to the FBI – without keeping a copy, without advising Defendants of his plan to do so, without advising this Court of his strategy and without seeking leave of Court . . . ." (*Id.* at 5-6.) Montgomery's purpose was "to, in effect, seek to sequester what could be the most important evidence in the entire case." (*Id.* at 6.)

### H.    Montgomery Fails to Produce the Software by the September 4 Deadline

On September 4, Montgomery defied Judge Goodman's two orders by failing to produce the software that day. Rather, Montgomery filed his objection. (ECF No. 125.)

### I.    The September 8 Revelation of Montgomery's Document Dump on the FBI

On September 8, 2015, James Baker, the General Counsel of the FBI, wrote a letter to Montgomery's counsel, and copied Judge Goodman and Defendants' counsel, to "correct any misunderstandings about the conditions under which the FBI took possession of the materials from Mr. Montgomery" and to address the means by which Montgomery "will be afforded access to the materials he provided to the FBI." (ECF No. 126, at 1.)

Mr. Baker stated that, besides materials Montgomery gave to the FBI purportedly as a whistleblower, Montgomery "had other materials that were wholly irrelevant to the FBI inquiry that may be on the drives" such as the software at issue. (*Id.* at 2.) But Montgomery "wished to turn over every computer drive in his possession" to the FBI. (*Id.*) Montgomery and the FBI

agreed to establish a procedure to provide Montgomery access to non-classified information if it did "not unduly burden the FBI." (*Id.*) But Montgomery "did not associate the potential retrieval of this information with any pending civil litigation." (*Id.*) Further complicating the task, Montgomery told the FBI that "Top Secret, compartmented information may reside throughout the hard drives," leading the FBI to treat all Montgomery's 47 hard drives as "presumptively classified." (*Id.* at 2-3.) In "stark contrast" to Montgomery's counsel's representations to this Court, Montgomery "never asked, and the FBI never agreed, for the Government to undertake a classification review of [the] software" at issue. (*Id.* at 3.)[13]

Mr. Baker also told Montgomery that the August 26 letter Montgomery's counsel sent to the FBI was insufficient. "[N]otably absent is any information which would assist the Government in locating and producing the software at issue in *Montgomery v. Risen*." (ECF No. 126, at 3.) Mr. Baker explained that a letter Montgomery gave the FBI on August 19, 2015 said that "the hard drives contained **51.6 million files amounting to 600 million pages.**" (*Id.*) Combined with Montgomery's claim to the FBI "that classified information was contained throughout the hard drives," this "massive amount of information on the hard drives" means "there is no reasonable way for the Government to locate and provide the alleged software, absent specific instructions from" Montgomery. (*Id.* at 3-4.)[14]

Montgomery's counsel and paralegal responded with self-serving declarations showing they were present at the handover, but denying Mr. Baker's representations. (ECF No. 127.)

**J.      The October 16 and 19 Orders Again Require Montgomery to Produce the Software and to Provide the FBI Detailed Instructions to Find It**

At a hearing on October 16 (Oct. 16 Hr'g Tr., attached hereto as Exhibit 1), Judge Goodman issued an order, followed by a written order on October 19. (ECF No. 164.) The order again required Montgomery to produce his communications with the FBI about turning

---

[13] Mr. Baker then offered a classification review *if* the government finds the software. (*Id.* at 4.)
[14] Mr. Baker therefore asked Montgomery to provide the FBI: "(1) the number or designation of the drive on which the software is present; (2) the file name of the software; (3) the creation date of the software; and (4) any other identifier(s) for the software." (*Id.* at 4.)

over the software, now by October 20.  (*Id.* ¶ 2.)[15]  It required Montgomery to give the FBI

comprehensive instructions on how to locate the software within the hard drives he turned over

to the FBI or, if he "cannot tell the FBI exactly how to identify the software, then he shall so

state in the email."  (*Id.* ¶ 3.)  Last, the order required him to produce the software by

October 26, 2015.  (*Id.* ¶ 4.)  The order permitted Defendants to file a motion for dismissal or

adverse inference sanctions if Montgomery failed to produce the software by October 26.  (*Id.*)

     In ruling, Judge Goodman again rejected Montgomery's argument that the software is not

relevant.  Judge Goodman stated that "I've already noted that ***this particular software is, in fact,***

***critical evidence in the case***, because this is a defamation case, and one of your main burdens as

the Plaintiff is to prove – it's your burden to prove the falsity of the allegation." (Oct. 16 Hr'g Tr.

