# EXHIBIT  1

```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                      Case No. 15-20782-CIV-MARRA
 3
    DENNIS L. MONTGOMERY,        )
 4                               )
         PLAINTIFF,              )
 5                               )
         -v-                     )
 6                               )
    JAMES RISEN, ET AL.,         )
 7                               )
         DEFENDANTS.             )    Miami, Florida
 8                               )    October 16, 2015
    _____)
 9

10          TRANSCRIPT OF DISCOVERY HEARING PROCEEDINGS

11            BEFORE THE HONORABLE JONATHAN GOODMAN

12                 UNITED STATES MAGISTRATE JUDGE

13

14   Appearances:

15   (On Page 2.)

16   Reporter                    Stephen W. Franklin, RMR, CRR, CPE
     (561)514-3768               Official Court Reporter
17                               701 Clematis Street
                                 West Palm Beach, Florida  33401
18                               E-mail:  SFranklinUSDC@aol.com

19

20

21

22

23

24

25
```

1                              * * * * *

2

3  FOR THE PLAINTIFF          Larry E. Klayman, ESQ.
   (By Telephone)            Klayman Law Firm
                              2520 Coral Way, Suite 2027
4                             Miami, FL 33145

5  FOR THE DEFENDANTS         Laura R. Handman, ESQ., AND
   (By Telephone)            Micah J. Ratner, ESQ.
6                             Davis, Wright & Tremaine
                              1919 Pennsylvania Avenue, NW
7                             Suite 800
                              Washington, DC 20006
8  -and-
   (Present in Court)         Sanford L. Bohrer, ESQ.
9                             Holland & Knight
                              701 Brickell Avenue, Suite 3000
10                            Miami, FL 33131

11

12                             * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          (Call to the order of the Court.)

 2              THE COURTROOM DEPUTY:  Calling case

 3     15-20782-CIVIL-MARTINEZ, Montgomery versus Risen, et al.

 4              The Honorable Jonathan Goodman presiding.

 5              THE COURT:  Good afternoon, folks.

 6              I'm hoping that the beeping noise that I just heard

 7     indicates that we now have an additional counsel on the line,

 8     and, if so, I think we've got everybody here.

 9              So you haven't missed anything.  We're just starting

10     now.

11              So let's start off with appearances.

12              First for the Plaintiff, I believe we have hopefully

13     counsel on the phone?

14              MR. KLAYMAN:  Yes, we do, Your Honor.  Larry

15     Klayman.

16              How are you today?

17              THE COURT:  All right.  Good.

18              Mr. Klayman, by the way, were you on television last

19     night on the Jimmy Kimmel show?

20              MR. KLAYMAN:  No, I don't think so, but --

21              THE COURT:  There's a fellow who was interviewed

22     there on the street.  Jimmy Kimmel sometimes has one of these

23     on-the-street surprise ambush interviews, and there was a

24     fellow interviewed who looked significantly like you and had a

25     similar demeanor and a similar way of speaking, and I said, my
```

```
1    gosh, is Mr. Klayman out there on Sunset Boulevard, in

2    Hollywood?  But apparently not.

3              All right.

4              MR. KLAYMAN:  I think it may have been me, Your

5    Honor.  I actually was -- it may have been me.  I did give an

6    interview to them a while back.  I guess they held it.

7              THE COURT:  Oh, really?

8              MR. KLAYMAN:  Yeah.

9              THE COURT:  Oh.

10             MR. KLAYMAN:  Was there a dog on there?

11             THE COURT:  Yes, you were holding a dog.

12             MR. KLAYMAN:  Yes, that's me.

13             THE COURT:  And, in fact, there was a reference to

14   the dog being like your wife or something, right?

15             MR. KLAYMAN:  No, it's like my daughter.

16             THE COURT:  Oh, my gosh, I was correct, that was

17   you.

18             MR. KLAYMAN:  I don't know.  Maybe I said if I had

19   had my dog I never would have gotten married.  Maybe I --

20             THE COURT:  There was some reference to a dog and a

21   wife.

22             So, yeah, I guess they do these interviews and they

23   hold them for, I don't know, weeks at a time, whenever they

24   have a need.  It wasn't particularly time sensitive.

25             MR. KLAYMAN:  They held it for months, months.
```

```
 1                    THE COURT:  It was you, Mr. Klayman.  My gosh.

 2           Okay.  Good.

 3           Who else do you have on the phone?

 4                    MS. HANDMAN:  You have Laura Handman and Micha

 5   Ratner, from DC.

 6                    THE COURT:  All right.  Either of you on television

 7   lately?

 8                    MS. HANDMAN:  No.

 9                    THE COURT:  All right.  And here in court we have?

10                    MR. BOHRER:  Sandy Bohrer, Your Honor.

11                    THE COURT:  Very well.

12           All right.  So happy Friday to everyone.

13           We're here for a discovery dispute, and I understand

14   this is a matter that the defense would like to bring to my

15   attention.  So I'm happy to hear what you have to say.

16                    MS. HANDMAN:  Thank you, Your Honor.

17           We're here again today for sanctions for failure to

18   comply with paragraph 5 and 6 of the Court's post-hearing

19   discovery order of August 22nd.  We seek sanctions under Rule

20   37(b) and (e).

21           Your Honor will recall, the revelations made at the

22   August 21st hearing which Your Honor described in your denial

23   of the stay of the August 22nd order, that Montgomery, quote,

24   "recently and secretly turned over the software to the FBI

25   without keeping a copy, without advising Defendants of his
```

1    plan to do so, without advising this Court of his strategy,

2    and without seeking leave of court to, in effect, sequester

3    what could be the most important evidence in the entire case."

4           The Court ordered on August 22nd, in paragraph 6,

5    that by September 4, Plaintiff use, quote, "his self-described

6    right of continued access to nonclassified information,"

7    paren, "in relation to his turning over the subject software

8    to the FBI, to produce the software to defendants."

9           That was by September 4.

10          Plaintiff's counsel wrote to the FBI and AUSA Curtis

11   on August 26th quoting and attaching the order.

12          Then on September 8th, the FBI's general counsel

13   wrote back to Plaintiff's counsel, with a copy to Your Honor

14   and to Defendants' counsel.  Not only did Mr. Baker say the

15   Government was not aware of this case and the pending document

16   demand when they received the information, but, most

17   importantly, he said:  "Notably absent" -- I'm quoting -- "is

18   any information which would assist the Government in locating

19   and producing the software at issue in Montgomery v. Risen."

20          And then why?  Because what Plaintiffs gave the FBI

21   on August 19th, just two days before the hearing before Your

22   Honor on the software, was hard drives containing, according

23   to Mr. Baker, 51.6 million files amounting to 600 million

24   pages, which the Plaintiff claims had classified information

25   throughout.

1              Hence, Mr. Baker said, quote:  "This massive amount

2    of information means there is no reasonable way for the

3    Government to locate and provide the alleged software absent

4    specific instructions from the Plaintiff.

5              Mr. Baker then specified what was needed.  One was a

6    number or designation of the drive on which the software is

7    present.  Two, the file name of the software.  Three, the

8    creation date of the software.  Four, any other identifiers of

9    the software.

10             So we asked Mr. Klayman on September 21st whether

11   Plaintiff had provided that information requested, and to

12   please provide us the communications evidencing same, as well

13   as the prior communications referenced in Mr. Baker's letter,

14   all of which this Court ordered to be produced in paragraph 5

15   of the August 22nd order.

16             We did not get the software, which was supposed to

17   be produced by September 4, nor any evidence that the

18   information requested by the FBI in order to locate the

19   software have been provided, nor any communications with the

20   FBI.

21             And in the absence of any such communications

22   confirmation, I communicated on October 5 with Ted Schwartz,

23   the assistant -- the FBI's assistant general counsel, and he

24   advised that Mr. Klayman had sent an e-mail on September 24 --

25   that would be after our meet and confer -- to which the FBI

1    responded on October 1st, quote, "asking for more information

2    and clarification."

3           Mr. Schwartz said he could not provide the documents

4    absent a formal subpoena subject to the Touhy regulations but

5    said, quote, the FBI has no objection to Mr. Klayman providing

6    us a copy of the e-mail exchange.

7           So we asked Plaintiff's counsel, again as part of

8    the meet and confer on October 7th, for this exchange, and

9    advised them that the FBI had no objections.  We asked again

10   for the prior communications and confirmation that the

11   information necessary to locate the software had been

12   provided, and for the software itself.

13          We have gotten no response, no documents, no

14   software, even though clearly required by this Court's order

15   of August 22.

16          By giving the FBI this one and only copy of his own

17   software and not keeping a copy which had been the subject of

18   the specific discovery request since June 1, and which is, as

19   Your Honor observed, the critical evidence in the case, and

20   providing it to the FBI in a massive document dump that makes

21   it difficult, if not impossible, to retrieve, Plaintiff has

22   engaged, in our view, in deliberate spoliation, in defiance of

23   this Court's order to retrieve the software and provide the

24   communications with the FBI.

25          We were able to get, as Your Honor probably knows, a

1    brief extension of the discovery deadline, but it is now fast

2    approaching.  It's one month away, and we need time for our

3    expert to examine the software and test whether it works or

4    not and do follow-up discovery.

5             So we respectfully request that the Court order

6    Plaintiff to, one, produce by Monday all communications

7    regarding the location of Montgomery software, which is what

8    Your Honor ordered on August 22nd in the paragraph 5,

9    including, but not limited to, the July 28 letter agreement

10   with the FBI, the August 1 e-mail that are both referenced in

11   Mr. Baker's letter, the September 24 e-mail from Mr. Klayman,

12   and the FBI's October 1 response, which Mr. Schwartz advised

13   of, and any subsequent communications with the FBI.

14            We'd also ask Your Honor to order that if he has not

15   already done so, by Monday, he provide the FBI with all the

16   information the FBI has required in order to identify and

17   locate the software and provide documentation that that has

18   been done.

19            And, finally, we'd ask that they provide the

20   software by October 26.

21            We ask that if these requirements are not satisfied,

22   including provision of the software, even if the FBI has not

23   been able to return the software to the Plaintiff by that

24   time, due to Plaintiff's deliberate decision to not keep a

25   copy of its own software, but instead provide it to the FBI in

1    a manner that did not permit timely retrieval and production,

2    and causing extreme prejudice to Defendants' ability to defend

3    this case, we ask the Court to impose sanctions as provided

4    under Rule 37.

5         First, we would ask to dismiss the action with

6    prejudice.  And if not dismissed, we would ask the Court to

7    make a finding that the software either did not exist, or did

8    not work, or, at a minimum, draw an adverse inference that the

9    software did not exist or did not work.

10        We cited some authority in Footnote 17 in our

11   prehearing memorandum of August 4th, but we would be happy to

12   supplement that with additional authority if the Court

13   requires.

14        THE COURT:  Thank you.

15        Mr. Klayman?

16        MR. KLAYMAN:  Yes, Your Honor.

17        First of all, I would say that we did comply with

18   your order of August 22nd, 2015.  You ordered that we put the

19   FBI on notice by August 26th that to look for the software, if

20   it existed.  We did not know whether or not, of the 47 hard

21   drives, 600 million pages of documentation provided to the

22   FBI, that, in fact, software existed on that.

23        Secondly, the FBI advised in the letter from

24   Mr. Baker of September 8th that they were conducting, or they

25   would conduct a classification review.  Because we said if it

1   does exist it may be classified, and that's why we just

2   couldn't turn any software, even if it existed, over

3   willy-nilly.  That would create liability, and not just for

4   Mr. Montgomery, but also for Defendants.  If they were to

5   receive classified information, they could be in great legal

6   difficulty.

7         Now, that having been said, we have --

8   Mr. Montgomery has communicated with the FBI and has given it

9   information whereby it could make a concerted effort to find

10  that software to the best of his ability, if it exists.

11  However, this is an ongoing criminal investigation by the FBI,

12  and the information that's being provided to the FBI in terms

13  of it trying to be able to locate if any such software exists

14  and if it's classified, would be subject to work product in

15  the context of that criminal investigation.

16        We did get correspondence from Mr. Schwartz, but it

17  was never copied on Ms. Handman.  I don't know how she has

18  that.  So I assume that the FBI was keeping this close to the

19  vest as part of the criminal investigation.  As a former

20  prosecutor for the Justice Department, I have to respect the

21  investigatory privilege of the FBI, particularly when a

22  criminal matter is involved.

23        And, in fact, contrary to what was said in

24  Mr. Baker's letter, he's a very honest man, and I have the

25  highest regard for him, but he was not privy at the meeting at

```
 1    the Miami field office of the FBI.  An Assistant U.S. Attorney

 2    was.  So the information was provided second hand.

 3              We filed affidavits on the record, both myself and

 4    Ms. James, who was present, Dina James, paralegal, that, in

 5    fact, we had told the FBI that there was a civil matter, and

 6    that, for that reason, we would need access if required by

 7    this Court to anything revolving around if software existed or

 8    any other matter.  And the FBI and the AUSA agreed at that

 9    point in time.  That was not put in writing, but that was

10    said.  But we did put it in an affidavit.

11              So we have been completely forthright in making an

12    attempt to find out if any software is there.  The FBI is

13    conducting a classification review.  These things are very

14    important.  And we know, you know, in other matters that are

15    in the news these days that the FBI has some very significant

16    matters concerning a person called Hillary Clinton.  And, you

17    know, obviously their resources are being stretched thin.

18              I mean, the documents here are 600 million pages.

19    That's huge in comparison to the 35,000 pages which went

20    missing in that very high profile case.  So this is a matter

21    which they're moving with all due speed, and we are proceeding

22    in that regard.

