UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-20782-MARTINEZ/GOODMAN

DENNIS MONTGOMERY,

       Plaintiff,

v.

JAMES RISEN et al.,

       Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SANCTIONS**

| | |
|---|---|
| **HOLLAND & KNIGHT LLP** | **DAVIS WRIGHT TREMAINE LLP** |
| Sanford L. Bohrer | Laura R. Handman (admitted *pro hac vice*) |
|   Sandy.Bohrer@hklaw.com |   laurahandman@dwt.com |
| Brian W. Toth | Micah J. Ratner (admitted *pro hac vice*) |
|   Brian.Toth@hklaw.com |   micahratner@dwt.com |
| 701 Brickell Avenue, Suite 3300 | 1919 Pennsylvania Ave., NW, Suite 800 |
| Miami, Florida  33131 | Washington, D.C.  20006 |
| Tel: (305) 374-8500 | Tel.: (202) 973-4200 |
| Fax: (305) 789-7799 | Fax: (202) 973-4499 |

       *Counsel for Defendants*

**TABLE OF CONTENTS**

                                                                                                                                **Page**

I.     PRELIMINARY STATEMENT ........................................................................................ 1

II.    ARGUMENT ................................................................................................................... 2

         A.     Montgomery Spoliated the Software Whether He Gave It to the FBI, as He First Swore in His Deposition, or Lacks Access and Did Not Give It to the FBI, as He Belatedly Swore in His Declaration .........................2

                1.     Montgomery's Own Complaint Alleges the Software Existed .....................2

                2.     Montgomery Had a Duty to Preserve His Software, and His Claim He Lacks Possession or Control Is Waived, Estopped, and Implausible ........................................................................................3

                3.     The Software Is "Highly Relevant" and "Critical" .......................................7

                4.     Montgomery's Conduct Shows Repeated and Continued Bad Faith ................................................................................................................7

         B.     Montgomery Failed to Comply with Three Courts Order in Bad Faith ...........................................................................................................................9

         C.     Montgomery Does Not Rebut that, If the Court Finds Bad Faith Spoliation or Violation of Court Orders, the Court Should Dismiss ....................10

III.   CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Baloco v. Drummond Co.*,
  767 F.3d 1229 (11th Cir. 2014), *cert. denied*, 2015 WL 5144964
  (U.S. Nov. 2, 2015) ................................................................................................. 3, 4

*Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*,
  171 F.R.D. 135 (S.D.N.Y. 1997) .................................................................................. 6

*Burnes v. Pemco Aeroplex, Inc.*,
  291 F.3d 1282 (11th Cir. 2002) .................................................................................... 4

*Complaint of Boston Boat III, L.L.C.*,
  2015 WL 5156561 (S.D. Fla. Sept. 2, 2015) .............................................................. 2, 8

*Coquina Invs. v. TD Bank, N.A.*,
  760 F.3d 1300 (11th Cir. 2014) .................................................................................. 10

*Flury v. Daimler Chrysler Corp.*,
  427 F.3d 939 (11th Cir. 2005). .................................................................................. 8, 9

*Gonzalez v. Business Representation International Inc.*,
  248 F.R.D. 644 (S.D. Fla. 2008) .................................................................................. 9

*Henderson v. Zurn Indus., Inc.*,
  131 F.R.D. 560 (S.D. Ind. 1990) .................................................................................. 3

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*,
  736 F. Supp. 2d 1317 (S.D. Fla. 2010) ........................................................................ 6

*McGhee v. Sanilac Cnty.*,
  934 F.2d 89 (6th Cir. 1991) .......................................................................................... 5

*Multi-Tech Sys. v. Dialpad.com, Inc.*,
  2001 WL 34624004 (D. Minn. Aug. 28, 2001) ........................................................... 10

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ..................................................................................................... 4

*Searock v. Stripling*,
  736 F.2d 650 (11th Cir. 1984) .................................................................................. 5, 6

*Selectica, Inc. v. Novatus, Inc.*,
  2015 WL 1125051 (M.D. Fla. Mar. 12, 2015) ............................................................. 5

