IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

DENNIS L. MONTGOMERY

                Plaintiff,

    v.

JAMES RISEN, ET AL.,

                Defendants.

Civil Action No. 1:15-cv-20782-JEM

**PLAINTIFF'S SUPPLEMENT TO HIS OBJECTIONS TO MAGISTRATE JUDGE'S ORDERS CONCERNING SOFTWARE WHICH IS ALSO RELEVANT TO DEFENDANTS' PENDING MOTION FOR SANCTIONS**

Plaintiff Dennis Montgomery respectfully submits this Supplement to His Objections to Magistrate Judge's Orders Concerning Software Which Is Also Relevant to Defendants' Pending Motion for Sanctions.

I.     INTRODUCTION

Defendants' relevant pleadings are misleading and couched, manifested by Defendants' refusal to allow the Federal Bureau of Investigation ("FBI") more time to access the information which Defendants' claim to seek, and is promulgated only to improperly attempt to dismiss this case, *not* to get ahold of any alleged software, which is – according to the Central Intelligence Agency ("CIA") – classified anyway, and therefore not producible to Defendants or anyone else. Defendants' disingenuous attempts to throw a monkey-wrench into this case must respectfully be rejected and **denied**. **Simply put, the information Defendants' seek could never be turned over, as it is classified, and is irrelevant, as the U.S. Department of Justice and the CIA instruct Defendants** *twice*. **"You have not satisfied your burden of establishing that the**

1

**requested information is relevant to [your client's] defenses,"** *see* **Exhibit 1, and "[T]he CIA is a clandestine intelligence service and most of our information is classified. Even if the CIA were to devote Agency resources to searching for records that might pertain to your private lawsuit, responsive records (if there were any) would almost certainly be classified . . ."** *See* Exhibit 2.

No one – other than the proper government contractors and authorities – has the legal right to seek or obtain classified information; not defense counsel, not this honorable Court, and not even Plaintiff Montgomery's counsel. Defendants' recent pleadings miss this fact entirely, either intentionally as a strategic attempt to demonstrate to this Court they truly do want the software – which they do not, otherwise they would have consented to a short, one-month extension to allow the FBI more time to locate the alleged software and other materials – or unintentionally, only showing their ignorance of federal criminal statutes, including but not limited to 18 U.S.C § 798. This statute provides:

> Whoever knowingly and willfully communicates, furnishes, transmits, or otherwise makes available to an unauthorized person, or published, or uses in any manner prejudicial to the safety or interest of the United States or for the benefit of any foreign government to the detriment of the United States any classified information . . . shall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 798.

In this regard, the CIA instructs Defendants in objecting to their improper subpoenas:

> We are in receipt of your October 2, 2015 subpoenas to the Central Intelligence Agency ("CIA") seeking the production of CIA documents and electronically stored information, as well as the testimony of four current or former CIA officials. For the reasons set forth below, the CIA declines to authorize CIA employees, current or former, to testify or produce information related to or based upon materials contained in the files of the CIA in connection with the above-referenced matter. In addition, the CIA declines to search its records for information that might be responsive to your demand, except for the information discussed below.

***

The CIA conducted a search of its records and did not locate "a copy of Montgomery's software, including but not limited to video compression software or noise filtering software Montgomery allegedly used to detect hidden Al Qaeda messages in Al Jazeera broadcasts.

\*\*\*

**Second, the CIA is a clandestine intelligence service and most of our information is classified. Even if the CIA were to devote Agency resources to searching for records that might pertain to your private lawsuit, responsive records (if there were any) would almost certainly be classified or otherwise privileged from disclosure and hence unavailable to you. The disclosure or production of classified information or records, including any acknowledgement that such information or records exist, would violate the Executive Order governing classified information and CIA's statutory responsibility to protect intelligence sources and methods, 32 C.F.R. § 1905.4(c)(3)(ii), and reasonably could be expected to cause damage to the national security.**

Consistent with the above, the CIA will not, in response to demands from litigants in a private lawsuit, confirm or deny details concerning tis intelligence operations as reflected in media reports or publications, particularly when those reports are based in part on anonymous sources, non-official disclosures, or unauthorized disclosures. Responding to demands for information in private litigation in the wake of such media reports, including where individuals who wrote the reports were subsequently sued by private parties, would impose unreasonable burdens on the Agency to frequently address media allegations concerning its mission in third-party discovery.

