# EXHIBIT 1

HMH'S COPY



**Houghton Mifflin Harcourt**

TRADE PUBLISHING

ADULT EDITORIAL DEPARTMENT

PUBLISHING AGREEMENT



EXHIBIT

Risen 8

6-19-15

Agreement made this ~~Twenty-sixth day of September~~, Seventh day of November, 2013, between the Publisher, Houghton Mifflin Harcourt Publishing Company, 222 Berkeley Street, Boston, Massachusetts 02116, and the Author, James Risen c/o Janklow & Nesbit Associates, Attention: Bennett Ashley, 445 Park Avenue, New York, NY 10022, concerning the publication of the "Work" provisionally entitled

PAY ANY PRICE

## 1. NATURE OF AGREEMENT

**A.    Delivery of the Manuscript**    The Author agrees to deliver to the Publisher a completed manuscript, of approximately 90,000 to 100,000 words, that conforms with the subject, focus, and genre in the agreed upon proposal (which shall be attached to this Agreement as Appendix I), for consideration by the Publisher as provided in Section 2 by January 2, 2014 (the "Delivery Date").

The Work shall be the Author's next book and the Author shall not offer rights to another book to another publisher nor accept an offer for another book from another publisher until a complete manuscript for the Work has been delivered to the Publisher and the Author has complied with the option provisions of Section 5 of this Agreement. This provision shall apply to books co-authored by the Author as well as books written solely by the Author.

**B.    Acceptance for Publication**    The Publisher agrees to accept the Work for publication provided that a completed manuscript is delivered by the Delivery Date and the manuscript is satisfactory in form and content to the Publisher.

**C.    Grant of Rights**    The Author grants and transfers to the Publisher, for the duration of the copyright in each territory granted, the following exclusive rights:

(1)    to publish the Work in hardcover and/or softcover book form in the English language ~~and all other languages~~ throughout the United States of America, its dependencies and territories, the Republic of the Philippines, and Canada, ~~and throughout the world~~;

(2)    to publish, use or adapt the Work or any part of the Work for sale, distribution or other exploitation, in print or **Electronic Book** ~~electronic~~ form (now or hereafter developed) or in any other form as herein provided;

(3)    to license third parties to publish, use or adapt the Work or any part of the Work for sale, distribution or other exploitation, in print or **Electronic Book** ~~electronic~~ form (now or hereafter developed) or in any other form as herein provided.

~~In the event that~~ The Publisher does not have the right to sell, lease, or license the Work in the British Commonwealth (exclusive of Canada; see Appendix II for a schedule of Author's reserved territories), but it shall nevertheless have the right to sell, lease, or license the Work in the English language throughout the rest of the world on a non-exclusive basis, except where it is given exclusive rights under this Agreement. ~~It is understood that, notwithstanding the territory restrictions in Section 1C, the Publisher has the exclusive right to publish or license the Work for use in electronic form on or via the Internet, subject to the provisions of this Agreement.~~

The Publisher may license Electronic Book rights for distribution over the Internet to licensees with primary headquarters in the US, Canada, and the nonexclusive territories, but the Publisher may not sublicense such rights to parties with primary headquarters in the British Commonwealth or any of the Author's reserved exclusive territories listed on Appendix II. Notwithstanding the foregoing, to the extent that distribution is via the Internet, it is agreed that the Publisher's licensees of such rights may have worldwide client bases; and if the Publisher exercises such rights itself under its own imprint, then the customers for the Electronic Book

2

presentation of the Work distributed over the Internet may be worldwide. Similarly the Author agrees that any grant of such rights to the Work to a British publisher shall stipulate that the British publisher will not exercise or license Electronic Book rights to the Work to licensees with primary headquarters in the United States or Canada, although it is agreed that the British publisher's sublicenses of such rights to licensees within the British publisher's permitted territory may involve worldwide client bases to the extent that distribution is via the Internet, and if the British publisher exercises such rights itself under its own imprint, then the customers for the Electronic Book presentation of the Work distributed over the Internet by such British publisher may be worldwide.

In the event that any territorial rights may hereunder be affected by changes in existing laws, market arrangements or otherwise, said changes shall not prevent the continuance of this Agreement in full force and effect, and appropriate adjustments in the grant of territorial rights shall be subject to mutual agreement between the Author and the Publisher.

D.   **Author's Compensation**  As full consideration for the Author's transfer of rights in the Work under Section 1C, the Publisher will pay the Author compensation, based on its exercise of those rights, as follows:

(1)   **Advance**  As an advance against the Author's anticipated earnings from the Work, the Publisher shall pay the Author ████████ as follows   below. █████████████████████

# REDACTED PER PROTECTIVE ORDER

To be paid directly to Simon & Schuster:

# REDACTED PER PROTECTIVE ORDER

To be paid to the Author in accordance with Section 14 of this Agreement:

# REDACTED PER PROTECTIVE ORDER

For purposes of this subsection, a "completed manuscript" refers to the final manuscript, including any agreed upon revisions from the Author, prior to copyediting by the Publisher.

**On-line sales**  It is understood and agreed that the Publisher's discount policies applicable to the sale of print editions of the Work to brick-and-mortar retail and wholesale booksellers shall also apply to the sale of print editions to on-line booksellers.

(2)   **Royalties**  The Publisher shall pay the Author royalties on copies of the Work sold by the Publisher as follows:

(a)   **Hardcover**

# REDACTED PER PROTECTIVE ORDER

CONFIDENTIAL

DEFS004323

3



(b)   **Softcover**

(c)   **High Discount Sales and Remainder Sales**



(d)   **Export**

**REDACTED PER PROTECTIVE ORDER**

(e)   **Sheets**   On the sale of sheets of any trade edition:  the royalty rate applicable to the sale of the bound edition in question.

(f)   **Other Editions**   On sales of any subsequent edition of the Work:

(i)   If the Work is revised, subject to the Agreement of the Author, but is printed from existing plates or films with minor revisions and additions, sales of previous editions shall be counted in determining the applicable royalty rate.  If, however, the Work is so revised as to require resetting of more than 10% of the text, royalties on copies of such subsequent editions shall be paid at the applicable rates specified above, and sales of previous editions shall be disregarded in determining the applicable royalty rate.