18:5-10, Ex. 1) (emphasis added).  "[Q]uite frankly," Judge Goodman said, "it doesn't really

matter all that much whether Mr. Risen had access to this software or not."  (*Id.* 18:11-13.)

     The judge illustrated that fault and falsity are separate elements with a hypothetical.  He

posited: "Let's assume for the sake of discussion that [Risen] just wildly speculated that the

software didn't work."  (*Id.* 18:14-15.)  Under that hypothetical:  Risen "had never seen it, he

had never had access to it, he had never spoken to anybody about it"; "[h]e was just incredibly

reckless and wrote a book that said the software doesn't work."  (*Id.* 18:15-18.)  Even under this

counterfactual scenario, "if it turns out that the software doesn't work, then it's a true statement."

(*Id.* 18:18-20.)  Thus, falsity is "still part of [Plaintiff's] burden of proof."  (*Id.* 18:20.)

### K.   Montgomery's October 21 Declaration Now Swearing that He Did Not Have Access to His Own Software and Did Not Give It to the FBI

     On October 21, 2015, rather than comply with Judge Goodman's order to provide the FBI

sufficient instructions to find the software or state that he cannot do so, Montgomery filed a

declaration directly contradicting his own previous testimony under oath in his deposition, and

---

[15] Although previously ordered, Montgomery did not produce the July 28 and August 12, 2015 letters referenced in Mr. Baker's September 8 letter or any response to Mr. Baker's request for further information to locate the software until October 20, nor has he produced any other documents indicating any other locations of his software.

his counsel's representations in August to Judge Goodman.  That day, Montgomery filed a declaration, swearing under oath:  "Based on my personal knowledge and belief, upon searching my memory, I do not believe that I have had access to any of the subject software, nor did I provide it to the Federal Bureau of Investigation ("FBI") when I turned over the drives . . . ."  (Pl.'s Decl., ECF No. 158-1.)  He does not explain how he supposedly does not have access to his own software, where it is now located, or explain this change of story after Judge Goodman made clear in the October 16 and 19 orders that he could face dismissal sanctions.[16]  Nor does he explain whether he refers to the Al Jazeera software, the object recognition software, or video compression software, all of which are the subject of the Chapter and the document request.  Shifting the burden to the FBI, he states:  "However, I am today providing some additional information (attached) which may allow the FBI to see if the software – in whole or in part – exists on the drives I turned over to the FBI to conduct its ongoing classification review."  (*Id.*)

### L.    Montgomery Violates the Orders to Give the FBI Enough Detail by October 21 to Find the Software and to Produce the Software by October 26

On October 23, 2015, the FBI Assistant General Counsel, Ted Schwartz, emailed Montgomery's counsel that "Mr. Montgomery has now stated that he does not believe that the subject software is on the hard drives."  (Email from Ted Schwartz, Defs.' Mem. in Supp. of Sanctions Ex. 4, ECF No. 166-4.)  "Not surprisingly – given that belief – Mr. Montgomery has not provided us the detailed information requested in the September 8, 2015 letter which would allow us, without undue burden, to locate the software among the 51.6 million files which he claims to have provided us."  (*Id.*)  Mr. Schwartz repeated that the FBI would not conduct a classification review.  (*Id.*)  Mr. Schwartz concluded that, "***the FBI will not search the drives to***

---

[16] Tellingly, Mr. Klayman told the Court he knew "from day one" Defendants would move to dismiss the case if the software – the crucial evidence – was not produced, yet inexplicably took no steps to ensure that the software exists or to preserve a copy of the software.  (Oct. 16 Hr'g Tr. 17:21-18:2, Ex. 1) ("[M]aybe we can get the magistrate judge and/or the judge to rule that the case should be dismissed if you don't turn over something that we never even had anyway when we wrote the book or relied on.  See, and it's clever, I predicted this to my colleagues from day one, that Defendants would try this, okay, and this obviously has come to be true.").