23              Now, I don't know if Your Honor had the

24    opportunity -- I assume you did, because you're a very

25    diligent jurist -- to look at our objection to your order, in
```

```
1    all due respect.  And we're not saying that you went out of
2    your way to require this to be produced without any basis.
3    But what we're saying is, and we're asking Judge Martinez to
4    take a look at it, and I hope that you can look at it, too, is
5    that, you know, it's ironic that they're making this issue of
6    the software, and it's strategic.
7              And I predicted that this was going to happen at an
8    early hearing, because their initial motion to dismiss was
9    based on the premise that everything that was published by
10   Mr. Risen came from prior publications in Playboy Magazine, in
11   Bloomberg News, and in Congressional testimony on the public
12   record.  And Mr. Risen never relied on confidential sources
13   inside the Government, contrary to a source note in his book,
14   which was meant to sell the book but was obviously false given
15   his testimony.  And he confirmed that when he was deposed,
16   that he didn't have access to any software or confidential
17   information from the Government.
18             And we put that in that objection.
19             So this is a red herring, and Ms. Handman has just
20   now confirmed that this is true, that they were trying -- they
21   were trying to create a Catch 22 with regard to the software
22   to try to get this case dismissed.
23             And the other thing that supports that is the fact
24   that on the last day, for them to have designated an expert to
25   review any such software -- which they could have done from
```

```
 1   the start -- they didn't even give us anything more than the

 2   name of the expert, in violation of federal rules on producing

 3   information with regard to experts.  You know, their prior

 4   qualifications, prior testimony and everything like that.

 5            So the bottom line here, Your Honor, is -- and I

 6   don't want to get too diverted, but the background's

 7   important -- is that we should be allowed to have this

 8   objection run its course.  It's a legitimate objection.  Your

 9   Honor didn't -- not have all this information at the time that

10   Your Honor ruled initially.  We took time to plot it out.  To

11   turn software, which we don't know whether it exists or not,

12   over now, and the FBI's looking for it, and it's classified,

13   and communications over what's in those discs would moot out

14   the objection, could potentially expose classified

15   information, which would be helpful even to foreign interests

16   adverse to the United States, it would compromise an ongoing

17   criminal investigation by the FBI -- the communications are

18   technically work product here, because Mr. Montgomery is, in

19   fact, a witness for the FBI.  He's an informant for the FBI,

20   and that's why he got that immunity letter.

21            And for all of these reasons, Your Honor, we have

22   been in good faith, we respect you highly, we respect your

23   orders, but to turn over internal communications would

24   compromise a criminal investigation and possibly classified

25   information and could result in national security damage to
```

```
 1   this country.
 2            So that's our stance right now.
 3            Let the FBI run its course.  It's moving --
 4   Mr. Montgomery has participated in helping them, despite the
 5   fact that he went back into the hospital after another stroke.
 6   And let's see what the FBI comes up with.  I know they're
 7   moving with all due speed.  I don't think it's necessary that
 8   we have an extension on discovery.  It hasn't been requested
 9   yet.  But if that's necessary, and Your Honor so rules and the
10   Judge so rules, then that's something we would respect.
11            But, again, they're not basing their case on any
12   software or classified information, you just need to look into
13   their motion to dismiss to tell you dismiss this case because
14   it all came from public sources.
15            So we respectfully request, Your Honor, to allow
16   that objection to be ruled upon, and in the meantime allow the
17   FBI to do its declassification review and to determine whether
18   or not that software is in there and whether or not it's
19   classified, if, indeed, the objection's not withheld.
20            THE COURT:  Now, Mr. Klayman, I have a couple of
21   follow-up questions for you.
22            I heard you say about two minutes ago that the
23   information is classified, and I seem to recall that at other
24   hearings you said to me, I don't know whether the
25   information's classified, Judge, I've never looked at it
```

1    myself, all I'm saying is it could be.

2            So did you perhaps misspeak this afternoon when you

3    said --

4            MR. KLAYMAN:  Yeah, I think I misspoke in context.

5    Okay.  Let me make that clear.

6            What I'm saying is that the -- I don't know whether,

7    if any such software exists, it's classified or not.  That's

8    for the FBI to determine.  And it must make that first initial

9    determination.

10           What I'm saying is that the communications that

11   Mr. Montgomery has had with the FBI since, pursuant to your

12   order, could lead potentially to disclosing classified

13   information about what's on those hard drives.  That could

14   compromise the FBI's investigation, which is criminal, and

15   undoubtedly Defendants will make this public, and it could

16   compromise the national security of the United States.  And

17   that's why this is a very significant matter which can't be

18   taken lightly.

19           And, in fact, you know, the Assistant U.S. Attorney,

20   Debra Curtis, has said to me orally, said, Larry, you know,

21   don't mix the civil with this criminal case.  I mean, we have

22   to proceed criminally here.  You know, we're concerned about

23   that.

24           THE COURT:  So when you --

25           MR. KLAYMAN:  So, you know, it's -- and that's why I

 1   point out, Your Honor, that at this stage, when the

 2   Defendants, themselves, have rested their motion to dismiss on

 3   the basis that Mr. Risen did not have access to the software,

 4   therefore he couldn't have made his opinions that it was

 5   fraudulent, and that his entire publication, "Pay Any Price,"

 6   as concerns Mr. Montgomery was simply based on what was

 7   already public in terms of prior newspaper articles and

 8   Congressional testimony.

 9        This -- and given the fact that they designated an

10   expert only by giving us his name on the last day, and could

11   have brought this issue up in front of the Court a lot sooner,

12   this is a strategy, a tactic, to put us in a Catch 22

13   situation, not just me -- I mean, not just Mr. Montgomery, but

14   the FBI and the Department of Justice, to try to get this case

15   dismissed.

16        It's kind of like heads, I win, tails you lose.

17        I mean, we didn't base this book on anything that

18   was confidential or classified.  Even Risen admitted to that

19   when he testified.  That's in the objection.

20        But now we're going to make an issue of it, because

21   if we can paint you into a corner, maybe we can get the

22   magistrate judge and/or the judge to rule that the case should

23   be dismissed if you don't turn over something that we never

24   even had anyway when we wrote the book or relied on.

25        See, and it's clever.  I predicted this to my

```
 1    colleagues from day one, that Defendants would try this, okay,
 2    and this obviously has come to be true.
 3              THE COURT:  Well, Mr. Klayman, you've already made
 4    that argument to me before, and I certainly appreciate your
 5    creativity, but you haven't persuaded me of that, because I've
 6    already noted that this particular software is, in fact,
 7    critical evidence in the case, because this is a defamation
 8    case, and one of your main burdens as the Plaintiff is to
 9    prove -- it's your burden to prove the falsity of the
10    allegation.
11              And, quite frankly, it doesn't really matter all
12    that much whether Mr. Risen had access to this software or
13    not.
14              Let's assume for the sake of discussion that he just
15    wildly speculated that the software didn't work.  He had never
16    seen it, he had never had access to it, he had never spoken to
17    anybody about it.  He was just incredibly reckless and wrote a
18    book that said the software doesn't work.  But if it turns out
19    that the software doesn't work, then it's a true statement.
20    So that's still part of your burden of proof.
21              So in any event, you've made that argument before,
22    and, quite frankly, you didn't make much headway then, and
23    you're not making much headway now.
24              But setting that aside, when you told me earlier
25    today that Mr. Montgomery has communicated with the FBI and
```

1  gave the FBI information so that it could try to track down

2  the software amongst this massive amount of electronically

3  stored information that was given to the FBI, were those

4  communications in writing, or were they oral, or were they

5  both?

6        MR. KLAYMAN:  They were in writing.  They were

7  forwarded to the FBI, and what I also argued was, Your Honor,

8  that Mr. Montgomery did this as soon as he could, because he's

9  been ill.  He was in a hospital, had another stroke.  And --

10  but that this is part -- to review that information while an

11  objection is pending -- we are challenging this with the

12  Court -- you know, could potentially compromise national

13  security.

14        He is a witness for the FBI.  He's an informant.

15        THE COURT:  Have you seen this letter, Mr. Klayman,

16  the one that you said Mr. Montgomery sent to the FBI in order

17  to give it instructions on how to track down the software?

18        MR. KLAYMAN:  I've seen the e-mails.  We forwarded

19  the information that he provided to us to the FBI.

20        THE COURT:  So you have seen the written

21  communications that Mr. Montgomery sent to the FBI?

22        MR. KLAYMAN:  I have seen that, but I have -- it's

23  not classified.  All I'm saying is it could lead a person to

24  information that would possibly be classified, and that's why

25  I think it's sensitive.

```
 1              THE COURT:  Well, it may be sensitive, Mr. Klayman.
 2     There are a lot of documents in lawsuits that are, quote,
 3     sensitive, and a lot of documents that people would prefer not
 4     to turn over.  But the most important word that you said in
 5     your explanation is "could" or "potentially," which, to me, is
 6     simply speculation.
 7              You have already reviewed these communications, so
 8     you have the ability to tell me, as an officer of the court,
 9     unequivocally whether or not Mr. Montgomery's communications
10     by e-mail to the FBI in which he gave instructions on where to
11     find this software contains classified information.  You've
12     reviewed it.
13              Does it contain classified --
14              MR. KLAYMAN:  I don't believe it does, okay, but I
15     wanted to give the FBI the opportunity to deal with that.
16              See, I had no knowledge that Mr. Schwartz had given
17     anything to Ms. Handman.  I was copied on an e-mail asking for
18     some information, and she was not copied on it.  I was never
19     told by the FBI that I could turn anything over to her.  I was
20     not.
21              THE COURT:  Okay.  So --
22              MR. KLAYMAN:  I'll swear to an affidavit under oath
23     in that regard.  So --
24              THE COURT:  Hang on just a minute.
25              Let me just ask a question of defense counsel.
```

 1              Ms. Handman, you had made reference to, among the

 2    documents that you were looking for, a written agreement

 3    between Mr. Montgomery and the Government and the FBI, and I

 4    think you even issued or mentioned a date.

 5              What was that specific date, the date of the

 6    agreement that you're looking to obtain?

 7              MS. HANDMAN:  It's referenced in Mr. Baker's letter

 8    on September 8th, and I believe it's July 28 was the

 9    agreement, letter agreement.  He says:  "Based upon the

10    proffer and your client's representations that certain

11    relevant information on the drives was highly classified, the

12    Government agreed to grant your client production immunity for

13    these items as memorialized in a letter agreement dated

14    July 28, 2015."

15              He then goes on to say -- there's an e-mail.  He

16    quotes an e-mail on August 12th about the retrieval process.

17              And then what I also referenced -- and those are

18    both referenced in Mr. Baker's letter, which I was CC'd on, as

19    were you, Your Honor, and was put in the public records.

20              Then I followed up with Mr. Schwartz, the gentleman

21    who forwarded Mr. Baker's letter.  He's the assistant general

22    counsel for the FBI, and he said:

23              "Ms. Handman, we are unable to provide documents you

24    request at this time, as requests to the FBI for documents in

25    connection with civil litigations must be made in accordance

1   with the DOJ's Touhy regulations, also to the extent any

2   documents that you request are covered by the Privacy Act, you

3   would need to provide us with a waiver, a court order or any

4   basis for production.

5         "I can tell you that the FBI sent Mr. Klayman an

6   e-mail on October 1, 2015, asking for more information and

7   clarification in response to an e-mail he sent on

8   September 24, 2015.  The FBI has no objection to Mr. Klayman

9   providing you a copy of that e-mail exchange or the other

10  documents you seek," which are the ones that include those

11  two -- the letter agreement that I had mentioned and the

12  e-mail of August 12th.

13        And we told Mr. Klayman that the FBI had no

14  objection, and frankly it's only the Government which can

15  assert the classified privilege, and they've not sought to

16  intervene in this case at any point in time.

17        In fact, in Mr. Baker's letter, he specifically

18  says:  "However, the Government neither agrees to undertake

19  nor understood any obligation to conduct a classification

20  review of any of these materials for the purpose of any civil

21  litigation."

22        And Mr. Klayman mentioned that Ms. Curtis said don't

23  mix the civil with the criminal.  Well, you did -- they did,

24  by putting the alleged software, the one and only copy of the

25  alleged software, in with whatever data dump they gave to the

1    Government.

2           And I would remind the Court that back at the

3    August 21 hearing -- and we briefed this in our August 4

4    memoranda -- we cited the Nevada court which has specifically

5    held that the software was not classified.  The Government was

6    a party to that case.

7           And then when Mr. Montgomery did not produce the

8    software, it sanctioned him with a $2500-a-day sanction, which

9    ultimately resulted in a $25 million concession of judgment by

10   Mr. Montgomery, followed by bankruptcy that was never

11   discharged, and a reinstatement of the judgment and no

12   production of the software.

13          So it seems to us that this is another effort to

14   circumvent this.

15          And this so-called investigation that Mr. Mont --

16   Mr. Klayman mentioned in which he purports to be a

17   whistleblower I think is what the investigation is that

18   Mr. Klayman is referring to, he told a very similar story to

19   the Maricopa County Sheriff's Office, who paid him

20   approximately $250,000, and he gave 49 hard drives to them,

21   and ultimately the sheriff's office had two former NSA experts

22   review the hard drives, and they provided a two-page memo on

23   November 13th, 2014, which was recently introduced in the

24   court proceeding in Arizona before federal judge Snow.

25          And their conclusion was that Montgomery, quote, "is

1    a complete and total fraud," and they said, "which, among

2    other things, that the 45 hard drives, among other things,

3    contain a high volume of recordings of Al Jazeera television

4    network," and their conclusion was, "in summary, this letter

5    certifies that as to the best of Mr. Weebie's (phonetic) and

6    Mr. Drake's knowledge, none of the data examined reveals or

7    otherwise supports the assertion that the data contained on

8    the hard drive resulted from the clandestine collection and

9    processing of modern digital network communications and is,

10   instead, evidence of an outright and fraudulent con

11   perpetrated on the Government for person gain and cover."

12           And these hard drives that were subsequently seized

13   by the U.S. Marshals under order of Judge Snow and I believe

14   are also being reviewed by DOJ at this point.

15           And what makes this conclusion so remarkable is not

16   only may our software be at issue in those hard drives, but

17   the two NSA experts, Tom Drake and Kirk Weebie, are clients of

18   Mr. Klayman, who filed a whistleblower suit on their behalf on

19   August 20th of this year in DC federal court.  And so he can

20   hardly denigrate their expertise or counter their conclusions.

21           So whether there is indeed -- whether, indeed, he is

22   a whistleblower, whether, indeed, his software is classified,

23   et cetera, this has been a story that's been told for a long

24   time.

25           All we're asking for is the software.  We're asking

1    that Mr. Montgomery supply the communications that he's made

2    to the FBI to enable them to produce the software, and that

3    the software be produced promptly so that we can defend this

4    case that he's brought.

5            And whether we can't defend it because it's

6    classified or whether we can't defend it because he's

7    presented it in such a manner to the FBI, his one and only

8    copy of the software, that it's now irretrievable, is not our

9    problem.  Our problem is we can't defend the case, and that's

10   why we're asking that the sanctions outlined in Rule 37 be

11   awarded.

12           MR. KLAYMAN:  Your Honor --

13           THE COURT:  What is Mr. Schwartz's first name again?

14           MS. HANDMAN:  Ted.

15           THE COURT:  Ted?

16           MS. HANDMAN:  Ted.

17           And he's the one that forwarded the letter from

18   Mr. Baker to Your Honor and to myself.  And so that's why I

19   contacted him.

20           MR. KLAYMAN:  Your Honor.

21           THE COURT:  Yes, sir.

22           MR. KLAYMAN:  May I respond to that?

23           That's nice testimony.  Unfortunately, Ms. Handman

24   is not a witness in this case.

25           I take extreme issue with her characterization of