*Silhan v. Allstate Ins. Co.*,
    236 F. Supp. 2d 1303 (N.D. Fla. 2002)......................................................................................6

*Thermoset Corp. v. Bldg. Materials Corp. of Am.*,
    2014 WL 6473232 (S.D. Fla. Nov. 18, 2014)......................................................................6, 10

*Ward v. AMS Servicing, LLC*,
    606 F. App'x 506 (11th Cir. 2015) ........................................................................................4

*Woods v. Cook Cnty.*,
    2014 WL 7261277 (N.D. Ill. Dec. 19, 2014)...........................................................................3

**Rules**

Fed. R. Civ. P. 11.............................................................................................................................5

Fed. R. Civ. P. 34.............................................................................................................................3

Fed. R. Civ. P. 37...........................................................................................................................10

**Other Authorities**

8B Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 2210 (3d ed. 2010).......................3

18B Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 4477 (2d ed.
    2002) ....................................................................................................................................4

I.     PRELIMINARY STATEMENT

Discovery closed November 19[1] and Plaintiff Dennis Montgomery has now successfully, and purposefully, "sequestered" the "highly relevant," "critical" software necessary for him to prove falsity in this libel action.  Montgomery's Opposition ("Opp.") does not explain:

- How he does not have access to his *own* software.
- How he could bring an action turning on whether his software worked when he and his lawyer knew from "*day one*" that not having the software could lead to dismissal.
- How he could unilaterally give his only copy of the software to the FBI on August 19 when he *knew* it was subject to a discovery request and a hearing two days later.
- Why he did not segregate and retain a copy of the software that both he and the government concede had nothing to do with his alleged whistleblowing data.
- How he never asserted in his July responses to Defendants' discovery requests that he lacked possession or control of the software; how he testified at his deposition on August 20 he searched for and gave his only copy of his software to the FBI the day before; how his lawyer confirmed the same on August 21 to the Court; *but* then he filed a declaration on October 21 when sanctions loomed that "upon searching [his] memory" he lacked "access" to his software and did not give it to the FBI.
- Why he failed to provide the FBI with enough information to find the software by the Court's deadlines *but nonetheless* claims he has been "diligently communicating" and "making every concerted effort" to provide the information and waited until November 16, the day he filed his Opposition, to forward more information.
- How he claims the FBI is searching for his software when the FBI said on October 23 that it is *not* searching in light of his October 21 declaration.
- Why, despite court orders, he has *not* told Defendants any other locations of the software, if he does not have access and did not give it to the FBI.

*First*, Montgomery's chief argument against spoliation sanctions is that he did not have the software or a duty to preserve it based on his eleventh-hour declaration averring he "believe[d]" he did not have "access" to his own software and did not give it to the FBI.  By failing to make this averment until October 21, he waived it.  And because he contradicted his

---

[1] After pressing for a tight discovery and trial schedule, Montgomery now has asked Judge Martinez to extend the discovery deadline to permit the FBI to finish its non-existent search for his non-existent software and to resolve third-party discovery disputes.  (ECF Nos. 181, 182.) Citing again his ill-health, he wants to extend discovery without a comparable extension of the trial date, reducing the time for consideration of summary judgment before trial, serving his purpose, but not the course of justice.  Moreover, none of the medical records Montgomery has produced support his claim that he is "terminally ill" and his condition "worsening."  (Opp. at 3.)

previous sworn deposition testimony and his counsel's representations to this Court, he should be judicially estopped from asserting he lacks possession, custody, or control. Even if the Court considered the substance of his arguments, it should reject them. (Sec. II.A.2, *infra*.)

*Second*, the Court should reject his contrived argument that he acted in "good faith." His software, if it exists, is not classified and provides no excuse for his actions. His Opposition shows bad faith spoliation through delay, concealment, and obstruction. (Sec. II.A.4, *infra*.)

*Third*, the Court should reject his claim he did not violate three orders in bad faith. His objections and request for stay are not excuses – as he knew. His last-ditch attempt to use his new-found lack of access to his software does not exempt him from sanctions. (Sec. II.B., *infra*.)