Third, and for the same reasons outlines above, your demand for the testimony of four current or former employees of the Agency is also denied. As a general matter, the CIA cannot make current or former employees available for depositions or testimony whenever a demand for information arises – particularly in litigation to which the CIA is not a party – because to do so would unduly interfere with the conduct of CIA's mission.

Current and former senior CIA officials and employees acquire a wide range of classified national security information as part of the performance of their official duties, and the time and resources involved in preparing them for depositions, identifying and limiting any testimony at their depositions in order to avoid the disclosure of classified information, and reviewing the resulting transcripts, would impose a significant and unreasonable burden on CIA resources. Again, this is especially true in litigation between private parties involving a private dispute, where the matters at issue have been prompted by publications concerning alleged CIA activities based on non-official disclosures and anonymous sources.

*See* Exhibit 1. Moreover, in a second letter from the CIA, it instructs Defendants that:

> [They] have not satisfied your burden of establishing that the requested information is relevant to [your clients'] defenses . . . you assert that the testimony sought is needed to support your clients' defenses in this action, including "information essential to answering questions that are central to the element of falsity in Montgomery's libel claim." The validity of these defenses turns, however, on what the defendants knew or should have known at the time of the challenged statements, not on what the government knew . . . *See, Don King Prods. v. Walt Disney Co*., 40 So. 3d 40, 43 (Fla. Dist. Ct. App. 4th Dist. 2010) (in the context of defamation, actual malice is defined as knowledge that the statement was false or reckless disregard of whether it was false or not . . . in assessing "reckless disregard," the court found that a showing of "reckless disregard" requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id* . . . As a result, your requests are also not "reasonably calculated to lead to the discovery of admissible evidence," and the burden and expense of providing the requested testimony would outweigh its likely benefit in the underlying action. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii).

*See* Exhibit 1.

Defendants' disingenuous pleadings should be seen for what they are – a futile and non-meritorious attempt not to obtain the alleged software, but to have this case dismissed based on false facts and inapposite law.

## II.     ARGUMENT

Importantly, Defendants' recent pleadings with respect to spoliation is a non-starter because the bedrock principle in the American legal system is that Plaintiff Montgomery could not have turned over the sought after information in the first place. *See Totten v. United States*, 92 U.S. 105, 106 (1876) (holding that a condition of the engagement requiring one's lips to be forever sealed is implied in all secret employments of the government in time of war, or upon matters affecting foreign relations, or where a disclosure might compromise the government in maintaining a secure nation).

4

*First*, Plaintiff Montgomery did not spoliate any software, as he may not have had access to the software in the first instance, and even if he did, Plaintiff Montgomery did not have a duty to preserve it (in fact, quite the opposite is true – if any duty existed, the duty belonged to the proper government authorities to obtain the classified documentation) and he never acted in bad faith.

*Second*, and specifically, Plaintiff Montgomery had no duty to preserve that which does not exist, and – if it does exist – his only duty as a litigant, whistleblower and an American who has attempted to turn over his documentation and hard drives to the FBI for *years*, **is to abide by the law**. Even if Plaintiff Montgomery was in possession of the software at one time, he would not have been able to provide it to the Defendants as it is classified according to the CIA, and turning it over would be a federal crime with a consequence of imprisonment. While Defendants' mistakenly maintain "[h]is software, if it exists, is not classified and provides no excuse for his actions[,]" Plaintiff submits that the *government* has the final say on whether the software exists in the materials turned over and whether some or all of that documentation is classified; **not** defense counsel.