(ii)   The Publisher may issue a special, educational, or limited edition of the Work on terms to be agreed by the Publisher and the Author.

(iii)   On copies of an audio recording sold under the Publisher's imprint (if any): 10% of the net amount received.

(iv)   On copies of an Electronic Book electronic edition distributed to an end-user via a distribution agreement or otherwise sold under the Publisher's imprint (if any): 25% of the net amount received.

**Author's Right to Renegotiate Electronic Book Royalty** It is understood and agreed that, at any time after three (3) years after the publication date of the Publisher's initial Electronic Book edition of the Work, the Author or the Author's agent may request a

4

renegotiation of the Author's royalty rate for an Electronic Book edition of the Work under the Publisher's imprint based on then-current market conditions. In that event, the Publisher and the Author agree to negotiate in good faith and, if the Publisher and the Author agree to a different royalty rate for Electronic Book editions for the Work, they will execute an amendment to this Agreement to reflect the new, mutually agreed upon royalty rate for Electronic Books, which shall be at least as high as the Publisher's then-current standard Electronic Book royalty rate for authors in its standard author-contract boilerplate. In the event that this Agreement is amended in accordance with the renegotiation described in this paragraph, the new royalty rate shall be effective as of the royalty accounting period beginning after receipt of the Author's request to renegotiate. And in the event that the Author has requested renegotiation of the Electronic Book royalty rate, but the Publisher and the Author have failed to reach agreement on such rate within sixty (60) days of the Author's request to negotiate, the Publisher will refrain from selling Electronic Book editions of the Work again unless and until the Author and the Publisher agree on a royalty rate for such edition.

(3)   **Other Income**   The net amount received which is payable to the Author from licenses or rights granted in whole or in part by the Publisher on behalf of the Author shall be as follows:

   (a)   **Principal Subsidiary Rights**

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛: for first serial publication rights in a magazine or newspaper before publication of the trade edition.

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛: (A) for dramatizations or adaptations of the Work on the stage, via motion picture, radio, and television or for home video (including, but not limited to, films, animated films, video cassettes, and video disks); (B) for dramatizations of the Work via audio recordings, in all formats now or hereafter developed, including distribution of such audio recordings via digital downloads; (C) for the sale of British Commonwealth rights (exclusive of Canada) in the English language; [It is understood and agreed that the Publisher is authorized to include first and second serial rights as part of its license for British editions.] (D) for the sale in other languages through translation. [It is understood and agreed that the Publisher is authorized to include first and second serial rights in other languages as part of its licenses for translated editions.]

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛: (A) after consultation with the Author, for book club and mail order continuity series rights; (B) for reprint editions, including, but not limited to, large print, hardcover and softcover rights, with the understanding that licenses of hardcover and softcover reprint rights shall be subject to the Author's approval, such approval not to be unreasonably withheld or delayed; (C) for second serial publication rights in a magazine or newspaper after publication of the trade edition; (D) after consultation with the Author, for selection rights; (E) for abridgment and condensation rights [see Section 1D3(c) below]; (F) for permission to photocopy the Work; and (G) for Electronic Book [see Sections 1D(7) and 1D(8) below] electronic rights in all formats, now or hereafter developed, which use all or part of the Work (including, but not limited to, programmed instructions, software, databases, videotex, teletext, and information storage and retrieval systems); (H) for non-dramatic abridged and non-dramatic unabridged audio recordings of the Work, in all formats now or hereafter developed, including distribution of such audio recordings via digital downloads; (I) for other non-dramatic unabridged narrations (including, but not limited to, television, radio, filmstrips, and videotape); and (J) for commercial rights to the Work, including posters, calendars, greeting cards, and other merchandise.

   (b)   **Copies of Agreements**   The Publisher shall make available to the Author, upon the Author's request, copies of any agreements concerning rights in the Work.

   (c)   **Editorial Approvals**   Notwithstanding anything in this Agreement to the contrary, the Author shall retain the right of editorial approval over serializations, abridgements or condensations of the Work, such approval not to be unreasonably withheld or delayed, provided however that the Author's approval shall not be required with respect to the use of 1,500 words or less of continuous verbatim text. The right of approval set forth in the preceding sentence shall not apply to condensations of the Work published by the *Reader's Digest*, but the Author shall have the right to approve any license to the *Reader's Digest*.

5

(4) **Other Rights** All rights not explicitly granted herein by the Author to the Publisher are hereby reserved. ~~The Author agrees to give the Publisher the exclusive first opportunity to consider purchasing additional publishing or sublicensing rights to the Work not specifically stated in this Agreement. The parties agree to negotiate in good faith in an effort to agree on mutually acceptable terms for such rights. If the parties are unable to so agree, the Author, at a time no earlier than thirty (30) business days from the date the rights were offered to the Publisher, shall be free to offer such rights to other publishers.~~

(5) **Definition of the Net Amount Received** The net amount received shall be defined as gross revenues actually received by the Publisher from sales or licenses of the Work, less any of the following charges applicable to any such transaction: (1) appropriate credits given to the customer or rebated by the Publisher; (2) deductions for returns; (3) any licensing commissions paid by the Publisher, including but not limited to ~~commissions to foreign agents, commercial agents,~~ licensing agents for electronic editions, ~~and/or movie and dramatic rights agents;~~ (4) any commissions paid by the Publisher to corporate sales or distribution agents in connection with the sale of electronic editions; (5) any foreign taxes on the proceeds of a license; and (6) the cost of structuring data for electronic use prior to licensing electronic rights to a third party not to exceed $500.00.

(6) **Freight Pass-Through Allowance** Notwithstanding any provision in this Agreement, including references to list price, the Author agrees to allow the Publisher to calculate royalties on the Publisher's invoice price rather than on the jacket price. The invoice price is the Publisher's customary, suggested retail price less the applicable freight allowance. The jacket price is defined as the invoice price plus the applicable freight allowance.