*locate software* requested in the *Risen* litigation." (*Id.*) (emphasis added).[17]

> **M.**     **Montgomery's Objections and Defendants' Motion for Sanctions**

On October 26, 2015, Montgomery did not produce the software. He filed his Objection and request for a stay. (ECF No. 164.) In it, he represents, notwithstanding Mr. Schwartz's email to the contrary, that "[t]he FBI is working with due speed to search through the millions of files in order to determine whether such software does exist in the documents provided by Plaintiff." (*Id.* at 6.) He again argues that software is not relevant, suggests that he now lacks possession, custody, or control over the software, and that Defendants' inability to provide a full expert report somehow justifies overturning the Discovery Order.

Montgomery also asserts that he turned over the massive data dump to the FBI, which, until recently, he stated included the software, because he purports to be a whistleblower about "illegal and unconstitutional surveillance" on Americans. (Pl.'s Obj. at 2-3.) Similarly, Montgomery turned over a massive data dump of about 45 hard drives to the Maricopa County Sheriff's Office ("MSCO") that also allegedly contained evidence of government "operations involving clandestine access to, and collection of, raw data . . . belonging to American users." (*See* Certification from J. Kirke Wiebe and Thomas A. Drake, at 1, Nov. 13, 2014, attached hereto as Exhibit 2.) Two former NSA experts MSCO hired to analyze the data found that "none of the data examined reveals or otherwise supports the assertion the data contained on the hard drives examined resulted from the clandestine collection and processing of modern digital communications and is instead, evidence of an ***outright and fraudulent con*** perpetuated on the government for personal gain and cover." (*See id.* at 2) (emphasis added). (*See also* Oct. 16 Hr'g Tr. 23:15-24:24, Ex. 1.)[18] Montgomery appears not to be a whistleblower at all. Instead,

---

[17] Plaintiff's counsel responded to Mr. Schwartz by letter later that night, copying Judge Royce Lamberth (D.D.C.), offering "to provide information if that is required, but my client believes he has given what it needs to pinpoint any software, if it exists, on the 47 hard drives, which General Counsel Baker noted in his September 8, 2015, letter 'containing 51.6 million files amounting to 600 million pages.'" (Letter from Mr. Klayman, Defs.' Mem. in Supp. of Sanctions Ex. 5, ECF No. 166-5.)

[18] Montgomery's counsel here is also representing the same NSA experts in their own whistleblower suit, making it awkward in the extreme for Montgomery's counsel to deny or

he is using this data dump to the FBI to hide the software, to hide his lack of knowledge about its whereabouts, or to delay producing it so Defendants cannot get it in time to defend themselves.

On October 28, 2015, as the Discovery Order authorized, Defendants filed their motion for dismissal sanctions on grounds that Montgomery spoliated the software by giving it to the FBI and violated multiple court orders to produce the software.  (ECF No. 182.)  This sanctions motion is now properly before Judge Goodman for a Report and Recommendation to this Court.

## III.   ARGUMENT

### A.   The Court Should Overrule Plaintiff's Objection Because the Discovery Order Is Not Cleary Erroneous or Contrary to Law

Montgomery does not meet the onerous standard to overturn a magistrate judge's non-dispositive order.  A "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); S.D. Fla. Magistrate Judge R. 4(a)(1) (same).

A magistrate judge's ruling is "clearly erroneous" only when the district court "is left with the definite and firm conviction that a mistake has been committed."  *Salazar v. Wells Fargo Bank, N.A.*, 2011 WL 379145, at *3 (S.D. Fla. Feb. 2, 2011).  "Clear error is a highly deferential standard of review."  *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005).  "The district court may not undo the magistrate judge's" non-dispositive order "'simply because it is convinced that it would have decided the case differently.'"  *Manno v. Healthcare Revenue Recovery Grp., LLC*, 2012 WL 4192987, at *2 (S.D. Fla. Sept. 18, 2012) (quoting *Holton*, 425 F.3d at 1351).  "'An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'"  *Summit Towers Condo. Ass'n v.*

---

otherwise contradict their finding that Montgomery "perpetuated" an "outright and fraudulent con."  (*See* Compl., *Drake v. Alexander*, No. 1:15-cv-01353-RJL, ECF No. 1 (D.D.C. filed Aug. 20, 2015).)  Their report referenced that the hard drives contained a number of Al Jazeera broadcasts, just as discussed in the Chapter at issue here.

*QBE Ins. Corp.*, 2012 WL 1440894, at *1 (S.D. Fla. Apr. 4, 2012) (citation omitted).