```
 1    the facts.  I do not know whether any such software exists on
 2    those hard drives, and neither does Mr. Montgomery.  He gave
 3    the FBI, on more than one occasion, parameters on how to try
 4    to find it, and they're making that effort right now.  And
 5    that should be allowed to run its course, along with our
 6    objection to this entire line of inquiry.
 7            Secondly, with regard to Mr. Schwartz, I have no
 8    knowledge -- in fact, Ms. Handman basically says two different
 9    things.  One, she says that Schwartz tells her that he just
10    can't turn over communications because there's been no Touhy
11    request.  I know Your Honor knows what a Touhy request is.
12            THE COURT:  Yes, I do.
13            MR. KLAYMAN:  Okay.  And no Privacy Act request.
14            First he says he can't do that, and then she says
15    the exact opposite, he says, oh, turn it over.
16            THE COURT:  No, that's not what Ms. Handman said.
17            What she said is that Mr. Schwartz said "I," meaning
18    the FBI, can't turn it over because of Touhy regulations and
19    the Privacy Act requirements.  But there is nothing to prevent
20    Mr. Klayman or Mr. Montgomery from doing it, and "I, on behalf
21    of the FBI, have no objection if they turn it over."
22    That's --
23            MR. KLAYMAN:  But here's the --
24            THE COURT:  That's what I understand Ms. Handman to
25    be saying.
```

```
 1              MR. KLAYMAN:  Okay.  I have -- I had -- I have

 2   confusion as to what maybe -- I haven't had much sleep in the

 3   last few weeks.  I've had, like, four court hearings and

 4   stuff, and . . .

 5              THE COURT:  Well, let's just clarify.

 6              MR. KLAYMAN:  All right.

 7              THE COURT:  Ms. Handman, wasn't that the point that

 8   you were making?

 9              MS. HANDMAN:  Absolutely, Your Honor.  And I have an

10   e-mail that I'd be happy to furnish counsel and yourself that

11   says exactly that.

12              MR. KLAYMAN:  Well, that's nice, Your Honor.

13              THE COURT:  Whoa, whoa, wait.

14              An e-mail from who, Ms. Handman?

15              MS. HANDMAN:  Mr. Schwartz.

16              THE COURT:  Okay.

17              MR. KLAYMAN:  I don't have any such e-mail.

18   Mr. Schwartz has never told me or Mr. Montgomery anything to

19   that effect.

20              I have to honor the FBI, you know, Your Honor.  Not

21   just that, you know.  I was a Justice Department lawyer.  I

22   was a law enforcement officer.  I work with the FBI.  I've had

23   FBI agents as clients.  I value highly my relationship with

24   them, and, you know, Director Comey, who we dealt with

25   directly on this case through Mr. Baker.
```

```
 1            And I just can't willy-nilly turn things over

 2   between the FBI and us.  And I wasn't even given the courtesy

 3   of knowing -- assuming it's true.  And that's a big

 4   assumption, you know.  And I don't want to get into a

 5   contest --

 6            THE COURT:  You think that -- you think Ms. Handman

 7   is making up the fact that she received an e-mail from Ted

 8   Schwartz?  She manufactured a bogus document?

 9            MR. KLAYMAN:  No, no.  In the past -- I mean, she

10   did make up things in the beginning of the case.  I brought it

11   up with Your Honor.  You said don't bring it up again, so I

12   won't.

13            THE COURT:  All right.  Well, don't bring that up

14   issue.

15            Let's take it one step at a time.

16            Ms. Handman, the e-mail from Mr. Ted Schwartz,

17   what's date of that e-mail, please?

18            MS. HANDMAN:  I wrote him on October 5th, and he

19   responded on October 6th, at 10:55 a.m.

20            THE COURT:  And you have Mr. Schwartz's response

21   e-mail there?

22            MS. HANDMAN:  Yes, I do.

23            THE COURT:  Read it, please.

24            MS. HANDMAN:  Attached to my e-mail to him.

25            THE COURT:  Read it, please.
```

```
 1              MS. HANDMAN:  Okay.

 2              "Ms. Handman, we are unable to provide the documents

 3    you request at this time, as requests to the FBI for documents

 4    in connection with civil litigation must be made in accordance

 5    with DOJ's Touhy regulations, 28 CFR 1621, et seq.

 6              "Also, to the extent that any documents you request

 7    are covered by the Privacy Act, 5 U.S.C. 552(a), you would

 8    need to provide us with a waiver, court order or other basis

 9    for production consistent with the Privacy Act.

10              "I can tell you that the FBI sent Mr. Klayman an

11    e-mail on October 1, 2015, asking for more information and

12    clarification in response to an e-mail he sent on

13    September 24, 2015.  The FBI has no objection to Mr. Klayman

14    providing you a copy of that e-mail exchange or the other

15    documents you seek."

16              And that references my e-mail below, where I ask for

17    that July 28 letter agreement and the August 12 e-mail, which

18    is subject to Your Honor's order of August 22, where you say

19    in paragraph 5:  "Concerning Defendants' request for

20    Production 7 to Plaintiff, Plaintiff shall, by August 31,

21    2015, turn over all documents concerning this request" --

22    which was a request for documents as to the location of

23    software -- "which would now include documents related to the

24    disclosure and production of the subject software to the FBI."

25              THE COURT:  All right.  So Ms. Handman, here's what
```

```
 1   you're gonna do for me, please.
 2           By Monday, I want you to, under a notice of filing,
 3   file your October 5th, 2015, e-mail to Mr. Schwartz, and then
 4   his October 6th response e-mail to you.
 5           Now, here's what you're going to do, Mr. Klayman.
 6           I realize that you objected to my earlier ruling.  I
 7   realize that you filed a motion for a stay, which I denied,
 8   and therefore, in the absence of a stay from Judge Martinez or
 9   someone else, you need to comply.
10           So by next Tuesday, this coming Tuesday, you will be
11   filing with the Court and producing to Ms. Handman copies of
12   all of the correspondence between you and the FBI, you and
13   Ms. Curtis, Mr. Montgomery and the FBI, Mr. Montgomery and
14   Ms. Curtis, concerning Mr. Montgomery's turning over of
15   various ESI, hard drives and other material to the FBI.
16           So that will include all the documents that we've
17   been talking about today, the July 28th, 2015, letter
18   agreement, the September 24th e-mail from you, an August 12th,
19   2015, e-mail, an October 1st, 2015, e-mail, all of the e-mails
20   or other correspondence that Mr. Montgomery sent to the FBI in
21   an effort to try to answer Mr. Baker's request for additional
22   information so that the FBI could try to find, in that massive
23   amount of electronic discovery, the software at issue here.
24           In addition to that, by next Wednesday, you, on
25   Mr. Montgomery's behalf, or Mr. Montgomery himself, will be
```

```
 1   sending the FBI, by e-mail, and in particular Mr. Schwartz, a

 2   comprehensive set of instructions, the best available to

 3   Mr. Montgomery, as to how to pinpoint the software at issue in

 4   this case from the massive amount of material, the

 5   51.6 million files totaling 600 million pages, that were

 6   turned over to the FBI.

 7          I realize that Mr. Montgomery may have already made

 8   some effort in that regard in one or more e-mails, but I want

 9   to make sure that he sends to the FBI the most detailed, most

10   comprehensive, most specific set of instructions and guidance

11   as to how to locate the software.

12          And if the answer is, gee, I really can't tell you

13   exactly how to pinpoint the software at issue in this civil

14   lawsuit from among the massive 51.6 million files turned over

15   to the FBI, then he shall so state in this written

16   communication, which must be sent by Wednesday.  Copies of

17   that document, which will either be forwarded by you,

18   Mr. Klayman, or sent directly by Mr. Montgomery, will be filed

19   with the Court by the following day, which will be Thursday.

20   So that will be in the court file.

21          In addition, by October 26, you will, in fact,

22   produce the software at issue in this case to the Defendants.

23          Now, I'm going to make sort of a practical

24   observation and a realistic comment, which is even though

25   you're now going to be under a specific court order to produce
```

```
 1   that software October 26th, I'm not naive, and I think there's

 2   a significant chance that, for whatever reason, or reasons,

 3   you and/or Mr. Montgomery will not be complying with that

 4   order.

 5          And, therefore, in connection with the

 6   Government's -- I'm sorry, with the Defendants' request for

 7   sanctions.

 8          This is not a mild request.  You're seeking,

 9   Ms. Handman, the ultimate sanction of a dismissal with

10   prejudice, really based on a spoliation theory, or a violation

11   of a court order, or a combination of both.  But that's really

12   not the kind of routine, garden variety discovery matter that

13   I typically consider without the benefit of memoranda.  You're

14   asking me to issue a report and recommendation that this

15   entire case be dismissed because the software most likely will

16   not be timely produced to you, notwithstanding the order

17   requiring it.

18          So, therefore, I'm not going to be able to assess

19   that request simply based on a telephone hearing and a letter

20   or two.

21          So if you want me to seriously contemplate issuing

22   that kind of a drastic substantial order of either a dismissal

23   with prejudice or a finding that the software didn't exist or

24   never worked, or even an adverse inference, you're going to

25   have to do so in a specific written motion, and, more
```

```
 1    importantly, with a supporting memorandum of law.
 2            So my suggestion is that you get started on that
 3    project now.  I don't know whether you're going to be drafting
 4    it, or one of your colleagues or maybe Mr. Toth, or maybe
 5    other Holland & Knight lawyers, or maybe it will be drafted by
 6    committee, I don't know.  But my suggestion is that you get
 7    that project underway, because the sooner that you get that to
 8    me, the sooner I'll be able to make a ruling.  Because
 9    obviously I'm not going to be making a ruling simply based on,
10    number one, this phone call, and, number two, your motion and
11    memorandum.  I'm obviously going to have to need to see and
12    adequately review Mr. Montgomery's response.
13            I'm sure Mr. Klayman will want a full and complete
14    opportunity to respond to your written motion and memorandum.
15            So you should probably all start whatever research
16    is necessary to get that underway so that we don't have to
17    unduly delay this case any further.  I'll be issuing a written
18    administrative order probably Monday summarizing the specific
19    rulings.
20            But just in case there's any confusion, Mr. Klayman,
21    do you have any questions about the specific rulings and the
22    deadlines that you and Montgomery have to comply with the
23    rulings made this afternoon?
24            MR. KLAYMAN:  No, Your Honor.
25            We do await your written order, just in case we
```

```
 1   haven't written it down correctly.

 2          But I do have a request here, and we would ask that

 3   in terms of producing, as far as what Your Honor has ordered,

 4   communications with the FBI, that we be able to produce that

 5   and file it under seal.  I don't want this out for national

 6   security reasons and also for the health, safety and welfare

 7   of my own client, who's been threatened by the Government, by

 8   certain forces in the Government.

 9          We believe that what Risen wrote was the result of

10   trying to smear him, because he's been trying to come forward

11   for years.  In fact, we started this process with the FBI

12   about a year ago, long before this case was filed.  So I would

13   like to be able to file that under seal to protect him, with

14   Your Honor's permission.

15          THE COURT:  Well, based on what I've heard so far,

16   Mr. Klayman, we're just talking about some e-mails between

17   Ms. Handman and Mr. Schwartz, some e-mail from Mr. Montgomery

18   saying presumably here's where you would look for this

19   specific file and the software that you have.  Doesn't strike

20   me that any of these e-mails will contain any classified

21   information or information that, for some reason, needs to be

22   filed under seal.

23          MR. KLAYMAN:  Let me tell you what my concern is in

24   that regard.

25          THE COURT:  Sure, sure, go ahead.
```

```
 1              MR. KLAYMAN:  I don't mean to get personal here, but
 2    there is a personal aspect of it.
 3              Okay.  Ms. Handman, as I said in an earlier hearing,
 4    is very close with the Obama Administration and also very
 5    close with Mrs. Clinton.  Her husband is Harold Ickes.  Your
 6    Honor may know who he is.  She made reference to him -- I
 7    didn't bring it up -- at the earlier hearing.
 8              And I know from experience, having been with
 9    Judicial Watch, that Mr. Ickes will do things that -- and I'm
10    trying to find a diplomatic way of doing it -- are very
11    destructive and very politically based, and could use
12    information to try to destroy my client.
13              And that kind of thing, this closeness with the
14    Clinton Administration and with the Obama Administration,
15    causes me great concern that they will use any information
16    that's out there in the public record to try to destroy my
17    client.
18              And I also have the national security concern,
19    so . . .
20              THE COURT:  So Mr. Klayman, I hear what you're
21    saying, and here's my observation.
22              I'm going to assume for the sake of discussion that
23    your perspective is correct.  In other words, assume that
24    Ms. Handman's husband does, in fact, have that motivation.
25              Even if true, that doesn't mean that the documents
```

```
 1   that I'm requiring you to be filed would be the type of

 2   document that he or any other political operative could

 3   somehow use to unfairly intimidate, threaten or prejudice your

 4   client.  The documents seem, on their face, to be fairly

 5   innocuous.