*Fourth*, Montgomery neglects to address the consequences of his actions. If the Court grants sanctions, it should recommend dismissal with prejudice. A finding or adverse inference that the software does not work or does not exist would result in dismissal in any event since Montgomery cannot prove the statements about him in the Chapter were false. (Sec. II.C, *infra*.)

## II.   ARGUMENT

### A.   Montgomery Spoliated the Software Whether He Gave It to the FBI, as He First Swore in His Deposition, or Lacks Access and Did Not Give It to the FBI, as He Belatedly Swore in His Declaration

Montgomery tries, and fails, to rebut Defendants' showing that satisfies the four elements of spoliation: (1) the evidence existed at one time; (2) he had a duty to preserve it; (3) the evidence was crucial to a prima facie case or defense; and (4) bad faith.

#### 1.   Montgomery's Own Complaint Alleges the Software Existed

Montgomery argues that he "did not allege in his Amended Complaint that he was in custody, possession or control of the alleged software" when "this case was contemplated and filed." (Opp. at 10.) But this argument does not respond to the first element of spoliation – whether "the missing evidence existed at one time." (Defs.' Mem. Law Supp. Sanctions ("Mem.") at 11) (quoting *Complaint of Boston Boat III, L.L.C.*, 2015 WL 5156561, at *2 (S.D. Fla. Sept. 2, 2015)). His Opposition does not dispute that his Amended Complaint repeatedly alleges that the software existed and that he is bound by these allegations in his pleading. (*Id.*)

2

### 2.     Montgomery Had a Duty to Preserve His Software, and His Claim He Lacks Possession or Control Is Waived, Estopped, and Implausible

Montgomery's main argument is that he did not have a duty to preserve the software because, in his October 21, 2015 declaration, he stated for the first time that "upon searching [his] memory" he does not "believe" that he "had access" to his own software and did not give it to the FBI.  (Opp. at 10.)  The Court should reject this argument for three reasons.

*First*, Montgomery waived any objection that he lacked possession, custody, or control of the software.  *See Henderson v. Zurn Indus., Inc.*, 131 F.R.D. 560, 568 (S.D. Ind. 1990) (party may waive objection of lack of possession or control); 8B Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 2210, at 164 (3d ed. 2010) ("[L]ack of control may be considered an objection to the discovery request and, like any such objection, it may be waived.").  He did ***not*** object on this basis in his July response to Defendants' discovery requests.  *Henderson*, 131 F.R.D. at 568 (finding waiver where party did not object based on possession or control in responses to discovery).  Nor did he do so before the Court granted Defendants' two motions to compel production of the software on August 22 and October 19, nor before the Court authorized Defendants to move for serious sanctions if he did not comply.  *See Woods v. Cook Cnty.*, 2014 WL 7261277, at *2 (N.D. Ill. Dec. 19, 2014) (finding waiver when "defendants did not object that they lacked control over the requested documents until ... eight months after their responses were due and after the court granted Woods's first motion to compel").  He waived the objection by waiting until October 21 to first raise it in his declaration.  The Court should find he had possession, custody, or control over the software and thus a duty to preserve it.  *Henderson*, 131 F.R.D. at 568 ("[B]y virtue of the defendant's waiver of the objection, the Court holds that the control or possession requirements of Rule 34 have been met.").

*Second*, Montgomery should be judicially estopped from arguing he did not spoliate the evidence because he purportedly lacked possession, custody, or control of the software.  "Judicial estoppel is an equitable doctrine invoked at a court's discretion."  *Baloco v. Drummond Co.*, 767 F.3d 1229, 1245 (11th Cir. 2014), *cert. denied*, 2015 WL 5144964 (U.S. Nov. 2, 2015).

"The purpose of the doctrine, 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).  In the Eleventh Circuit, courts consider two factors:  (1) "the allegedly inconsistent positions were made under oath in a prior proceeding" and (2) "such inconsistencies must be shown to have been calculated to make a mockery of the judicial system."  *Id.* (internal quotation marks omitted).  "These factors are flexible and not exhaustive, and courts should always consider the individual circumstances of a given case."  *Baloco*, 767 F.3d at 1245 (citing *Burnes*, 291 F.3d at 1285-86).