*Third*, the usefulness of the alleged software is only *one small part* of the multifaceted, defamatory attack on Plaintiff Montgomery and is not crucial to a prima facie defense. Defendants' would have this Court believe that it is the *only* relevant part of Plaintiff's claims. It is not. In his Amended Complaint, Plaintiff Montgomery sets forth with excruciating detail several passages from Defendants' book that have absolutely nothing to do with whether the alleged software exists or works. For just two examples, "Dennis Montgomery almost singlehandedly prompted President Bush to ground a series of international commercial flights based on what now appears to have been an elaborate hoax." Further, "[a]fter he was in place in

5

the field, he used a hidden cell phone to buzz the cell phone of one of the eTreppid employees, who then pushed a key on a computer keyboard, which in turn flashed an image of a bazooka on another screen prominently displayed in front of the military officers standing in another room, according to court documents." These two defamatory statements published by Defendants, among many others, have *zero* to do with whether Plaintiff Montgomery's alleged software exists or works and as such, the software at issue is not at all *central* to the case; rather, only *an alleged part* of the case.

*Fourth*, there is no evidence – as indeed no evidence exists – that Plaintiff Montgomery acted in bad faith. To the contrary, he has provided everything he possibly can to Defendants within the bounds of the law. But, even if Defendant had spoliated "evidence" – which he clearly and unequivocally did not – he *still* would not be found to have acted in bad faith as courts in this district and circuit consistently deny sanctions motions *even if* a plaintiff or defendant acted egregiously through the discovery process. No such egregious actions occurred here.

For the denial of Defendants' sanction motion with respect to spoliation, Plaintiff Montgomery need only refute *one* of the following four requirements of spoliation: (1) the evidence existed at one time; (2) he had a duty to preserve it; (3) the evidence was crucial to a prima facie case or defense; *and* (4) he acted in bad faith.

### A. Whether the Software Existed At Once Time Is Wholly Irrelevant.

Defendants' recitation of the facts regarding the alleged software is false. They admit that Plaintiff Montgomery did not allege in his Amended Complaint that he was in custody, control or possession of the alleged software at the time this case was contemplated and instead disingenuously lean on whether the "missing evidence existed at one time." This reasoning is a *non sequitur.* If the evidence exists but is not in the custody or control of Plaintiff Montgomery,

6

then it is theoretically impossible for him to turn over that which he does not or did not have. Defendants improperly focus on the Amended Complaint and testimony provided by Plaintiff Montgomery that alluded to the possible existence of the software. But, Plaintiff Montgomery filed an affidavit stating, "**Based on my personal knowledge and belief, upon searching my memory, I do not believe that I have had access to any of the subject software.**" It is important to remember that Plaintiff turned over 47 hard drives and over 600 million pages of documentation and other materials to the FBI. If the software exists and was provided to the FBI, it will find it – assuming Defendants allow enough time for the FBI to adequately search the documentation. Whether some software, all software or any software was provided to the FBI is difficult to precisely pin down given the 600 million pages of documentation and other materials and over a decade of work product turned over to the FBI, especially for an individual who is suffering from a brain aneurism and is fragile and in poor health.

    **B.  Plaintiff Montgomery Had No Duty to Preserve the Software If He Had It, As Preserving It May Have Been a Crime Punishable by Imprisonment.**

    The U.S. Department of Justice, by and through the U.S. Attorney, provided Plaintiff Montgomery with two, separate (2) immunity agreements in exchange for the documentation that Plaintiff Montgomery turned over to them. These immunity agreements ensure Plaintiff's immunity for providing the information. Specifically, the most recent, signed on November 24, 2015, states, "no statements made by or other information provided by you during the voluntary 'off-the-record' debriefing(s) will be used directly against [you] in any criminal proceeding . . ." Plaintiff Montgomery is thus cooperating with and is a material witness for the government concerning a criminal investigation under 50 U.S.C. § 1809. The purpose of these immunity agreements is to provide a safe haven for Plaintiff if indeed he was in possession of classified information; and the CIA's refusal to produce documents for defense counsel only bolsters this

point. On November 13, 2015, the CIA writes in responding to and objecting to Defendants' subpoenas:

> **[T]he CIA is a clandestine intelligence service and most of our information is classified. Even if the CIA were to devote Agency resources to searching for records that might pertain to your private lawsuit, responsive records (if there were any) would almost certainly be classified or otherwise privileged from disclosure and hence unavailable to you. The disclosure or production of classified information or records, including any acknowledgement that such information or records exist, would violate the Executive Order governing classified information and CIA's statutory responsibility to protect intelligence sources and methods, 32 C.F.R. § 1905.4(c)(3)(ii), and reasonably could be expected to cause damage to the national security.**

*See* Exhibit 2. If the software exists, according to the government it is classified, and therefore unavailable to Defendants. And, when dealing with classified information, the CIA must air on the side of caution.

### C. The Alleged Software Is Nowhere Near Crucial Enough For a *Prima Facie* Defense, As It Is Only a Small Part of Defendants' Defamation.

Plaintiff Montgomery's Amended Complaint alleges six causes of action, ranging from defamation by implication to assault. Each cause of action illustrates numerous defamatory statements, many having nothing to do whether the alleged software works. The entirety of Defendants' argument regarding the relevancy of the software is as follows:

> Montgomery's sole relevancy argument is that the CIA's *Touhy* response argues that information Risen did not possess at publication is irrelevant . . . The CIA is incorrect and does not decide what is relevant. The Court repeatedly rejected Montgomery's argument to find the software is "highly relevant" and "critical."

Both the statements are intentionally mischaracterized. First, the CIA's refusal to produce documentation even if subpoenaed and finding the software irrelevant is strictly *not* limited to "information Risen did not possess at publication." This is only a small part of the CIA's rationale for not producing the documentation or testimony. The CIA wrote two (2) distinct, unequivocal letters to Defendants' counsel outlining the several reasons why it will not succumb

8

to Defendants' improper, if not illegal, subpoenas. The CIA's *Touhy* regulations prohibit its employees from either producing documents or testifying without prior authorization from the proper agency official. The CIA found, among other things, that the production is inappropriate in light of relevant privileges, the production is inappropriate under the applicable rules of discovery, the disclosure would violate criminal statutes, the disclosure would be inconsistent with the statutory responsibility of the Director of the CIA to protect intelligence sources and methods, and the disclosure would reveal classified information. In addition, the CIA objects to any response that would risk or require the disclosure of any classified national security information; it objects on the grounds that Defendants' requests are overly broad, unduly burdensome, unreasonably cumulative and duplicative, and fail to describe the information sought with reasonable particularity. **Further, the CIA objects on the grounds that Defendants' fell drastically short of establishing their burden that the requested information is relevant to the Defendants' defenses**. Moreover, the CIA found that Defendants' requests "are also not 'reasonably calculated to lead to the discovery of admissible evidence,' and the burden and expense of providing the requested testimony would outweigh its likely benefit in the underlying action." It is noteworthy that Defendants have not sought to enforce the subpoenas, and they thus have effectively waived any claim to obtain the alleged software, which is according to the CIA, classified in any event.

Second, even if any software were relevant and not off limits for production as classified, this is only one small part of Defendants' malicious and defamatory attack on Plaintiff Montgomery, which is subject to this lawsuit.