(7) **Definition of an Electronic Book** For the purposes of this Agreement, an Electronic Book shall be defined as the storage and retrieval or transmission of the text of the Work (including any visual material contained in the Work) sequentially or non-sequentially and including search and organizational capabilities but otherwise without adaptation, in complete, condensed, abridged, or anthology versions in any electronic medium. The electronic medium for an Electronic Book shall make the Work available in non-dramatic visual form for reading; this may include (but shall not be limited to) all forms of electronic, magnetic, digital, optical and laser-based information storage and retrieval systems, floppy diskette-based software, CD-ROM, compact disks, ROM Card, silicon chip, on-line electronic or satellite-based data transmission and other such systems, and any other device or medium for electronic reproduction, publication, distribution or transmission, whether now known or hereafter developed.

Notwithstanding the foregoing, it is understood that serialization in electronic form, when exercised as part of first and second serial publication rights for print magazines or newspapers, shall be deemed within the definition of serial rights, not Electronic Book rights.

For the avoidance of doubt, it is understood and agreed that when either party licenses serial rights, (1) such license may authorize the licensee to make the serialized excerpt of the Work available on-line, via the licensee's website; and (2) such license may also authorize the licensee to maintain such serialized excerpt in the licensee's on-line archives, which may be accessed by end-users via the licensee's website.

It is understood that an enhanced Electronic Book is a type of Electronic Book, enhanced with the addition of some content not found in the print editions, which may include, but is not limited to, the addition of sound and/or video enhancements, although the enhanced Electronic Book remains primarily intended for reading. It is understood and agreed that the Publisher shall not add any content to the Electronic Book edition of the Work (such as text, art, audio, or video content) without the prior written approval of the Author.

(8) **Approvals Concerning an Electronic Book** The Author shall have the right to approve any licensing of Electronic Book rights whether the Work is presented individually or as part of an anthology, such approval not to be unreasonably withheld or delayed. The Author shall also have editorial approval of any condensed or abridged use of the Work and any addition of material in connection with an Electronic Book, such approval not to be unreasonably withheld or delayed. The Author shall have the right to approve any publication or distribution of the Work under the Publisher's imprint where the Work appears as part of an anthology, such approval not to be unreasonably withheld or delayed.

DEFS004326

6

It is understood and agreed that the Author's approval will be deemed granted for proposed licensing of Electronic Book editions if the Author or the Author's agent do not respond to a written request for such approval from the Publisher within thirty (30) days of receipt, provided that the Electronic Book edition in question does not involve any addition, deletion, or revision to the interior content found in the print edition of the Work. If such changes are requested, approval will be deemed granted only when it is received in writing by the Publisher from the Author.

(9)  **Retained Rights to Electronic Versions**   The Author shall retain all rights to publish, distribute, or license Electronic Versions of the Work, as defined herein.  See Section 1D(11).

(10)  **Option Concerning Electronic Versions of the Work**   The Publisher shall have the opportunity to acquire Electronic Version rights from the Author, as defined in Section 1D(11), on mutually satisfactory terms, in accordance with the following provisions:

> (a) In the event that the Author desires to license the rights to publish Electronic Versions alone, and not as part of a license of motion picture, television and allied rights ("Dramatic Rights") for the Work, the Author shall offer the Publisher the first opportunity to acquire such rights prior to offering them to any third party. In the event the Author and the Publisher are unable to agree upon terms for the acquisition of such rights by the Publisher within twenty (20) business days of the Publisher's receipt of written notification of the Author's intention to license them, the Author shall be free to offer such rights elsewhere.

> (b) In the event that the Author licenses Dramatic Rights to the Work, the Author shall use reasonable efforts to withhold from any such license the right to publish Electronic Versions of the Work. If, after the exercise of such reasonable efforts, the Author has been unable to withhold the right to publish Electronic Versions, the Author shall be free to grant such rights as part of the license of Dramatic Rights to the Work with no further obligation to the Publisher concerning such rights.

(11)  **Definition of an Electronic Version**   For the purposes of this Agreement, an Electronic Version shall be defined as any derivative adaptation of the Work in whole or in part (in complete, condensed, adapted, or abridged versions and in compilations) with accompanying sound, images or graphics which are more than incidental to the text for performance or display and produced in any electronic medium with the understanding that enhanced Electronic Books (see subsection 7 above) are not Electronic Versions for the purposes of this Agreement. Electronic Version rights shall exclude Dramatic Rights [as defined in Section 1D(10)], which rights are reserved to the Author. The electronic medium for an Electronic Version may include (but shall not be limited to) all forms of electronic, magnetic, digital, optical and laser-based information storage and retrieval systems, floppy diskette-based software, CD-ROM, interactive software and compact disks, ROM Card, silicon chip, on-line electronic or satellite-based data transmission and other such systems, and any other device or medium for electronic reproduction, publication, distribution or transmission, whether now known or hereafter developed.

(12)  **Prevention of Unauthorized Reproduction**  It is understood and agreed that all copies of an Electronic Book edition of the Work will contain industry-standard technology for the purpose of preventing unauthorized reproduction.

(13)  **Text-to-Speech**  It is understood and agreed that the Publisher will require all licensees and distributors of an Electronic Book edition of the Work to disable any text-to-speech capability, by which an audible reading is created from the text of the Electronic Book edition of the Work. Disabling text-to-speech functions must be done before any Electronic Book edition of the Work may be made available for sale.

CONFIDENTIAL                                                    DEFS004327

7

**(14) Pass-Through for Book Club and Reprint Rights**   After all advances paid to the Author pursuant to Section 1D(1) have been earned out and after deducting the Publisher's reasonable allowance for reserve for returns, the Author's share of advances received from the sale of book club and/or reprint rights (if such share from either type of license exceeds $2,500) shall be paid to the Author within thirty (30) days of the Publisher's receipt of the Author's written request therefor.