This standard is "'a very difficult one to meet.'"  *Manno*, 2012 WL 4192987, at *2 (citation omitted); *accord Tai-Pan, Inc. v. Keith Marine, Inc.*, 1997 WL 714898, at *11 (M.D. Fla. May 13, 1997) ("The standard for overturning a Magistrate [Judge's] Order is a very difficult one to meet.").  Montgomery's Objection does not meet this standard of review.

### B.      Judge Goodman's Finding that the Software Is Highly Relevant to the Element of Falsity Is Not Clearly Erroneous or Contrary to Law

Montgomery argues that "the software at issue is not even relevant" because Risen's book "was based on previously published articles by Bloomberg News and Playboy and non-classified public court and congressional records."  (Pl.'s Obj. at 7.)  Put differently, he argues that, because Risen did not have access to the software when he wrote the Chapter and Defendants moved to dismiss under the fair report privilege and for failure to plausibly allege fault based on the prior articles and official records Risen had relied upon, the software is irrelevant at summary judgment and trial.[19]  (*Id.* at 7-10.)  For two main reasons, the Court should overrule this Objection.

*First*, the Objection merely rehashes the same arguments that Montgomery made before Judge Goodman.  But he does not show – or even attempt to show – how Judge Goodman's ruling finding the software is highly relevant and requiring Montgomery to produce the software at heart of his case is clearly erroneous or is contrary to law.  Montgomery's failure to do so precludes this Court from modifying or setting aside Judge Goodman's ruling, as court after court faced with similar objections has ruled.  *See, e.g.*, *Edmonds v. Seavey*, 2009 WL 2150971, at *3 (S.D.N.Y. July 20, 2009) ("Plaintiff's objections merely repeat the same arguments put before Judge Francis as to why Defendants' sanctions motion should not have been granted in the first instance; they do not, however, reveal anything clearly erroneous about Judge Francis's factual findings, or any misapplication of the relevant law to those findings."); *Matos v.*

---

[19] Contrary to Montgomery's representation, Defendants never said that the software is not necessary to "try[] this case before a jury."  (Pl.'s Obj. at 9.)

*Wojnarowicz*, 2008 WL 892365, at *2 (E.D.N.Y. Apr. 2, 2008) ("Defendant's objections to the [order] merely repeat the arguments made to [the] Magistrate Judge . . . and do not establish that the [order] is clearly erroneous or contrary to law. . . ."); *United States v. Ionia Mgmt. S.A.*, 499 F. Supp. 2d 166, 168 (D. Conn. 2007) ("In its Objection, Ionia rehashes the arguments it offered to [the] Magistrate Judge . . . concerning unavailability, but does not offer any new information or legal authority demonstrating that her conclusion was clearly erroneous or contrary to law.").

*Second*, Judge Goodman's ruling is plainly correct. Risen's reliance on these prior publications and official records is relevant to the element of fault and the fair report privilege defense, issues raised on Defendants' motion to dismiss, while the software is wholly relevant to the element of falsity, an issue not raised on the Rule 12(b)(6) motion. (Defs.' Mot. to Dismiss or Transfer, at 27-29, 31-39.) A fundamental element of a claim for defamation, of course, is "a *false* and defamatory statement concerning another." Restatement (Second) of Torts § 558 (June 2015) (emphasis added). If the statements or implications that Montgomery's software did not work are not *false*, then he will not be able to prove his defamation claim, without regard to fault. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986) (holding under the First Amendment that plaintiff bears the burden to prove falsity in libel actions in cases against the media involving matters of public concern).

Here, the Objection is meritless because it ignores the basis for the Judge Goodman's ruling that "I've already noted that ***this particular software is, in fact, critical evidence in the case***, because this is a defamation case, and one of the main burdens as the Plaintiff is to prove – it's your burden to prove the falsity of the allegation." (Oct. 16 Hr'g Tr. 18:5-10, Ex. 1) (emphasis added). On August 21, the judge had already found that the software is "highly relevant" to the element of "substantial falsity of the claim in the book that the software did not work." (Aug. 21 Hr'g Tr. 18:5-10; 32:23-24, ECF No. 111-1). Contrary to Montgomery's unsupported assertion (Pl.'s Obj. at 9), the judge correctly found that the falsity does not depend on whether Risen had a copy of the software at the time, but whether, in fact, the software works or not. (Oct. 16 Hr'g Tr. 18:11-13, Ex. 1; Aug. 21 Hr'g Tr. 24:1-20, ECF No. 111-1.)