 6          So even if you perceive him to be a very

 7   Machiavellian fellow who is sharpening his knives in order to

 8   go after you or Mr. Montgomery, if the information itself is

 9   innocuous, there's not much that he can do.

10          So I'm sensitive to your concern, and I don't want

11   to just, if I can use the phrase, willy-nilly minimize it.

12          But what I will do is I'll give you the opportunity

13   to review the materials yourself and take a good, hard look at

14   them, and if you, in good faith, believe that there is

15   something in these documents that compel an under-seal filing,

16   then I'll permit you to file a motion to file the materials

17   under seal in compliance with the local rule, which means you

18   have to explain the good grounds to file it under seal, and at

19   that point the documents will be filed under seal.

20          You will then --

21          MR. KLAYMAN:  I will do that.

22          THE COURT:  Let me just finish.

23          MR. KLAYMAN:  Okay.

24          THE COURT:  If you decide to do that -- and, by the

25   way, it doesn't have to be an all or nothing arrangement.
```

```
 1              In other words, let's say for the sake of
 2    discussion, Mr. Clayman, there are 12 pieces of paper that
 3    you're filing, seven e-mails and three letters -- I'm just --
 4    and two other memos.  So it may be that only two out of those
 5    12 pieces of paper are worthy of an under-seal filing.  So you
 6    would only try to file, or file a motion for an under-seal
 7    presentation as to the two pages, not to everything.  So
 8    you'll make a page-by-page good faith assessment.
 9              But then, in addition to that, you will file a
10    courtesy copy of your motion to file under seal, as well as
11    the under-seal documents, to me.  You can have them delivered
12    in one of two ways.  You can either have them hand delivered
13    to my chambers, or you can submit them to my e-file inbox,
14    which is Goodman@FLSD -- F, as in Frank -- FLSD.USCOURTS.GOV.
15              And then I'll be able to review those materials
16    myself and make a determination as to whether or not your
17    motion to file under seal was well taken.  And if it is well
18    taken, the provisional under-seal filing will remain under
19    seal.  And if I agree with some of your conclusions but not
20    others, I'll issue an appropriate ruling to unseal some of
21    these pages, but not others.  And if I disagree with all of
22    your presentation, then I'll issue an order to unseal all of
23    them.
24              By the way, this is not a procedure unique to this
25    case.  I have several major cases where people are regularly
```

1   filing materials under seal, and when I think that perhaps an

2   under-seal filing is not such a slam dunk decision I follow

3   this procedure, and then at times I agree with the under-seal

4   filing, and at times not, and then the documents are unsealed.

5          All I would ask you to do, Mr. Klayman, is -- is to

6   take a reasonable, rational view of these materials.

7          And my suspicion is that at least some of them may

8   not be so classified, so confidential, so sensitive, that they

9   need to be filed under seal, because my -- my knee jerk

10  reaction, even though I haven't seen the documents, my knee

11  jerk reaction is that Mr. Schwartz, who's a high ranking FBI

12  attorney, would be hard pressed to be writing Ms. Klayman

13  (sic) to say, but it's -- we're perfectly okay if these

14  documents are disclosed by someone else, if those documents

15  contained classified information.  I think he probably would

16  be hesitant about making that kind of a comment if the

17  documents were as sensitive as you suspect that they may be.

18         But in any event, that's the protocol that we will

19  follow, and everybody has their homework assignment, and to

20  the extent there's any confusion, the written order

21  memorializing the rulings will be out to give you some

22  guidance.

23         So --

24         MS. HANDMAN:  Judge Goodman, one other thing.

25         I assume that we will get copies of the filings --

```
 1   the motion to file under seal, as well as the unseal -- the --
 2   all the documents so that we can review and respond.  I mean,
 3   that's not putting on the record.  It's not subject to any
 4   restriction, other than obviously we won't make it public
 5   until you've ruled on what is or is not sealed, but I
 6   assume --
 7             THE COURT:  Well, sort of, but not exactly.
 8             In other words, when Mr. Klayman --
 9             First of all, he may not even file a motion to seal.
10   Maybe he'll review the documents and say, you know, on second
11   thought I may have overstated the sensitive nature, and maybe
12   they don't need to be filed under seal.  So that's always a
13   possibility.
14             But if he does decide to file it under seal, he'll
15   file a motion.  He'll have to follow the local rule
16   procedures, and it will have to be, you know, personally
17   hand-delivered over to the sealing clerk here in the Clerk of
18   the Court, and it will be a motion to file under seal, and
19   then the actual under-seal submissions will be attached.  And
20   so therefore that's filed under seal.
21             But, Mr. Klayman, you will serve counsel in the case
22   with a copy of the motion itself, not the under-seal
23   documents, but the motion.
24             Because the motion itself is not a sensitive
25   document.  The motion is merely the request for an under-seal
```

```
 1    filing, along with the purported rationale for the under-seal

 2    filing.  So obviously in the motion you're not going to be

 3    quoting the actual language from the documents under seal,

 4    because that would let the cat out of the bag.

 5              You understand what I'm saying, right?

 6              MR. KLAYMAN:  I do.

 7              And I just have a --

 8              MS. HANDMAN:  Judge Goodman, this is not -- I mean,

 9    when things get -- you know, a motion is made under seal, the

10    parties get to see it.  It's the public that doesn't get to

11    see it.

12              THE COURT:  No, no, no.

13              MS. HANDMAN:  Unless you're seeking in-camera

14    review, ex parte in-camera review.

15              And, you know, I absolutely take issue, of course,

16    with everything he said about me and my husband, but I won't

17    clutter the record with that.  But the notion that we should

18    not be able to see it, as well.  Yes, the public may not be

19    able to see it, and, yes, we're bound not to disclose it while

20    we see it and it's under seal.  But it's my understanding that

21    when there's a motion to file something under seal, that

22    doesn't exclude the parties to the litigation.  They are bound

23    by the sealing until it's unsealed.

24              THE COURT:  It depends, Ms. Handman.  It all depends

25    on the circumstances.
```

```
 1          I have cases all the time where people make an

 2   under-seal filing where the actual under-seal submission is

 3   not shown to the other side.

 4          For example, let's say that somebody is arguing that

 5   a document is protected by work product or attorney/client.

 6   Obviously, they're not going to be submitting copies of a work

 7   product document to the other side.  Instead, it's subject to

 8   an in-camera ex parte examination by the judge.  In this case

 9   it will be me.  And if I look at the material and decide that

10   it is privileged, then the under-seal submission remains under

11   seal, and the opposing party will not get to see it.

12          On the other hand, if I disagree with that theory,

13   then I'll make an appropriate ruling, and the documents are

14   unsealed, and then the opposing counsel gets to see it.

15          So in this particular --

16          MS. HANDMAN:  Your Honor, that's privilege material

17   that obviously, you know, you're trying to protect from the

18   other side seeing.  This is a motion to seal.  We have a

19   protective order in place, that it could be produced subject

20   to that, as well.  And I really don't see the same process

21   applying here, where -- as to the parties.  As to the public,

22   yes.

23          And I would point out if Mr. Klayman has it -- I

24   don't believe he's gotten classification -- clearance,

25   security clearance.  He says he doesn't have it, and that's
```

```
 1   why he hasn't looked at anything.  So, by definition, I don't
 2   think they could possibly be classified or subject to a
 3   security clearance, and I don't know that he could provide it
 4   to you without a security clearance.
 5            So I really don't think it's the same process as
 6   privilege, and we do have a protective order, and I am an
 7   officer of the court, and I would observe any sealing
 8   requirements that is in place.
 9            THE COURT:  So Mr. Klayman, is it your position that
10   the under-seal filing should also preclude opposing counsel
11   from reviewing these materials, or just the public?
12            MR. KLAYMAN:  Well, subject to your review, Your
13   Honor.
14            I think you laid out a very fair and reasonable and
15   legally defensible procedure here.  I'd like you to be able to
16   see it first.
17            Now, I do have concerns about it being turned over
18   before you have a chance to take a look at it.  And I've got
19   to tell you, I mean, Mrs. Handman started laughing when I made
20   reference to Harold Ickes, her husband.  But I deposed him
21   twice in the 1990s, and it was believed -- and I certainly
22   believe it based on the information I got -- that he
23   intimidated witnesses during that period of Clinton scandals.
24   And that's why the court, Judge Lambert, allowed me to depose
25   him.
```

```
1                  In fact, he was ordered back at a deposition, when

2      he left the deposition room claiming he was going to defecate

3      on my carpet.

4                  Okay.  So I have --

5                  THE COURT:  I think we're getting a little far

6      afield here, Mr. Klayman.

7                  MR. KLAYMAN:  Okay.  I have serious concerns, and I

8      want an order -- I would ask the Court to make an order to

9      Ms. Handman not to share this information with her husband.

10                 MS. HANDMAN:  Believe me, he has no interest in it.

11                 MR. KLAYMAN:  Oh, I believe he has a great interest,

12     because Mr. Montgomery does have information about both the

13     Obama Administration and Hillary Clinton, okay, and you are

14     both very close with her.

15                 THE COURT:  Listen, folks, folks, I'm sorry.

16                 It's now 5:30 on a Friday afternoon, and the hearing

17     is about to end.  In fact, I thought the hearing did end, and

18     then I asked if there were any questions about the ruling.

19                 So when you file --

20                 First of all, who knows whether you're going to even

21     want to file all or some of these documents under seal.  You

22     may have second thoughts.  But if you do want to file some or

23     all under seal, you'll file the appropriate motion, you'll

24     attach the documents to be filed under seal.  You'll serve

25     Ms. Handman with a copy of the motion, as well as copies of
```

```
1    the under-seal documents.

2              Ms. Handman will not be able to provide or share or

3    discuss those documents with her husband.

4              And then, in addition, you will serve me with a

5    courtesy copy of the under-seal documents.  I've already told

6    you the two alternatives for providing courtesy copies to me.

7              And then I will decide whether or not an under-seal

8    submission is possible.

9              Based on what you've told me so far, Mr. Klayman, it

10   sounds like you have a significant hurdle to clear to convince

11   me, because these documents sound to be relatively innocuous,

12   and the mere fact that you or Mr. Montgomery would prefer that

13   they not be filed, or that you (sic) might be potentially

14   embarrassing, or they're, quote, sensitive, whatever that

15   means, typically those are not sufficient reasons for an

16   under-seal filing.

17             So that's my general orientation.

18             So that's the ruling.  I think everybody understands

19   what's going to be happening in the next few days.

20             So we will be in recess, and I wish everybody a good

21   weekend.  Take care.  By, now.

22             MR. KLAYMAN:  Thank you, Your Honor.

23             MS. HANDMAN:  Thank you, Your Honor.

24        (Proceedings concluded.)

25                            * * * * *
```

```
 1                              *  *  *  *  *

 2                            I N D E X

 3   Oral Argument                                    2

 4                              *  *  *  *  *

 5                       E X H I B I T S

 6   (None.)

 7                              *  *  *  *  *

 8                          CERTIFICATE

 9

10       I, Stephen W. Franklin, Registered Merit Reporter, and

11   Certified Realtime Reporter, certify that the foregoing is a

12   correct transcript from the record of proceedings in the

13   above-entitled matter.

14       Dated this 22nd day of OCTOBER, 2015.

15

16       /s/Stephen W. Franklin
         _____
17       Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```

MR. BOHRER: [1] 5/9
MR. KLAYMAN: [37]
MS. HANDMAN: [18]
THE COURT: [49]
THE COURTROOM
DEPUTY: [1] 3/1

**$**

$25 [1] 23/9
$25 million [1] 23/9
$250,000 [1] 23/20
$2500 [1] 23/8
$2500-a-day [1] 23/8

**-**

-and [1] 2/8
-v [1] 1/5

**/**

/s/Stephen [1] 45/16

**1**

10:55 a.m [1] 28/19
12 [3] 29/17 37/2 37/5
12th [3] 21/16 22/12
30/18
13th [1] 23/23
15-20782-CIV-MARRA
[1] 1/2
15-20782-CIVIL-MART
INEZ [1] 3/3
16 [1] 1/8
1621 [1] 29/5
17 [1] 10/10
1919 [1] 2/6
1990s [1] 42/21
19th [1] 6/21
1st [2] 8/1 30/19

**2**

20006 [1] 2/7
2014 [1] 23/23
2015 [13] 1/8 10/18
21/14 22/6 22/8 29/11
29/13 29/21 30/3 30/17
30/19 30/19 45/14
2027 [1] 2/3
20th [1] 24/19
21 [1] 23/3
21st [2] 5/22 7/10
22 [4] 8/15 13/21 17/12
29/18
22nd [7] 5/19 5/23 6/4
7/15 9/8 10/18 45/14
24 [4] 7/24 9/11 22/8
29/21
24th [1] 30/18
2520 [1] 2/3
26 [2] 9/20 31/21
26th [3] 6/11 10/19 32/1
28 [5] 9/9 21/8 21/14
29/5 29/17
28th [1] 30/17

**3**

3000 [1] 2/9
31 [1] 29/20

33131 [1] 2/10
33145 [1] 2/4
33401 [1] 1/17
35,000 [1] 12/19
37 [3] 5/20 10/4 25/10
3768 [1] 1/16

**4**

45 [1] 24/2
47 [1] 10/20
49 [1] 23/20
4th [1] 10/11

**5**

51.6 million [3] 6/23
31/5 31/14
514-3768 [1] 1/16
552 [1] 29/7
561 [1] 1/16
5:30 [1] 43/16
5th [2] 28/18 30/3