Here, while the first factor refers to statements in "prior proceedings," "judicial estoppel [is] a doctrine that can apply within the continuing progress of a single action."  18B Charles A. Wright, *et al.*, *Federal Practice & Procedure* § 4477, at 551-52 n.5 (2d ed. 2002); *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").  Montgomery's inconsistent positions were under oath in his deposition and then in his declaration, but this flexible factor also covers his counsel's representations to the Court.  *Ward v. AMS Servicing, LLC*, 606 F. App'x 506, 510 (11th Cir. 2015) ("[P]rior statement[s] did not necessarily have to be under oath … for judicial estoppel to apply.").  On the second factor, just as the Eleventh Circuit applied judicial estoppel to strike the declarations of mothers who swore they did not represent their minor children's interest when they said the opposite in depositions and declarations before, Montgomery's "calculated change of position, in response to the 'exigencies of the moment,' is precisely what judicial estoppel seeks to avoid."  *Baloco*, 767 F.3d at 1245 (quoting *New Hampshire*, 532 U.S. at 749-50).

*Third*, even if the Court were to reach Montgomery's belated excuse, the Court should reject it.  (Opp. at 3.)  Montgomery argues that "even if [he] had a duty to preserve the alleged software … first, he never claimed that it was in his custody, possession or control and therefore he would not have been able to preserve that which does not exist in his possession ...."  (Opp. at

4

10.)[2] But his Amended Complaint and declarations allege falsity because his software worked, currently works, and the government continues to use it today.[3] Such allegations require, under Rule 11(b)(3), that he possesses the software or can obtain it. *See McGhee v. Sanilac Cnty.*, 934 F.2d 89, 93 (6th Cir. 1991) (holding plaintiff's counsel violated Rule 11 when evidence his client possessed showed defamatory article was not false). The Opposition ignores that he testified in his deposition that he searched for the software, had it, and gave it to the FBI. (Mem. at 4-6; Pl.'s Dep. Tr. 128:1-129:1, ECF No. 166-2, at 4.) Montgomery testified:

> Q: [W]hen you say that you gave the Al Jazeera software to the government, when did you give that?
> A: 2003. I mean that's –
> Q: And you haven't had a copy of it since 2003?
> A: **No, I have.**
> Q: Mm-hmm. So when did you stop having a copy of it?
> A: **When I turned it all over to the government.**
> Q: And when was that?
> A: What is today?
> Q: Today is August 20, 2015.
> A: Let me just think, please. Today is Thursday.
> Q: Right.
> A: Wednesday.

(*Id.* 131:6-22, ECF No. 166-2, at 5) (emphasis added). Thus, contrary to the Opposition, he testified, and his counsel confirmed to the Court on August 21, that he possessed the software until August 19 when he gave it to the FBI. (Mem. at 4-6.)

If, as he now claims, he did not possess the software, he still had a duty to preserve it because it is in his control. *Selectica, Inc. v. Novatus, Inc.*, 2015 WL 1125051, at *4 (M.D. Fla. Mar. 12, 2015) (noting "a party has control, and therefore a duty to preserve information"). His cases state that "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand," *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984), or

---

[2] The Court should not credit this unsworn statement that Montgomery lacked possession or control when he anticipated litigation. (Opp. at 3.) His declaration does not go so far.
[3] The declaration attached to the Amended Complaint swears "[m]y software and technology did work, does work, and is still being used successfully by the U.S. Government." (Pl.'s Decl. ¶ 7(f), ECF No. 44, at 124; *see also* Pl.'s Second Decl. ¶ 18, ECF No. 63-1; Mem. at 11.)

5

"the right, authority, or practical ability to obtain the documents." *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997). (*See* Opp. at 14-15.) Yet he fails to explain how the software – his own intellectual property – is not in his control.[4]

Montgomery further argues he "did not have a duty to preserve any potentially classified information that was [the] subject of continuous talks and concomitant actions with the FBI in turning it over to them." (Opp. at 10.) This vague argument also fails for two reasons.