    **D. Plaintiff Montgomery Has Acted in Good Faith Throughout the Entire Proceeding With This Court, Defendants, Defendants' Counsel, the Federal Bureau of Investigation and the Central Intelligence Agency.**

Plaintiff Montgomery had a legal and ethical obligation to turn over the documentation to the proper authorities. Indeed, as a government whistleblower, he had intended – and tried for years – to turn over the materials for years. Yet recently, none other than the U.S. Department of Justice confirms that not only is the alleged software irrelevant and not germane to this case, but that it cannot be turned over to Defendants' and their counsel in any event.

> You have not satisfied your burden of establishing that the requested information is relevant to [your clients'] defenses . . . you assert that the testimony sought is needed to support your clients' defenses in this action, including "information essential to answering questions that are central to the element of falsity in Montgomery's libel claim." The validity of these defenses turns, however, on what the defendants knew or should have known at the time of the challenged statements, not on what the government knew . . . *See, Don King Prods. v. Walt Disney Co.*, 40 So. 3d 40, 43 (Fla. Dist. Ct. App. 4th Dist. 2010) (in the context of defamation, actual malice is defined as knowledge that the statement was false or reckless disregard of whether it was false or not . . . in assessing "reckless disregard," the court found that a showing of "reckless disregard" requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id* . . . As a result, your requests are also not "reasonably calculated to lead to the discovery of admissible evidence," and the burden and expense of providing the requested testimony would outweigh its likely benefit in the underlying action. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii).

Nevertheless, Plaintiff Montgomery has continued to work with the U.S. Department of Justice and the FBI to show and demonstrate his god faith and respect for the Magistrate Judge even if he and his counsel respectfully disagree. **Importantly, the Magistrate Judge issued his orders before the U.S. Department of Justice and the CIA made its views known in response to Defendants' subpoenas that any software would be classified and not subject to production**. In further good faith, despite the classified nature of the software, Plaintiff's counsel had a meeting with the FBI and others on December 3, 2015 and again emphasized Plaintiff Montgomery's intention and desire to further assist them, if needed, in locating any software, if it exists.

Moreover, to the extent that Defendants' allege falsely that Plaintiff Montgomery's statements as potentially inconsistent, inconsistent memories are not evidence of bad faith or perjury. "Perjury [and bad faith] is different from confusion, mistake, or faulty memory; perjury is defined . . . as testimony concerning a material matter with the willful intent to provide false testimony." *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008).

Plaintiff Montgomery's lack of bad faith conduct is further evidenced by the information that he did turn over to Defendants' and their counsel, as thousands of pages of documentation and other materials, including but not limited to test validations from government authorities, tax returns, medical records, contracts were provided to Defendants' during the course of discovery. And Plaintiff Montgomery has continued to supplement prior discovery requests as new medical and other information and documentation become available. Defendants, on the other hand, have attempted to obstruct depositions of Plaintiff Montgomery's former attorney, Michael Flynn, and Defendant Risen's **prior** publisher, Simon & Schuster, which has relevant, probative testimony about its refusal to publish Defendant Risen's book, likely because it is defamatory. In this regard, a hearing was held in the Southern District of New York and the Judge agreed with Plaintiff – Simon & Schuster, it's Vice President, and Defendant Risen's literary agent are **<u>required</u>** to produce relevant documentation by December 15, 2015 and may be deposed at a later date. *See* Plaintiff's Emergency Motion to Compel Non-Parties Tina Bennett, Priscilla Painton and Simon & Schuster to Comply With Properly-Served Subpoenas and Motion to Take the Depositions by Videoconference and Request for Emergency Telephonic Hearing, Exhibit 3, and Court Order, Exhibit 4.

Indeed, everything relevant in Plaintiff Montgomery's possession has been turned over to Defendants. Plaintiff Montgomery could not keep a copy of – and should not have kept a copy of

11

– classified information and documentation, whether the software is included in that documentation and materials or not. When the U.S. Department of Justice and the government voluntarily agree to two immunity agreements for testimony and the production of documents, and when the U.S. Department of Justice and the government refuse to produce any documentation and materials which Defendants' seek under subpoena, it is clear that the information Defendants' seek is classified and unavailable to them.