## 2.   PREPARATION OF THE WORK; REVIEW AND ACCEPTANCE BY THE PUBLISHER

A.   **Delivery Date**   The Author and the Publisher have entered into this Agreement in reliance on the Delivery Date and in anticipation that the Work will be satisfactory in form and content to the Publisher. Any change in the Delivery Date must be agreed to by both parties in writing.

B.   **Conformance of Manuscript to Author's Warranties**   The Author agrees to prepare the Work in accordance with the Author's Warranties stated in Section 7A.

The Author agrees to maintain appropriate records and documentation of the Work, including copies of research notes and tape recordings, for a period of not less than three (3) years from the date of the Publisher's first publication of the Work.

C.   **Completed Copy**   The Author will deliver to the Publisher one (1) clean and legibly typed, double-spaced, completed copy of the manuscript and an electronic file containing a copy of the manuscript. Photographs, drawings, maps, and other illustrations specified by mutual agreement to be included in the Work shall be delivered to the Publisher in a form and quality suitable for reproduction.

D.   **Permissions, Authorizations, or Releases**

(1)   **Text and Illustrations in the Manuscript**   The Author will obtain, at the Author's expense, and deliver to the Publisher written permission for any and all text, illustrations, charts, or research material created or controlled by others, which he or she has incorporated in the Work, in addition to any signed releases the Publisher deems necessary regarding privacy and consent issues. The Author agrees to deliver such permissions or releases to the Publisher promptly and will exercise reasonable ~~best~~ efforts to deliver such permissions and/or releases by the Delivery Date.   If any of the permissions or releases required under this paragraph are not so delivered by the Author, the Publisher will have the right to obtain the necessary authorizations at the Author's expense, or to ask the Author to delete and/or substitute content for which satisfactory permissions or releases have not been obtained.

When requesting such permissions or authorizations, the Author will base his or her request letters or consent forms on templates provided by or approved by the Publisher. It is understood and agreed that the final version of such permissions or authorizations shall extend to both hardcover and softcover editions of the Work and that the rights obtained shall be no more limited than the volume publishing, distribution, and sublicensing rights granted by the Author to the Publisher in this Agreement.   Notwithstanding the foregoing, if anticipated permission expenses are significant, the Author may request that he or she clear rights for certain editions or licenses only after the Publisher has confirmed that it will exercise the rights in question.   It is also understood that, if the cost of clearing permission for a translated edition, British edition, or an electronic edition is greater than the Author's reasonably anticipated share of income from the edition in question, then the Publisher and the Author will negotiate in good faith to agree upon a way to share the responsibility for paying for the permissions in question.

(2)   **Promotional Uses**   If the Author includes illustrations in the Work, the Author shall use best efforts to obtain authorization for the use of such illustrations in promotional materials and advertising for the Work.

(3)   **Other Material**   The Author or the Publisher, with the Author's prior approval, may commission others to contribute or prepare any text, index, illustrations, maps, charts, research, or other material in connection with the Work as has been mutually agreed to be necessary to the Work. The Publisher may charge the Author for expenses incurred by it to obtain proper authorizations for the use of such material (provided that such expenses have been approved by the Author) and may delete from the Work any material that has not been properly authorized.

E.   **Review and Acceptance of the Completed Manuscript**   If the Publisher receives the completed manuscript on or before the Delivery Date, the Publisher will review it and notify the Author in writing within thirty (30) business days about whether the Publisher considers the manuscript satisfactory for publication. The Publisher may agree to review a manuscript which is delivered after the Delivery Date, and in that event shall waive timeliness of delivery of the manuscript as grounds for the rejection of the manuscript. ~~unless it notifies the Author in writing within thirty (30) business days after the Delivery Date that it is rejecting the manuscript for this reason.~~

8

F.   **Author's Right to Resubmit a Revised Manuscript**  If the Publisher finds the completed manuscript to be unsatisfactory, the Publisher will specify in writing the editorial and/or legal respects in which the Publisher believes the completed manuscript is unsatisfactory. The Author shall then have the right to resubmit a revised manuscript at a mutually agreed-upon date which shall be reasonable under the circumstances. Although the Publisher shall not be required to provide additional editorial services to assist the Author in rendering the completed manuscript satisfactory for publication, it may do so after consultation with the Author.

G.   **Acceptance of the Revised Manuscript**  If under Section 2F the Publisher finds the revised, completed manuscript to be satisfactory in form and content (including the material stipulated under Section 2D), it will notify the Author in writing of its acceptance of the Work for publication. Any other action by the Publisher such as the issuance of any further payments or the commencement of the editorial process shall not be construed as acceptance of the Work.

H.   **Termination Prior to Publication**  If any of the following circumstances arise, this Agreement may be terminated by the party and in the manner set forth below:

(1)   **Failure to Deliver**  If the Author fails to deliver the completed manuscript by within thirty (30) days of the Delivery Date, or if the Author delivers a completed manuscript that does not conform with the subject, focus, and genre in the agreed upon proposal, ~~or if the Author delivers a complete manuscript but the Publisher has rejected the manuscript on the basis of timeliness under Section 2E above,~~ or if the Author delivers a completed but unsatisfactory manuscript by the Delivery Date and fails to resubmit a revised manuscript by the agreed-upon date as stipulated in Section 2F, above, or under Section 7C, below, then the Publisher may terminate this Agreement, and the Author shall promptly repay any advances the Publisher has paid to the Author.



(3)   **Refusal to Revise**  The Author may choose to terminate this Agreement instead of revising the manuscript in accordance with Section 2F or Section 7C. In this the event of such a refusal concerning changes requested as a result of the legal reading, the Author shall promptly repay any advances the Publisher has paid to the Author.

(4)   **Failure to Publish**  (i) If the Publisher fails to give notice to the Author as required in Section 2E and such failure continues for thirty (30) business days after receipt of written notice from the Author of such failure, the Author may terminate this Agreement. (ii) If after acceptance the Publisher fails to publish the Work within the time period stated in Section 3A or any extension thereof as provided for herein, the Author may send the Publisher written notice demanding immediate publication. If the Publisher does not publish the Work immediately or within a time period that is otherwise mutually agreed in writing, the Author may terminate this Agreement. Upon termination as a result of either (i) or (ii), the Author shall retain all advance payments made up to that time by the Publisher as the Author's sole and exclusive remedy for nonpublication.