It is well-established that "it makes no difference [if] the true facts were unknown" at the time of publication, because "truth—not just known truth—is a complete defense to defamation." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) (Posner, J.) (internal citations omitted); Restatement (Second) of Torts § 581A cmt. h (1977) ("[I]f the defamatory matter is true . . . it is enough that it turns out to be true."). Montgomery would have this Court bless his attempts "to sequester what could be the most important evidence" of truth. (Stay Order, ECF No. 122, at 5.) But he "does not have a legally protected right to a reputation based on the concealment of the truth." *Haynes*, 8 F.3d at 1228. Rather, as Judge Goodman stated, the software is "highly relevant," and indeed, "critical" to truth and falsity. (Oct. 16 Hr'g Tr. 18:5-10, Ex. 1; Aug. 21 Hr'g Tr. 32:23-24, ECF No. 111-1; Stay Order, ECF No. 122, at 6.)[20] Thus, Montgomery fails to show "that the Magistrate Judge, in the exercise of his broad discretion, was clearly erroneous in concluding that the" software "is relevant" to the element of falsity and must be produced. *SEC v. Merkin*, 283 F.R.D. 689, 700 (S.D. Fla. 2012).[21]

### C.    Montgomery's Belated, Implausible Argument that He Does Not Have Possession,  Custody, or Control of His Own Software Does Not Justify Overturning the Discovery Order

Next, Montgomery objects to the order because he asserts "he will be unable to provide the software at issue, if any, by October 26, 2015." (Pl.'s Obj. at 5.) Montgomery suggests, but does not state unequivocally, that the Court should overrule the objection because the software is now somehow not in his possession, custody, or control. The Court should reject this argument.

*First*, Montgomery waived any objection that he lacked possession, custody, or control over the software. *See Henderson v. Zurn Indus., Inc.*, 131 F.R.D. 560, 568 (S.D. Ind. 1990) (holding that, "by virtue of the defendant's waiver of the objection, the Court holds that the control or possession requirements of Rule 34 have been met."); 8B Charles A. Wright,

---

[20] Montgomery cites the CIA's objection to Defendants' *Touhy* request for the software and other information from the CIA for this relevancy argument. (Pl.'s Obj. at 12.) But for the same reasons explained above, the CIA's counsel is also incorrect about the law.

[21] Nor has Montgomery provided a basis to conclude that the Discovery Order's requirement to produce documents on the location of the software, including documents related to the "secret," unauthorized hand-over to the FBI of the only copy of the software, is clearly erroneous.

Arthur R. Miller, Richard R. Marcus, *Federal Practice and Procedure*, § 2210, at 164 (3d ed. 2010) ("[L]ack of control may be considered an objection to the discovery request and, like any such objection, may be waived.").  Here, Montgomery did ***not*** object on this basis in his July 1 or July 15 response and objections to Defendants' discovery requests, nor before Judge Goodman granted Defendants' two motions to compel production of the software on August 22 and October 19, nor before Judge Goodman authorized Defendants' to move for serious sanctions if Montgomery did not comply.  *See Woods v. Cook Cnty.*, 2014 WL 7261277, at *2 (N.D. Ill. Dec. 19, 2014) (finding waiver when "defendants did not object that they lacked control over the requested documents until . . . eight months after their responses were due and after the court granted Woods's first motion to compel"); *Henderson*, 131 F.R.D. at 568 (finding waiver where party did not include possession or control objection in responses and objections).  By waiting until October 21 to first raise this issue in his affidavit, he waived this objection.

*Second*, even if the Court were to consider Montgomery's belated suggestion that he lacks possession, custody, or control, the Court should reject it.  To begin, he states that "Plaintiff is not in possession of the software at issue" and "is not even sure if the documents and other things provided to the FBI contain the software."  (Pl.'s Obj. at 6.)  But he does *not* state that he lacks control over his own software.  And his own cases acknowledge that "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand," *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984), or "when that party has the right, authority, or practical ability to obtain the documents . . . ."  *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997); (*See* Pl.'s Obj. at 6).