**6**

600 million [4] 6/23
10/21 12/18 31/5
6th [2] 28/19 30/4

**7**

701 [2] 1/17 2/9
7th [1] 8/8

**8**

800 [1] 2/7
8th [3] 6/12 10/24 21/8

**A**

a.m [1] 28/19
ability [3] 10/2 11/10
20/8
able [12] 8/25 9/23
11/13 32/18 33/8 34/4
34/13 37/15 40/18 40/19
42/15 44/2
above [1] 45/13
above-entitled [1] 45/13
absence [2] 7/21 30/8
absent [3] 6/17 7/3 8/4
absolutely [2] 27/9
40/15
access [6] 6/6 12/6 13/16
17/3 18/12 18/16
accordance [2] 21/25
29/4
according [1] 6/22
Act [5] 22/2 26/13 26/19
29/7 29/9
action [1] 10/5
actual [3] 39/19 40/3
41/2
actually [1] 4/5
addition [4] 30/24 31/21
37/9 44/4
additional [3] 3/7 10/12
30/21
adequately [1] 33/12
Administration [4] 35/4
35/14 35/14 43/13
administrative [1] 33/18

admitted [1] 17/18
adverse [3] 10/8 14/16
32/24
advised [4] 7/24 8/9
9/12 10/23
advising [2] 5/25 6/1
affidavit [2] 12/10 20/22
affidavits [1] 12/3
afield [1] 43/6
after [3] 7/25 15/5 36/8
afternoon [4] 3/5 16/2
33/23 43/16
again [6] 5/17 8/7 8/9
15/11 25/13 28/11
agents [1] 27/23
ago [2] 15/22 34/12
agree [2] 37/19 38/3
agreed [2] 12/8 21/12
agreement [9] 9/9 21/2
21/6 21/9 21/9 21/13
22/11 29/17 30/18
agrees [1] 22/18
ahead [1] 34/25
al [3] 1/6 3/3 24/3
allegation [1] 18/10
alleged [3] 7/3 22/24
22/25
allow [2] 15/15 15/16
allowed [3] 14/7 26/5
42/24
along [2] 26/5 40/1
already [7] 9/15 17/7
18/3 18/6 20/7 31/7 44/5
also [11] 9/14 11/4 19/7
21/17 22/1 24/14 29/6
34/6 35/4 35/18 42/10
alternatives [1] 44/6
always [1] 39/12
am [1] 42/6
ambush [1] 3/23
among [2] 21/1 24/1
24/2 31/14
amongst [1] 19/2
amount [4] 7/1 19/2
30/23 31/4
amounting [1] 6/23
and/or [2] 17/22 32/3
another [3] 15/5 19/9
23/13
answer [2] 30/21 31/12
any [38]
anybody [1] 18/17
anything [8] 3/9 12/7
14/1 17/17 20/17 20/19
27/18 42/1
anyway [1] 17/24
aol.com [1] 1/18
apparently [1] 4/2
appearances [2] 1/14
3/11
applying [1] 41/21
appreciate [1] 18/4
approaching [1] 9/2
appropriate [3] 37/20
41/13 43/23
approximately [1] 23/20
argued [1] 19/7
arguing [1] 41/4

argument [3] 18/4 18/21
45/3
Arizona [1] 23/24
around [1] 12/7
arrangement [1] 36/25
articles [1] 17/7
aside [1] 18/24
ask [11] 9/14 9/19 9/21
10/3 10/5 10/6 20/25
29/16 34/2 38/5 43/8
asked [4] 7/10 8/7 8/9
43/18
asking [9] 8/1 13/3
20/17 22/6 24/25 24/25
25/10 29/11 32/14
aspect [1] 35/2
assert [1] 22/15
assertion [1] 24/7
assess [1] 32/18
assessment [1] 37/8
assignment [1] 38/19
assist [1] 6/18
assistant [5] 7/23 7/23
12/1 16/19 21/21
assume [1] 11/18 12/24
18/14 35/22 35/23 38/25
39/6
assuming [1] 28/3
assumption [1] 28/4
attach [1] 43/24
attached [2] 28/24 39/19
attaching [1] 6/11
attempt [1] 12/12
attention [1] 5/15
attorney [4] 12/1 16/19
38/12 41/5
attorney/client [1] 41/5
August [22]
August 1 [1] 9/10
August 12 [1] 29/17
August 12th [3] 21/16
22/12 30/18
August 19th [1] 6/21
August 20th [1] 24/19
August 21 [1] 23/3
August 21st [1] 5/22
August 22 [2] 8/15
29/18
August 22nd [6] 5/19
5/23 6/4 7/15 9/8 10/18
August 26th [2] 6/11
10/19
August 31 [1] 29/20
August 4 [1] 23/3
August 4th [1] 10/11
AUSA [2] 6/10 12/8
authority [2] 10/10
10/12
available [1] 31/2
Avenue [2] 2/6 2/9
await [1] 33/25
awarded [2] 25/11
aware [1] 6/15
away [1] 9/2

**B**

back [5] 4/6 6/13 15/5
23/2 43/1

background's [1] 14/6
bag [1] 40/4
Baker [7] 6/14 6/23 7/1
7/5 10/24 25/18 27/25
Baker's [8] 7/13 9/11
11/24 21/7 21/18 21/21
22/17 30/21
bankruptcy [1] 23/10
base [1] 17/17
based [10] 13/9 17/6
21/9 32/10 32/19 33/9
34/15 35/11 42/22 44/9
basically [1] 26/8
basing [1] 15/11
basis [4] 13/2 17/3 22/4
29/8
Beach [1] 1/17
because [23]
beeping [1] 3/6
before [8] 1/11 6/21
6/21 18/4 18/21 23/24
34/12 42/18
beginning [1] 28/10
behalf [3] 24/18 26/20
30/25
being [5] 4/14 11/12
12/17 24/14 42/17
believe [10] 3/12 20/14
21/8 24/13 34/9 36/14
41/24 42/22 43/10 43/11
believed [1] 42/21
below [1] 29/16
benefit [1] 32/13
best [3] 11/10 24/5 31/2
between [4] 21/3 28/2
30/12 34/16
big [1] 28/3
Bloomberg [1] 13/11
bogus [1] 28/8
Bohrer [2] 2/8 5/10
book [5] 13/13 13/14
17/17 17/24 18/18
both [7] 9/10 12/3 19/5
21/18 32/11 43/12 43/14
bottom [1] 14/5
Boulevard [1] 4/1
bound [2] 40/19 40/22
Brickell [1] 2/9
brief [1] 9/1
briefed [1] 23/3
bring [4] 5/14 28/11
28/13 35/7
brought [3] 17/11 25/4
28/10
burden [1] 18/9 18/20
burdens [1] 18/8

**C**

called [2] 12/16 23/15
Calling [1] 3/2
came [2] 13/10 15/14
camera [3] 40/13 40/14
41/8
can't [9] 16/17 25/5 25/6
25/9 26/10 26/14 26/18
28/1 31/12
care [1] 44/21
carpet [1] 43/3

**C**

case [32]
cases [2] 37/25 41/1
cat [1] 40/4
Catch [2] 13/21 17/12
causes [1] 35/15
causing [1] 10/2
CC'd [1] 21/18
certain [2] 21/10 34/8
certainly [2] 18/4 42/21
CERTIFICATE [1]
45/8
Certified [1] 45/11
certifies [1] 24/5
certify [1] 45/11
cetera [1] 24/23
CFR [1] 29/5
challenging [1] 19/11
chambers [1] 37/13
chance [2] 32/2 42/18
characterization [1]
25/25
circumstances [1] 40/25
circumvent [1] 23/14
cited [2] 10/10 23/4
CIV [1] 1/2
civil [8] 3/3 12/5 16/21
21/25 22/20 22/23 29/4
31/13
claiming [1] 43/2
claims [1] 6/24
clandestine [1] 24/8
clarification [3] 8/2 22/7
29/12
clarify [1] 27/5
classification [4] 10/25
12/13 22/19 41/24
classified [27]
Clayman [1] 37/2
clear [2] 16/5 44/10
clearance [4] 41/24
41/25 42/3 42/4
clearly [1] 8/14
Clematis [1] 1/17
clerk [2] 39/17 39/17
clever [1] 17/25
client [6] 21/12 34/7
35/12 35/17 36/4 41/5
client's [1] 21/10
clients [2] 24/17 27/23
Clinton [5] 12/16 35/5
35/14 42/23 43/13
close [4] 11/18 35/4 35/5
43/14
closeness [1] 35/13
clutter [1] 40/17
colleagues [2] 18/1 33/4
collection [1] 24/8
combination [1] 32/11
comes [1] 15/6
Comey [1] 27/24
coming [1] 30/10
comment [2] 31/24
38/16
committee [1] 33/6
communicated [3] 7/22
11/8 18/25

communication [1]
31/16
communications [20]
comparison [1] 12/19
compel [1] 36/15
complete [2] 24/1 33/13
completely [1] 12/11
compliance [1] 36/17
comply [4] 5/18 10/17
30/9 33/22
complying [1] 32/3
comprehensive [2] 31/2
31/10
compromise [5] 14/16
14/24 16/14 16/16 19/12
con [1] 24/10
concern [4] 34/23 35/15
35/18 36/10
concerned [1] 16/22
concerning [4] 12/16
29/19 29/21 30/14
concerns [3] 17/6 42/17
43/7
concerted [1] 11/9
concession [1] 23/9
concluded [1] 44/24
conclusion [3] 23/25
24/4 24/15
conclusions [2] 24/20
37/19
conduct [2] 10/25 22/19
conducting [2] 10/24
12/13
confer [2] 7/25 8/8
confidential [4] 13/12
13/16 17/18 38/8
confirmation [1] 7/22
8/10
confirmed [2] 13/15
13/20
confusion [3] 27/2 33/20
38/20
Congressional [2] 13/11
17/8
connection [3] 21/25
29/4 32/5
consider [1] 32/13
consistent [1] 29/9
contacted [1] 25/19
contain [3] 20/13 24/3
34/20
contained [2] 24/7 38/15
containing [1] 6/22
contains [1] 20/11
contemplate [1] 32/21
contest [1] 28/5
context [2] 11/15 16/4
continued [1] 6/6
contrary [2] 11/23 13/13
convince [1] 44/10
copied [3] 11/17 20/17
20/18
copies [6] 30/11 31/16
38/25 41/6 43/25 44/6
copy [14] 5/25 6/13 8/6
8/16 8/17 9/25 22/9
22/24 25/8 29/14 37/10
39/22 43/25 44/5

Coral [1] 2/3
corner [1] 17/21
correct [3] 4/16 35/23
45/12
correctly [1] 34/1
correspondence [3]
11/16 30/12 30/20
couldn't [2] 11/2 17/4
counsel [14] 3/7 3/13
6/10 6/12 6/13 6/14 7/23
8/7 20/25 21/22 27/10
39/21 41/14 42/10
counter [1] 24/20
country [1] 15/11
County [1] 23/19
couple [1] 15/20
course [4] 14/8 15/3
26/5 40/15
court [33]
Court's [3] 5/18 8/14
8/23
courtesy [4] 28/2 37/10
44/5 44/6
cover [1] 24/11
covered [2] 22/2 29/7
CPE [1] 1/16
create [2] 11/3 13/21
creation [1] 7/8
creativity [1] 18/5
criminal [9] 11/11 11/15
11/19 11/22 14/17 14/24
16/14 16/21 22/23
criminally [1] 16/22
critical [2] 8/19 18/7
CRR [2] 1/16 45/17
Curtis [5] 6/10 16/20
22/22 30/13 30/14

**D**

damage [1] 14/25
data [3] 22/25 24/6 24/7
date [5] 7/8 21/4 21/5
21/5 28/17
dated [2] 21/13 45/14
daughter [1] 4/15
Davis [1] 2/6
days [3] 6/21 12/15
44/19
DC [3] 2/7 5/5 24/19
deadline [1] 9/1
deadlines [1] 33/22
deal [1] 20/15
dealt [1] 27/24
Debra [1] 16/20
decide [4] 36/24 39/14
41/9 44/7
decision [2] 9/24 38/2
declassification [1]
15/17
defamation [1] 18/7
defecate [1] 43/2
defend [5] 10/2 25/3
25/5 25/6 25/9
defendants [9] 1/7 2/5
5/25 6/8 11/4 16/15 17/2
18/1 31/22
Defendants' [4] 6/14
10/2 29/19 32/6

defense [2] 5/14 20/25
defensible [1] 42/15
defiance [1] 8/22
definition [1] 42/1
delay [1] 33/17
deliberate [2] 8/22 9/24
delivered [3] 37/11
37/12 39/17
demand [1] 6/16
demeanor [1] 3/25
denial [1] 5/22
denied [1] 30/7
denigrate [1] 24/20
DENNIS [1] 1/3
Department [3] 11/20
17/14 27/21
depends [2] 40/24 40/24
depose [1] 42/24
deposed [2] 13/15 42/20
deposition [2] 43/1 43/2
described [2] 5/22 6/5
designated [2] 13/24
17/9
designation [1] 7/6
despite [1] 15/4
destroy [2] 35/12 35/16
destructive [1] 35/11
detailed [1] 31/9
determination [2] 16/9
37/16
determine [2] 15/17
16/8
didn't [8] 13/16 14/1
14/9 17/17 18/15 18/22
32/23 35/7
different [1] 26/8
difficult [1] 8/21
difficulty [1] 11/6
digital [1] 24/9
diligent [1] 12/25
Dina [1] 12/4
diplomatic [1] 35/10
directly [2] 27/25 31/18
Director [1] 27/24
disagree [2] 37/21 41/12
discharged [1] 23/11
disclose [1] 40/19
disclosed [1] 38/14
disclosing [1] 16/12
disclosure [1] 29/24
discovery [9] 1/10 5/13
5/19 8/18 9/1 9/4 15/8
30/23 32/12
discs [1] 14/13
discuss [1] 44/3
discussion [3] 18/14
35/22 37/2
dismiss [5] 10/5 13/8
15/13 15/13 17/2
dismissal [2] 32/9 32/22
dismissed [5] 10/6 13/22
17/15 17/23 32/15
dispute [1] 5/13
DISTRICT [2] 1/1 1/1
diverted [1] 14/6
document [8] 6/15 8/20
28/8 31/17 36/2 39/25
41/5 41/7

documentation [2] 9/17
10/21
documents [39]
does [7] 11/1 20/13
20/14 26/2 35/24 39/14
43/12
doesn't [9] 18/11 18/18
18/19 34/19 35/25 36/25
40/10 40/22 41/25
dog [5] 4/10 4/11 4/14
4/19 4/20
doing [2] 26/20 35/10
DOJ [1] 24/14
DOJ's [2] 22/1 29/5
don't [30]
done [3] 9/15 9/18 13/25
34/1
drafted [1] 33/5
drafting [1] 33/3
Drake [1] 24/17
Drake's [1] 24/6
drastic [1] 32/22
draw [1] 10/8
drive [2] 7/6 24/8
drives [11] 6/22 10/21
16/13 21/11 23/20 23/22
24/2 24/12 24/16 26/2
30/15
due [4] 9/24 12/21 13/1
15/7
dump [2] 8/20 22/25
dunk [1] 38/2
during [1] 42/23