*First*, he obviously had a duty to preserve the software once he anticipated litigation – at the very latest the date of his January 14, 2015 letter to Defendants (Am. Compl. Ex. B, ECF No. 44, at 87) – regardless of whether he was talking to the FBI about giving it other data as a putative whistleblower. He argues that "[a] party's duty to preserve evidence relating to a particular issue does not arise simply because litigation has been filed." (Opp. at 11.) But his cases stand for the opposite: the duty arises when a party reasonably anticipates litigation.[5] He and the FBI also agree that the software is irrelevant to the FBI's inquiry into his allegations of illegal government spying on Americans,[6] and the inquiry is irrelevant to this case. (Mem. at 8.)

*Second*, the Court should reject the unsupported argument that Montgomery did not have a duty to preserve the software because he says it is classified. (Opp. at 4-5, 10.) His Opposition ignores the U.S. Protective Order that explicitly excludes his software from the scope of classified information it protects. (Mem. at 4 & n.7.)[7] Instead, he argues the software is

---

[4] His cases are not only distinguishable, they support Defendants. *Searock*, 736 F.2d at 653-54 (holding plaintiff not required to produce third-party documents defendant did not "attempt to secure," and "no evidence that [plaintiff] acted willfully, in bad faith or was at fault" existed); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 2014 WL 6473232, at *4 (S.D. Fla. Nov. 18, 2014) (no bad faith, waiver, or judicial estoppel); *Bank of N.Y.*, 171 F.R.D. at 152 (same).
[5] *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1324 (S.D. Fla. 2010); *Silhan v. Allstate Ins. Co.*, 236 F. Supp. 2d 1303, 1309 n.8 (N.D. Fla. 2002).
[6] While he claims a "good faith effort as a government whistleblower" (Opp. at 6), a similar data dump he gave the Maricopa County Sheriff's Office was found to be an "outright and fraudulent con." (Defs.' Opp. to Obj., at 11, ECF Nos. 176 & 176-2.) (*See* Oct. 16 Hr'g Tr. 23:15-24:24.)
[7] Montgomery argues no Nevada order found his software classified citing orders finding a search of his property unconstitutional. (Opp. at 7-8.) He disingenuously accuses Defendants of "misleading" statements, but it is Plaintiff's counsel who has taken at least four different positions on this issue, leading the Court to state "you are rapidly losing credibility…." (Aug. 21

6

classified by conveniently misconstruing the CIA's response to Defendants' *Touhy* requests that asked, not only for the software, but for other relevant items and testimony of former CIA officials. (Opp. at 4) (quoting Ex. 3.) The software was the *only* record for which the CIA searched and provided a response. (*Id.* at 5.) The CIA refused to search for other records asserting those other records would probably be classified or mixed with classified information. (*Id.*) If the software were actually classified, the CIA would not have "conducted a search of its records" and stated it "did not locate []a copy." (*Id.*) (quoting Ex. 3, at 1.) The CIA's response corroborates that the software is not classified. Still, he does not refute that, even if the software were classified, the remedy would be dismissal or an adverse inference. (Mem. at 18 n.24.)

### 3. The Software Is "Highly Relevant" and "Critical"

Montgomery's sole relevancy argument is that the CIA's *Touhy* response argues that information Risen did not possess at publication is irrelevant. (Opp. at 11-12.) The CIA is incorrect and does not decide what is relevant. The Court repeatedly rejected Montgomery's argument to find the software is "highly relevant" and "critical." (Mem. at 12.)[8]

### 4. Montgomery's Conduct Shows Repeated and Continued Bad Faith

Ignoring the facts and authority Defendants cited showing that Montgomery spoliated the software in bad faith (Mem. at 12-15), he proclaims that "there is *no* evidence of bad faith." (Opp. at 12.) But this is no negligent failure to suspend a routine document retention policy, as he suggests. (*Id.* at 13.) Defendants established the four elements of bad faith. (Mem. at 12-15.)

*First*, Montgomery again argues Defendants cannot show the software is material, but for the reasons explained above (and as held multiple times in this case) the Court should reject it.