### E.  Plaintiff Montgomery Did Not Violate a Court Order In Bad Faith

Plaintiff Montgomery cannot be compelled to commit a crime. He cannot – and should not – be sanctioned for refusing to violate federal law. *See* 50 U.S.C. § 1809. The Defendants falsely base their arguments on this so-called "critical" software yet they knew from the beginning of this lawsuit that they would not be able to receive it and that they would never receive it. Indeed, Defendants' *do not even need it* as the Defendants testified that they took published information from public documents in any event.

Plaintiff Montgomery has filed two well-reasoned objections to the Magistrate Judge's order, one of which asks the presiding Judge to stay any production, even if not illegal, until he rules on the issue. Plaintiff Montgomery has not intentionally violated any order of nor been disrespectful of the Magistrate Judge. He has made and continues to make every effort to comply with the Magistrate Judge's orders. Thousands of pages of documents and materials have been produced pursuant to the Magistrate Judge's orders and Defendants' discovery requests. Plaintiff Montgomery is making every effort to cooperate with the U.S. Department of Justice and the FBI to locate any software as recently evidenced by his counsel's oral discussions at his December 3, 2015 meeting with the FBI and U.S. Department of Justice.

Even if Plaintiff Montgomery violated a court order, **which he clearly did not**, the courts of the Eleventh Circuit have a strong preference for a determination on the merits of a dispute. *See Beck v. Bassett*, 204 F.3d 1322 (11th Cir. 2000) (reversing lower court's entry of a default judgment for discovery violations); *see also Bernal v. All American Investment Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2007); *Searock v. Stripling*, 736 F.2d 650 (11th Cir. 1984) (reversing lower court for reinstatement of appellant's counterclaim since the lower court made no findings that appellant's failure to produce the documents was due to willfulness, bad faith, or fault).

### F.  Plaintiff Is Entitled to Attorneys' Fees and Costs

Defendants brought this motion under Federal Rule of Civil Procedure 37. Rule 37 provides that "[i]f the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party [] who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). Because the Defendants have moved under Rule 37 and this motion should be denied, the Court should award Plaintiff attorneys' fees and their reasonable expenses.

### III.  CONCLUSION

Defendants seek to have Plaintiff Montgomery violate federal law and commit crimes in order for them to receive what the CIA and the U.S. Department of Justice considers classified information. Defendants cry to this Court that Plaintiff is "substantially depriving Defendants of their [so-called] 'critical' evidence." But as is apparent from Defendants' refusal to extend discovery for just one (1) month – which would not prejudice any party and allow the pre-trial and trial schedules to remain on track – Defendants never really wanted the software, as they are not entitled to it by law. Defendants are simply attempting to play a tactical game. This Court

cannot and should not countenance Defendants' games for strategic purposes and dismiss this case or impose an adverse evidentiary inference under these compelling circumstances.

Dated: December 4, 2015

                                           Respectfully submitted,

                                           */s/ Larry Klayman*
                                           Klayman Law Firm
                                           FL Bar No. 246220
                                           7050 W Palmetto Park Rd.
                                           Suite 15-287
                                           Boca Raton, FL 33433
                                           (310) 595-0800
                                           leklayman@gmail.com

                                           Attorney for Plaintiff

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 4th day of December, 2015, a true and correct copy of the foregoing was filed and served via CM/ECF upon the following:

**Sanford Lewis Bohrer**
**Brian Toth**
Holland & Knight, LLP
Suite 3000
701 Brickell Ave
Miami, FL 33131
Email: sbohrer@hklaw.com
Email: brian.toth@hklaw.com

**Laura R. Handman**
**Micah Ratner**
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington D.C. 20006-3401
Email: laurahandman@dwt.com
Email: MicahRatner@dwt.com

*Attorneys for Defendants*

                                            */s/ Larry Klayman*
                                            Larry Klayman, Esq.