I.   **Postponement of Publication**  The Publisher may delay its decision whether to accept the manuscript and/or postpone publication or distribution of the Work during legal review under Section 7C, provided that the time period of such delay shall be reasonable under the circumstances and in no event longer than three (3) months.

J.   **Changes to Text**  The Publisher shall not make any changes in the text of the Work without the approval of the Author. (See Section 1D(3)(c) regarding editorial approvals and the Publisher's sublicensees.)

3.   **PUBLICATION**

A.   **Date of First Publication**  The Publisher will publish the Work at its expense within eighteen (18) months following the Publisher's notification to the Author under Section 2E of its acceptance of the Work, unless

publication is delayed by circumstances beyond the Publisher's reasonable control or by legal review of the Work under Section 7C. The delay in publication will not exceed the delay caused by the aforementioned circumstances.

B. **Author's Corrections in Proof** The Publisher shall send the Author proofs of the Work, and the Author agrees to read, correct, and return them promptly. The Author agrees to pay the cost of alterations initiated by the Author that exceed 10% of the initial composition expense. The Author will not be required to pay for printer's or Publisher's errors.

C. **Title of the Work** The Author and the Publisher shall mutually agree upon the title of the Work.

D. **Style of Publication** The Publisher shall determine the style and manner of publication, including design, form, printing, production, price, sale, promotion and distribution of free copies. These decisions shall be based solely on the Publisher's own experience and judgment and will reflect its business decisions made in good faith. The jacket/cover design, jacket/cover copy, and catalog copy for the Work shall be subject to the Author's approval, such approval not to be unreasonably withheld or delayed. (This approval provision is not to be deemed a precedent).

The Publisher shall publish the Work initially in hardcover format. No paperback edition shall be published prior to one (1) year following hardcover publication without the prior approval of the Author.

E. **Advertisements** The Publisher or its licensees will not insert or authorize the insertion of advertisements in any book or electronic edition of the Work without the Author's written consent, with the exception that mention may be made of other books published by the Publisher or its licensees in softcover editions ~~or electronic editions~~ of the Work.

F. **Promotion of the Work** The Publisher may use and authorize others to use the Author's name, approved likeness, and biographical information to be supplied by the Author in connection with the exercise of the rights granted under this Agreement and in any related advertising and promotion. The Author agrees to cooperate with the Publisher in promoting the Work as the Publisher may reasonably request, in accordance with a mutually agreeable schedule.

The Author agrees to participate in publicity for the Work including a promotional tour for a two-week period of time near the Work's initial publication date, if the Publisher requests that. Subject to the Author's availability, the Author also agrees to use reasonable efforts to make publicity appearances in response to opportunities for national media attention as such opportunities arise.

It is acknowledged that the Author's promise to personally perform the foregoing promotional and publicity activities has been a material inducement to the Publisher to enter into this Agreement and constitutes an essential part of the consideration provided to the Publisher hereunder with the understanding that if the Author is unable to make a mutually agreed scheduled appearance to promote the Work due to illness, personal emergency, or other extraordinary or unforeseen circumstances, then the Author's failure to make such scheduled appearance shall not be deemed a breach of this Agreement, provided that the Author uses reasonable efforts to reschedule and appear at a comparable promotional appearance which is reasonably satisfactory to the Publisher.

If the Author travels in connection with publicity for the Work at the Publisher's request, the Publisher shall pay the Author's reasonable expenses for related transportation, meals, and lodging.

G. **Author's Free Copies** The Author shall receive ~~fifteen (15)~~ fifty (50) free copies of each of the Publisher's print editions of the Work on first publication in book form, and may purchase further copies of the Work for personal use, but in no event for resale, at the Publisher's then-standard author discount. The Author's agent shall receive twenty-five (25) free copies of each of the Publisher's print editions of the Work on first publication in book form.

H. **Author's Originals** The Publisher shall take suitable measures for the preservation of the manuscript, as well as of any original illustrations or other material supplied by the Author, and will return these materials at the Author's request within three (3) months of publication of the Work.

4. **COPYRIGHT AND SELECTIONS**

A. **Registration and Notice** Upon first publication of the Work in the United States, the Publisher will insert the copyright notice for the Work in the name of the Author in every copy of the Work and will require the same of

10

its licensees. The Publisher will register copyright for the Work in the United States within ninety (90) days of its publication.

**B.    Notification of Prior Publication**   If the Author grants or has granted any rights for others to publish or otherwise exploit part or all of the Work before the Publisher's publication and if such rights have not been transferred to the Publisher under this Agreement, the Author will promptly notify the Publisher of the dates of such publications and will deliver to the Publisher the documents (such as assignments of copyrights) which the Publisher deems necessary to secure copyright for the Work.

**C.    Selections for Promotion**   After the initial publication of the Work, if the Publisher believes it will benefit the Work, for promotional purposes, to publish or to permit critics, reviewers or others to publish or otherwise use excerpts of less than five hundred (500) words from the Work or summaries of the Work, it may do so without charge to them or payment to the Author. The Publisher and the Author may also publish or permit others to publish other excerpts from the Work or summaries of the Work for promotional purposes after initial publication without charge to the user under the following conditions: such excerpts or summaries may not exceed a total of ~~seven thousand five hundred (7,500)~~ ten thousand (10,000) words or ten per cent (10%) of the text, whichever is shorter; such excerpts or summaries may not be offered for sale and shall not generate income for either party and if the Publisher is publishing or authorizing publication of such excerpts, the Publisher must believe that the distribution of such excerpts or summaries will encourage sales of the Work; and a proper copyright notice must be used.

**D.    Non-profit Uses**   The Publisher may permit third parties to reproduce or record the Work in appropriate forms for the physically or mentally handicapped on a non-profit basis, without charge to such third parties or payment to the Author.