Moreover, contrary to Montgomery's arguments, his actions do not show good faith. (Pl.'s Obj. at 6-7.)  Montgomery's failure to preserve and produce the software that is critical to the falsity element of his claim based on changing, legally insufficient stories in the face of Defendants' repeated requests and court orders is evidence of bad faith or willfulness.[22]   There

---

[22] *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 947 (11th Cir. 2005) (instructing trial court dismiss as sanction for bad faith spoliation when, six years before action, plaintiff allowed

is no reason why Montgomery could not keep a copy of his software when, as he testified under oath and his counsel confirmed, he gave the FBI his only copy nearly three months after Defendants' requested it in discovery and a few days before the parties held a discovery hearing before Judge Goodman about production of the software.  He does not explain why he could not provide the FBI sufficiently detailed instructions to find the software in the massive document dump he foisted upon the FBI in the midst of this discovery dispute.  Then, after Judge Goodman warned him that Defendants could move for sanctions, including dismissal, if he did not comply by October 26, 2015, Montgomery contradicted his sworn testimony and his counsel's representations and said he now "believe[d]" he did not have "access" to his own software and did not provide the software to the FBI.[23]  Finally, Montgomery misrepresented to Judge Goodman that "[t]he FBI is . . . search[ing] through the millions of files in order to determine whether such software does exist in the documents provided by Plaintiff," when the FBI's October 23 correspondence states that they are not doing so.  (Pl.'s Obj. at 6.)  This egregious

---

his insurer to destroy vehicle central to his claims despite defendant's pending request to inspect vehicle); *Gonzalez v. Business Representation Int'l, Inc.*, 248 F.R.D. 644 (S.D. Fla. 2008) (finding bad faith when plaintiff made false statements, and obstructed access to highly relevant evidence by revoking medical authorization); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 131-36 (S.D. Fla. 1987) (entering default judgment under inherent powers and Rule 37 for destroying relevant documents after party served with complaint and requests for production, and "flagrant dishonesty"); *PSG Poker, LLC v. DeRosa-Grund*, 2008 WL 190055, at *12 (S.D.N.Y. Jan. 22, 2008) ("[F]ailure to either produce relevant documents or a credible story regarding their whereabouts – despite the admonitions of this Court and repeated requests from the plaintiffs – can only be interpreted as an intentional and willful act").

[23] If Montgomery's latest declaration under oath is true – that he did not have access to the software or give it to the FBI in August – then he and his counsel lied to Judge Goodman and led Defendants, Judge Goodman, and the FBI on a wild goose chase.  These facts give rise to the strong inference that:  (1) he does not have access to the software because he spoliated it; (2) he violated Fed. R. Civ. P. 11(b)(3) by bringing this suit when he knew he could not prove falsity, a critical element of any libel claim; (3) he never had access to the software or it never existed, thus explaining his refusal to turn it over in the Nevada litigation and his bankruptcy case; or (4) he knows the software does not work and never worked, and thus he dare not expose it to scrutiny.  Under any of these circumstances, the objections to the Discovery Order should be rejected and Defendants are entitled to dismissal sanctions, as urged in the pending motion before Judge Goodman, because Montgomery cannot prove falsity, he acted in bad faith, and he caused severe prejudice to the Defendants.

conduct "'sustain[s] an inference of consciousness of a weak case'" – the very definition of bad faith. *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (citation omitted).

Montgomery's cases are not only distinguishable, they support Defendants. In *Searock v. Stripling*, the Eleventh Circuit held that a plaintiff was not required to produce documents that, unlike here, were not his own but that he had volunteered to obtain from a third party and where, unlike here, defendant had failed to take "any action to attempt to secure these crucial documents itself." 736 F.2d at 653-54. Moreover, unlike here, "[t]here [was] no evidence that [the party] acted willfully, in bad faith or was at fault in failing to produce the documents . . . ." *Id.* at 654. Montgomery's other cases do not help him either. Unlike here, there was no evidence of bad faith, and the party stated that the documents were not in its possession, custody, or control unequivocally, from the very beginning, and with a logical explanation.[24]

### D. Montgomery Provides No Basis Why Defendants' Inability to Provide a Full Expert Report Due to His Own Refusal to Produce the Software Could Justify Overturning the Discovery Order