**E**

e-file [1] 37/13
e-mail [33]
e-mails [6] 19/18 30/19
31/8 34/16 34/20 37/3
earlier [4] 18/24 30/6
35/3 35/7
early [1] 13/8
effect [2] 6/2 27/19
effort [5] 11/9 23/13
26/4 30/21 31/8
either [5] 5/6 10/7 31/17
32/22 37/12
electronic [1] 30/23
electronically [1] 19/2
else [5] 5/3 30/9 38/14
embarrassing [1] 44/14
enable [1] 25/2
end [2] 43/17 43/17
enforcement [1] 27/22
engaged [1] 8/22
entire [4] 6/3 17/5 26/6
32/15
entitled [1] 45/13
ESI [1] 30/15
ESQ [4] 2/2 2/5 2/5 2/8
et [4] 1/6 3/3 24/23 29/5
et cetera [1] 24/23
even [16]
event [2] 18/21 38/18
everybody [4] 3/8 38/19
44/18 44/20
everyone [1] 5/12

**E**

everything [4]  13/9 14/4
37/7 40/16
evidence [5]  6/3 7/17
8/19 18/7 24/10
evidencing [1]  7/12
ex [2]  40/14 41/8
exact [1]  26/15
exactly [3]  27/11 31/13
39/7
examination [1]  41/8
examine [1]  9/3
examined [1]  24/6
example [1]  41/4
exchange [4]  8/6 8/8
22/9 29/14
exclude [1]  40/22
exist [4]  10/7 10/9 11/1
32/23
existed [4]  10/20 10/22
11/2 12/7
exists [5]  11/10 11/13
14/11 16/7 26/1
experience [1]  35/8
expert [4]  9/3 13/24
14/2 17/10
expertise [1]  24/20
experts [3]  14/3 23/21
24/17
explain [1]  36/18
explanation [1]  20/5
expose [1]  14/14
extension [2]  9/1 15/8
extent [3]  22/1 29/6
38/20
extreme [2]  10/2 25/25

**F**

face [1]  36/4
fact [19]
facts [1]  26/1
failure [1]  5/17
fair [1]  42/14
fairly [1]  36/4
faith [3]  14/22 36/14
37/8
false [1]  13/14
falsity [1]  18/9
far [4]  34/3 34/15 43/5
44/9
fast [1]  9/1
FBI [82]
FBI's [5]  6/12 7/23 9/12
14/12 16/14
federal [3]  14/2 23/24
24/19
fellow [3]  3/21 3/24 36/7
few [2]  27/3 44/19
field [1]  12/1
file [25]
filed [13]  12/3 24/18
30/7 31/18 34/12 34/22
36/1 36/19 38/9 39/12
39/20 43/24 44/13
files [3]  6/23 31/5 31/14
filing [14]  30/2 30/11
36/15 37/3 37/5 37/18
38/1 38/2 38/4 40/1 40/2
41/2 42/10 44/16
filings [1]  38/25
finally [1]  9/19
finding [1]  10/7 32/23
finish [1]  36/22
Firm [1]  2/3
first [9]  3/12 10/5 10/17
16/8 25/13 26/14 39/9
42/16 43/20
FL [2]  2/4 2/10
FLORIDA [3]  1/1 1/7
1/17
FLSD [1]  37/14
FLSD.USCOURTS.GO
V [1]  37/14
folks [3]  3/5 43/15 43/15
follow [5]  9/4 15/21 38/2
38/19 39/15
follow-up [2]  9/4 15/21
followed [2]  21/20 23/10
following [1]  31/19
Footnote [1]  10/10
Footnote 17 [1]  10/10
forces [1]  34/8
foregoing [1]  45/11
foreign [1]  14/15
formal [1]  8/4
former [2]  11/19 23/21
forthright [1]  12/11
forward [1]  34/10
forwarded [5]  19/7
19/18 21/21 25/17 31/17
four [2]  7/8 27/3
Frank [1]  37/14
Franklin [4]  1/16 45/10
45/16 45/17
frankly [5]  18/11 18/22
22/14
fraud [1]  24/1
fraudulent [2]  17/5
24/10
Friday [2]  5/12 43/16
front [1]  17/11
full [1]  33/13
furnish [1]  27/10
further [1]  33/17

**G**

gain [1]  24/11
garden [1]  32/12
gave [6]  6/20 19/1 20/10
22/25 23/20 26/2
gee [1]  31/12
general [4]  6/12 7/23
21/21 44/17
gentleman [1]  21/20
gets [1]  41/14
getting [1]  43/5
give [6]  4/5 14/1 19/17
20/15 36/12 38/21
given [6]  11/8 13/14
17/9 19/3 20/16 28/2
giving [2]  8/16 17/10
goes [1]  21/15
going [16]
gonna [1]  30/1
good [9]  3/5 3/17 5/2

38/1 38/2 38/4 40/1 40/2
41/2 42/10 44/16
14/22 36/14 36/18
37/8 44/20
GOODMAN [5]  1/11
3/4 37/14 38/24 40/8
gosh [3]  4/1 4/16 5/1
got [4]  3/8 14/20 42/18
42/22
gotten [3]  4/19 8/13
41/24
Government [14]  6/15
6/18 7/3 13/13 13/17
21/3 21/12 22/14 22/18
23/1 23/5 24/11 34/7
34/8
Government's [1]  32/6
grant [1]  21/12
great [1]  11/5 35/15
43/11
grounds [1]  36/18
guess [2]  4/6 4/22
guidance [2]  31/10
38/22

**H**

hand [4]  12/2 37/12
39/17 41/12
hand-delivered [1]
39/17
Handman [26]
Handman's [1]  35/24
Hang [1]  20/24
happen [1]  13/7
happening [1]  44/9
happy [4]  5/12 5/15
10/11 27/10
hard [13]  6/22 10/20
16/13 23/20 23/22 24/2
24/8 24/12 24/16 26/2
30/15 36/13 38/12
hardly [1]  24/20
Harold [2]  35/5 42/20
hasn't [2]  15/8 42/1
haven't [5]  3/9 18/5 27/2
34/1 38/10
having [2]  11/7 35/8
he'll [3]  39/10 39/14
39/15
he's [11]  11/24 14/19
19/8 19/14 21/21 25/1
25/4 25/6 25/17 34/10
41/24
heads [1]  17/16
headway [2]  18/22
18/23
health [1]  34/6
hear [2]  5/15 35/20
heard [3]  3/6 15/22
34/15
hearing [11]  1/10 5/18
5/22 6/21 13/8 23/3
32/19 35/3 35/7 43/16
43/17
hearings [2]  15/24 27/3
held [3]  4/6 4/25 23/5
helpful [1]  14/5
helping [1]  15/4
Hence [1]  7/1
here [15]  3/8 5/9 5/13

5/17 12/18 14/5 14/18
16/22 30/23 34/2 35/1
39/17 41/21 42/15 43/6
30/5 34/18 35/21
herring [1]  13/19
hesitant [1]  38/16
high [3]  12/20 24/3
38/11
highest [1]  11/25
highly [3]  14/22 21/11
27/23
Hillary [2]  12/16 43/13
himself [1]  30/25
hold [1]  4/23
holding [1]  4/11
Holland [2]  2/9 33/5
Hollywood [1]  4/2
homework [1]  38/19
honest [1]  11/24
honor [39]
Honor's [2]  29/18 34/14
HONORABLE [2]  1/11
3/4
hope [1]  13/4
hopefully [1]  3/12
hoping [1]  3/6
hospital [2]  15/5 19/9
However [2]  11/11
22/18
huge [1]  12/19
hurdle [1]  44/10
husband [6]  35/5 35/24
40/16 42/20 43/9 44/3

**I**

I'd [2]  27/10 42/15
I'll [9]  20/22 33/8 33/17
36/12 36/16 37/15 37/20
37/22 41/13
I'm [21]
I've [8]  15/25 18/5 19/18
27/3 27/22 34/15 42/18
44/5
Ickes [3]  35/5 35/9
42/20
identifiers [1]  7/8
identify [1]  9/16
ill [1]  19/9
immunity [2]  14/20
21/12
important [4]  6/3 12/14
14/7 20/4
importantly [2]  6/17
33/1
impose [1]  10/3
impossible [1]  8/21
in-camera [3]  40/13
40/14 41/8
inbox [1]  37/13
include [3]  22/10 29/23
30/16
including [2]  9/9 9/22
incredibly [1]  18/17
indeed [4]  15/19 24/21
24/21 24/22
indicates [1]  3/7
inference [2]  10/8 32/24

informant [2]  14/19
19/14
information [42]
information's [1]  15/25
initial [2]  13/8 16/8
initially [1]  14/10
innocuous [2]  36/5 36/9
44/11
inquiry [1]  26/6
inside [1]  13/13
instead [3]  9/25 24/10
41/7
instructions [5]  7/4
19/17 20/10 31/2 31/10
interest [2]  43/10 43/11
interests [1]  14/15
internal [1]  14/23
intervene [1]  22/16
interview [1]  4/6
interviewed [2]  3/21
3/24
interviews [2]  3/23 4/22
intimidate [1]  36/3
intimidated [1]  42/23
introduced [1]  23/23
investigation [8]  11/11
11/15 11/19 14/17 14/24
16/14 23/15 23/17
investigatory [1]  11/21
involved [1]  11/22
ironic [1]  13/5
irretrievable [1]  25/8
issue [15]  6/19 13/5
17/11 17/20 24/16 25/25
28/14 30/23 31/3 31/13
31/22 32/14 37/20 37/22
40/15
issued [1]  21/4
issuing [2]  32/21 33/17
it's [33]
items [1]  21/13
itself [4]  8/12 36/8 39/22
39/24

**J**

JAMES [3]  1/6 12/4
12/4
Jazeera [1]  24/3
jerk [2]  38/9 38/11
Jimmy [2]  3/19 3/22
JONATHAN [2]  1/11
3/4
judge [13]  1/12 13/3
15/10 15/25 17/22 17/22
23/24 24/13 30/8 38/24
40/8 41/8 42/24
judgment [2]  23/9 23/11
Judicial [1]  35/9
July [5]  9/9 21/8 21/14
29/17 30/17
July 28 [4]  9/9 21/8
21/14 29/17
July 28th [1]  30/17
June [1]  8/18
June 1 [1]  8/18
jurist [1]  12/25
just [25]
Justice [3]  11/20 17/14

## J

Justice... [1] 27/21

## K

keep [1] 9/24
keeping [3] 5/25 8/17 11/18
Kimmel [2] 3/19 3/22
kind [5] 17/16 32/12 32/22 35/13 38/16
Kirk [1] 24/17
Klayman [39]
knee [2] 38/9 38/10
Knight [2] 2/9 33/5
knives [1] 36/7
know [35]
knowing [1] 28/3
knowledge [3] 20/16 24/6 26/8
knows [3] 8/25 26/11 43/20

## L

laid [1] 42/14
Lambert [1] 42/24
language [1] 40/3
Larry [3] 2/2 3/14 16/20
last [4] 3/18 13/24 17/10 27/3
lately [1] 5/7
laughing [1] 42/19
Laura [2] 2/5 5/4
law [3] 2/3 27/22 33/1
lawsuit [1] 31/14
lawsuits [1] 20/2
lawyer [1] 27/21
lawyers [1] 33/5
lead [2] 16/12 19/23
least [1] 38/7
leave [1] 6/2
left [1] 43/2
legal [1] 11/5
legally [1] 42/15
legitimate [1] 14/8
let [6] 15/3 16/5 20/25 34/23 36/22 40/4
let's [7] 3/11 15/6 18/14 27/5 28/15 37/1 41/4
letter [19]
letters [1] 37/3
liability [1] 11/3
lightly [1] 16/18
likely [1] 32/15
limited [1] 9/9
line [3] 3/7 14/5 26/6
Listen [1] 43/15
litigation [3] 22/21 29/4 40/22
litigations [1] 21/25
little [1] 43/5
local [2] 36/17 39/15
locate [6] 7/3 7/18 8/11 9/17 11/13 31/11
locating [1] 6/18
location [2] 9/7 29/22
long [2] 24/23 34/12
looked [3] 3/24 15/25

42/1
looking [3] 14/12 21/2 21/6
lose [1] 17/16
lot [3] 17/11 20/2 20/3

## M

Machiavellian [1] 36/7
Magazine [1] 13/10
magistrate [2] 1/12 17/22
mail [33]
mails [6] 19/18 30/19 31/8 34/16 34/20 37/3
main [1] 18/8
major [1] 37/25
makes [2] 8/20 24/15
making [8] 12/11 13/5 18/23 26/4 27/8 28/7 33/9 38/16
man [1] 11/24
manner [2] 10/1 25/7
manufactured [1] 28/8
Maricopa [1] 23/19
MARRA [1] 1/2
married [1] 4/19
Marshals [1] 24/13
MARTINEZ [3] 3/3 13/3 30/8
massive [6] 7/1 8/20 19/2 30/22 31/4 31/14
material [4] 30/15 31/4 41/9 41/16
materials [7] 22/20 36/13 36/16 37/15 38/1 38/6 42/11
matter [9] 5/14 11/22 12/5 12/8 12/20 16/17 18/11 32/12 45/13
matters [2] 12/14 12/16
maybe [9] 4/18 4/19 17/21 27/2 33/4 33/4 33/5 39/10 39/11
me [31]
mean [10] 12/18 16/21 17/13 17/17 28/9 35/1 35/25 39/2 40/8 42/19
meaning [1] 26/17
means [3] 7/2 36/17 44/15
meant [1] 13/14
meantime [1] 15/16
meet [2] 7/25 8/8
meeting [1] 11/25
memo [1] 23/22
memoranda [2] 23/4 42/13
memorandum [4] 10/11 33/1 33/11 33/14
memorialized [1] 21/13
memorializing [1] 38/21
memos [1] 37/4
mentioned [4] 21/4 22/11 22/22 23/16
mere [1] 4/21
merely [1] 39/25
Merit [1] 45/10
Miami [4] 1/7 2/4 2/10