*Second*, Montgomery argues that giving his only copy of the software to the FBI is not an

---

Hr'g Tr. 42:15-16; 45:25-46:25, ECF No. 111-1.) The orders he cites are irrelevant. They pre-date the U.S. Protective Order and orders Defendants cite. (Mem. at 3-4.) Still, his earlier orders show: (1) the court ordered property seized, including his software if it existed, returned to him so he should have it; and (2) the court found the search unconstitutional because he had no classified information, the basis for probable cause, consistent with the courts' later orders.
[8] To support his relevancy argument, Montgomery falsely asserts Risen testified "he essentially 'made the whole thing up.'" (Opp. at 3.) When pressed by the Court, Plaintiff's counsel admitted this is not a quote from Risen. (Aug. 21 Hr'g Tr. 27:17-24; 28:1-6, ECF No. 111-1.)

affirmative act, which ignores common sense and Defendants' authorities. (Mem. at 13.) *E.g.*, *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005) (allowing insurer to take car and sell it for scrap an affirmative act when plaintiff knew defendants wanted to inspect it); *Complaint of Boston Boat*, 2015 WL 5156561, at *11 (party's decision to "refurbish[] did not happen by accident"). He argues, he "made provisions with the FBI at the time he was required to turn over the 47 hard drives to retrieve what might be requested in discovery in this case." (Opp. at 15.) The FBI did not "require[]" him to turn over all 47 drives that included the software. (*Id.*) Mr. Baker's letter states **Montgomery** insisted on turning over data irrelevant to the FBI's inquiry, including the software. (Mem. at 8.) On August 19, it was not that Defendants "might" request the software. (Opp. at 15.) Defendants had requested the software on June 1, he had objected in July, the parties had met and conferred about his failure to produce the software, and Defendants had set a hearing about his failure to produce the software for August 7 (rescheduled by the Court for August 21). (Mem. at 2-4.) And the 51 million files he turned over to the FBI made exercise of his alleged right of access a nullity.

   Contrary to Montgomery's argument (Opp. at 15), even if the Court credited his October 21 declaration, Montgomery committed an affirmative act of concealing and obstructing access to the software and its locations to prevent Defendants from inspecting it, which strongly implies he knows it either does not exist or it does not work. (Mem. at 14 n.19.) And if credited, his declaration means he lied in his deposition and permitted his attorney to misrepresent facts to the Court to lead Defendants, the Court, and the FBI on a wild goose chase.

   Moreover, Montgomery touts his "good faith" effort to help the FBI find the software (Opp. at 1, 6-7, 14), but nothing he submits shows that the FBI reversed its clear position on October 23 that it would *not* search for the software given that he swore on October 21 he did not give it to the FBI. (Mem. at 10; Opp. Ex. 5.) His evidence of "good faith": just his and his counsel's desperate emails and calls trying to convince the FBI to change its mind. (Opp. Ex. 5.)

   *Third*, Montgomery argues he did not know, and should not have known, of the duty to preserve, because he was planning to turn over the data, including the software, long before he

8

contemplated or filed the case and thus "he had no duty to preserve evidence, *if it exists*, for opposing counsel." (Opp. at 15; *see id.* at 7.) He ignores *Flury*, where six years before suit, "the vehicle, which was the very subject of his lawsuit, needed to be preserved and examined as evidence central to his case." 427 F.3d at 945. This argument just illustrates Montgomery's longstanding plan and intent to "sequester what could be the most important evidence in the entire case." (Mem. at 7) (quoting Stay Order, ECF No. 122, at 6.) The Opposition does not contest that Plaintiff's counsel knew from "day one" that failure to produce the software could lead to dismissal. (Mem. at 10 n.16.) Again, he tries to compare his deliberate concealment to negligent failure to timely establish a litigation hold. (Opp. at 15.) Yet he ignores Defendants' cases, such as *Gonzalez v. Business Representation International Inc.*, where a party's decision to revoke a medical authorization intentionally obstructed access to highly relevant evidence, and, as here, warranted dismissal. 248 F.R.D. 644, 646-47 (S.D. Fla. 2008).

      **B.**      **Montgomery Failed to Comply with Three Courts Order in Bad Faith**

None of his three arguments that he did not violate court orders in bad faith is persuasive.