**E.    Infringement by Others**   The Author and the Publisher will notify one another in writing if either has reason to believe that any right granted to the Publisher by this Agreement has been infringed by any third party. The parties shall discuss whether to proceed individually or jointly to redress any infringement. If the parties decide to proceed jointly, the Publisher shall select counsel with the Author's approval, not to be withheld unreasonably, and the expenses of the action and any money damages awarded shall be shared equally. If after written notice either party declines to participate, the other may proceed independently and bear all expenses of the action and ~~retain~~ all proceeds that may be awarded will first apply to reimburse the relevant legal expenses and the remainder will be divided equally.

5.    **OPTION**

The Author agrees to give the Publisher the exclusive first opportunity to consider the Author's next full-length work, ~~whether~~ of nonfiction ~~or fiction,~~ for publication. The parties agree to negotiate in good faith in an effort to agree on mutually acceptable terms for publication following the Author's submission of ~~a new manuscript for fiction, or~~ a detailed proposal ~~outline and sample chapters~~ for nonfiction, with the understanding that such submission may take place no earlier than ~~the initial publication of~~ thirty (30) days after the Publisher's acceptance of the completed manuscript for the Work. If the parties are unable to so agree, the Author, at a time no earlier than thirty (30) business days from the date of submission, shall be free to submit the new work to other publishers with no further obligation to the Publisher.

6.    **STATEMENTS TO THE AUTHOR**

**A.    Payments and Statements**   After publication, the Publisher will render semiannual statements of account during the month of April for the six-month period ending in the preceding December, and during the month of October for the six-month period ending in the preceding June. Each statement will be accompanied by payment of the amount shown to be due from sales (less returns) and licenses of the Work, after recoupment of all sums paid to the Author hereunder as advances against royalties and after allowance by the Publisher for a reasonable reserve for returns. In computing payments due, the Publisher may establish and deduct a reasonable reserve for returns of each edition, and such reserve will be specified on the statement of account. If less than fifty dollars ($50.00) is due to the Author for any accounting period, the Publisher may make no payment and render no statement until after the next period in which fifty dollars ($50.00) is due to the Author.

**B.    Author's Charges or Debts**   The Publisher may, in addition to any other remedies provided by law, deduct from amounts due to the Author under this Agreement any sums the Author may owe the Publisher under this Agreement, including but not limited to overpayments of royalty under this or any other agreement with the Author and purchases made by the Publisher for the Author or at the Author's request. Unearned advances shall not be considered a debt owed by the Author for the purposes of this subsection unless the Author has agreed in writing to repay a specific advance to the Publisher.

**C.    Licensees' Income Statements**   The Publisher shall provide copies of statements from subsidiary rights licenses to the Author at the Author's request.

**D.    Other Information**   The Publisher agrees to provide the Author, upon request, with specific information regarding inventories, printings, and returns, which may not otherwise appear on the records of account.

CONFIDENTIAL                                                                                   DEFS004331

11

E.   **Verification of Accounting**   The Author or the Author's representative, at the Author's expense, may examine and copy the Publisher's records of account as they relate to sales or licenses of the Work as appropriate to verify the accuracy of the Publisher's records of account, provided that any examination is performed no more than once a year, after reasonable notice, during normal business hours.  If errors of more than 5% are found, the expense of examining the Publisher's records shall be borne by the Publisher.  Errors not objected to in writing within seven (7) years shall be deemed waived by the Author.

## 7.   LEGAL UNDERTAKINGS

A.   **Author's Warranties**   The Author represents and warrants that the Work is and will be in accordance with the following "Author's Warranties" which the Author makes for the benefit of the Publisher and any third party acquiring any right or interest in the Work or a copy of the Work through the Publisher:

   (1)   **Disclosure Affecting Rights Granted**   Unless otherwise disclosed to the Publisher in writing or in response to the Publisher's standard legal questionnaire referred to in Section 7C prior to publication of the Work by the Publisher, the Author warrants that:

      (a)   the Work has not been published in whole or in part;

      (b)   the Work is not, and prior to the normal expiration of copyright will not be, in the public domain in whole or in part;

      (c)   the Work is and will be original and the Author is its sole author and creator;

      (d)   no third party has or will have any claim to or interest in the Work as a co-author or otherwise; and

      (e)   the Author has not entered and will not enter into any agreement with any third party conflicting with the Publisher's rights relating to the creation, subject matter, or publication of the Work.

   (2)   **Risk of Liability**   The Work will not infringe any copyright, contain any matter that libels or violates the privacy or publicity or any rights of any person or entity, or otherwise be in contravention of law; and the Author has used and will use all reasonable care in the creation, research, and preparation of the Work to ensure that all facts and statements in the Work are true and correct in all material respects.

   (3)   **Risk of Injury**   The Work will not contain any statement, formula, direction, recipe, prescription or other matter that involves a reasonably foreseeable risk of injury or damage to the Work's readers or others.

   (4)   **Third-Party Claims**   Except as disclosed in the legal questionnaire referred to in Section 7C, the Author is not aware of any claim or proceeding by any third party inconsistent with any of the Author's Warranties, and the Author will inform the Publisher if any such claim is made or threatened in the future.

   (5)   **Other Publication**   The Author has not published or authorized publication of any work that would compete directly with the Work or materially diminish the value of the rights granted to the Publisher in this Agreement, and will not do so during the term of this Agreement.

   (6)   **Ability to Comply**   The Author is free to make this Agreement, and is and will remain free to perform all of the Author's obligations under this Agreement.

   (7)   **Cooperation**   The Author agrees to cooperate with the Publisher and its insurance carrier in the defense of any claim or proceeding arising out of the Work.

B.   **Publisher's Material**   The Author's Warranties shall not apply to any new material that the Publisher may supply for the Work under Section 2D.

C.   **Legal Review**   To assist the Publisher with evaluation and legal review of the Work, the Author may be asked to complete and return the Publisher's standard legal questionnaire. The information disclosed by the Author in response to such questionnaire shall be subject to the Author's Warranties under Section 7A and the disclosure of such information shall in no way limit any of the Publisher's rights or the Author's obligations pursuant to Section 7D, Section 7E, and Section 7F.