Montgomery argues that Defendants somehow waived their right to have an expert test the software and testify and that purported waiver somehow justifies overturning the Discovery Order. (Pl.'s Obj. at 10-11.) But Montgomery does not provide the basis for this suggestion, and in any event, his argument is "circular and unconvincing." (Stay Order, ECF No. 122, at 5.) As Judge Goodman correctly found, Defendants identified the expert by the deadline on August 3, but "Defendants could not provide an expert report because *Montgomery* refused to provide the software which Defendants have been requesting since discovery began." (*Id.*) Thus, the expert had nothing to test, and no opinions to offer or support with information about his qualifications without the software that Montgomery had failed to produce. Montgomery did not object and has failed to identify a rebuttal expert by the deadline of August 24.[25]

---

[24] *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 2014 WL 6473232, at *4 (S.D. Fla. Nov. 18, 2014); *Bank of New York*, 171 F.R.D. at 152.

[25] Defendants served a partial report with the expert's qualifications on Montgomery on September 3, after becoming aware through his motion to stay that he wanted it. Any claimed error is thus harmless. *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011).

For Montgomery to suggest that Defendants' expert should be excluded (Pl.'s Obj. at 11) is the ultimate in chutzpah, particularly when the software was unavailable only because of Montgomery's unilateral decision to "recently and secretly turn [ ] over the software to the FBI without keeping a copy, without advising Defendants of his plan to do so, without advising this Court of his strategy, and without seeking leave of Court . . . ." (Stay Order, ECF No. 122, at 6.)

### E.      The Court Should Deny Plaintiff's Request for a Stay

The Court should deny a stay because Montgomery does not put forth any argument or cite any authority to support his request for a staying pending the Objection.  To obtain a stay of a magistrate judge's discovery order on appeal to the district court, Montgomery must show:  (1) likelihood of success on the merits of the appeal; (2) irreparable injury to Plaintiff absent a stay; (3) lack of substantial prejudice to Defendants; and (4) the stay would serve the public interest. *Ameritox, Ltd. v. Millennium Labs., Inc.*, 2015 WL 1169403, at *2 (M.D. Fla. Mar. 13, 2015).

As explained above, Montgomery is not likely to succeed on his Objection.  He has shown no irreparable injury to himself absent a stay.  Moreover, his request that "[d]iscovery could be extended for a month or two" to produce software while "leav[ing] the trial date in place" (Pl.'s Obj. at 12) would severely prejudice Defendants by leaving inadequate time to brief and decide summary judgment motions, to test the software, and to prepare for any trial.  Indeed, it was Montgomery who insisted on an expedited schedule due to his poor health[26] and now has made sure, by not even securing a copy of his own software, that the critical evidence will not be available on a timely basis – if ever.  He has deliberately blown past the reasonable deadlines set by Judge Goodman.  The Court should not allow him to change course and obtain new deadlines that will prejudice Defendants and reward his deliberate strategy "to sequester what could be the most important evidence in the case."  (Stay Order, ECF No. 122 at 6.)

---

[26] Other than evidence of a fall that did not require an overnight stay in the hospital, Montgomery has not produced any medical records that support his statement in his Objection that he "recently suffered another severe, life-threatening medical setback related to his potentially fatal brain aneurism and may need another operation." (Pl.'s Obj. at 2.)

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court overrule

Plaintiff's Objection to the October 19, 2015 Discovery Order and deny Plaintiff a stay.

Dated:  November 12, 2015                    Respectfully submitted,

                                             s/Brian W. Toth
                                             Sanford L. Bohrer
                                             Florida Bar No. 160643
                                             sbohrer@hklaw.com
                                             Brian W. Toth
                                             Florida Bar No. 57708
                                             brian.toth@hklaw.com
                                             HOLLAND & KNIGHT LLP
                                             701 Brickell Avenue, Suite 3300
                                             Miami, Florida  33131
                                             Telephone: (305) 374-8500
                                             Fax: (305) 789-7799

                                             – and –

                                             Laura R. Handman (admitted *pro hac vice*)
                                             laurahandman@dwt.com
                                             Micah J. Ratner (admitted *pro hac vice*)
                                             micahratner@dwt.com
                                             DAVIS WRIGHT TREMAINE LLP
                                             1919 Pennsylvania Ave., NW, Suite 800
                                             Washington, D.C.  20006
                                             Tel.: (202) 973-4200
                                             Fax: (202) 973-4499

                                             *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 12, 2015, I filed this document with the Clerk of Court using

CM/ECF, which will serve this document on all counsel of record.

                                             s/Brian W. Toth