12/1
Micah [1] 2/5
Micha [1] 5/4
might [1] 44/13
mild [1] 32/8
million [8] 6/23 6/23 10/21 12/18 23/9 31/5 31/5 31/14
minimize [1] 36/11
minimum [1] 10/8
minute [1] 20/24
minutes [1] 15/22
missed [1] 3/9
missing [1] 12/20
misspeak [1] 16/2
misspoke [1] 16/4
mix [2] 16/21 22/23
modern [1] 24/9
Monday [1] 9/6 9/15 30/2 33/18
Mont [1] 23/15
MONTGOMERY [37]
Montgomery's [4] 20/9 30/14 30/25 33/12
month [1] 9/2
months [2] 4/25 4/25
moot [1] 14/13
most [7] 6/3 6/16 20/4 31/9 31/9 31/10 32/15
motion [25]
motivation [1] 35/24
moving [3] 12/21 15/3 15/7
Mr. [110]
Mr. Baker [7] 6/14 6/23 7/1 7/5 10/24 25/18 27/25
Mr. Baker's [8] 7/13 9/11 11/24 21/7 21/18 21/21 22/17 30/21
Mr. Clayman [1] 37/2
Mr. Drake's [1] 24/6
Mr. Ickes [1] 35/9
Mr. Klayman [35]
Mr. Mont [1] 23/15
Mr. Montgomery [30]
Mr. Montgomery's [4] 20/9 30/14 30/25 33/12
Mr. Risen [4] 13/10 13/12 17/3 18/12
Mr. Schwartz [13] 8/3 9/12 11/16 20/16 21/20 26/7 26/17 27/15 27/18 30/3 31/1 34/17 38/11
Mr. Schwartz's [2] 25/13 28/20
Mr. Ted [1] 28/16
Mr. Toth [1] 33/4
Mr. Weebie's [1] 24/5
Mrs. [2] 35/5 42/19
Mrs. Clinton [1] 35/5
Mrs. Handman [1] 42/19
Ms. [29]
Ms. Curtis [3] 22/22 30/13 30/14
Ms. Handman [23]
Ms. Handman's [1]

35/24
Ms. James [1] 12/4
Ms. Klayman [1] 38/12
much [5] 18/12 18/22 18/23 27/2 36/9
must [4] 16/8 21/25 29/4 31/16
myself [4] 12/3 16/1 25/18 37/16

## N

naive [1] 32/1
name [4] 7/7 14/2 17/10 25/13
national [5] 14/25 16/16 19/12 34/5 35/18
nature [1] 39/11
necessary [4] 8/11 15/7 15/9 33/16
need [10] 4/24 9/2 12/6 15/12 22/3 29/8 30/9 33/11 38/9 39/12
needed [1] 7/5
needs [1] 34/21
neither [2] 22/18 26/2
network [2] 24/4 24/9
Nevada [1] 23/4
never [12] 4/19 11/7 13/12 15/25 17/23 18/15 18/16 18/16 20/18 23/10 27/18 32/24
news [2] 12/15 13/11
newspaper [1] 17/7
next [3] 30/10 30/24 44/19
nice [2] 25/23 27/12
night [1] 3/19
nilly [3] 11/3 28/1 36/11
no [27]
noise [1] 3/6
nonclassified [1] 6/6
none [2] 24/6 45/6
Notably [1] 6/17
note [1] 13/13
noted [1] 18/6
nothing [2] 26/19 36/25
notice [2] 10/19 30/2
notion [1] 40/17
notwithstanding [1] 32/16
November [1] 23/23
November 13th [1] 23/23
NSA [2] 23/21 24/17
number [3] 7/6 33/10 33/10
NW [1] 2/6

## O

oath [1] 20/22
Obama [3] 35/4 35/14 43/13
objected [1] 30/6
objection [14] 8/5 12/25 13/18 14/8 14/8 14/14 15/16 17/19 19/11 22/8 22/14 26/6 26/21 29/13
objection's [1] 15/19

objections [1] 8/9
obligation [1] 22/19
observation [2] 31/24 35/21
observe [1] 42/7
observed [1] 8/19
obtain [1] 21/6
obviously [2] 12/17 13/14 18/12 33/9 33/11 39/4 40/2 41/6 41/17
occasion [1] 26/3
October [16]
October 1 [3] 9/12 22/6 29/11
October 1st [2] 8/1 30/19
October 26 [2] 9/20 31/21
October 26th [1] 32/1
October 5 [1] 7/22
October 5th [2] 28/18 30/3
October 6th [2] 28/19 30/4
October 7th [1] 8/8
off [1] 3/11
office [2] 12/1 23/19 23/21
officer [3] 20/8 27/22 42/7
Official [1] 1/16
oh [5] 4/7 4/9 4/16 26/15 43/11
okay [15] 5/2 16/5 18/1 20/14 20/21 26/13 27/1 27/16 29/1 35/3 36/23 38/13 43/4 43/7 43/13
on-the-street [1] 3/23
one [19]
ones [1] 22/10
ongoing [2] 11/11 14/16
only [9] 6/14 8/16 17/10 22/14 22/24 24/16 25/7 37/4 37/6
operative [1] 36/2
opinions [1] 17/4
opportunity [4] 12/24 20/15 33/14 36/12
opposing [3] 41/11 41/14 42/10
opposite [2] 26/15
oral [2] 19/4 45/3
orally [1] 16/20
order [33]
ordered [6] 6/4 7/14 9/8 10/18 34/3 43/1
orders [1] 14/23
orientation [1] 44/17
others [2] 37/20 37/21
otherwise [1] 24/7
our [11] 7/25 8/22 9/2 10/10 12/25 15/2 23/3 24/16 25/8 25/9 26/5
outlined [1] 25/10
outright [1] 24/10
over [20]
overstated [1] 39/11
own [3] 8/16 9/25 34/7

**P**

page [4]  1/15 23/22 37/8 37/8
page-by-page [1]  37/8
pages [7]  6/24 10/21 12/18 12/19 31/5 37/7 37/21
paid [1]  23/19
paint [1]  17/21
Palm [1]  1/17
paper [2]  37/2 37/5
paragraph [5]  5/18 6/4 7/14 9/8 29/19
paragraph 5 [4]  5/18 7/14 9/8 29/19
paragraph 6 [1]  6/4
paralegal [1]  12/4
parameters [1]  26/3
paren [1]  6/7
parte [2]  40/14 41/8
participated [1]  15/4
particular [3]  18/6 31/1 41/15
particularly [2]  4/24 11/21
parties [3]  40/10 40/22 41/21
party [2]  23/6 41/11
past [1]  28/9
Pay [1]  17/5
pending [2]  6/15 19/11
Pennsylvania [1]  2/6
people [3]  20/3 37/25 41/1
perceive [1]  36/6
perfectly [1]  38/13
perhaps [2]  16/2 38/1
period [1]  42/23
permission [1]  34/14
permit [2]  10/1 36/16
perpetrated [1]  24/11
person [3]  12/16 19/23 24/11
personal [2]  35/1 35/2
personally [1]  39/16
perspective [1]  35/23
persuaded [1]  18/5
phone [3]  3/13 5/3 33/10
phonetic [1]  24/5
phrase [1]  36/11
pieces [2]  37/2 37/5
pinpoint [2]  31/3 31/13
place [2]  41/19 42/8
PLAINTIFF [13]  1/4 2/2 3/12 6/5 6/24 7/4 7/11 8/21 9/6 9/23 18/8 29/20 29/20
Plaintiff's [4]  6/10 6/13 8/7 9/24
Plaintiffs [1]  6/20
plan [1]  6/1
Playboy [1]  13/10
please [5]  7/12 28/17 28/23 28/25 30/1
plot [1]  14/10
point [7]  12/9 17/11 22/16 24/14 27/7 36/19

political [1]  36/2
politically [1]  35/11
position [1]  42/9
possibility [1]  39/13
possible [1]  44/8
possibly [3]  14/24 19/24 42/2
post [1]  5/18
post-hearing [1]  5/18
potentially [5]  14/14 16/12 19/12 20/5 44/13
practical [1]  31/23
preclude [1]  42/10
predicted [2]  13/7 17/25
prefer [2]  20/3 44/12
prehearing [1]  10/11
prejudice [5]  10/2 10/6 32/10 32/23 36/3
premise [1]  13/9
present [3]  2/8 7/7 12/4
presentation [2]  37/7 37/22
presented [1]  25/7
presiding [1]  3/4
pressed [1]  38/12
presumably [1]  34/18
prevent [1]  26/19
Price [1]  17/5
prior [6]  7/13 8/10 13/10 14/3 14/4 17/7
Privacy [5]  22/2 26/13 26/19 29/7 29/9
privilege [1]  11/21 22/15 41/16 42/6
privileged [1]  41/10
privy [1]  11/25
probably [4]  8/25 33/15 33/18 38/15
problem [2]  25/9 25/9
procedure [3]  37/24 38/3 42/15
procedures [1]  39/16
proceed [1]  16/22
proceeding [2]  12/21 23/24
proceedings [3]  1/10 44/24 45/12
process [4]  21/16 34/11 41/20 42/5
processing [1]  24/9
produce [7]  6/8 9/6 23/7 25/2 31/22 31/25 34/4
produced [6]  7/14 7/17 13/2 25/3 32/16 41/19
producing [4]  6/19 14/2 30/11 34/3
product [4]  11/14 14/18 41/5 41/7
production [7]  10/1 21/12 22/4 23/12 29/9 29/20 29/24
proffer [1]  21/10
profile [1]  12/20
project [2]  33/3 33/7
promptly [1]  25/3
proof [1]  18/20
prosecutor [1]  11/20

protect [2]  34/13 41/17
protected [1]  41/5
protective [2]  41/19 42/6
protocol [1]  38/18
prove [2]  18/9 18/9
provide [14]  7/3 7/12 8/3 8/23 9/15 9/17 9/19 9/25 21/23 22/3 29/2 29/8 42/3 44/2
provided [9]  7/11 7/19 8/12 10/3 10/21 11/12 12/2 19/19 23/22
providing [5]  8/5 8/20 22/9 29/14 44/6
provision [1]  9/22
provisional [1]  37/18
public [11]  13/11 15/14 16/15 17/7 21/19 35/16 39/4 40/10 40/18 41/21 42/11
publication [1]  17/5
publications [1]  13/10
published [1]  13/9
purported [1]  40/1
purports [1]  23/16
purpose [1]  22/20
pursuant [1]  16/11
put [6]  10/18 12/9 12/10 13/18 17/12 21/19
putting [2]  22/24 39/3

**Q**

qualifications [1]  14/4
question [1]  20/25
questions [5]  15/21 33/21 43/18
quite [2]  18/11 18/22
quote [8]  5/23 6/5 7/1 8/1 8/5 20/2 23/25 44/14
quotes [1]  21/16
quoting [3]  6/11 6/17 40/3

**R**

ranking [1]  38/11
rational [1]  38/6
rationale [1]  41/5
Ratner [2]  2/5 5/5
reaction [2]  38/10 38/11
Read [2]  28/23 28/25
realistic [1]  31/24
realize [3]  30/6 30/7 31/7
really [7]  4/7 18/11 31/12 32/10 32/11 41/20 42/5
Realtime [1]  45/11
reason [3]  12/6 32/2 34/21
reasonable [3]  7/2 38/6 42/14
reasons [4]  14/21 32/2 34/6 44/15
recall [2]  5/21 15/23
receive [1]  11/5
received [2]  6/16 28/7
recently [2]  5/24 23/23

recess [1]  44/20
reckless [1]  18/17
recommendation [1]  32/14
record [6]  12/3 13/12 35/16 39/3 40/17 45/12
recordings [1]  24/3
records [1]  21/19
red [1]  13/19
reference [5]  4/13 4/20 21/1 35/6 42/20
referenced [5]  7/13 9/10 21/7 21/17 21/18
references [1]  29/16
referring [1]  23/18
regard [8]  11/25 12/22 13/21 14/3 20/23 26/7 31/8 34/24
regarding [1]  9/7
Registered [1]  45/10
regularly [1]  37/25
regulations [4]  8/4 22/1 26/18 29/5
reinstatement [1]  23/11
related [1]  29/23
relation [1]  6/7
relationship [1]  27/23
relatively [1]  44/11
relevant [1]  21/11
relied [2]  13/12 17/24
remain [1]  37/18
remains [1]  41/10
remarkable [1]  24/15
remind [1]  23/2
report [1]  32/14
Reporter [4]  1/16 1/16 45/10 45/11
representations [1]  21/10
request [19]
requested [3]  7/11 7/18 15/8
requests [2]  21/24 29/3
require [1]  13/2
required [2]  8/14 9/16 12/6
requirements [3]  9/21 26/19 42/8
requires [1]  10/13
requiring [2]  32/17 36/1
research [1]  33/15
resources [1]  12/17
respect [5]  11/20 13/1 14/22 14/22 15/10
respectfully [2]  9/5 15/15
respond [5]  25/22 33/14 39/2
responded [2]  8/1 28/19
response [7]  8/13 9/12 22/7 28/20 29/12 30/4 33/12
rested [1]  17/2
restriction [1]  39/4
result [2]  14/25 34/9
resulted [2]  23/9 24/8
retrieval [2]  10/1 21/16
retrieve [2]  8/21 8/23

return [1]  9/23
reveals [1]  24/6
revelations [1]  5/21
review [15]  10/25 12/13 13/25 15/17 19/10 22/20 23/22 33/12 36/13 37/15 39/2 39/10 40/14 40/14 42/12
reviewed [3]  20/7 20/12 24/14
reviewing [1]  42/11
revolving [1]  12/7
right [13]  3/17 4/3 4/14 5/6 5/9 5/12 6/6 15/2 26/4 27/6 28/13 29/25 40/5
RISEN [9]  1/6 3/3 6/19 13/10 13/12 17/3 17/18 18/12 34/9
RMR [2]  1/16 45/17
room [1]  43/2
routine [1]  32/12
rule [6]  5/19 10/4 17/22 25/10 36/17 39/15
ruled [3]  14/10 15/16 39/5
rules [3]  14/2 15/9 15/10
ruling [7]  30/6 33/8 33/9 37/20 41/13 43/18 44/18
rulings [4]  33/19 33/21 33/23 38/21
run [3]  14/8 15/3 26/5