*First*, he asserts his objections to the orders pending before Judge Martinez and request for a stay excuse his non-compliance. (Opp. at 13.) Montgomery ignores authority making clear that a pending objection and request for stay does not relieve a party from complying with a discovery order, particularly here where this Court had denied a stay. (Mem. at 15 n.20.)

*Second*, he asserts he is complying with the orders because he "is still communicating with the FBI in good faith, despite his belief, upon reflection, that he did not have the software at issue in the information and hard drives he turned over to the FBI." (Opp. at 13.) But he does not address or distinguish Defendants' cases showing he violated three discovery orders in bad faith, including the last plainly requiring him to disclose the locations of the software by October 21 and to produce the software by October 26. (Mem. at 15, 18-20.) After Defendants moved for sanctions, Montgomery waited until November 16 to send the FBI information he claims would further help the FBI find the software, if, in fact, he gave it to the FBI. (Opp. Ex. 5.)

*Third*, as with spoliation sanctions, Montgomery waived or should be judicially estopped

9

from arguing that he complied with the orders in good faith on grounds of his purported lack of possession and control. (*See supra*, Section II.A.2.)[9]  Moreover, he cites no authority allowing him to avoid complying with orders entered under Rule 37(a) by asserting, after their entry, he did not have "access" to his own software. His own authority, *Thermostat*, compels the Court to sanction him as a remedy for his belated claim he lacked possession or control, because courts "'have no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor [his] discovery obligations.'"  2014 WL 6473232, at *4 (quoting *Multi-Tech Sys. v. Dialpad.com, Inc.*, 2001 WL 34624004, at *5 n.8 (D. Minn. Aug. 28, 2001)). Thus, as here, the "potential sanction for anything less than full disclosure" is the range of sanctions available for spoliation and, as an independent basis, violations of court orders. *Multi-Tech Sys.*, 2001 WL 34624004, at *5.

### C. Montgomery Does Not Rebut that, If the Court Finds Bad Faith Spoliation or Violation of Court Orders, the Court Should Dismiss

Montgomery does not address, much less refute, Defendants' showing that, if the Court finds bad faith spoliation or violation of court orders, the appropriate sanction is dismissal. (Opp. at 9, 16; Mem. at 16-20.)  A finding or adverse inference that the software does not work or does not exist would inevitably lead to dismissal, at far greater cost, since he could not meet his burden to prove falsity. (Mem. at 17-18.)  The Court should thus recommend dismissal.[10]

### III.  CONCLUSION

For the foregoing reasons and those in the Memorandum, Defendants respectfully request that the Court grant their motion for sanctions; prepare a report and recommendation to dismiss this action; enter a finding or adverse inference; and enter an order imposing monetary sanctions.

---

[9] He invokes this Court's August 21 hearing comments that "I cannot get blood out of a stone" and "I have to accept" Risen's declaration and testimony that he did not recall having a thumb drive given to a New York Times colleague in 2011. (Opp. at 13.)  But unlike Montgomery's about-face here, Risen's averments did not involve *any* change of position or his *own* software.

[10] If the Court enters a finding or adverse inference under Rule 37(b), it may do so based on Montgomery's violation of court orders absent bad faith or bad faith spoliation. *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1319 (11th Cir. 2014).  The Court should, at least, enter a finding or adverse inference that the software does not exist or does not work. (Mem. at 18 n. 24.)

Dated:  November 30, 2015

Respectfully submitted,

s/Brian W. Toth
Sanford L. Bohrer
Florida Bar No. 160643
sbohrer@hklaw.com
Brian W. Toth
Florida Bar No. 57708
brian.toth@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Fax: (305) 789-7799

– and –

Laura R. Handman (admitted *pro hac vice*)
laurahandman@dwt.com
Micah J. Ratner (admitted *pro hac vice*)
micahratner@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, D.C.  20006
Tel.: (202) 973-4200
Fax: (202) 973-4499

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 30, 2015, I filed this document with the Clerk of Court using CM/ECF, which will serve this document on all counsel of record.

s/Brian W. Toth

11