The Publisher may request the Author to make changes to the Work in consideration of the legal rights of others. If the Author is unwilling to make such changes, the Publisher or the Author may terminate this Agreement as provided in Section 2H(2) and 2H(3) of this Agreement. The Publisher may, at its own expense, but is not required to, investigate whether the Work presents legal risk or whether the Author's Warranties are accurate, obtain a legal opinion on behalf of the Author, or request changes. Any investigation or opinion or requested changes shall not affect the Author's Warranties or responsibilities.

D.   **Legal Claims**   Each party shall give the other prompt written notice of any claim, proceeding, or legal action involving the Work which has been or may be brought.

CONFIDENTIAL                                                                     DEFS004332

12

The Publisher shall take the steps necessary to defend the Author and/or the Publisher against such claim. Counsel selected by the Publisher will also represent and defend the Author. If at any time the Publisher's counsel determines that there is a conflict in such joint representation, the Author will be so informed in writing. The Author may then (or in the event of any claim) select counsel at the Author's expense upon consultation with the Publisher, provided that such Author's counsel cooperates fully with the Publisher's counsel.

E.    **Settlements and Indemnity**    The Publisher reserves the right to settle any claim, proceeding, or suit related to the Work at any time after consultation with the Author. Notwithstanding the Publisher's right of settlement, if the Author elects to pursue such claim the Author may offer to post adequate bond subject to the prior reasonable approval of the Publisher, upon approval of which the Author may independently pursue such litigation and be responsible solely for all costs and damages relating thereto.

In the event of settlement or judgment in connection with any claim, action, or proceeding inconsistent with the Author's warranties or representations herein ~~or based upon or arising out of anything contained in the Work~~, the Author will indemnify the Publisher for all amounts paid to the claimant ~~and for all amounts incurred by the Publisher in defending against the claim~~ that are not covered by insurance and for all outside attorneys' fees incurred by the Publisher in defending the claim that are not covered by insurance.

F.    **Author's Breach**    In addition to any other rights in law and equity, in the event of any breach by the Author of the Author's Warranties, the Publisher may as a final remedy cease publication, revert rights to the Author and terminate this Agreement. In such event, the Publisher may also recover any unearned portion of the advance; and/or the Publisher, and any third party acquiring any right or interest in the Work or a copy of the Work, may recover from the Author any costs, expenses, and damages arising from such breach which are not covered by insurance.

G.    **Continuance of Warranties**    The Author's Warranties and the Author's other responsibilities under this Section 7 shall be in effect throughout the term of this Agreement and shall survive its termination.

8.    **DISCONTINUANCE OF PUBLICATION AND REVERSION OF RIGHTS**

A.    **Definition of "In Print"**    The Work shall be deemed "in print" when copies of the Work are available and offered for sale in any full-length edition in the United States authorized under this Agreement, whether issued by the Publisher or by its licensees, or when an edition of the Work is under license to be published by another party in the United States within ~~twenty-four (24)~~ eighteen (18) months. Notwithstanding the foregoing, no electronic edition or sublicense of electronic rights shall be deemed to keep the Work "in print" unless such edition or sublicense results in at least a total of 100 units sold during the royalty accounting period preceding the Author's request to the Publisher pursuant to Section 8B of this Agreement. Similarly, no on-demand edition or sublicense of on-demand printing rights shall be deemed to keep the Work "in print" unless such edition or sublicense results in at least a total of 100 units sold during the royalty accounting period preceding the Author's request to the Publisher pursuant to Section 8B of this Agreement.

B.    **Request to Place in Print**    If the Work is not in print and if ~~three (3)~~ two (2) years have elapsed since the Publisher's first publication and if there is no indebtedness of the Author to the Publisher, the Author may request in writing that the Publisher place the Work in print. (It is understood and agreed that an unearned advance shall not constitute indebtedness for the purposes of this Section 8B.) The Publisher shall notify the Author in writing within three (3) months from the receipt of such request whether it intends to place the Work in print in any full-length edition in the United States (excluding any on-demand edition that results in fewer than 100 units during the royalty accounting period preceding the Author's request to the Publisher).

If the Publisher has not notified the Author in writing of its intention to comply with the Author's written request to place the Work in print in any full-length edition in the United States (excluding any on-demand edition that results in fewer than 100 units during the royalty accounting period preceding the Author's request to the Publisher) within three (3) months after receipt of such request, or if the Publisher fails to reprint the Work in a full-length hardcover or paperback edition, or to license ~~a reprint edition~~ a full-length edition in the United States (excluding any on-demand edition that results in fewer than 100 units during the royalty accounting period preceding the Author's request to the Publisher) that will be published in a reasonable period of time, within one (1) year after receiving the Author's request (unless prevented from doing so by circumstances beyond the Publisher's reasonable control), then the Publisher shall execute and deliver a written document revering all rights granted herein to the Author, with the exception that any existing licenses or options the Publisher has granted to a third party for rights to the Work shall continue in effect according to their terms, and the Author and the Publisher shall continue to share in the revenues from such licenses subject to Section 1D(3).

C.    **Notification**    Any termination provided in this Agreement shall be effective on the thirtieth (30th) day after the terminating party has sent written notice of termination, unless another effective date is stated in the letter of

DEFS004333

13

termination. Upon termination, all rights transferred to the Publisher under this Agreement will revert to the Author except as specified in Section 8B above.

**D.  Production Files**  When rights to the Work have reverted to the Author in accordance with this section 8, the Author may request ownership of the production files.  The Publisher agrees to provide the production files to the Author at the cost of shipment, upon the Author's request, provided that the production files are still available at the time.

## 9.  RESOLUTION OF DISPUTES

In the event that the Author and the Publisher cannot resolve any dispute that arises under this Agreement, they agree to resolve such disputes in courts located in Boston, Massachusetts. If the parties agree to arbitration, the claim shall be submitted to the American Arbitration Association in the City of Boston, in accordance with its then-prevailing rules, and judgment confirming the Arbitrator's award may be entered in any court of competent jurisdiction.