**S**

safety [1]  34/6
sake [3]  18/14 35/22 37/1
same [3]  7/12 41/20 42/5
sanction [2]  23/8 32/9
sanctioned [1]  23/8
sanctions [5]  5/17 5/19 10/3 25/10 32/7
Sandy [1]  5/10
Sanford [1]  2/8
satisfied [1]  7/23
say [10]  5/15 6/14 10/17 15/22 21/15 29/18 37/1 38/13 39/10 41/4
saying [10]  13/1 13/3 16/1 16/16 16/10 19/23 26/25 34/18 35/21 40/5
says [9]  21/9 22/18 26/8 26/9 26/14 26/14 26/15 27/11 41/25
scandals [1]  42/23
Schwartz [17]
Schwartz's [2]  25/13 28/20
seal [45]
sealed [1]  39/5
sealing [3]  39/17 40/23 42/7
second [3]  12/2 39/10 43/22
Secondly [2]  10/23 26/7
secretly [1]  5/24
security [8]  14/25 16/16 19/13 34/6 35/18 41/25

**S**

security... [2] 42/3 42/4
seeing [1] 41/18
seek [3] 5/19 22/10
 29/15
seeking [3] 6/2 32/8
 40/13
seem [2] 15/23 36/4
seems [1] 23/13
seen [6] 18/16 19/15
 19/18 19/20 19/22 38/10
seized [1] 24/12
self [1] 6/5
self-described [1] 6/5
sell [1] 13/14
sending [1] 31/9
sends [1] 31/9
sensitive [10] 4/24 19/25
 20/1 20/3 36/10 38/8
 38/17 39/11 39/24 44/14
sent [10] 7/24 19/16
 19/21 22/5 22/7 29/10
 29/12 30/20 31/16 31/18
September [12] 6/5 6/9
 6/12 7/10 7/17 7/24 9/11
 10/24 21/8 22/8 29/13
 30/18
September 21st [1] 7/10
September 24 [4] 7/24
 9/11 22/8 29/13
September 24th [1]
 30/18
September 4 [3] 6/5 6/9
 7/17
September 8th [3] 6/12
 10/24 21/8
seq [1] 29/5
sequester [1] 6/2
serious [1] 43/7
seriously [1] 32/21
serve [3] 39/21 43/24
 44/4
set [2] 31/2 31/10
setting [1] 18/24
seven [1] 37/3
several [1] 37/25
SFranklinUSDC [1]
 1/18
shall [2] 29/20 31/15
share [2] 43/9 44/2
sharpening [1] 36/7
sheriff's [2] 23/19 23/21
should [6] 14/7 17/22
 26/5 33/15 40/17 42/10
show [1] 3/19
shown [1] 41/3
sic [2] 38/13 44/13
side [3] 41/3 41/7 41/18
significant [4] 12/15
 16/17 32/2 44/10
significantly [1] 3/24
similar [3] 3/25 3/25
 23/18
simply [4] 17/6 20/6
 32/19 33/9
since [2] 8/18 16/11
sir [1] 25/21

situation [1] 17/13
slam [1] 38/2
sleep [1] 27/2
smear [1] 34/10
Snow [2] 23/24 24/13
so-called [1] 23/15
software [73]
somebody [1] 41/4
somehow [1] 36/3
someone [2] 30/9 38/14
something [5] 4/14
 15/10 17/23 36/15 40/21
sometimes [1] 3/22
soon [1] 19/8
sooner [3] 17/11 33/7
 33/8
sorry [2] 32/6 43/15
sort [2] 31/23 39/7
sought [1] 22/15
sound [1] 44/11
sounds [1] 44/10
source [1] 13/13
sources [2] 13/12 15/14
SOUTHERN [1] 1/1
speaking [1] 3/25
specific [9] 7/4 8/18 21/5
 31/10 31/25 32/25 33/18
 33/21 34/19
specifically [2] 22/17
 23/4
specified [1] 7/5
speculated [1] 18/15
speculation [1] 20/6
speed [2] 12/21 15/7
spoken [1] 18/16
spoliation [2] 8/22 32/10
stage [1] 17/1
stance [1] 15/2
start [3] 3/11 14/1 33/15
started [3] 33/2 34/11
 42/19
starting [1] 3/9
state [1] 31/15
statement [1] 18/19
STATES [4] 1/1 1/12
 14/16 16/16
stay [3] 5/23 30/7 30/8
step [1] 28/15
Stephen [4] 1/16 45/10
 45/16 45/17
still [1] 18/20
stored [1] 19/3
story [2] 23/18 24/23
strategic [1] 13/6
strategy [2] 6/1 17/12
street [3] 1/17 3/22 3/23
stretched [1] 12/17
strike [1] 34/19
stroke [2] 15/5 19/9
stuff [1] 27/8
subject [11] 6/7 8/4 8/17
 11/14 29/18 29/24 39/3
 41/7 41/19 42/2 42/12
submission [3] 41/2
 41/10 44/8
submissions [1] 39/19
submit [1] 37/13
submitting [1] 41/6

subpoena [1] 8/4
subsequent [1] 9/13
subsequently [1] 24/12
substantial [1] 32/2
such [8] 7/21 11/13
 13/25 16/7 25/7 26/1
 27/17 38/2
sufficient [1] 44/15
suggestion [2] 33/2 33/6
suit [1] 24/18
Suite [3] 2/3 2/7 2/9
summarizing [1] 33/18
summary [1] 24/4
Sunset [1] 4/1
supplement [1] 10/12
supply [1] 25/1
supporting [1] 33/1
supports [2] 13/23 24/7
supposed [1] 7/16
sure [4] 31/9 33/13
 34/25 34/25
surprise [1] 3/23
suspect [1] 38/17
suspicion [1] 38/7
swear [1] 20/22

**T**

tactic [1] 17/12
tails [1] 17/16
take [8] 13/4 25/25
 28/15 36/13 38/6 40/15
 42/18 44/21
taken [3] 16/18 37/17
 37/18
talking [2] 30/17 34/16
technically [1] 14/18
Ted [6] 7/22 25/14 25/15
 25/16 28/7 28/16
telephone [2] 2/3 2/5
 32/19
television [3] 3/18 5/6
 24/3
tell [7] 15/13 20/8 22/5
 29/10 31/12 34/23 42/19
tells [1] 26/9
terms [3] 11/12 17/7
 34/3
test [1] 9/3
testified [1] 17/19
testimony [5] 13/11
 13/15 14/4 17/8 25/23
Thank [4] 5/16 10/14
 44/22 44/23
that's [34]
themselves [1] 17/2
theory [2] 32/10 41/12
there's [8] 3/21 21/15
 26/10 32/1 33/20 36/9
 38/20 40/21
therefore [5] 17/4 30/8
 32/5 32/18 39/20
they're [7] 12/21 13/15
 15/6 15/11 26/4 41/6
 44/14
they've [2] 22/15
thin [1] 12/17
thing [3] 13/23 35/13
 38/24

things [8] 12/13 24/2
 24/2 26/9 28/1 28/10
 35/9 40/9
think [18]
those [12] 14/13 16/13
 19/3 21/17 22/10 24/16
 26/2 37/4 37/15 38/14
 44/3 44/15
though [3] 8/14 31/24
 38/10
thought [2] 39/11 43/17
thoughts [1] 43/22
threaten [1] 36/3
threatened [1] 34/7
three [2] 7/7 37/3
through [1] 27/25
throughout [1] 6/25
Thursday [1] 31/19
timely [2] 10/1 32/16
times [2] 38/3 38/4
today [4] 3/16 5/17
 18/25 30/17
told [9] 12/5 18/24 20/19
 22/13 23/18 24/23 27/18
 44/5 44/9
Tom [1] 24/17
too [2] 13/4 14/6
took [1] 14/10
total [1] 24/1
totaling [1] 31/5
Toth [1] 33/4
Touhy [6] 8/4 22/1
 26/10 26/11 26/18 29/5
track [2] 19/1 19/17
transcript [2] 1/10
 45/12
Tremaine [1] 2/6
true [5] 13/20 18/2
 18/19 28/3 35/25
try [10] 13/22 17/14
 18/1 19/1 26/3 30/21
 30/22 35/12 35/16 37/6
trying [7] 11/13 13/20
 13/21 34/10 34/10 35/10
 41/17
Tuesday [2] 30/10 30/10
turn [12] 11/2 14/11
 14/23 17/23 20/4 20/19
 26/10 26/15 26/18 26/21
 28/1 29/21
turned [4] 5/24 31/6
 31/14 42/17
turning [2] 6/7 30/14
turns [1] 18/18
twice [1] 42/21
two [15] 6/21 7/7 15/22
 22/11 23/21 23/22 24/17
 26/8 32/20 33/10 37/4
 37/4 37/7 37/12 44/6
two-page [1] 23/22
type [1] 36/1
typically [2] 32/13 44/15

**U**

U.S [3] 12/1 16/19 24/13
U.S.C [1] 29/7
ultimate [1] 32/9
ultimately [2] 23/9

23/21
unable [2] 21/23 29/2
under [49]
under-seal [19]
understand [3] 5/13
 26/24 40/5
understanding [1] 40/20
understands [1] 44/18
understood [1] 22/19
undertake [1] 22/18
underway [2] 33/7
 33/8
undoubtedly [1] 16/15
unduly [1] 33/17
unequivocally [1] 20/9
unfairly [1] 36/3
Unfortunately [1] 25/23
unique [1] 37/24
UNITED [4] 1/1 1/12
 14/16 16/16
Unless [1] 40/13
unseal [3] 37/20 37/22
 39/1
unsealed [3] 38/4 40/23
 41/14
until [2] 39/5 40/23
upon [2] 15/16 21/9
us [10] 7/12 8/6 14/1
 17/10 17/12 19/19 22/3
 23/13 28/2 29/8

**V**

value [1] 27/23
variety [1] 32/12
various [1] 30/15
versus [1] 3/3
very [15] 5/11 11/24
 12/13 12/15 12/20 12/24
 16/17 23/18 35/4 35/4
 35/10 35/11 36/6 42/14
 43/14
vest [1] 11/19
view [2] 8/22 38/6
violation [2] 14/2 32/10
volume [1] 24/3

**W**

wait [1] 27/13
waiver [2] 22/3 29/8
want [11] 14/6 28/4 30/2
 31/8 32/21 33/13 34/5
 36/10 43/8 43/21 43/22
wanted [2] 20/15
Washington [1] 2/7
wasn't [3] 4/24 27/7
 28/2
Watch [1] 35/9
ways [1] 37/12
we'd [2] 9/14 9/19
we're [15] 3/9 5/13 5/17
 13/1 13/3 13/3 16/22
 17/20 24/25 24/25 25/10
 34/16 38/13 40/19 43/5
we've [2] 3/8 30/16
Wednesday [2] 30/24
 31/16
Weebie [1] 24/17
Weebie's [1] 24/5

**W**

weekend [1]  44/21
weeks [2]  4/23 27/3
welfare [1]  34/6
well [18]
went [3]  12/19 13/1 15/5
West [1]  1/17
what's [4]  14/13 16/13
28/17 44/19
whatever [4]  22/25 32/2
33/15 44/14
whenever [1]  4/23
where [8]  20/10 29/16
29/18 34/18 37/25 41/1
41/2 41/21
whereby [1]  11/9
whether [20]
while [3]  4/6 19/10
40/19
whistleblower [3]  23/17
24/18 24/22
who's [2]  34/7 38/11
whoa [2]  27/13 27/13
why [10]  6/20 11/1
14/20 16/17 16/25 19/24
25/10 25/18 42/1 42/24
wife [2]  4/14 4/21
wildly [1]  18/15
willy [3]  11/3 28/1 36/11
willy-nilly [3]  11/3 28/1
36/11
win [1]  17/16
wish [1]  44/20
withheld [1]  15/19
without [7]  5/25 5/25
6/1 6/2 13/2 32/13 42/4
witness [3]  14/19 19/14
25/24
witnesses [1]  42/23
won't [3]  28/12 39/4
40/16
words [3]  35/23 37/1
39/8
work [10]  10/8 10/9
11/14 14/18 18/15 18/18
18/19 27/22 41/5 41/6
worked [1]  32/24
works [1]  9/3
worthy [1]  37/5
Wright [1]  2/6
writing [4]  12/9 19/4
19/6 38/12
written [9]  19/20 21/2
31/15 32/25 33/14 33/17
33/25 34/1 38/20
wrote [6]  6/10 6/13
17/24 18/17 28/18 34/9

**Y**

yeah [3]  4/8 4/22 16/4
year [2]  24/19 34/12
years [1]  34/11
yes [10]  3/14 4/11 4/12
10/16 25/21 26/12 28/22
40/18 40/19 41/22
yet [1]  15/9
you'll [4]  37/8 43/23

43/23 43/24
you're [16]
you've [5]  18/3 18/21
20/11 39/5 44/9
yourself [2]  27/10 36/13