## 10.  ASSIGNS

This Agreement shall be binding upon and for the benefit of the Author and the Author's heirs, executors, administrators, and assigns, and shall also bind and benefit the Publisher and its successors and assigns. The Publisher ~~may assign this Agreement in whole or in part~~ shall not assign this Agreement without written consent of the Author, such consent not to be unreasonably withheld, except that the Publisher may assign this Agreement without the consent of the Author to a parent, affiliate or subsidiary company, or to a purchaser of all or substantially all of its Trade Division assets, or in connection with a reorganization. If the Author personally guarantees that the assignee will perform all of the Author's obligations under this Agreement, the Author may assign this Agreement, provided that the Author has the Publisher's prior written approval, which shall not be withheld unreasonably. The Author shall also have the right to assign any payments due under this Agreement, subject to the approval of the Publisher, such approval not to be unreasonably withheld or delayed.

## 11.  NOTICE

Any notice required under this Agreement shall be in writing and sent to the Author's address or the Publisher's address, stated above, or to the Publisher at 215 Park Avenue South, New York, N.Y. 10003, or such subsequent address as a party shall notify the other in writing. Unless otherwise specified, such notice may be sent by regular mail.

## 12.  NO AGENCY

The Author is in no respect the Publisher's agent or employee.

## 13.  RELEASE FROM PREVIOUS CONTRACT

It is a condition precedent to the enforceability of this Agreement that the Publisher receive a fully executed conditional letter of release in connection with the cancellation of the Author's previous publishing contract with Simon & Schuster for the Work, and such release is needed by the Publisher before it pays Simon & Schuster the amount due on signature of this Agreement.  The release shall be attached to this Agreement.  The Parties agree to execute and deliver further documents and instruments as may be necessary or appropriate to effectuate the purposes of this Agreement, and the Author agrees to sign all such additional documents as necessary.

## 14. AGENCY

The Author hereby authorizes the Publisher to pay his agent, Janklow and Nesbit Associates ("Associates"), 445 Park Avenue, New York, New York 10022, all sums of money due under this Agreement, with the exception of the payments the Publisher will make on the Author's behalf to Simon & Schuster as specified in Section 1D(1). The Author declares that the Associates' receipt shall be a good and valid discharge in respect thereof, and that said Associates is empowered by the Author to act as agent on his behalf in respect of this Agreement. The Author irrevocably assigns to Associates, as

CONFIDENTIAL                                                              DEFS004334

14

an agency coupled with an interest, fifteen per cent (15%) of any monies due or to become due to the Author pursuant to this Agreement, with the exception of the payments the Publisher will make on the Author's behalf to Simon & Schuster as specified in Section 1D(1).

In the event the Author, by written notice to the Publisher, instructs the Publisher to change the payment arrangements provided in this Agreement, the Publisher agrees to pay directly to Associates fifteen per cent (15%) of all advances and royalties due the Author pursuant to this Agreement. The remaining eighty-five per cent (85%) of all advances or royalties due pursuant to this Agreement shall be paid in accordance with the written instructions of the Author. The Publisher shall continue to send copies of all royalty statements in respect of the Work as well as copies of all subsidiary rights agreements regarding the Work to Associates even if the Publisher has been instructed to change the payment arrangements.

15.   **CONSTRUCTION AND VALIDITY**

This Agreement consists of Section 1 through Section 15 and Appendix I and Appendix II and constitutes the full understanding of the parties hereto, and no promises, representations, or undertakings involving the Work other than those incorporated herein shall be binding on either party. The parties shall have no obligations to each other except those specifically stated in this Agreement. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and the United States of America. If any part of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, the remaining provisions shall continue in effect.

Any modification of this Agreement must be in writing and signed by both parties.

HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY

By: _____
      PUBLISHER

By: _____
      AUTHOR, James Risen

      U.S.
      Citizenship

Tax Identification Number: 13-3516823
                                          (Agent)

TD 11/30/10
Risen_PAY ANY PRICE.adt

15

**APPENDIX I**

<u>DESCRIPTION OF PROJECT</u>

referred to in the Agreement, dated November 7, 2013, between Houghton
Mifflin Harcourt Publishing Company and James Risen in respect of the Work,
PAY ANY PRICE by James Risen

A work of investigative journalism exposing the greed, corruption, and abuse
of power that has resulted from the U.S. government's endless war on terror.

CONFIDENTIAL

DEFS004336

16

## APPENDIX II

### SCHEDULE OF AUTHOR'S RESERVED EXCLUSIVE
ENGLISH-LANGUAGE TERRITORIES

referred to in the Agreement, dated November 7, 2013, between Houghton
Mifflin Harcourt Publishing Company and James Risen in respect of the Work,
PAY ANY PRICE by James Risen

**AFRICA**
Botswana
Cameroon
Gambia
Ghana
Kenya
Lesotho
Malawi
Mauritius
Mozambique
Namibia
Nigeria
Rwanda
Seychelles
Sierra Leone
South Africa
Swaziland
Tanzania
Uganda
Zambia

**ASIA**
Bangladesh
Brunei
India
~~Malaysia~~
Maldives
Pakistan
~~Singapore~~
Sri Lanka

**EUROPE**
Cyprus
Malta
United Kingdom
  (including Great Britain,
  Northern Ireland,
  Isle of Man, and
  the Channel Islands)

**OCEANIA**
Australia
Fiji
Kiribati
Nauru
New Zealand
Papua New Guinea
Samoa
Solomon Islands
Tonga
Tuvalu
Vanuatu

**NORTH AMERICA**
Antigua and Barbuda
Bahamas, The
Barbados
Belize
~~Canada~~
Dominica
Grenada
Jamaica
St. Kitts and Nevis
St. Vincent and the Grenadines
St. Lucia
Trinidad and Tobago

**SOUTH AMERICA**
Guyana

Rev. 07/17/12          British.cou

CONFIDENTIAL                                        DEFS004337