# EXHIBIT 15

```
                                    ┌─────────────────────────────────┐
                                    │ [X] FILED        RECEIVED        │
                                    │     ENTERED      SERVED ON       │
                                    │          COUNSEL/PARTIES OF RECORD│
                                    │  ┌──────────────────┐            │
                                    │  │ SEP  1           │            │
                                    │  └──────────────────┘            │
                                    │  CLERK US DISTRICT COURT         │
                                    │   DISTRICT OF NEVADA             │
                                    │ BY:                   DEPUTY     │
                                    └─────────────────────────────────┘
```

1   DANIEL G. BOGDEN
    United States Attorney
2   PAUL L. PUGLIESE
    Assistant United States Attorney
3   100 W. Liberty Street, Suite 600
    Reno, Nevada 89501
4   Tel: (775) 784-5438

5   Attorneys for Plaintiff

6                   UNITED STATES DISTRICT COURT

7                        DISTRICT OF NEVADA

8   IN THE MATTER OF THE SEARCH OF:        )
                                           )   No. 3:06-CV-0263-BES-VPC
9   The Residence Located at 12720         )
    Buckthorne Lane, Reno, Nevada, and     )
10  Storage Units 136, 140, 141, 142, and 143, )  **GOVERNMENT'S COMPLIANCE**
    Double R. Storage, 888 Maestro Drive,  )   **WITH COURT ORDER OF**
11  Reno, Nevada                           )   **AUGUST 17, 2006**
                                           )
12                                         )
                                           )
13

14          COMES NOW, the United States of America, by and through DANIEL G. BOGDEN, United

15  States Attorney, and PAUL L. PUGLIESE, Assistant United States Attorney, and complies with the

16  Court's order of August 17, 2006.

17          During a hearing on August 17, 2006, the Court directed that the Government provide to the

18  Court all reports and information that Special Agent Michael West relied upon in support of the

19  information contained in the search warrant affidavits at issue in this matter. Upon receipt, the Court

20  would conduct an *in camera* review in order to determine whether any of the information is relevant

21  to a determination on issues currently outstanding in this matter.

22  \ \ \

23  \ \ \

24  \ \ \

25  \ \ \

26  \ \ \

69

DEFS002216

Case 3:06-cv-00263-PMP-VPC    Document 70-5    Filed 09/11/2006    Page 2 of 40

Case 3:06-cv-00263-PMP-VPC    Document 70 *SEALED*    Filed 09/11/2006    Page 2 of 40

1    The Government has attached pages numbered 00001 - 00137 and dated September 11, 2006.

2    The Government opposes the release of any of the attached documents to counsel for the movants at

3    this time.  Such release in not appropriate as the investigation of alleged offenses involving Mr.

4    Montgomery continues, and the information contained herein is not necessary for a determination on

5    the movants' pending motions.

6        Dated:  September 11, 2006

7                                    Respectfully submitted,
                                     DANIEL G. BOGDEN
8                                    United States Attorney

9

10                                   PAUL L. PUGLIESE
                                     Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                    2

DEFS002217

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription   02/13/2006

Warren Trepp, Chief Executive Officer, eTreppid Technology, LLC., 755 Trademark Drive, Reno, Nevada, telephone (775) 337-6771, was interviewed at the Reno Resident Agency of the Federal Bureau of Investigation by Special Agents John Piser III and Michael A. West, regarding the theft of trade secrets and classified information from eTreppid Technology, LLC.

Trepp was introduced to Dennis Lee Montgomery by Eldorado Casino Host Steven Sands in 1997. Trepp became aware that Montgomery wanted to start a new business involving the development of pattern recognition and compression of software.

In the end of 1998, Trepp and Montgomery formed Intrepid, a company to develop pattern recognition and compression software. On September 28, 1998, Trepp and Montgomery signed a contribution agreement wherein Montgomery received a fifty percent ownership in Intrepid in return for providing certain computer software technologies to Intrepid. Trepp provided a copy of the contribution agreement signed by Montgomery dated September 28, 1998.

Trepp advised that at a later date, the name Intrepid was changed to eTreppid Technology, LLC to avoid any legal issues relating to the name of Intrepid.

Trepp advised that Montgomery currently owns approximately thirty percent of eTreppid. Montgomery's ownership was reduced due to Montgomery selling a portion of his ownership for 2.25 million dollars and a capitol call in which Montgomery did not participate. The capitol call required equity investors to contribute additional capitol to eTreppid to continue the operation of the business.

Montgomery became the Chief Technical Officer (CTO) for eTreppid and had the responsibility for the day to day activities of eTreppid to include the hiring and firing of employees and preparing the company's products to satisfy customers. Montgomery was also on the Executive Management Committee which controlled the overall activities of the business. This Executive Management Committee consisted of Trepp, Montgomery, and Attorney Doug Frye.

Investigation on   01/31/2006   at Reno, Nevada

File #  295A-LV-39368

SA John Piser III
by   SA Michael A. West:st

Date dictated   02/09/2006

00001

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002218

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Warren Trepp___ , On _01/31/2006_ , Page __2__

    Trepp advised that Montgomery has software programming skills; however, recently Trepp has found out that Montgomery's skills may not be what he has purported them to be.  Trepp cited a recent Air Force Office of Special Investigation Inquiry, which determined that Montgomery's programming skills were not what he alleged.  Montgomery has hired other employees to do programming and claimed that he did the work.

    Trepp recently learned that Montgomery would require eTreppid employees to falsify the results of live demonstrations for it's customers.  Jesse Anderson, a programmer for eTreppid, told Trepp that Montgomery would require Anderson and Jim Bauder, another eTreppid employee to go into an office at eTreppid while Montgomery was out in a nearby field with a toy bazooka to demonstrate eTreppid's recognition software capabilities.  Montgomery instructed Anderson and Bauder to go into a room and wait to hear a noise on their cell phone and then instructed them to press a button on a computer keyboard that would display an image of a bazooka on the computer screen viewed by the customers, including Department of Defense employees.  Trepp advised that the Department of Defense employees were at the demonstration to make a judgment regarding the purchase of this technology.

    Trepp advised that on December 8, 2005, Montgomery requested a personal loan of two hundred and seventy five thousand dollars through Trepp's financial company known as Friendly Capitol Partner, LP.  Trepp further advised that he has loaned Montgomery money since approximately 1999 and estimated that Montgomery has an outstanding balance of approximately 1.375 million dollars and an $125,000.00 in interest owed.

    Trepp advised that Sloan Venables was able to recover approximately five years of Montgomery's e-mails maintained on eTreppid hardware; however, no e-mails were recovered for December 2005 to January 2006.  Trepp advised that a review of these e-mails clearly showed that Montgomery is having financial troubles.

    Trepp advised that Montgomery goes to the Eldorado Casino/Hotel and the Peppermill Hotel/Casino at night to gamble.  Montgomery has told Trepp that he has a system for counting cards in an eight deck shoe in blackjack.  Trepp has known Montgomery to use a three hundred thousand dollar line of credit at Nevada casinos.

00002
Sept. 11'06

DEFS002219

FD-302a (Rev. 10-6-95)


295A-LV-39368


Continuation of FD-302 of ___Warren Trepp_____ , On 01/31/2006 , Page ___3___


Trepp advised that approximately ten days ago, Montgomery asked Neil Azzinero, an El Dorado Hotel/Casino host, if Azzinero knew of a U.S. citizen who would be interested in funding a new business with him and needed five to ten million dollars.

Trepp advised that Montgomery is married to Brenda Montgomery and has two boys, Brian Montgomery, age 30, Steven Montgomery, age 26, and Kate Montgomery, age 23. Brian Montgomery and Steven Montgomery have been employed at eTreppid in the past, building hardware components.

Trepp advised that on January 9 or January 10, 2006, Montgomery stated "you're an asshole and I will see you again" to Jesse Anderson, which Anderson took as some type of threat. Montgomery has a bad temper and has been verbally abusive to employees and known to throw objects. Montgomery was also known to have had a Temporary Restraining Order issued against him from a former girlfriend who was employed at eTreppid.

Trepp considers Montgomery to be a bright individual, who is a workaholic and has been known to embellish facts to his advantage. Trepp further described Montgomery as being independent and arrogant.

Trepp advised that while Venables was on vacation from December 22, 2006 to January 4, 2006, Montgomery deleted all source code relating to eTreppid's software development efforts and all back up copies related to that software. Trepp further advised that only two employees had access to the company servers, known as the Source Server and the ISA Server. Those two employees were Sloan Venables and Dennis Montgomery. The Source Server contained all source code developed by eTreppid employees and their executable forms. Montgomery had the sole responsibility to back up the Source Server. Venables recently purchased a server known as the ISA server, just prior to his vacation, to act as a data warehouse for all eTreppid data.

Trepp advised that Montgomery routinely backed up the Source Server data onto a stand alone computer in Montgomery's office.

When Sloan returned from vacation, Sloan asked Montgomery where the back up computer for the Source Server was to which Montgomery advised Venables that he took it home. Trepp advised that Montgomery has never been known to take this computer home in

DEFS002220

FD-302a (Rev 10-6-95)


295A-LV-39368


Continuation of FD-302 of ___Warren Trepp_____ , On _01/31/2006_ , Page ___4___

      the past.  Trepp further advised that this back up computer is
missing from eTreppid.

          Trepp advised that a review of both the Source Server and
the ISA server revealed that all pertinent development data was
deleted from the Source Server and the ISA server was damaged and
is unusable.  Trepp further advised that between January 7, 2006
and January 8, 2006, each computer work station at eTreppid was
deleted of all software development data.  Trepp advised that only
two employees at eTreppid would have access to delete this level of
data and those two employees are Venables and Montgomery.

          Trepp advised that a review of eTreppid's alarm code log
revealed that on January 7, 2006 and January 8, 2006, eTreppid
alarm was disarmed and re-armed by Montgomery's alarm code.

          Trepp further advised that eTreppid maintains a video
surveillance system covering the exterior and interior of eTreppid
and on January 10, 2006, a review of this equipment revealed that
the machines were no longer recording and all data on the computers
had been deleted.  eTreppid's video surveillance system consists of
seventeen video cameras which record on seventeen separate computer
systems.

          Trepp advised that the Source Server contained all
intellectual property developed by eTreppid employees and possibly
contained secret information.

          Trepp advised that eTreppid has been developing software
for use by various U.S. Government agencies and as a part of this
development effort, have received authorization to possess and
maintain classified information up to the Secret level.  eTreppid
employees would receive Secret information from U.S. Government
agencies on various hard drives and Mini DV tapes which contained
still and video images to be used in eTreppid's development
efforts.  Trepp advised that employees Patty Gray, Sloan Venables,
and Dennis Montgomery handled this classified information.
eTreppid was required to store this classified information in safes
provided by the Air Force.

          Trepp advised that after Montgomery left the business on
January 10, 2006, an inventory of the classified hard drives and
mini DV tapes was conducted and this inventory revealed that nine
hard drives containing secret data were missing.  As a result of

DEFS002221


FD-302a (Rev 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Warren Trepp_____ , On 01/31/2006 , Page __5__

this inventory, Trepp learned that possibly additional copies of the nine original hard drives were made by Montgomery.

Trepp advised that Montgomery is no longer an employee of eTreppid and alleges that he (Montgomery) has a copyright dating back to 1982 on software used by eTreppid for which he has not been paid.

Trepp advised that Montgomery's behavior is odd, considering that eTreppid would most likely receive government contracts in the near future which would result in million dollar contracts for eTreppid.

Trepp advised that on January 9, 2006, he asked Montgomery, who deleted the data from the Source Server and ISA server, to which Montgomery blamed Patty Gray. Trepp further advised that on January 10, 2006, he requested that Montgomery returned any items including the software that he had taken from eTreppid and Montgomery denied taking anything.

Trepp advised that he required Montgomery to provide him a copy of all data on the Source Server once every year to protect both himself and Montgomery should something ever happen to this data. Trepp advised that when he learned that the Source Server had been deleted and Montgomery refused to return to work, he looked at the copies provided by Montgomery over the years, and found that these disks were blank or contained no data relevant to eTreppid's development efforts.

00005
Sept. 11'06

DEFS002222

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/13/2006

Sloan Sterling Venables, white male,

cell ███████, was interviewed at the Reno Resident Agency of the Federal Bureau of Investigation by Special Agents John Piser III and Michael A. West, regarding the theft of trade secrets from eTreppid Technologies, LLC.

Venables has been employed as the Director of Research and Development at eTreppid since approximately December of 1999. Venables duties include being the Facilities Security Officer who is responsible for ensuring compliance with government regulations in the storage of restricted information maintain by eTreppid. Venables is also the Network Administrator who maintains the mail and web servers, maintains the router configurations, purchases hardware for both internal and customer use, and leads half of the programming staff. Venables advised that he or Dennis Montgomery would know all eTreppid's efforts related to software development and the daily operations at ETreppid.

Venables advised that because of his responsibilities, he knows every piece of hardware at eTreppid as he has either installed it or hired someone to install it.

Venables knew Montgomery prior to coming to work at eTreppid and has worked closely with Montgomery since December of 1999.

Venables advised that in the fall of 2005, Patty Gray suspected Montgomery was doing something other than what he was actually telling people he was doing. Gray was trying to figure out what Montgomery was doing. Venables knew Montgomery promised products to customers that had not been completed or even assigned to programmers. Venables did not have specific details regarding this activity; however, Gray or employee Jesse Anderson may have more information.

Venables advised that Montgomery found out about Gray's and Anderson's efforts to look into his activities. In the beginning of December 2005, Montgomery installed removable hard drives on each of the programmer's workstation so he could remove

Investigation on   02/02/2006   at   Reno, Nevada

File #   295A-LV-39368   JP W                       Date dictated   02/09/2006

SA John Piser III

by   SA Michael A. West:st

00006

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002223

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ____Sloan Sterling Venables_____ , On 02/02/2006 , Page __2__

the hard drives and required the programmers, to include Lalith Tenneti and Barjinder Bal, and Krishna Tangirala, to give him the source code that they were working on.

Venables advised that on December 21, 2005, he called Montgomery while driving to work and Montgomery told Venables not to come in to work and to stay home to get ready for his trip. Venables arrived at eTreppid at approximately 11:00 AM on December 21, 2005, to complete work on the Internet Security Accelerator Server or ISA Server. Venables intended this server to act as a proxy server and manage the RAID (Redundant Array of Inexpensive Disks) unit, containing sixteen hard drives, to back up the Source Code Server or SRC Server and all other servers. Venables wanted to put the ISA server in operation and back up all eTreppid data prior to leaving on vacation. Venables mounted the ISA Server and RAID unit in the same cabinet as the SRC Server with the assistance of Jim Bowder.

Venables turned on the ISA Server and started backing up the SRC Server using a program known as XX-Copy which copies files and prepares a log of which files were successfully copied. Venables recalled that the ISA Server finished a few folders on the SRC Server while he was still in the building on December 21, 2005.

The servers at eTreppid contain a large amount of data which would take many hours to back up successfully. The Development Server contains approximately two hundred gigabytes of storage and Venables estimated that the SRC Server contains another two hundred gigabytes of information. Venables advised that because of the file size and structure, it would take a lot of time to successfully delete these files.

Venables advised that on December 21, 2005, he went out into the warehouse where Montgomery had a server and RAID box Montgomery used to periodically back up the SRC Server. Venables noticed that the Central Processing Unit (CPU) and the RAID box were missing and the only thing left at Montgomery's work area were the monitor, mouse, and keyboard. Venables asked Montgomery what happened to the server and the RAID box to which Montgomery stated that he took them home. Venables advised that both the CPU and the RAID box are large and noticeable items with the CPU being a large black Lianli case with a Pentium processor with an ASUS 4C800-E motherboard and a LSI controller to run the RAID box and the RAID box contained eight hard drives and had serial number 6564737. Venables advised that these items are large and noticeable with the

00007
Sept. 11' 06

DEFS002224

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Sloan Sterling Venables___ , On 02/02/2006 , Page ___3___

RAID box weighing approximately one hundred pounds.  Venables valued these items at approximately $5,000.00 for the RAID box, $5,000.00 for the hard drives, $600.00 for the controller card, and $3,000.00  for the CPU.

Venables advised that Montgomery was responsible for backing up the SRC Server onto the RAID box maintained by Montgomery.  The server and RAID box used by Montgomery was not accessible by any other computer on the network and was connected directly to the SRC Server.  Venables further described the RAID box as being an Ultra Store, model 2081, containing eight IDE 320 gigabyte hard drives with serial number 6564737.  eTreppid purchased two like models, one of which is accounted for in the warehouse, and contains serial number 4460005.

Venables questioned Montgomery further as to why he took the server and RAID box home and Montgomery did not respond.  Montgomery is known for not responding to people and just walking off.

Venables advised that he is responsible for backing up the data on all other eTreppid servers except for the SRC Server.  These other servers included web servers, a SQL database server, and eight other servers for administrative functions at eTreppid.

Venables advised that he was at eTreppid until approximately 11:00 P.M., on December 21, 2005, and left his residence on December 22, 2005, at approximately 7:00 A.M.,  en route to the Reno Airport to travel to Budapest, Hungary to visit a high school friend for the Holidays.  Venables returned to Reno, Nevada at approximately 12:00 A.M., on January 2, 2006.

Venables was unable to sleep after returning from in vacation and decided to go into work early on January 3, 2006, and arrived at the office at around 9:00 A.M.  Venables normally arrives at the office around 11:00 A.M. and works into the evening.

Upon arriving at his desk on January 3, 2006, Venables noticed that the server cabinet and keyboard were messed up.  Venables went into the Server Room and noticed that the SRC Server had recently been logged into and a process was running.  Venables advised that he configured all eTreppid servers to have the screen saver lock out mode activate after one minute of non-use which requires the user to log back into the server after not touching the keyboard for one minute.

00008
Sept. 11'06

DEFS002225

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Sloan Sterling Venables___ . On _02/02/2006_ . Page ___4___

      Venables noticed the SRC Server had a command prompt on the screen which indicated to him that someone had used the SRC Server console within the last minute and he could see files scrolling by; however, he could not determine what task was running.  Shortly thereafter, Montgomery walked into the Server Room and said he was just "cleaning up stuff" on the SRC Server and Venables could cancel the operation.  Venables went downstairs to talk to Montgomery more about what he was doing on the SRC Server.  Montgomery stated he was "cleaning up stuff" and deleting old files.

      Venables advised that he set up the SRC server with a folder named ET Development with sub-folders for each programmer.  Each programmer was given permission up to modify which allowed the programmer to add and change but not delete any files.  Venables advised that the only eTreppid employees who had the administrative permissions and passwords to delete files from eTreppid's servers were himself and Montgomery.  Venables further advised that all eTreppid servers had the same user name and password for administrative functions which were only known to Montgomery and Venables.

      Venables advised that after finding the command prompt on the SRC Server, he looked at the server and found that the ET Latest folder was empty; the ET Development folder was empty except for folders named Jesse and Michael; the ET Programmer folder was empty; and the ET Shared folder contained a few files.  Venables then went to the ISA Server and noticed the server was locked up or not functioning; however, he could see it was still on the network but all files had been deleted, including the log files created prior to his leaving on December 21, 2005.  Venables tested the ISA Server for approximately two months, 24 hours a day, seven days a week prior to putting it use on December 21, 2005, and had no problems.

      Based on Venables' experience, Venables believes that the files were intentionally deleted.  Venables advised that if the files were deleted due to a hardware malfunction, selected files would not have been deleted, and files or folder would not be accessible.  In addition, Venables advised that he would not have been able to undelete the files if they had not been deleted through a normal delete process.  Venables has been able to recover some of the deleted files from the SRC Server and from Montgomery's personal computer using Executive Software undelete function.

00009
Sept. 11'06

DEFS002226

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Sloan Sterling Venables_____ . On 02/02/2006 . Page __5__

Venables estimated it would have taken approximately three days to delete the data contained on the SRC Server.

Venables advised that on January 3, 2006, he went to talk to Montgomery about the SRC Server and again asked Montgomery where the RAID box and server were that he used to back up the SRC Server to which Montgomery said "I'll bring it back, I don't need it anymore".

Venables further advised that on January 3, 2006, Montgomery told him that he (Montgomery) was hiding in the building on December 21, 2005, and saw Patty Gray come back into the office after hours and saw her going around the building deleting things. Montgomery said he had set the alarm and hid out in the building and had Gray on video. Venables knew this was a lie because he (Venables) was in the building until approximately 11:00 P.M., on December 21, 2005, and neither Montgomery nor Gray were in the building. Venables further advised if the alarm been set, it would have activated if someone was in the building.

Venables learned that Montgomery had taken each programmer's hard drive and returned it with the current source folder wiped clean.

Tangirala told Venables that Montgomery took his hard drive while Venables was on vacation. Montgomery told Venables that the hard drive crashed; however, Tangirala told Venables that Montgomery just took the hard drive and gave him (Tangirala) back a blank hard drive with only the master image software on it. Tangirala was working primarily on eTreppid's Automatic Target Recognition software and had been working closely with Montgomery the last few months.

Venables asked Lalith Tenneti and Baljinder Bal when Montgomery started deleting the SRC Server, and both stated that the data on the SRC Server gradually started going away while Venables was on vacation. Tenneti and Bal also informed Venables that Montgomery also started deleting the information from their workstation during the time Venables was on vacation.

Venables found out the Gray had copied some information off of one of the programmer's workstations to present to Trepp and he (Venables) knew that Gray did not have the user name and password to delete information. Venables further advised that Gray was also on vacation from December 22, 2005, until January 3, 2006,

00010
Sept. 11' 06

DEFS002227

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Sloan Sterling Venables___ , On _02/02/2006_ , Page ___6___

along with Jesse Anderson who was on vacation from December 22, 2005 to January 3, 2006.

Venables advised that he last saw Montgomery on January 10, 2006, when Montgomery was in the eTreppid yelling obscenities at Warren Trepp and Joel Safriet.

Venables advised that on January 10, 2006, he found that all sixteen computers used by eTreppid to record video signals from their video surveillance cameras had stopped recording and further inspection revealed that all recorded data on each machine had been deleted from each of the sixteen computers sometime on January 8, 2006 or January 9, 2006 at approximately 8:00 to 8:30 PM.

Venables advised that he is also the Facility Security Officer and first learned that eTreppid had Secret material in the building when he saw Montgomery placing Secret stickers on hard drives. When Venables asked Montgomery about the Secret material, Montgomery told Venables not to worry about it.

Venables advised that after Montgomery left eTreppid on January 10, 2006, he believed that Montgomery had attempted to access eTreppid's computer system through the Internet; however, he has not been successful.

Venables advised that in past conversations with Montgomery, Montgomery has told Venables that he has storage units in Reno, Nevada, possibly at Double R Storage or Mt. Rose Storage.

Venables advised that Steven Montgomery, the son of Dennis Montgomery, worked at eTreppid on projects for Montgomery involving assembly of hardware components.

Venables advised that Montgomery has a daughter, Kathleen "Katie" Montgomery, who lives ███████████████████ in South Reno.

Venables has known Montgomery to use the following telephones: ██████████████████████████████████████
████████████████████████

00011
Sept. 11' 06

DEFS002228

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Sloan Sterling Venables_____ , On _02/02/2006___ , Page __7__

    Venables provided an e-mail message dated January 30, 2006, showing the serial number for the Ultra Store RAID storage unit having serial number 6564737.

00012
Sept. 11' 06

DEFS002229

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription   02/21/2006

Patty Gray, Asian female, ████████████████ was interviewed by Special Agents John Piser III and Michael A. West at the Reno office of the Federal Bureau of Investigation regarding activities at eTreppid Technologies, LLC.

Gray advised that she has a Master's Degree in Computer Engineering and has been employed by eTreppid for approximately three years and four months. Gray holds the title of Vice President of Product Development with responsibilities for business development and marketing for U.S. Government customers. Gray handles all customer relations to include gathering customer requirements and cost estimates for various products. Gray reports to both Chief Technical Officer Dennis Lee Montgomery and Chairman Warren Trepp.

Gray advised that the main project that she had been working on is a long term project with the Special Operations Command (SOCOM) contract to record video feeds from Predator Drones operating oversees and to develop Automatic Target Recognition software.

Gray advised that in March of 2005, she traveled to Nellis Air Force Base in Las Vegas, Nevada to record test video received from a Predator Drone in a demonstration test to record vehicles, people, and weapons. Personnel at Nellis Air Force Base instructed Gray to label these tapes Secret which Gray did in her own handwriting and affix a red Secret level to five mini DV tapes. Gray advised that the same information was received by eTreppid from Fort Bragg, North Carolina; however, these tapes were marked Unclassified and contained more data than the set of tapes she made at Nellis Air Force Base. Gray advised that all five of the tapes marked Secret are accounted for. Gray further advised that Montgomery would take small segments for test data from these tapes; however, Gray did not know if Montgomery took the test data from the tapes labeled Secret or from the Unclassified tapes.

Gray advised that in June of 2005, this process was again repeated by having test data generated from a Predator Drone which

---

Investigation on   02/06/2006   at   Reno, Nevada

File #   295A-LV-39368                          Date dictated

SA John Piser III JP/k

by   SA Michael A. West:st/k

00013

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002230

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Patty Gray_____ , On _02/06/2006_ , Page __2__

      Gray called a "fabricated scenario", which produced approximately seven tapes which she labeled with handwritten labels and placed a red Secret sticker on each of these seven tapes.  Gray advised that these seven tapes are accounted for.

      Gray advised that in November of 2005, eTreppid delivered two servers to SOCOM at Nellis Air Force Base.  eTreppid would no longer record the video data on to mini DV tapes and now recorded the video data onto 320 gigabytes hard drives.  Gray advised that during this time she would travel to Nellis Air Force Base and start the system recording the data from similar fabricated test scenarios.  Gray advised that on one occasion, SOCOM employee Lance Lombardo was supposed to coordinate the activities of the Predator Drone and set up objects to record.  On this occasion, Lombardo never showed up and Montgomery instructed Gray to record the data anyway to obtain test data.

      Gray advised that when labeling this media, she would prepare a handwritten description on a label which she would place on the hard drive which included the date of the information and which server, Server A or Server B, and then affix a red Secret label to the hard drive.  Gray would apply the label and Secret sticker to the outer case of the removable Imclose case but not directly to the hard drive.  Gray was instructed by SAIC Contractor Personnel at Nellis Air Force Base to double wrap the hard drives for shipment.  Gray identified a red Secret label described as an SF-707 label as being identical to the red Secret label she applied to these hard drives.

      Gray advised that the video data she recorded contains dates and times in Zulu time and GPS coordinates in each video frame.  Gray kept personal notes regarding what videos were made and would make those available to the FBI.

      Gray would send these Secret hard drives via Federal Express to Montgomery in Reno, Nevada.  Gray recalled that she made three FedEx shipments, two of which were received and signed for by Montgomery and one was received by another eTreppid employee; however, Gray recalls delivering this package directly to Montgomery upon arriving in Reno, Nevada.

      Gray advised that she recorded the information at Nellis Air Force Base onto nine hard drives which she labeled Secret and were all eventually mailed to eTreppid in Reno, Nevada via Federal Express.  These nine Secret hard drives along with the Secret Mini

DEFS002231

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ____Patty Gray_____ , On 02/06/2006 , Page __3__

DV tapes, were stored in a GSA approved container or safe when they were not in use.  Gray advised that only she, Montgomery, and Trepp had access to the combination for the safe containing the Secret information with her and Montgomery having the primary access.

Gray advised that on several occasions, she found the entire contents of the safe were gone and would go to Trepp to complain about Montgomery's non-compliance with the security procedures.  Trepp would immediately get up from his desk and tell Montgomery to put the Secret material back in the safe and Montgomery would return the Secret items.  Gray further advised that Montgomery was the only other employee at eTreppid besides herself that would use the Secret data.  Gray advised that she did see other eTreppid employees using tapes with similar content but was unsure if the content was classified.  These employees would have received the data from Montgomery.

Gray advised that Montgomery instructed the software engineers or programmers not to talk to her and Montgomery had the engineers afraid that they would be fired and removed from the U.S. if they spoke to Gray.  eTreppid employees hires a number of foreign individuals as software engineers.

In December of 2005, Montgomery took the nine Secret hard drives out of the safe and said he was going to condense the nine original hard drives onto six hard drives due to their being unused space on the original nine Secret hard drives.  Gray recalled that Montgomery returned six hard drives labeled Secret into the safe along with the original nine Secret hard drives.

Around that same time, Trepp asked Gray to place test data on Mini DV tapes containing segments of day and night operations.  Gray advised that Trepp wanted two sets of tapes, one set for Montgomery and one set for Trepp to be used to validate Montgomery's work and to ensure that the results of Montgomery's work was not staged.  Gray informed Trepp that because the video segments were only five to seven minutes in length, anyone could train the software to work in a certain way to achieve a specific result for that short time frame.  Trepp suggested that Gray made additional tapes for him and place those tapes in a separate drawer in the safe with the combination only being known to Trepp and Gray.  Gray prepared four tapes containing Secret data, two of which she placed in the safe only known to her and Trepp and gave the two remaining tapes to Montgomery.  Gray advised that the two

00015
Sept. 11'06

DEFS002232

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ____Patty Gray_____ , On 02/06/2006 , Page ___4___

       tapes provided to Montgomery are missing, however, the two tapes
placed in the safe are accounted for.

          Gray advised that Montgomery would store Secret tapes and
hard drives in a file cabinet located behind his desk in the
warehouse.  Gray advised that when she would find the Secret
information missing from the GSA approved safe, she would find the
tapes or hard drives with Montgomery in the warehouse.  Gray
recalled that the second to the last time she found these tapes
missing, she told Montgomery that he may lose his security
clearance if he did not store the Secret material properly.
Montgomery told Gray "I will never lose my clearance because they
will always want me to do the work".  Gray told Trepp of
Montgomery's statement and Trepp told her to collect the Secret
material and change the combination and not to give the combination
to Montgomery.  Gray advised that she did as instructed by Trepp
and placed the nine Secret original hard drives and the six copies
and all Secret mini DV tapes in the safe.  Gray recalled that she
did this prior to December 18, 2005 and believed that she had
placed all classified material in the safe and only she had the
combination.

          On December 18, 2005, Gray returned home to Arizona and
received a number of telephone calls from Trepp and Montgomery.
Gray received a number of text messages from Montgomery requesting
access to the Secret material in the safe so he could work.  Gray
received a telephone call from Trepp in which Trepp instructed Gray
to give the combination to the safe to Montgomery to let him work
and that they would re-secure the data on Monday.  Gray advised
that she told Trepp that she felt that Montgomery only wanted
access to the Secret data to make copies of it so he would not seem
to be in non-compliance with security procedures.  Upon Gray's
return to Reno, she put all the classified material that she had
back in the safe that both Trepp and Montgomery had access to and
went on vacation from December 21, 2005 to January 3, 2006 in
Phoenix, Arizona.  Gray felt that she lost control of the
classified material and left it up to Trepp and Montgomery to
secure the data.

          Software Engineer Lalith Tenneti told Gray that before
New Years, Montgomery sat down at Tenneti's computer and deleted
his source code while Tenneti watched.  Montgomery told Tenneti
that he didn't need the source code on his work station and
Montgomery had a new back up system in place.  Gray later found out
that Montgomery did this on every engineer's work station.

                                                    00016
                                       Sept. 11' 06

DEFS002233

FD-302a (Rev 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Patty Gray_____ , On _02/06/2006_ , Page __5__

       Gray advised that Montgomery created an environment that if anyone challenged him they felt they would be fired or deported as the majority of eTreppid's software engineers are foreigners.

       Gray felt that Montgomery had extremely poor program management and assigned work to the software engineers that had been promised to customers which had not been complete or yet been assigned.  Gray also found out that Montgomery was taking credit for writing code done by others.

       Gray informed Trepp that Montgomery claimed to have written 95% of the source code for various eTreppid products and she learned that he had not.  In December of 2005, Gray started collecting information about Montgomery's activities and provided this information to Trepp on December 21, 2005, and somehow Montgomery became aware of Gray's efforts.  Gray advised that she received a telephone call thirty minutes after having a close door meeting with Trepp from Jesse Anderson.  Montgomery told Anderson that Trepp and Gray were ganging up on Anderson and wanted to know if he had any source code on his computer.  Gray further advised that Sloan Venables called her on December 21, 2005, and said that Montgomery was leaving the building with a case of hard drives and believed that Montgomery was talked to by Trepp.

       Gray further advised that engineers Young Mian and Zehang Sun, who are both from China, may have had access to classified data on their computers.  Gray advised that she saw some video content on both their computers which was similar to the classified video content.  Gray asked Young Mian where he got the data and Young Mian told her from Montgomery.

       Gray advised that after Montgomery left the business on or about January 10, 2006, she and other employees conducted a search of the entire eTreppid office space to locate the nine original Secret hard drives and or their removable enclosures. During the search, an additional copy of the six Secret hard drives were located labeled Secret and were put in the safe; however, the nine original Secret tapes were not located.

       Gray provided a chronological list of events occurring at eTreppid related to the Secret hard drives which is attached to and considered a part of this FD-302.

<div align="right">

00017
Sept. 11'06

</div>

DEFS002234

| Date | Description |
|---|---|
| 11/3/05 – 11/4/05 | Traveled from Reno to Nellis AFB to test latest ATR software and gather test data. Generated data on 3 HDDs, marked them all Secret, double-wrapped them and sent them via Fedex to Dennis using Priority Overnight with Saturday delivery. Dennis did receive them on Saturday. |
| 11/7/05 | Arrived in Reno and confirmed with Dennis that he had received the data. |
| 11/9/05 – 11/11/05 | Traveled from Reno to Nellis AFB to test the latest ATR software and gather additional test data. Generated 5 HDDs, marked them all Secret, double-wrapped them and sent them via Fedex to Dennis using Priority Overnight with Saturday delivery. Dennis did receive them on Saturday. |
| 11/14/05 | Arrived in Reno and confirmed with Dennis that he had received the data. |
| 11/17/05 – 11/18/05 | Traveled from Reno to Nellis AFB to test latest ATR software and gather test data. Dennis was on vacation 11/18/05 – 11/20/05. The software that I was to test had a bug and no update was sent so 3 HDDs were sent back. Two with the OS and ATR application, one with classified data. The classified material was marked Secret, double-wrapped. All 3 HDDs were sent via Fedex to myself using Overnight for Monday delivery. |
| 11/21/05 | Arrived in Reno. Altan Bora signed for the Fedex delivery close to noon. I arrived in the office shortly after noon, and gave the unopened Fedex package to Dennis in the warehouse. |
| 12/5/05 | Arrived in Reno shortly after noon. I requested from Zehang Sun and/or Dennis that I get a copy of the latest version of the motion detection software so that I could do some testing. Dennis told Zehang that he would get it to me right away. Zehang told me the latest version was on Yongmian's computer. |
| 12/6/05 | Reminded Dennis that I was still waiting for the motion detection software for testing. He continued to promise but I did not receive it. At 3pm, I went to Yongmian's computer (Yongmian was away at a conference) and copied it from his computer onto mine. When I started the application in my office, noticed that it appeared that the test content on Yongmian's computer was classified video. I then checked the safes to find out if the rest of the data was being correctly stored and saw that all of the original hard drives from Nellis were not in the safe. I notified Warren who told Dennis to correct this. |
| 12/7/05 | I checked the safes and noticed that the classified content was still not in the safe. I approached Dennis and he said that it was all in the file cabinets in the warehouse. I verbally told him that this was not the correct place to store classified content. I notified Warren that the content was still not being correctly stored. |

00018
Sept. 11' 06

DEFS002235

| 12/8/05 | I sent an email to Dennis and copied Warren to remind him that all classified content should be stored in the safe and asked that he use a particular safe so that we could both have access to it since we both had the combination. As a result, all original classified HDDs and tapes were moved to the safe. |
| 12/12/05 | Warren asked me to generate some test tapes from the classified HDDs for internal testing. I sent an email to confirm this since previously Dennis had told me he wanted to use the HDDs, not tapes. Warren requested that I make 4 DV tapes, two for Dennis (one night video, one day) and two for him that he could conduct a blind test with (one night video, one day). I retrieved one of the HDDs (content from 11/5/05) to start looking for which scenes to extract to a tape. |
| 12/13/05 | I went to get another HDD to generate more of the test tapes and found that all of the HDDs were missing from the safe again. I alerted Warren and he had Dennis return the content to the safe immediately. I completed the 4 test tapes in the late afternoon using content from the Nellis classified content from 11/5/05 and 11/13/05. I handed two tapes to Dennis. During the time that I was generating the second tape, Dennis came in to put a new label on the HDD that I was using. He said that he was condensing the hard drives I had used at Nellis because some were only partially full.<br><br>I changed the combination to the top drawer of the safe and secured Warren's two test tapes in that drawer. The rest of the original hard drives were stored in the bottom drawer that Dennis and I both had the combination to. |
| 12/15/05 | I went to get a HDD so that I could resume testing the motion detection software. Once again, all of the HDDs were missing from the safe. I went to ask Dennis about this and he said that he wanted to store them in the file cabinet in the warehouse because it was more convenient for him. I told him that this was not the appropriate way to secure the classified content and he was risking losing his clearance. He said "I don't care about my clearance. They'll always give me my clearance because they want me to do the work." I reported this to Warren and he agreed that access to the classified material needed to be restricted. He had Dennis immediately return all of the classified HDDs and tapes to the safe and then instructed me to move all of the classified material in the top drawer of the safe and not give the combination to Dennis. |

00019
Sept. 11'06

DEFS002236

| | |
|---|---|
| 12/18/05 | Dennis tried to contact me by text message. Warren eventually made contact with me by cell phone and told me to provide the combination to Dennis so that he could access the classified material. I told Warren that I suspected that Dennis would make copies of the content and that he would also have access to the two tapes that Warren wanted for the blind testing. He still wanted me to provide Dennis with the combination and we would talk to him and re-secure everything when I got back into the office on Monday. |
| 12/20/05 | I sent a note to Warren that indicating that I was not comfortable being responsible for securing the content because I was suspicious that Dennis had made copies of all of the content. |
| 12/21/05 | I met with Warren to discuss several issues including that I had seen what appeared to be classified content on Zehang's shared folder on his computer. As I was trying to copy it over to my system, it got deleted. I left for my vacation at 6:35a on 12/22/05. |
| 1/8/06 | Lalith told me that Dennis had deleted all of the source code from his and the other engineers's systems between Christmas and New Year's. I arranged to have him talk to Warren about this. |
| 1/9/06 | We began looking for source code on any hard drive in the building. I found seven HDDs in his file cabinet that were copies of the original 9 Nellis HDDs. When I checked the safe, another copy of the original 9 Nellis HDDs were there (condensed to seven HDDs) but the originals were missing. In addition, two of the four tapes generated per Warren's request on 12/12/05 were also missing. |
| 1/10/06 – 1/13/06 | A search of the work and storage areas in the building did not result in locating the missing classified material. |
| 1/23/06 | I checked one of the HDDs that Dennis had generated to see what was on it. It was labeled "Nellis Images WIP 12/8/05". On it was a recent version of the target detection/motion detection software and test imagery. I asked Yongmian to describe the test sequences that he had been using. His description matches the test sequences in the two directories on this HDD that contain the detection software. At least one of the test sequences is from classified material. However, without showing Yongmian the sequence, I cannot be positive that the test sequence he had access to and the imagery on this HDD are the same. |

DEFS002237

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/13/2006

Neil Azzinaro ███████████████████████████████ was
interviewed by Special Agents John Piser III and Michael A. West
regarding Dennis Lee Montgomery.

Azzinaro is an independent casino host who periodically
works in Reno, Nevada, where he met Warren Trapp and Dennis
Montgomery in approximately 1999 or 2000.

Azzinaro advised that in the first of January 2006, he
called Montgomery to discuss a home computer problem with
Montgomery. Azzinaro knows Montgomery to have extensive knowledge
of computer and Montgomery has helped Azzinaro resolve problems in
the past.

During this telephone call, Azzinaro asked how Montgomery
was doing. Montgomery advised that things were not going well for
him, that he made Warren Trepp eleven million dollars last year,
recently asked Trepp for a raise, and Trepp would not give him one.
Montgomery commented that he was aware that Azzinaro knew a lot of
people through the casino business and wanted to find someone with
ten to eleven million dollars. Montgomery advised this individual
could only be from this country, not from a corporation, and has to
be a private party. Montgomery told Azzinaro he wanted to start
his own business.

Azzinaro told Montgomery that he would look around.

Azzinaro commented that during this telephone
conversation, Montgomery sounded very revengeful and reiterated
that he made a lot of money for Trepp and Trepp owes him.
Montgomery stated on more than one occasion during this
conversation that he made Trepp eleven million dollars and he got
nothing.

Azzinaro is aware that Montgomery gambles large sums of
money and on occasions has borrowed ninety thousand dollars from a
casino and lost the ninety thousand dollars. Montgomery paid the
money back the next day which Azzinaro found to be odd as most high
stakes gamblers don't repay their debts immediately. Azzinaro was

| | | | |
|---|---|---|---|
| Investigation on | 02/06/2006 | at | Reno, Nevada |

File # 295A-LV-39368                                Date dictated    02/09/2006

SA John Piser III
by    SA Michael A. West:st

00021

Sept. 11'06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

DEFS002238

FD-302a (Rev. 10-6-95)

295A-LV-NEW

Continuation of FD-302 of ___Neil Azzinero_____ . On _02/06/2006_ , Page __2__

also aware of an occasion when Montgomery had a three hundred
thousand dollar outstanding credit bill with Nevada casino on which
he immediately paid two hundred thousand dollars.

00022
Sept. 11' 06

DEFS002239

FD-302 (Rev. 10-6-95)

- 1 -

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription   02/21/2006

       Sloan Venables, Director of Research and Development, eTreppid Technologies, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, voluntarily provided Special Agent Michael A. West with one Supermicro Central Processing Unit, no serial number, containing dual Xeon processors, a X5DAE motherboard, and two internal hard drives removed from eTreppid's video surveillance system.

       Venables was provided a copy of a FD-597, "Receipt for Property" which was placed in the 1A section of the case file.

Investigation on   02/8/2006   at   Reno, Nevada

File #   295A-LV-39368   Date dictated   02/21/2006

by   SA Michael A. West:maw

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; Sept. 11' 06
it and its contents are not to be distributed outside your agency.

00023

DEFS002240

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/23/2006

Patty Gray, Vice President of Product Development, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, provided the attached inventory of classified material maintained at eTreppid Technology, LLC.

Investigation on    02/14/2006    at    Reno, Nevada

File #    295A-LV-39368    Date dictated    02/23/2006

by    SA Michael A. West:maw

00024

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency

DEFS002241

| # | Date of material | Dispatch/Receipt | Date of D/R | Classification | Unclassified description of material | ID of activity (contract #/recipient) |
|---|---|---|---|---|---|---|
| 1 | 3/15/05 | R | 3/15/05 | Secret | Mini-DV Tape labeled Tape 1 EO 10K, 7.5K 5K altitude 3/15/05 | SOCOM USZA26-03-P-3294 |
| 2 | 3/15/05 | R | 3/15/05 | Secret | Mini-DV Tape labeled Tape 1 0330 IR&EO, No targets 3/15/05 | SOCOM USZA26-03-P-3294 |
| 3 | 3/15/05 | R | 3/15/05 | Secret | Mini-DV Tape labeled Tape 2 IR 3-15-05 10K, 7.5K, 5K | SOCOM USZA26-03-P-3294 |
| 4 | 3/15/05 | R | 3/15/05 | Secret | Mini-DV Tape labeled Short Test Clip | SOCOM USZA26-03-P-3294 |
| 5 | 6/3/05 | R | 6/3/05 | Secret | Mini-DV Tape labeled Gold #97 White #88 Purple #80 POCN 03Jun05 | SOCOM USZA26-03-P-3294 |
| 6 | 6/3/05 | R | 6/3/05 | Secret | Mini-DV Tape labeled Orange #76 GCS 7 Night 03Jun05 | SOCOM USZA26-03-P-3294 |
| 7 | 6/3/05 | R | 6/3/05 | Secret | Mini-DV Tape labeled Red-75 ORA-81 6/3/05 | SOCOM USZA26-03-P-3294 |
| 8 | 6/3/05 | R | 6/3/05 | Secret | Mini-DV Tape labeled 12.5K Orange #76 Night 03Jun05 | SOCOM USZA26-03-P-3294 |
| 9 | 6/3/05 | R | 6/3/05 | Secret | Mini-DV Tape labeled-Orange GCS 7 #78 Day Nellis IR/EO 03JUN05 2330PM | SOCOM USZA26-03-P-3294 |
| 10 | 6/3/05 | R | 6/3/05 | Secret | Mini-DV Tape labeled Orange #76 03JUN05 Day | SOCOM USZA26-03-P-3294 |
| 11 | 6/3/05 | R | 6/3/05 | Secret | Mini-DV Tape labeled Orange #76 03JUN05 Day | SOCOM USZA26-03-P-3294 |
| 12 | 11/4/05 | R | 12/12/05 | Secret | Mini-DV Tape labeled Tape 1 11/4/05 IR | SOCOM USZA26-03-P-3294 |
| 13 | 11/4/05 | MISSING | 12/12/05 | Secret | Mini-DV Tape labeled Tape 2 11/4/05 IR | SOCOM USZA26-03-P-3294 |
| 14 | 11/10/05 | R | 11/10/05 | Secret | Mini-DV Tape labeled GCS 11 #125 IR 11/10/05 | SOCOM USZA26-03-P-3294 |
| 15 | 11/10/05 | R | 11/10/05 | Secret | Mini-DV Tape labeled GCS 6 #61 11/10/05 IR | SOCOM USZA26-03-P-3294 |
| 16 | 11/10/05 | R | 11/10/05 | Secret | Mini-DV Tape labeled GCS 10 #119 11/10/05 IR Tape 1(A) | SOCOM USZA26-03-P-3294 |

00025
Sept. 11' 06

| # | Date | Status | Date | Class | Description | Reference |
|---|---|---|---|---|---|---|
| 17 | 11/13/05 | MISSING | 12/13/05 | Secret | Mini-DV Tape labeled Tape 3 11/13/05 | SOCOM USZA26-03-P-3294 |
|  |  |  |  | Secret | Mini-DV Tape labeled Tape 4 11/13/05 Day | SOCOM USZA26-03-P-3294 |
| 18 | 11/4/05 | MISSING | 11/4/05 | Secret | HDD labeled 11/4/05 Nellis | SOCOM USZA26-03-P-3294 |
| 19 | 11/4/05 | R | 11/4/05 | Secret | HDD labeled 11/4/05 Nellis | SOCOM USZA26-03-P-3294 |
| 20 | 11/4/05 | MISSING | 11/4/05 | Secret | HDD labeled 11/4/05 Nellis | SOCOM USZA26-03-P-3294 |
| 21 | 11/10/05 | MISSING | 11/10/05 | Secret | HDD labeled 11/10/05 Nellis | SOCOM USZA26-03-P-3294 |
| 22 | 11/10/05 | MISSING | 11/10/05 | Secret | HDD labeled 11/10/05 Nellis | SOCOM USZA26-03-P-3294 |
| 23 | 11/10/05 | MISSING | 11/10/05 | Secret | HDD labeled 11/10/05 Nellis | SOCOM USZA26-03-P-3294 |
| 24 | 11/11/05 | MISSING | 11/11/05 | Secret | HDD labeled 11/11/05 Nellis | SOCOM USZA26-03-P-3294 |
| 25 | 11/11/05 | MISSING | 11/11/05 | Secret | HDD labeled 11/11/05 Nellis | SOCOM USZA26-03-P-3294 |
| 26 | 11/12/05 | MISSING | 11/12/05 | Secret | HDD labeled 11/12/05 Nellis | SOCOM USZA26-03-P-3294 |
| 27 | 11/4/05 | R | 12/7/05 | Secret | Hard Disk Drive labeled Nellis 11/04/05 MPG RAW | SOCOM USZA26-03-P-3294 |
| 28 | 11/11/05 11/4/05- | R | 12/7/05 | Secret | Hard Disk Drive labeled Nellis 11/11/05 MPG RAW | SOCOM USZA26-03-P-3294 |
| 29 | 11/4/05- 11/11/05 | R | 12/7/05 | Secret | Hard Disk Drive labeled Nellis 11/11/05 MPG RAW | SOCOM USZA26-03-P-3294 |
| 30 | 11/4/05 - 11/12/05 | R | 12/7/05 | Secret | Hard Disk Drive labeled Nellis 11/12/05 MPG RAW A | SOCOM USZA26-03-P-3294 |
| 31 | 12/04 - 04/05 | R | 12/7/05 | Secret | Hard Disk Drive labeled SOCOM 12/04 - 04/05 B | SOCOM USZA26-03-P-3294 |
| 32 | 12/04 - 04/05 | R | 12/7/05 | Secret | Hard Disk Drive labeled SOCOM 12/04 - 04/05 A | SOCOM USZA26-03-P-3294 |
| 33 | 12/8/05 | R | 12/8/05 | Secret | Nellis Images WIP 12/8/05 | SOCOM USZA26-03-P-3294 |
| 34 | 11/4/05- 11/12/05 | R | 12/19/05 | Secret | Hard Disk Drive labeled Nellis 11/12/05 MPG RAW B | SOCOM USZA26-03-P-3294 |
| 35 | 12/8/05 | Destroyed | 1/11/06 | Secret | Hard Disk Drive labeled Nellis Images WIP 12/8/05 B | DoD 7-pass delete and wipe |
| 36 | 11/4/05- 11/11/05 | R | 12/19/05 | Secret | Hard Disk Drive labeled Nellis 11/11/05 MPG RAW B | SOCOM USZA26-03-P-3294 |
| 37 | 11/11/05 | R | 12/19/05 | Secret | Hard Disk Drive labeled Nellis 11/11/05 MPG RAW B | SOCOM USZA26-03-P-3294 |
| 38 | 03/05-06/05 | Destroyed | 1/19/06 | Secret | Hard Disk Drive labeled Lance Pred 03/05-06/05 B | DoD 7-pass delete and wipe |

00026
Sept. 11' 06

DEFS002243

| 39 | 7/7/05-7/10/05 | R | 12/19/05 | Secret | Hard Disk Drive labeled Lance Data 07/07/05-07/10/05 KEEPIII | SOCOM USZA26-03-P-3294 |
|---|---|---|---|---|---|---|
| 40 | 08/05-07/05 | R | 12/19/05 | Secret | Hard Disk Drive labeled Lance Pred 06/05-07/05 B | SOCOM USZA26-03-P-3294 |
| 41 | 03/05-04/05<br>04/05-07/05 | R | | Secret | Hard Disk labeled Converflas 0/05-06/05 A<br>Hard Disk labeled Converflas 04/05-07/05 A | |
| 42 | | R | | Secret | Mini DV Woocam 6/26 - 6/27 Ransom Track Downlod | |
| 43 | | R | | | Mini DV 18 Dn 04 OBS Big Rivl Toga 2 | |
| 44 | | R | | | Mini DV 04 ham Predator Hixage Loc | |
| 45 | | R | | | Mini DV 12 ham Predator Hixage Loc | |
| 46 | | R | | | Mini DV 12 ham Predator OBS Ransom /utros | |
| 47 | | R | | | Mini DV Predligsham | |
| 48 | | R | | | Mini DV Bullingham | |
| 49 | | R | | | Mini DV 31 Dec 03 | |
| 50 | | R | | | Mini DV Cuvo I | |
| 51 | | R | | | Mini DV Cuvo II | |

00027
Sept. 11' 06

DEFS002244

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/23/2006

Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, provided the attached documents relating to Security Clearances of Chief Technical Officer Dennis Lee Montgomery:

Standard Form 312, "Classified Information Nondisclosure Agreement", signed and dated September 16, 2003, by Dennis Lee Montgomery, ▮▮▮▮▮▮▮▮▮▮

Department of the Army, U.S. Army Security Operations Training Facility, Post Office Box 70660, Fort Bragg, North Carolina, "Security Briefing" Form, briefed and signed on August 25, 2003, by Dennis Montgomery, ▮▮▮▮▮

Department of Security Services, Investigation Summary, for Dennis Lee Montgomery.

Department of Defense, Letter of Consent, National Industrial Security Program, Clr Date, May 7, 2003, to Dennis Lee Montgomery, ▮▮▮▮▮▮▮▮

Investigation on    02/14/2006    at    Reno, Nevada

File #    295A-LV-39368                          Date dictated    02/23/2006

by    SA Michael A. West:maw

00028

Sept. 11'06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002245

## CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

AN AGREEMENT BETWEEN _Dennis Montgomery_ AND THE UNITED STATES

*(Name of Individual — Printed or typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 12958, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in Sections 1.1, 1.2, 1.3 and 1.4(e) of Executive Order 12958, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of Sections 641, 793, 794, 798, 952 and 1924, Title 18, United States Code, the provisions of Section 783(b), Title 50, United States Code, and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of Sections 793 and/or 1924, Title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

*(Continue on reverse.)*

NSN 7540-01-280-5499
Previous edition not usable

312-102

STANDARD FORM 312 (Rev. 1-00)
Prescribed by NARA/ISOO
32 CFR 2003, E.O. 12958     11' 06

DEFS002246

10.  These restrictions are consistent with and do not supersede, conflict with or otherwise alter the employee obligations, rights or liabilities created by Executive Order 12958, Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); Section 2302(b) (8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including Sections 641, 793, 794, 798, 952 and 1924 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

11.  I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this agreement and its implementing regulation (32 CFR Section 2003.20) so that I may read them at this time, if I so choose.

| SIGNATURE | DATE | SOCIAL SECURITY NUMBER (See Notice below) |
|---|---|---|
|  | 9/16/03 |  |

ORGANIZATION (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) (Type or print)

ETREPPID TECHNOLOGIES, LLC
755 TRADEMARK DR
RENO, NV 89521                3C5X0

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED. | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |
| SIGNATURE     DATE     16 Sept 03 | SIGNATURE     DATE     16 Sept 03 |
| NAME AND ADDRESS (Type or print)  Defense Security Svc. (SuiPx)  4349 Duffer Drive  Nellis AFB, NV 85191 | NAME AND ADDRESS (Type or print)  SAME |

## SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have) (have not) (strike out inappropriate word or words) received a security debriefing.

| SIGNATURE OF EMPLOYEE | DATE |
|---|---|
|  |  |

| NAME OF WITNESS (Type or print) | SIGNATURE OF WITNESS |
|---|---|
|  |  |

NOTICE: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above or 2) determine that your access to the information indicated has terminated. Although disclosure of your SSN is not mandatory, your failure to do so may impede the processing of such certifications or determinations, or possibly result in the denial of your being granted access to classified information.

00030

*NOT APPLICABLE TO NON-GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.

STANDARD FORM 312 (Available)(Rev. 1-00)                Sept. 11. 06

DEFS002247

DEPARTMENT OF THE ARMY
U. MY SECURITY OPERATIONS TRAINING FAC.. .TY
POST OFFICE BOX 70660
FORT BRAGG, NORTH CAROLINA 28307-5000

## SECURITY BRIEFING

(Use For Non-Unit Members)

_Dennis Montgomery_
(Printed Name)

I understand that in consideration of my assignment, employment, or association with the Security Operations Training Facility (SOTF), I may be granted access, if properly authorized or security cleared, to information, material, and plans which concern the security of the United States of America and which are either sensitive or classified by the order of the President or as authorized by statute.

1. I agree that I will never divulge, publish, or reveal by writing, word, conduct, or otherwise, to any unauthorized person, any classified or sensitive information relating to the SOTF Facility / Project, its personnel, fiscal data or security measures without prior consent of the Director, SOTF or his designated security representative.

2. I agree that the burden is upon me to ascertain whether or not information is sensitive or classified, and, if so, who is authorized to receive it. I will, therefore, obtain the decision of the authorizing officials of the SOTF Security Office on these matters before disclosing such information.

3. I agree to submit information for review by the SOTF Security Office, prior to discussing with or showing to any publisher, literary agent, architectural firm, or other unauthorized persons, all manuscripts, articles, speeches, resumes, and all architectural design drawings and papers, written or drawn by me or inconjunction with others, which contain or are derived from information or material obtained by virtue of my assignment, employment or association with this facility or project. I agree that the purpose of such review is to ensure that no sensitive or classified information or material obtained by virtue of my assignment, employment or association with this facility/project is contained therein. I further understand that such review shall not constitute nor shall be represented as a verification of factual accuracy or an endorsement of the opinions contained in any such manuscripts, articles, speeches, resumes, advertisements or papers.

4. I agree that all classified or sensitive information acquired by me in connection with my assignment, employment or association with this facility/project remains the property of the Government of the United States of America, and I must surrender, upon demand by the Director, SOTF or his Security Representatives, any material in my possession relating to such information.

5. I agree to report, without delay, to my superiors or the Security Manager, the details or circumstances of any case which comes within my knowledge wherein an unauthorized person has obtained or is attempting to obtain classified or sensitive information or material, or wherein such information or material may be or is being disclosed or removed in an unauthorized manner.

6. I agree that my compliance with all the obligations required to protect classified and/or sensitive information may be a consideration of my continuing assignment, employment or association with this facility/project. I understand that any failure to so comply may subject me to administrative action including termination of my assignment, employment or association with this facility/project.

{ Continued on Reverse }

00031
Sept. 11' 06

DEFS002248

## SECURITY BRIEFING
(Use For Non-Unit Members)

*(Continued from front page)*

7. I understand that the provisions of the Espionage Act apply during my assignment, employment or association with the SOTF. I have been made aware and understand that the provisions of the Espionage Act, Sections 793, 794, and 798, of Title 18, United States Code provide penalties for any violation of the Espionage Act.

8. I have read and understand the contents of this briefing. I have been made aware and understand that Section 1001 of Title 18, United States Code provides information on the penalties involved in the making of false, fictitious, or fraudulent statements or representations.

**Person Conducting the Briefing:**

Date: 8/26/03

MICHAEL S ALLEN
Printed Name

N/A
Social Security Number

CDD (910) 907-5170
Section/Phone Number

Signature

**Person being briefed:**

Date: 8/25/03

DENNIS MONTGOMERY
Printed Name

ETREPPID
Organization

Signature

NOTICE: The PRIVACY ACT, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that the authority for soliciting your Social Security Account Number (SSAN) is Executive Order 9397. Your SSAN will be used to identify you precisely when it is necessary to certify that you have access to the information indicated above. While the disclosure of your SSAN is not mandatory, your failure to do so may delay the processing of such certification.

-ion 2, dated 11 January 2000

00032
Sept. 11'06

DEFS002249

# ⁇ Person Summary

**MONTGOMERY, DENNIS LEE**
Person Category          Industry (KMP) 3C5X0-I

Open Investigation: N/A                          Marital Status: N/A
PSQ Sent Date: N/A                               Place of Birth: Arkansas
Attestation Date: N/A                            Citizenship: U.S. Citizen
Incident Report: 2006 01 20                      NdA Signed: No
SF 713 Fin Consent Date: N/A                     NdS Signed: No
SF 714 Fin Disclosure Date: N/A
Polygraph: N/A
Foreign Relation: N/A

PSQ Sent                                         Request to Research/Upgrade
                                                 Eligibility
Non-SCI Access History

## Accesses

| Category | PSP | Suitability and Trustworthiness |
|---|---|---|
| Industry (KMP) 3C5X0-I Access Suspended | No | IT: N/A |
| | | Public Trust: N/A |
| | | Child Care: N/A |

## Person Category Information

Category Classification: KMP
Organization: 3C5X0-I, ETREPPID TECHNOLOGIES, LLC, 755 Trademark Drive, Reno, NV, 89521
Organization Status: Top Secret, ACTIVE, 2005 06 01
Occupation Code: N/A                             Separation Date: N/A
SCI SMO: W4VYAA - INSCOM MISSION SPT CMD, Level 2, 703-706-1352, Alt phone for SSO INSCOM: (703) 706-1768/2520 or (703) 428-4376. FOR CONTRACTOR CLEARANCE ISSUES CONTACT THE CONTRACTOR SUPPORT ELEMENT (CSE) AT: (301) 677-6982; (301) 677-4628 OR (301) 677-4622
Non-SCI SMO: ETREPPID TECHNOLOGIES, LLC, Level 4, 775-337-6771 X 14,
Servicing SMO: No
Office Symbol: N/A                               Grade: N/A
Position Code: N/A                               PS: N/A
Arrival Date: N/A                                RNLTD: N/A
Office Phone Comm: N/A                           Office Phone DSN: N/A
Separation Status: N/A                           TAFMSD: N/A
Interim: N/A                                      Proj. Departure Date: N/A
                                                 Proj. UIC/RUC/PASCODE: N/A
Report Incident                In/Out Process                Remarks

Suspense Data

## Investigation Summary                          Investigation History
SSBI from DSS, Opened: 2003 04 04 Closed 2004 02 13
NAC from DSS, Opened: Closed 2003 04 29          00033
                                                 Sept. 11 06

DEFS002250

## ? **Incident Report Update Notification**

---

Records 1 - 1 of 1, Page 1 of 1

| SSN | Name | Person Category | Incident Date | Incident Status | Incident Criteria | Expand Incident | Remove From Display |
|-----|------|-----------------|---------------|-----------------|-------------------|-----------------|---------------------|
| ▓▓▓▓▓▓ | MONTGOMERY, DENNIS LEE | Industry | 2006 01 20 | Initial | Personal Conduct, Emotional, Mental and Personality Disorders, Criminal Conduct, Security Violations, Misuse of Information Technology Systems | ☐ | ☐ |

---

Records 1 - 1 of 1, Page 1 of 1

Confirm       Cancel

**Notice:**   Under the Privacy Act of 1974, you must safeguard personnel information retrieved through this system. Disclosure of information is governed by Title 5, United States Code, Section 552a Public Law 93-579, DoDD 5400.11, DoDR 5400.11-R and the applicable service directives.

00034
Sept. 11'06

## Person Summary

### MONTGOMERY, DENNIS LEE

Eligibility: SCI - DCID 6/4, 2005 10 06, AFCAF

Investigation: SSBI, 2004 02 13, DSS
Open Investigation: N/A
Date PSQ Sent: N/A
Incident Report: N/A

Polygraph: N/A
Foreign Relation: N/A

Place of Birth: Arkansas

Citizenship: U.S. Citizen
Marital Status: N/A
NdA Signed: No
NdS Signed: No
Attestation Date: N/A

PSQ Sent

Non-SCI Access History

Request to Research/Upgrade Eligibility

---

**Person Category**          Industry (KMP) 3C5X0-I

Category Classification: KMP
Organization: 3C5X0-I, ETREPPID TECHNOLOGIES, LLC, 755 Trademark Drive, Reno, NV, 89521
Organization Status: Top Secret, ACTIVE, 2005 06 01

| | |
|---|---|
| Occupation Code: N/A | Office Symbol: N/A |
| Position Code: N/A | Grade: N/A |
| Arrival Date: N/A | PS: N/A |
| Office Phone Comm: N/A | Office Phone DSN: N/A |
| Separation Date: N/A | RNLTD: N/A |
| Separation Status: N/A | TAFMSD: N/A |
| Interim: N/A | Proj. Departure Date: N/A |
| PSP: No | Proj. UIC/RUC/PASCODE: N/A |

SCI SMO: N/A
Non-SCI SMO: ETREPPID TECHNOLOGIES, LLC, Level 4, 775-337-6771 X 14,
Servicing SMO: No

Report Incident          In/Out Process          Remarks

Suspense Data

| Non-SCI Access | | SCI Access |
|---|---|---|
| US: N/A | NATO: N/A | SPA: N/A |
| CNWDI: N/A | SIOP: N/A | Access: No |
| PRP: N/A | Restricted Data: N/A | |
| SIGMA 16: N/A | | |
| IT: N/A | Public Trust: N/A | Child Care: N/A |
| | Indoctrinate | |

---

**Investigation Summary**
SSBI from DSS, Opened: 2003 04 04 Closed 2004 02 13
NAC from DSS, Opened: Closed 2003 04 29

Investigation History 000035
Sept. 11' 06

DEFS002252

## Person Summary

### MONTGOMERY, DENNIS LEE

| | |
|---|---|
| Eligibility: Top Secret, 2004 02 21, DISCO | Place of Birth: Arkansas |
| Investigation: SSBI, 2004 02 13, DSS | Citizenship: U.S. Citizen |
| Open Investigation: NLC, 2003 04 04, DSS | NdA Signed: No |
| Date EPSQ Sent: N/A | NdS Signed: No |
| Incident Report: N/A | Attestation Date: N/A |
| Polygraph: N/A | |
| Foreign Relation: N/A | |

---

### Person Category            Industry (KMP) 3C5X0-I

Category Classification: KMP

Organization: 3C5X0-I, ETREPPID TECHNOLOGIES LLC, 755 Trade Mark Drive, Reno, NV, 89521

| | |
|---|---|
| Occupation Code: N/A | Office Symbol: N/A |
| SA: N/A | Grade: N/A |
| Arrival Date: N/A | PS: N/A |
| Office Phone Comm: N/A | Office Phone DSN: N/A |
| Separation Date: N/A | RNLTD: N/A |
| Separation Status: N/A | TAFMSD: N/A |
| Interim: N/A | Proj. Departure Date: N/A |
| PSP: No | Proj. UIC/RUC/PASCODE: N/A |

SCI SMO: N/A
Non-SCI SMO: N/A
Servicing SMO: No

Report Incident                                   In/Out Process

| Non-SCI Access | | SCI Access |
|---|---|---|
| US: N/A | NATO: N/A | SPA: N/A |
| CNWDI: N/A | SIOP: N/A | Access: No |
| PRP: N/A | Restricted Data: N/A | |
| SIGMA 16: N/A | | |
| IT: N/A | Public Trust: N/A | Child Care: N/A |

---

### Investigation Summary

SSBI from DSS, Opened: 2003 04 04 Closed 2004 02 13
NAC from DSS, Opened: Closed 2003 04 29

---

### Adjudication Summary

00036
Sept. 11' 06

PSI Adjudication of SSBI DSS, Opened 2003 04 04, Closed 2004 02 13, determined Eligibility of Top Secret on 2004 02 21 DISCO

PSI Adjudication of NAC DSS, Opened , Closed 2003 04 29, determined Eligibility of Interim Top Secret on 2003 12 29 DISCO

**External Interfaces**

Perform SII Search     DCII

**Notice:**   Under the Privacy Act of 1974, you must safeguard personnel information retrieved through this system. Disclosure of information is governed by Title 5, United States Code, Section 552a Public Law 93-579, DoDD 5400.11, DoDR 5400.11-R and the applicable service directives.

00037
Sept. 11'06

DEFS002254

--------------------------------------------------------------------------
DEPARTMENT OF DEFENSE-LETTER OF CONSENT-NATIONAL INDUSTRIAL SECURITY PROGRAM
--------------------------------------------------------------------------

Last Name - First Name - Middle         Clr Date   Other Names
MONTGOMERY, DENNIS LEE                   07-MAY-03

              Place of Birth
                                  MENA, AR, US

                    KMP        Phys Loc      Citizen of
                    NO                       US

Level of Clearance       Type of Investigation          Inv Date
INTERIM SECRET

Remarks:
SSBI PENDING, LIMITED ACCESS PER PARA 2-212 NISPOM
                              ATTN: SECURITY SUPERVISOR - (3C5X0)
                    NAME AND  ETREPPID TECHNOLOGIES LLC
                    ADDRESS OF 755 TRADE MARK DRIVE
                    CONTRACTOR RENO, NV 89521


The consent of the Secretary of Defense is hereby granted for the above-named
employee to have access to classified information up to and including the
level shown, provided access is essential in connection with the performance
of a classified contract.  Unless suspended or revoked by the Department of
Defense, or administratively terminated when access no longer is required,
this personnel security clearance is valid as long as the individual is
continuously employed by your organization.  If this clearance is
administratively terminated and a need for access develops later, or if
employment is terminated and the individual is subsequently reemployed and
requires access, this clearance may be reinstated provided not more than 24
months have elapsed since it was last valid.  This consent will continue in
effect if the employee is transferred to another facility of your organization
if continued clearance is required.  You are required to report promptly any
information coming to your attention which may indicate that continued access
to classified information may not be clearly consistent with the national
interest.  A copy of this form shall not be furnished to the above-named
employee for any purpose whatsoever.  You may reproduce it only as necessary
for your organization's essential records or to meet Department of Defense
requirements.  This form shall be returned upon request by the Government.


Issued by

DEFENSE SECURITY SERVICE
COLUMBUS, OH

(N)


                                                    00038
                                           Sept. 21'06

DEFS002255

Preferred Technology, Inc.          8271 E. Gelding Dr. Scottsdale, AZ 85260          (480) 991-1259

## Unit Activity By Unit Number - 0132

| Time | Remote # | Description | Data | Tenant |
|---|---|---|---|---|
| **Tuesday, January 10, 2006** | | | | |
| 3:48:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 3:45:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 3:32:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 3:31:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 3:31:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 3:30:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 3:29:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |

*Total Records:  83*

Friday, March 03, 2006                                                                 *Page 3 of 3*  00079
                                                                                        Sept. 11' 06

DEFS002256

Case 3:06-cv-00263-PMP-VPC   Document 70-7   Filed 09/11/2006   Page 2 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-3   Filed 09/11/2006   Page 2 of 40

Preferred Technology, Inc.            8271 E. Gelding Dr. Scottsdale, AZ 85260            (480) 991-1259

## Unit Activity By Unit Number - 0136



| Time | Remote # | Description | Data | Tenant |
|---|---|---|---|---|
| **Friday, February 03, 2006** | | | | |
| 11:49:00 AM | 0- | User Logged Off Site | 0136 | DENNIS MONTGOMERY |
| **Tuesday, January 10, 2006** | | | | |
| 3:46:00 PM | 16- | Door Close | 0136 | DENNIS MONTGOMERY |
| 3:31:00 PM | 16- | Door Open | 0136 | DENNIS MONTGOMERY |
| 1:19:00 PM | 16- | Door Close | 0136 | DENNIS MONTGOMERY |
| 1:18:00 PM | 16- | Door Open | 0136 | DENNIS MONTGOMERY |
| **Thursday, January 05, 2006** | | | | |
| 9:22:00 AM | 16- | Door Close | 0136 | DENNIS MONTGOMERY |
| 9:18:00 AM | 16- | Door Open | 0136 | DENNIS MONTGOMERY |
| **Thursday, December 08, 2005** | | | | |
| 3:54:00 PM | 16- | Door Close | 0136 | DENNIS MONTGOMERY |
| 3:40:00 PM | 16- | Door Open | 0136 | DENNIS MONTGOMERY |
| **Sunday, November 27, 2005** | | | | |
| 4:02:00 PM | 16- | Door Close | 0136 | |
| 2:56:00 PM | 16- | Door Alarm | 0136 | |
| 2:56:00 PM | 16- | Door Close | 0136 | |
| 12:59:00 PM | 16- | Door Alarm | 0136 | |
| 12:59:00 PM | 16- | Door Close | 0136 | |
| 9:21:00 AM | 16- | Door Alarm | 0136 | |

*Total Records:  15*

Friday, March 03, 2006                                  Page 1 of 1   00080
                                                         Sept. 11' 06

DEFS002257

Case 3:06-cv-00263-PMP-VPC      Document 70-7      Filed 09/11/2006      Page 3 of 40
Case 3:06-cv-00263-PMP-VPC *SEALED*      Document 70-3      Filed 09/11/2006      Page 3 of 40

*Preferred Technology, Inc.*          *8271 E. Gelding Dr. Scottsdale, AZ 85260*          *(480) 991-1259*

## *Unit Activity By Unit Number - 0140*

| Time | Remote # | Description | Data | Tenant |
|---|---|---|---|---|
| **Friday, March 03, 2006** | | | | |
| 8:00:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 7:58:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 7:52:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 7:49:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Tuesday, February 28, 2006** | | | | |
| 9:43:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:36:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Sunday, February 26, 2006** | | | | |
| 8:19:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 8:18:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Monday, February 20, 2006** | | | | |
| 2:00:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:59:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Thursday, February 16, 2006** | | | | |
| 2:00:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:59:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Saturday, February 11, 2006** | | | | |
| 9:34:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:33:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Thursday, February 09, 2006** | | | | |
| 12:06:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 12:00:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Monday, February 06, 2006** | | | | |
| 9:21:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:14:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Sunday, February 05, 2006** | | | | |
| 10:31:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:09:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Friday, February 03, 2006** | | | | |
| 12:17:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:50:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Thursday, February 02, 2006** | | | | |
| 4:33:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 4:03:00 PM | 15- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Wednesday, February 01, 2006** | | | | |
| 10:19:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:18:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Tuesday, January 31, 2006** | | | | |
| 3:13:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 2:55:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |

DEFS002258

*Preferred Technology, Inc.*                    *8271 E. Gelding Dr. Scottsdale, AZ 85260*                    *(480) 991-1259*

## *Unit Activity By Unit Number – 0140*

| Time | Remote # | Description | Data | Tenant |
|------|----------|-------------|------|--------|
| **Tuesday, January 24, 2006** | | | | |
| 12:28:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 12:22:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 11:06:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:45:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Monday, January 23, 2006** | | | | |
| 11:31:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 11:30:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 9:20:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 8:56:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Saturday, January 21, 2006** | | | | |
| 1:05:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:05:00 PM | 15- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Friday, January 20, 2006** | | | | |
| 9:38:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:24:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Tuesday, January 17, 2006** | | | | |
| 10:34:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:34:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Tuesday, January 10, 2006** | | | | |
| 3:47:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 3:38:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 1:17:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:04:00 PM | 18- | Door Open | 0140 | DENNIS MONTGOMERY |
| 10:41:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:39:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Monday, January 09, 2006** | | | | |
| 11:37:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 11:36:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 10:32:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:32:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 10:31:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:29:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Tuesday, January 03, 2006** | | | | |
| 9:44:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:44:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Wednesday, December 28, 2005** | | | | |
| 9:11:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:04:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |

00082
Sept. 11' 06

DEFS002259

Preferred Technology, Inc.          8271 E. Gelding Dr. Scottsdale, AZ 85260          (480) 991-1259

# Unit Activity By Unit Number - 0140

| Time | Remote # | Description | Data | Tenant |
|---|---|---|---|---|
| **Tuesday, December 27, 2005** | | | | |
| 1:05:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:02:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 12:48:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 12:43:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Thursday, December 22, 2005** | | | | |
| 10:15:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:15:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 10:14:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:09:00 AM | 18- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Wednesday, December 21, 2005** | | | | |
| 2:50:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 2:47:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 2:06:00 PM | 15- | Door Close | 0140 | DENNIS MONTGOMERY |
| 2:06:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 1:41:00 PM | 18- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:40:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 1:39:00 PM | 18- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:38:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 1:05:00 PM | 18- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:02:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 11:31:00 AM | 18- | Door Close | 0140 | DENNIS MONTGOMERY |
| 11:30:00 AM | 18- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Sunday, December 04, 2005** | | | | |
| 11:27:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 11:26:00 AM | 18- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Saturday, December 03, 2005** | | | | |
| 1:32:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 1:32:00 PM | 18- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Sunday, November 27, 2005** | | | | |
| 9:36:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:35:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Thursday, November 24, 2005** | | | | |
| 4:13:00 PM | 18- | Door Close | 0140 | DENNIS MONTGOMERY |
| 4:12:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 4:12:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 4:09:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Monday, November 21, 2005** | | | | |
| 9:48:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:47:00 AM | 18- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Monday, November 14, 2005** | | | | |
| 10:14:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:13:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |

Friday, March 03, 2006

00083
Sept. 11'06

DEFS002260

Case 3:06-cv-00263-PMP-VPC     Document 70-7     Filed 09/11/2006     Page 6 of 40
Case 3:06-cv-00263-PMP-VPC *SEALED*     Document 70-3     Filed 09/11/2006     Page 6 of 40

*Preferred Technology, Inc.*          *8271 E. Gelding Dr. Scottsdale, AZ 85260*          *(480) 991-1259*

# *Unit Activity By Unit Number - 0140*

| Time | Remote # | Description | Data | Tenant |
|---|---|---|---|---|
| **Saturday, November 12, 2005** | | | | |
| 6:36:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 6:36:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 2:53:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 2:52:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 12:14:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 12:13:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 8:04:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 8:04:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Thursday, November 10, 2005** | | | | |
| 2:00:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 2:00:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Sunday, November 06, 2005** | | | | |
| 11:57:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 11:48:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Saturday, November 05, 2005** | | | | |
| 9:57:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 9:56:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Thursday, November 03, 2005** | | | | |
| 10:40:00 AM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 10:39:00 AM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| **Tuesday, November 01, 2005** | | | | |
| 2:14:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 2:13:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |
| 2:12:00 PM | 16- | Door Close | 0140 | DENNIS MONTGOMERY |
| 2:11:00 PM | 16- | Door Open | 0140 | DENNIS MONTGOMERY |

*Total Records:   112*

DEFS002261

Preferred Technology, Inc.         8271 E. Gelding Dr. Scottsdale, AZ 85260              (480) 991-1259

# Unit Activity By Unit Number - 0141

| Time | Remote # | Description | Data | Tenant |
|------|----------|-------------|------|--------|
| **Friday, February 03, 2006** | | | | |
| 11:49:00 AM | 0- | User Logged Off Site | 0141 | DENNIS MONTGOMERY |
| **Tuesday, January 24, 2006** | | | | |
| 12:22:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 12:21:00 PM | 18- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Saturday, January 14, 2006** | | | | |
| 12:10:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 12:09:00 PM | 18- | Door Open | 0141 | DENNIS MONTGOMERY |
| 11:35:00 AM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 11:30:00 AM | 16- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Tuesday, January 10, 2006** | | | | |
| 1:16:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 1:14:00 PM | 16- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Monday, January 09, 2006** | | | | |
| 11:35:00 AM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 11:32:00 AM | 18- | Door Open | 0141 | DENNIS MONTGOMERY |
| 9:19:00 AM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 9:18:00 AM | 16- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Thursday, January 05, 2006** | | | | |
| 1:05:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 1:04:00 PM | 16- | Door Open | 0141 | DENNIS MONTGOMERY |
| 9:22:00 AM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 9:22:00 AM | 16- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Wednesday, January 04, 2006** | | | | |
| 4:10:00 PM | 18- | Door Close | 0141 | DENNIS MONTGOMERY |
| 4:08:00 PM | 16- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Friday, December 23, 2005** | | | | |
| 1:24:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 1:21:00 PM | 16- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Thursday, December 22, 2005** | | | | |
| 12:10:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 12:07:00 PM | 18- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Wednesday, December 21, 2005** | | | | |
| 2:26:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 2:07:00 PM | 18- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Tuesday, December 20, 2005** | | | | |
| 5:22:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 5:20:00 PM | 16- | Door Open | 0141 | DENNIS MONTGOMERY |
| **Sunday, December 18, 2005** | | | | |
| 11:16:00 AM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 11:05:00 AM | 18- | Door Open | 0141 | DENNIS MONTGOMERY |

Friday, March 03, 2006

Page 1 of 2   00085
Sept. 11' 06

DEFS002262

*Preferred Technology, Inc.*                *8271 E. Gelding Dr. Scottsdale, AZ 85260*                        *(480) 991-1259*

## *Unit Activity By Unit Number - 0141*

| Time | Remote # | Description | Data | Tenant |
|------|----------|-------------|------|--------|
| *Thursday, December 08, 2005* | | | | |
| 3:53:00 PM | 16- | Door Close | 0141 | DENNIS MONTGOMERY |
| 3:45:00 PM | 18- | Door Open | 0141 | DENNIS MONTGOMERY |

**Total Records:   31**

*Friday, March 03, 2006*                                                      *Page 2 of 2* 00086
                                                                       Sept.  11' 06

DEFS002263

*Preferred Technology, Inc.*          *8271 E. Gelding Dr. Scottsdale, AZ 85260*          *(480) 991-1259*

## *Unit Activity By Unit Number - 0142*

| Time | Remote # | Description | Data | Tenant |
|------|----------|-------------|------|--------|
| **Monday, February 20, 2006** | | | | |
| 1:48:00 PM | 16- | Door Close | 0142 | DENNIS MONTGOMERY |
| 1:46:00 PM | 16- | Door Open | 0142 | DENNIS MONTGOMERY |
| **Friday, February 03, 2006** | | | | |
| 11:49:00 AM | 0- | User Logged Off Site | 0142 | DENNIS MONTGOMERY |
| **Tuesday, January 24, 2006** | | | | |
| 12:21:00 PM | 15- | Door Close | 0142 | DENNIS MONTGOMERY |
| 12:20:00 PM | 18- | Door Open | 0142 | DENNIS MONTGOMERY |
| **Tuesday, January 10, 2006** | | | | |
| 1:19:00 PM | 16- | Door Close | 0142 | DENNIS MONTGOMERY |
| 1:18:00 PM | 18- | Door Open | 0142 | DENNIS MONTGOMERY |
| **Monday, January 09, 2006** | | | | |
| 11:38:00 AM | 16- | Door Close | 0142 | DENNIS MONTGOMERY |
| 11:37:00 AM | 16- | Door Open | 0142 | DENNIS MONTGOMERY |
| **Tuesday, December 20, 2005** | | | | |
| 5:20:00 PM | 16- | Door Close | 0142 | DENNIS MONTGOMERY |
| 5:20:00 PM | 16- | Door Open | 0142 | DENNIS MONTGOMERY |
| **Sunday, December 18, 2005** | | | | |
| 11:05:00 AM | 16- | Door Close | 0142 | DENNIS MONTGOMERY |
| 11:04:00 AM | 18- | Door Open | 0142 | DENNIS MONTGOMERY |
| **Monday, November 28, 2005** | | | | |
| 10:08:00 AM | 16- | Door Close | 0142 | DENNIS MONTGOMERY |
| 10:08:00 AM | 16- | Door Open | 0142 | DENNIS MONTGOMERY |
| **Saturday, November 12, 2005** | | | | |
| 2:54:00 PM | 16- | Door Close | 0142 | DENNIS MONTGOMERY |
| 2:53:00 PM | 16- | Door Open | 0142 | DENNIS MONTGOMERY |

*Total Records:   17*

DEFS002264

*Preferred Technology, Inc.*     *8271 E. Gelding Dr. Scottsdale, AZ 85260*     *(480) 991-1259*

## Unit Activity By Unit Number - 0143

| Time | Remote # | Description | Data | Tenant |
|------|----------|-------------|------|--------|
| **Friday, March 03, 2006** | | | | |
| 8:01:00 AM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 7:49:00 AM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Tuesday, February 28, 2006** | | | | |
| 9:44:00 AM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 9:35:00 AM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Sunday, February 26, 2006** | | | | |
| 8:22:00 PM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 8:09:00 PM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Monday, February 20, 2006** | | | | |
| 2:01:00 PM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 1:59:00 PM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| 1:52:00 PM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 1:50:00 PM | 16- | Door Close | 0143 | DENNIS MONTGOMERY |
| 1:50:00 PM | 16- | Door Open | 0143 | DENNIS MONTGOMERY |
| 1:48:00 PM | 16- | Door Close | 0143 | DENNIS MONTGOMERY |
| 1:46:00 PM | 16- | Door Open | 0143 | DENNIS MONTGOMERY |
| 1:45:00 PM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Thursday, February 16, 2006** | | | | |
| 2:01:00 PM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 1:59:00 PM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Saturday, February 11, 2006** | | | | |
| 9:35:00 AM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 9:33:00 AM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Thursday, February 09, 2006** | | | | |
| 12:07:00 PM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 11:59:00 AM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Monday, February 06, 2006** | | | | |
| 9:22:00 AM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 9:14:00 AM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Sunday, February 05, 2006** | | | | |
| 10:32:00 AM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 10:28:00 AM | 16- | Door Close | 0143 | DENNIS MONTGOMERY |
| 10:25:00 AM | 16- | Door Open | 0143 | DENNIS MONTGOMERY |
| 10:08:00 AM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |
| **Saturday, February 04, 2006** | | | | |
| 9:54:00 AM | 2- | Exit Area | 0143 | DENNIS MONTGOMERY |
| 9:53:00 AM | 16- | Door Close | 0143 | DENNIS MONTGOMERY |
| 9:50:00 AM | 16- | Door Open | 0143 | DENNIS MONTGOMERY |
| 9:49:00 AM | 1- | Enter Area | 0143 | DENNIS MONTGOMERY |

DEFS002265

## A.. FORCE OFFICE OF SPECIAL INVESTIGATIONS
### REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 23 JAN 2006 | eTreppid LLC, Reno NV | |

4. REMARKS

On 23 Jan 2006, SAs HARALDSEN and SMITH interviewed VENABLES at eTreppid LLC. In addition to reiterating the information from his declaration, VEANABLES related the following information:

He has known SUBJECT since December 1999 and had both a professional and personal relationship with him. He believed SUBJECT was "nuts and a crazy compulsive liar." SUBJECT was unwilling to share his work with others and kept employees in the dark about company projects. SUBJECT was abusive to subordinates and created an atmosphere of fear. SUBJECT created fictitious stories about TREPP and claimed that he (SUBJECT) was the actual majority owner of the company. SUBJECT would threaten subordinates and instruct them to not engage with TREPP. Consequently, problems or issues within the company were not elevated to TREPP.

VENABLES questioned SUBJECT's technical capabilities. His suspicion was reinforced when he discovered SUBJECT's workstation did not have the necessary applications installed to develop source code. VENABLES found this peculiar since this was purportedly SUBJECT's primary responsibility as the Chief Technical Officer. Additionally, VENABLES designed the dual Zeon processors used by SUBJECT to operate as a cluster. However, when SUBJECT changed the operating system to Windows XP this required the computers to work as independent systems. VENABLES said SUBJECT's actions were irrational and divergent since it caused the network of computers to operate inefficiently.

The workstation containing eTreppid's source code was typically located in the company's warehouse. On 21 Dec 05, VENABLES noticed the workstation and RAID box controller housing eight drives was missing. The monitor and keyboard, however, were still present. VENABLES asked SUBJECT if he knew the whereabouts of the workstation and raid box. SUBJECT said without any further explanation "I took the workstation home." On 3 Jan 06, when VENABLES returned from vacation he discovered that the SRCSERVER and ISASERVER had been accessed. The monitors displayed a "command prompt window" indicating an executable command had taken place. VENABLES questioned SUBJECT about this, SUBJECT said he was "cleaning up old stuff." During the week of 3-6 JAN 06, VENABLES questioned SUBJECT numerous times about the workstation and raid box controller. Each time SUBJECT stated "I am bringing back the workstation." However SUBJECT never did. On 10 JAN 06, when VENABLES arrived at work he discovered SUBJECT and TREPP in the warehouse arguing. SUBJECT stormed out of the building. TREPP instructed VENABLES to call SUBJECT and encourage him to return. VENABLES contacted SUBJECT and SUBJECT said, "He fucked me out of millions and is not going to get away with it." SUBJECT said he would think about returning. Later on 10 Jan 06 SUBJECT did return, but did not speak with VENABLES.

VENABLES confirmed he and SUBJECT were the only ones with administrator password necessary to access the SRCSERVER and ISASERVER to accomplish the task of deleting source code. VENABLES denied deleting the source code. VENABLES said that only the individual programmers and SUBJECT had the passwords necessary to delete the source code from the individual workstations. VENABLES further said the passwords on the workstations were established and set by SUBJECT. VENABLES said he established his own password on his workstation; therefore his information was not deleted. Additionally, SUBJECT had the building alarm codes for all of the company employees. SUBJECT possessed the necessary accesses and passwords to access the surveillance cameras within the facility and could have deleted the last four months of video recordings.

VENABLES said he would attempt to obtain the workstation motherboard and raid box controller serial numbers that SUBJECT told VENABLES that he took home.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| SA PAUL L. HARALDSEN and SA THOMAS A. SMITH | Thomas A. Smith |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY.   00089

AFOSI FORM 40, JUL 92 (EF)        PREVIOUS EDITION MAY BE USED        PAGE 1 of Dept. 1 PAGE(S)

DEFS002266

REMARKS *(Continued)*

VENABLES explained he was the Facility Security Officer for eTreppid. He did not become aware of any SECRET hard drives located in the facility until he inadvertently discovered SUBJECT possessing two hard drives in the warehouse. This discovery occurred sometime in Nov 2005. Prior to this incident, GRAY and SUBJECT did not inform him that they had brought classified material into the facility. Therefore, he did not provide day-to-day security for these hard drives. The hard drives were stored in a safe in a room secured with a cipher lock. GRAY and SUBJECT had the combination to the safe. Again, VENABLES emphasized he never saw the hard drives until accidentally discovering SUBJECT using them. He was unaware of how many were in the facility. Once he was made aware that the hard drives were into the facility, he would routinely see SUBJECT use them for his work. VENABLES was unaware of which specific computer system SUBJECT was using, but surmised it probably was one in the warehouse routinely used by SUBJECT. The facility did not have formal approval to process classified information on any computer system. VENABLES explained that GRAY claimed SUBJECT was not properly storing the hard drives in the approved safe. VENABLES confronted SUBJECT about this and SUBJECT said, "Fuck her, she's making stuff up again." VENABLES informed TREPP of the conversation and TREPP said he would speak to SUBJECT. Between 10-13 JAN 06, VENABLES and GRAY conducted a search of the company in an attempt to account for nine SECRET hard drives. This was his first knowledge that there was supposed to be nine SECRET hard drives in the facility. The search revealed six copies of the original SECRET nine hard drives and two SECRET video tapes. They were unable to locate the original nine SECRET hard drives. VENABLES said he and GRAY began a security inquiry to determine the facts surrounding the disappearance of the original hard drives

VENABLES was aware SUBJECT had several storage units around the Reno, NV area. He believed that SUBJECT would often change the units as well. He was unaware of the specific locations of these storage units.

AFOSI FORM 40, JUL 92 *(Continuation Sheet) (EF)*

00090

PAGE
Sept. 11 '06

DEFS002267

Case 3:06-cv-00263-PMP-VPC   Document 70-7   Filed 09/11/2006   Page 13 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-3   Filed 09/11/2006   Page 13 of 40

## AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
### REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY<br>19-23 JAN 2006 | 2. PLACE<br>Telephonic and Personal Interviews -Personal interview at Hilton, Reno NV | 3. FILE NUMBER |
|---|---|---|

**4. REMARKS**

Between 19-23 Jan 2006, WARREN TREPP, Chief Executive Officer, eTreppid Limited Liability Corporation, Reno, NV, related the following information:

SUBJECT illegally deleted and removed the company's source code used for data compression, object tracking and anomaly detection. TREPP initially became aware that the source code was missing on 9-10 January 2006 when employees complained about their inability to operate their computer systems. TREPP asked Sloan VENABLES, eTreppid Facility Security Officer (FSO) about the problem and was told that company's source data was deleted from the source server, a system known as ISA and all of eTreppids's work stations. TREPP said VENABLES and SUBJECT were the only eTreppid employees to have exclusive access to the source and ISA servers as well as all of eTreppid's individual work stations. Additionally, the company had a separate stand-alone back-up system located in eTreppid's warehouse which contained the source code. This system is also missing. SUBJECT had exclusive access to this stand alone back-up system. TREPP said without the source code (intellectual property) the company would go out of business. He was unable to estimate the value of the source code/intellectual property.

TREPP believed that SUBJECT removed and deleted the source code from the source server, the ISA system and all workstations for the following reasons: 1) VENABLES informed TREPP that he had asked SUBJECT where the back-up system was and SUBJECT told VENABLES that he had taken it home; 2) VENABLES informed TREPP that SUBJECT told him that TREPP will, "Have to pay big bucks to get what he wants" 3) An employee named JAMES BAUDER, graphics designer said he carried sealed boxes out of the company for SUBJECT during this time period; and 4) VENABLES was on vacation during the time period that the source code was discovered to have been deleted. VENABLES denied removing the source code from the source and the ISA servers. Furthermore, in an effort to prove TREPP's assumption that SUBJECT had removed the stand-alone computer Back-up system from the warehouse, TREPP had VENABLES review the internal security monitoring cameras in hopes of learning who took the system. Unfortunately, someone deleted the last four months of video.

On 9 JAN 06, TREPP confronted SUBJECT about the source code and was told by SUBJECT that the code could be located on the 753 removable hard drives located in the company. TREPP asked SUBJECT why he was "doing this", to which SUBJECT said, "I did not do a thing." TREPP also asked SUBJECT why he deleted the files. SUBJECT said "I didn't!" TREPP then asked who did and SUBJECT replied "GRAY." TREPP said "GRAY" was a reference to Ms PATTY GRAY, eTreppid Business Manager. SUBJECT stormed out of the company and was followed by TREPP into the company's parking lot. TREPP plead with SUBJECT to let him help him. SUBJECT said, "You are not going to screw me, and just try to bring me down!" and drove off. Conversations between TREPP and SUBJECT on the 10th of January were the same as those addressed on the 9th of January, still without resolution.

TREPP was told by VENABLES that it would have taken about two weeks to delete the source code from the source and ISA servers. Coincidentally, VENABLES was on vacation between 22 Dec 05 - 3 Jan 06. TREPP believed the source code was deleted from the servers during VENABLES' vacation. TREPP also believed that the source code was deleted from the company's individual work stations during the weekend of 7/8 January 2006. TREPP also said, sometime prior to VENABLES' vacation, VENABLES was told by SUBJECT to stay at home and enjoy the holidays. However, on one either the 21st or 22nd of December, VENABLES came to work and found SUBJECT working on the source and ISA servers. VENABLES asked SUBJECT what he was doing, and SUBJECT said "cleaning up some files."

SUBJECT was required to provide copies of the source code to TREPP on an annual basis and did so for seven years. A review of the backup copies, consisting of CDs, DVDs and hard drives, by TREPP revealed the data on these media devices was worthless and did not contain the data SUBJECT was required to provide.

TREPP instructed his employees to analyze all of the company's 753 hard drives in an attempt to locate the code. The two-day analysis determined the code was not on any of these hard drives as claimed by SUBJECT.

| 5. CONDUCTED BY<br>SA PAUL L. HARALDSEN and SA THOMAS A. SMITH | 6. SIGNATURE<br>Thomas A. Smith |
|---|---|

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY.   90091

| AFOSI FORM 40, JUL 92 (EF) | PREVIOUS EDITION MAY BE USED | PAGE 1 OF   PAGES | Sept. 11 '06 |

DEFS002268

REMARKS (Continued)

On 28 September 1998 SUBJECT was hired by eTreppid to become the CTO, he was paid $1,300,000 for the data compression source code which he developed prior to his employment with eTreppid. Initially, SUBJECT was a 50% owner of eTreppid. However, during the course of his ownership SUBJECT required some liquidity and sold a two percent interest in his stock for $1.5 million. This stock was sold to two of TREPP's associates for $750,000 each. With the sale of the stock and other capital call dilutions SUBJECT became a 30% stakeholder in the company. TREPP was unaware of any reason why SUBJECT would have maliciously deleted the source code. TREPP was aware that SUBJECT was having financial difficulties. Since Jan 1999, TREPP loaned SUBJECT a total of $1,379,759 to assist him with his financial burden. With the accrued and unpaid interest of $125,211 the total owed by SUBJECT was $1.5 million. On 7 or 8 Dec 2005 SUBJECT asked to borrow an additional $270,000. When asked what it was for SUBJECT told TREPP that it was "to pay down casino and other debts." Additionally, TREPP discovered SUBJECT also owed $300,000 to various casinos.


During the period of 1999-2005 inclusive, SUBJECT earned the following annual salaries:

1999-2000 - $132,000

2001 -      $176,000

2002 -      $192,000

2003-2005 - $300,000

On 20 Jan 06, Mr. Douglas J. Frye, General Counsel for eTreppid filed a temporary restraining order in the Second District Judicial Court of Nevada Washoe County, requesting SUBJECT return the source code to eTreppid. TREPP said eTreppid attorneys told him that SUBJECT told the judge "eTreppid had shared classified information with foreign nationals." These same attorneys told TREPP that SUBJECT made the comment "I don't have any source files, I have the source files in my head" to the judge. TREPP was unaware of any instance where a foreign national employee was exposed to classified information.

TREPP asked GRAY about it and she said she believed SUBJECT was asking foreign national employees to work on portions of data from the SECRET hard drives. TREPP was unaware of specifics and suggested GRAY would have additional details. Additionally, TREPP said when GRAY and SLOAN conducted an inventory of classified holdings; they were unable to locate nine SECRET hard drives provided by the government and two SECRET video tapes made by eTreppid. He again said that GRAY and SLOAN would have additional information.

During the week of 16-20 Jan 06, Neil Azzinaro, Las Vegas, NV, a mutual friend of both SUBJECT and TREPP said SUBJECT called him and said that he was looking for a US citizen, not an institution or corporation to start a new company and would require $10 Million.

On 18 Jan 06, SUBJECT's employment was terminated from eTreppid.

AFOSI FORM 40, JUL 92 (Continuation Sheet) (EF)

00092

PAGE
Sept. 11 06

DEFS002269

## AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
### REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 23 JAN 2006 | eTreppid, LLC, Reno NV | |

4. REMARKS

On 23 JAN 2006, TREPP provide a copy of a statement from Mr. Jerry SNYDER, eTreppid attorney, dated 23 JAN 2006. concerning SUBJECT's statements at the TRO hearing.

A review of the statement revealed that Mr Snyder recalled that SUBJECT made the following remarks to the judge during the TRO hearing:

1. SUBJECT said he did not have possession of eTreppid source code.

2. SUBJECT said he owned all intellectual property interests in eTreppid's pattern recognition and anomaly detection software and had not transferred interest to eTreppid.

3. SUBJECT stated that eTreppid was allowing foreign nationals without the appropriate security clearances to work on the subject software.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| SA PAUL L. HARALDSEN | |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY 0093

AFOSI FORM 40, JUL 92 (5F)     PREVIOUS EDITION MAY BE USED     PAGE 1 OF Sept. 11 '06 PAGES

DEFS002270

AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 23 JAN 2006 | eTreppid, Reno NV | |

4. REMARKS

On 23 Jan 2006, a review of the Declaration of SLOAN VENABLES, dated 19 Jan 2006 was conducted and revealed the following information:

On 21 Dec 05, VENABLES discovered that a workstation containing a RAID storage box used to backup eTreppid source code was missing. SUBJECT told VENABLES that he (SUBJECT) took the workstation home. On 3 Jan 06, SUBJECT was observed by VENABLES working on the SRC (source) and ISA servers. SUBJECT told VENABLES he was "cleaning stuff up" and this included deleting files. On 3 Jan 06, VENABLES and other employees determined that the source code was deleted from the SRC source server and the ISA server. On the 9 JAN, he and the other employees discovered the source code was removed from the workstations also. VENABLES and SUBJECT were the only two people with the administrator password necessary to accomplish this action. On 10 Jan 06, SUBJECT told VENABLES that if TREPP wanted the source code "he needs to give me big money."

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| SA PAUL L. HARALDSEN | |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY 0094

AFOSI FORM 40, JUL 92 (EF)          PREVIOUS EDITION MAY BE USED          PAGE 1 of Sept.          PAGES 06

DEFS002271

## AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
### REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 24 JAN 2006 | eTreppid, LLC, Reno, NV | |

**4. REMARKS:**

SA Paul HARALDSEN and SA Thomas SMITH, AFOSI interviewed Patricia L. GRAY, Female, Asian, ▆▆▆▆▆▆ ▆▆▆▆▆▆ GRAY is currently employed by ETREPPID Technologies, LLC (ETREPPID) as the Vice President, Product Development, 755 Trademark Drive, Reno, NV.

GRAY stated that she has been employed by ETREPPID for approximately three years and four months. She indicated that she has known SUBJECT for a little more than six years; three of those years were prior to employment with ETREPPID, as she had done some work with ETREPPID when she was employed by INTEL CORPORATION. GRAY stated that she came to work for ETREPPID because she believed that she could help bring its products to the marketplace.

GRAY stated that she had been recording tapes on hard drive disks (HDDs) since March of 2005 and the original recordings were unclassified from Fort Bragg, NC. GRAY believes that when GPS coordinates were displayed on images recorded on HDDs that would make the content of the HDD classified. GRAY said that the recordings she performed at Nellis AFB, NV were classified SECRET, but no higher.

GRAY stated that on 3 and 4 Nov 2005, she generated data on three (3) HDDs at Nellis AFB, NV, marked them SECRET, double-wrapped them and sent them via FEDEX Invoice # 3-182-50372 to ETREPPID addressed to SUBJECT. SUBJECT signed for the delivery at 1541 hours on 5 Nov 2005. On 07 Nov 2005, when GRAY returned to Reno, NV she confirmed with SUBJECT that he had received the data contained in the package.

GRAY stated that on 9, 10 and 11 Nov 2005, she generated data on three (5) HDDs at Nellis AFB, NV, marked them SECRET, double-wrapped and sent them via FEDEX Invoice # 3-194-79312 to ETREPPID addressed to SUBJECT. SUBJECT signed for the delivery at 1502 hours on 12 Nov 2005. On 14 Nov 2005, when GRAY returned to Reno, NV she confirmed with SUBJECT that he had received the data contained in the package on the previous Saturday.

GRAY stated that ON 17 and 18 Nov 2005, she generated data on three (3) HDDs, two (2) of which contained unclassified data and one (1) that contained classified data at Nellis AFB, NV, marked them SECRET, double wrapped them and sent them via FEDEX Invoice # 3-207-28841 to ETREPPID addressed to herself. Altan BORA, employee of ETREPPID signed for the delivery at 1147 hours on 21 Nov 2005. GRAY stated that on 21 Nov 2005, she arrived for work shortly after noon and delivered the unopened package to SUBJECT in the warehouse section of ETREPPID's facilities.

GRAY related that on 06 Dec 2005 she checked to see if the HDDs that she had shipped from Nellis AFB were stored in the NSA approved safe at ETREPPID's corporate office. GRAY found that the HDDs were not in the safe and notified TREPP who, in turn, informed SUBJECT to return the HDDs to the safe. GRAY again checked the safe on 07 Dec 2005 and found that the HDDs were not there. GRAY said that she asked SUBJECT about the location of the HDDs and SUBJECT told her that the HDDs were all in the file cabinet in the warehouse. GRAY informed SUBJECT that this was not the correct location to store the HDDs and informed TREPP of the incident.

On 08 Dec 2005, GRAY e-mailed SUBJECT, copying TREPP on the e-mail to remind SUBJECT that all classified material should be stored in one safe so that she and SUBJECT would both have the combination and access. GRAY said that as a result of this e-mail all original nine (9) original HDDs and tapes were placed in the safe.

GRAY said that on 12 Dec 2005, TREPP asked her to generate some test tapes from the classified HDDs for internal testing. TREPP requested that four (4) DV tapes be made, two (2) for SUBJECT and two (2) for TREPP so a "blind test" could be performed. GRAY stated that she retrieved the one of the HDDs from the safe that had classified content generated on 5 Nov 2005 and started work on making the tapes.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| SA PAUL L. HARALDSEN and SA THOMAS A. SMITH | *Thomas D Smith* |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY

| AFOSI FORM 40, JUL 92 (EF) | PREVIOUS EDITION MAY BE USED | PAGE 1 OF   PAGES |
|---|---|---|

0095

Sept. 11 05

REMARKS *(Continued)*

GRAY related that on 13 Dec 2005, she went to retrieve another HDD to generate test tapes and all of the HDDs were not stored in the safe. GRAY informed TREPP that the HDDs were not properly stored and TREPP had SUBJECT return the HDDs to the safe. GRAY also related that while generating test tapes, SUBJECT came into her work area and placed a new label on one of the HDDs that she was using to generate test tapes. GRAY said that SUBJECT told her he was condensing the HDDs that were used at Nellis AFB because some were only partially full. As per TREPP, GRAY also gave SUBJECT two (2) test tapes. GRAY changed the safe's upper drawer combination and placed TREPP's two (2) copies of test tapes and original HDDs were secured in the safe's bottom drawer of which both GRAY and SUBJECT had the combination.

GRAY related that on 15 Dec 2005, all the HDDs were missing from the safe. When GRAY approached SUBJECT about the HDDs he told her he wanted to store the HDDs in the file cabinet in the warehouse for his convenience. GRAY told SUBJECT he could not store classified in the warehouse and was risking his clearance. GRAY said SUBJECT replied, "I don't care about my clearance. They'll always give me my clearance because they want me to do the work." GRAY told TREPP and he agreed that the classified material needed to be restricted. TREPP had SUBJECT return the classified HDDs and tapes to the safe. GRAY said TREPP then asked her to move all of the classified material to the top drawer of the safe and not give SUBJECT the combination.

GRAY said that on 18 Dec 2005, SUBJECT tried to contact her via text message and eventually was contacted by TREPP who instructed her to give the safe combination to SUBJECT. GRAY related to TREPP that she had concerns that SUBJECT would make copies of the classified content and that he would have access to the two (2) tapes that GRAY had segregated for the blind test. GRAY said that TREPP instructed her to give SUBJECT the combination so SUBJECT could work and on Monday TREPP and her would talk with SUBJECT and re-secure all the HDDs and tapes when GRAY returned to the office.

GRAY said that on 21 Dec 2005, at approximately 1030 hours, she had a closed door meeting with TREPP where she told TREPP that she had reason to believe SUBJECT had not written significant software for the company and observed what may have been classified imagery displaying coordinates that may have been images of Iraq on Zehang SUN's unclassified system, who does not have a clearance, network drives. GRAY said that earlier she had tried to copy what appeared to be classified content on SUN's shared folder, but as she was trying to copy it to her computer it was deleted. GRAY believes that SUBJECT deleted it because he has access to all of the engineer's folders. GRAY also informed TREPP that she had fairly complete information that led her to believe SUN had worked on a classified project involving ocean images. GRAY said that TREPP recommend that she look at source code archive disks that SUBJECT gave him to help her with the information she was seeking. GRAY stated that soon after her meeting with TREPP she received a call from Jesse ANDERSON. GRAY said that ANDERSON, who was on vacation, asked her what was going on in the building, said that he had just received a call from SUBJECT who told him that TREPP and GRAY were "ganging up on him" and asked ANDERSON if there was any source code resident on his computer. GRAY told him that she didn't know what he was talking about and her conversations with TREPP was none of his business. GRAY said that almost immediately after her conversation with ANDERSON, VENABLES called her on the office intercom and said he just received call from SUBJECT who told him that TREPP and GRAY were "ganging up on him" and accusing VENABLES of "stuff". GRAY believes that her conversation with TREP at 1030 hours was either overheard or somehow monitored. GRAY informed TREPP of her conversations with ANDERSON and VENABLES and of her belief that their conversation had been monitored. GRAY said VENABLES called at approximately 1530 hours on the office intercom and inquired as to why SUBJECT was leaving the building with hard drives. GRAY said that she told TREPP about VENABLES call and she and TREPP went to the warehouse. GRAY said that she saw TREPP and SUBJECT have a conversation while she and then both SUBJECT and TREPP went to TREPP's office.

GRAY said that on 8 Jan 2006, TENETTI informed her that SUBJECT had deleted all the source code from all of the engineer's systems between Christmas and New Year's. GRAY said that on 9 January 2006 that she found 7 HDDs (copies of the original 9 HDDs that were condensed to 7) in SUBJECT's file cabinet in the warehouse. GRAY stated that she also checked the safe and found 7 HDDs (copies of the original 9 HDDs that had been condensed to 7), but none of the original HDDs were in the safe. In addition, GRAY related that 2 of the 4 test tapes made for the blind test were missing from the safe. GRAY stated that between 9 Jan and 13 Jan 2006 she continued to attempt to ascertain the location of the original 9 HDDs and the 2 test tapes to no avail.

GRAY also added that she believes SUBJECT processed classified information on an unclassified stand-alone system that was not part of ETREPPID's computer domain.

On 23 Jan 2006, GRAY said that she checked one of the HDDs that SUBJECT generated labeled, "Nellis Images WIP 12/8/05" containing a recent version of target/motion software and test imagery. GRAY asked Yongmian ZHANG, Asian/Male ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to describe test sequences he had been using. ZHANG's description matched test sequences in two directories on the "Nellis Images WIP 12/8/05" HDD containing detection software. One sequence contain classified material, but she could not show it to ZHANG because he does not have a clearance. GRAY said that since she cannot show ZHANG the image, she cannot be sure that the test sequence he had access to and the imagery on the "Nellis Images WIP 12/8/05" HDD are one and the same.

AFOSI FORM 40, JUL 92 *(Continuation Sheet) (EF)*

00096

Ser 485  21 06

DEFS002273

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-3   Filed 09/11/2006    Page 19 of 40

AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 24-25 JAN 2006 | ETREPPID, LLC RENO, NV | |

4. REMARKS

SA Paul HARALDSEN and SA Thomas SMITH, AFOSI interviewed Jesse ANDERSON, Male/White ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ANDERSON is currently employed by ETREPPID Technologies, LLC (ETREPPID) as a Web Developer located at 755 Trademark Drive, Reno, NV.

ANDERSON said that he has been an employee of ETREPPID for approximately five (5) years and has had both a personal and professional relationship with SUBJECT during that time. ANDERSON stated that he, SUBJECT and other employees had seen each other socially on numerous occasions. ANDERSON characterized SUBJECT's recent demeanor as "unstable, needs to be hospitalized and needs psychological help."

ANDERSON stated that on 22 or 23 Dec 2005 SUBJECT called him and asked if he had any source code resident on his computer and ANDERSON said, "No." ANDERSON said that this call took place when he was on vacation during the time period starting on 21 Dec 2005 and ending on 28 Dec 2005. ANDERSON stated that he called Patricia L. GRAY and asked her, "Dennis (SUBJECT) just called me and asked if I had any source code on my computer, what's going on?" ANDERSON said that he could not recall GRAY's response.

ANDERSON said that on 28 or 29 Dec 2005, Lalith TENNETI, M/Indian ▇▇▇▇▇▇▇▇▇▇▇ employee of ETREPPID as a software engineer, informed him that ETREPPID source code was missing from his ETREPPID computer.

ANDERSON said that Jale TREPP (JTREPP), Warren TREPP's wife, called him on 7 Jan 2006. JTREPP told him that GRAY had called her and said that he might have some information as to SUBJECT's activities at ETREPPID. ANDERSON agreed to meet JTREPP at a Barnes & Noble store located at 5555 South Virginia Street, Reno NV 89502. ANDERSON related to JTREPP that SUBJECT was using open source code to develop ETREPPID's source code, not writing software, does not possess adequate technical abilities, and was dishonest. ANDERSON also informed JTREPP that SUBJECT said that he owned 51% of the company, TREPP was just an investor and that GRAY was going away for some time. JTREPP and ANDERSON agreed that ANDERSON should meet and discuss these issues with TREPP.

ANDERSON stated that on 8 Jan 2006, he met TREPP at the Tamarack Junction Restaurant Casino located at 13101 South Virginia Street, Reno, NV 89511. ANDERSON said that he voiced his concerns to TREPP as to SUBJECT's continued claims that he was the majority shareholder in the company (51%), had "lots of cash" invested in the company and that TREPP was only an investor. ANDERSON also informed TREPP that SUBJECT was using open source to develop ETREPPID source code, that SUBJECT was dishonest, that SUBJECT said GRAY would be going away for some time and that as long as five years ago he had suspicions that SUBJECT was less technically competent than he led people to believe. ANDERSON said that TREPP asked him to contact VENABLES and TENNETI so TREPP could be further informed of SUBJECT's activities as they related to ETREPPID.

ANDERSON said that on 10 Jan 2006, while he was at ETREPPID's office SUBJECT said to him that, "You're an asshole" and, "We'll meet again". ANDERSON asked SUBJECT, "Is that a threat?" and SUBJECT replied, "No". ANDERSON stated that he had suspicions that his phone conversations and his conversations at work may have been monitored as he could not understand how SUBJECT knew that he had talked to TREPP about his concerns regarding SUBJECT. ANDERSON fears that SUBJECT may harm him in some way and believes that the SUBJECT has the capacity to do so.

ANDERSON related that on 11 and 12 Jan 2006, he was asked by TREPP to look at all of ETREPPID's computers and talk with employees to ascertain if there was any source code resident on ETREPPID's computers. ANDERSON stated that ETREPPID source code had been deleted from all of the computers. ANDERSON stated that a program known as "Wipe N Clean" was resident on all of ETREPPID's programmer's computers and that program had been resident on the computers prior to the deletion and removal of ETREPPID source code. "Wipe N Clean" is a program used to permanently delete data from computers. ANDERSON stated that a portion of ETREPPID source code was resident on his computer and had not been deleted. ANDERSON stated that approximately three years ago SUBJECT required all ETREPPID personnel, that were working with portions of ETREPPID source code, save the source code in a file named Current Source and that SUBJECT had access to this file. ▣

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| SA THOMAS A SMITH & SA PAUL L. HARALDSEN | Thomas A Smith |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY.   11' 06

| AFOSI FORM 40, JUL 92 (EF) | PREVIOUS EDITION MAY BE USED | PAGE 1 OF | PAGES |

DEFS002274

**REMARKS** *(Continued)*

ANDERSON said that on 15 Jan 2006, he saw SUBJECT at the Peppermill Hotel Casino located at 2707 South Virginia Street, Reno, NV 89502. ANDERSON was at the casino to have lunch with his girlfriend's family. ANDERSON said that while he was waiting on line for lunch service he observed SUBJECT playing blackjack at one of the casino's blackjack tables. ANDERSON said that SUBJECT looked like he had been playing cards all night as SUBJECT look tired, intoxicated, although he did not have a drink glass in front of him and his hair was a mess. ANDERSON said that SUBJECT looked up and said to him, "Get the fuck out of here!" and asked a casino security guard to make ANDERSON move. The security guard asked ANDERSON to move and ANDERSON refused informing the security guard that he was just watching the game on TV and waiting in line for lunch. SUBJECT again asked the security guard to move ANDERSON and this time ANDERSON complied so SUBJECT would "not cause a scene" while ANDERSON was having lunch with his girlfriend's family.

ANDERSON said that he had suspicions that SUBJECT was using open source code to develop ETREPPID source code for almost two years. ANDERSON said that he confronted SUBJECT about ETREPPID's use of open source code to develop its source code when he was at Fort Bragg, NC conducting some training. SUBJECT told him that the "government knew about it" and that TREPP knew about it and TREPP was "O.K with it".

ANDERSON stated that he never saw or touched classified HDDs at ETREPPID's offices, nor did he possess the combinations to the company's safes. ANDERSON stated that he had nothing to with the deletion of ETREPPID source code from ETREPPID computers.

ANDERSON also provided that approximately four months ago SUBJECT gave him electronic TIF files (images), of what ANDERSON said he believed to be the ocean, and directed him to divide the TIF images into 1k x 1k pixels. ANDERSON said that he complied and said those images were still resident on his computer.

In addition, ANDERSON said that sometime in 2003, upon the direction of SUBJECT, during demonstrations of ETREPPID's Automatic Target Recognition (ATR) product ANDERSON was told to monitor his computer screen that displayed a video. SUBJECT instructed ANDERSON to strike the "A" key on his computer's keyboard each time the bazooka came into view on the video screen. ANDERSON said that he did this for approximately forty (40) separate demonstrations. ANDERSON stated that sometime in October or November of 2005, he learned from GRAY that representatives from the Department of Homeland Security (DHS) were coming to see the ATR product and that this visit was in relation to a contract. ANDERSON said that to his knowledge his prior participation in the ATR product was limited to bazooka demonstrations and he did not want to participate if ETREPPID was going to be paid by the DHS. ANDERSON told SUBJECT that he did not want to participate when DHS arrived and he did not. ANDERSON said that subsequent to that date SUBJECT no longer talked to him at work and ceased all social contact with him.

AFOSI FORM 40, JUL 92 *(Continuation Sheet) (EF)*

00098

Sep 11 '06

DEFS002275

AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY 25 JAN 2006 | 2. PLACE eTreppid, LLC, Reno NV | 3. FILE NUMBER |
|---|---|---|

4. REMARKS

On 25 JAN 2006, Mr. JAMES BAUDER, Graphics Designer, eTreppid, LLC, Reno NV, was interviewed by SA HARALDSEN and SA SMITH to determine his knowledge regarding SUBJECT removing a computer system from eTreppid.

BAUDER said he worked for eTreppid since April 2000 and was hired by SUBJECT. His relationship with SUBJECT was strictly professional. He characterized SUBJECT as eccentric with minimal personal skills. Because of BAUDER's size, a large man, SUBJECT would often ask him to move heavy "stuff."

On Friday, 23 Dec, 2005, SUBJECT asked BAUDER to move about six boxes from SUBJECT's office and office closet to the back warehouse door. BAUDER accomplished this task. He said the box flaps were closed therefore he was unable to determine the boxes' contents. BAUDER observed SUBJECT load at least two of the boxes into his (SUBJECT's) truck. BAUDER thought this was a little peculiar since he never witnessed SUBJECT remove anything from the facility.

BAUDER said about one year ago, SUBJECT requested he purchase some open source code called MICATOGE XPLAYER. This purchase was an online purchase using BAUDER's PayPal account. The cost of the source code was about $100. BAUDER said that SUBJECT claimed he did not have a PayPal account and required the open source code for work. BAUDER subsequently provided a copy of the PayPal receipt to SA HARALDSEN.

BAUDER said he assisted SUBJECT with some work regarding "images of the ocean." He said SUBJECT instructed him to place symbols on the images. BAUDER was unaware of why he was accomplishing this task, but surmised it had to do with "terrorist boats." SUBJECT never explained why this work was being performed or for whom.

Sometime in JAN 2006, BAUDER assisted the eTreppid employees with a search of the facility to determine if they could locate any media containing the company's source code. While conducting this search BAUDER, observed Patricia GRAY, holding two hard drives with red stickers on them. He said these hard drives were found in a warehouse filing cabinet used by SUBJECT. He said he looked in the cabinet drawer and saw additional hard drives in the drawer. He was uncertain how many hard drives were in the cabinet drawer. When he tried to assist GRAY, she explained that BAUDER he did not have the appropriate clearance level to take possession of the hard drives.

BAUDER further said that during the summer of 2003 SUBJECT made a peculiar request of BAUDER. SUBJECT invited BAUDER to his office. When BAUDER arrived, SUBJECT shut the office door and closed the blinds. SUBJECT instructed BAUDER to "hit the space bar on his (meaning SUBJECT's) keyboard" whenever BAUDER heard an audible tone on his phone. BAUDER explained that SUBJECT was demonstrating a "bazooka" test to some unidentified customers. SUBJECT would hold a simulated bazooka and walk into the field behind the company. While SUBJECT held the bazooka a camera was trained on SUBJECT. This camera was connected to a laptop computer in the company warehouse and the customers were observing the laptop display. As the camera was trained on the bazooka, SUBJECT would send BAUDER an audible tone to BAUDER's phone. When BAUDER heard the tone he hit the space bar. He was uncertain what "hitting the space bar did" but suspected it highlighted the bazooka on the laptop display. The demonstration lasted about 5-10 minutes. SUBJECT explained that this was for demonstration purposes only and not to worry about it. BAUDER knew better than to pursue this line of questioning because if you questioned SUBJECT you were "eventually fired." BUADER believed SUBJECT was using "trickery" during this demonstration.

| 5. CONDUCTED BY SA PAUL L. HARALDSEN and SA THOMAS A. SMITH | 6. SIGNATURE Thomas A Smith |
|---|---|

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY0099

Sept. 11 05

| AFOSI FORM 40, JUL 92 (EF) | PREVIOUS EDITION MAY BE USED | PAGE 1 OF | PAGES |
|---|---|---|---|

DEFS002276

## AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
### REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 25 JAN 2006 | eTreppid, LLC, Reno NV | |

4. REMARKS

On 25 JAN 2006, SA HARALDSEN reviewed the copy of the PayPal receipt provided BAUDER.

The review disclosed that the receipt was identified by the following data:

"Web Accept Payment Sent ID number 0XM90015NS3987849
Original transaction date 30 Nov 2004,
Payment to XIAO CAN YANG, for the amount of 99.00
Item Title: Micatoge XPlayer
Item Number: Source Code License
Time: 0719:07 PST
Shipping Address:
  JIM BAUDER
  ▇▇▇▇▇▇▇▇▇▇

  United States

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| SA PAUL L. HARALDSEN | |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY.

AFOSI FORM 40, JUL 92 (EF)     PREVIOUS EDITION MAY BE USED     PAGE 1 OF     PAGES

00100

Sept. 11 '06

DEFS002277

| AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS REPORT OF INVESTIGATIVE ACTIVITY | | |
|---|---|---|
| 1. DATE OF INVESTIGATIVE ACTIVITY<br>24 JAN 2006 | 2. PLACE<br>eTreppid, LLC, Reno, Nevada | 3. FILE NUMBER |

**4. REMARKS**

On 24 JAN 06, VENABLES was interviewed by SA HARALDSEN to determine if any recording devices were located on SUN's computer system. VEANABLES said he inspected the three computer systems used by SUN and each of the systems contained, USB ports, removable hard drives, CD burners and a floppy disk drive. VENABELS believed that if SUN wanted to copy and remove data from his computer system he could have done so without detection.

| 6. CONDUCTED BY<br>SA PAUL L. HARALDSEN | 6. SIGNATURE |
|---|---|

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY.

0101
Sept. 11' 05

AFOSI FORM 40, JUL 92 (EF)     PREVIOUS EDITION MAY BE USED     PAGE 1 OF     PAGES

DEFS002278

## AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
## REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY 25 JAN 2006 | 2. PLACE eTreppid, LLC, Reno NV | | 3. FILE NUMBER |
|---|---|---|---|

**4. REMARKS**

ON 25 JAN 2006, VENABLES was interviewed by SA HARALDSEN and SA SMITH to determine what classified data if any resided on SUN's computer system. VENABLES related the following:

He reviewed SUN's current computer hard drive to determine its contents. He discovered two ocean images identified as images 5 and 6 and thumb nails generated from the original images. He copied the images onto a DVD and provided the DVD to SA HARALDSEN. He did not discover any other images on the hard drive. These images were deleted from SUN's hard drive.

He also reviewed a hard drive labeled " ZEHANG-MATHLAB 04/27/05" which was found in the company's warehouse. This hard drive was discovered during the search conducted 10 - 13 JAN 06, for hard drives containing source code. This hard drive was previously assigned to SUN. VANABLES believed SUBJECT eventually took possession of the hard drive and placed it in the warehouse. The review determined the drive was a copy of another drive and it was created during the hours of 0800-1200 on 27 April 2005. The review disclosed a file containing over 13,000 bit map images of aerial photography of buildings, people and vehicles taken from an "ACFT". The images also reflected the time the photograph was taken as well as the coordinates.

Five examples of the photographs were printed by VENABLES and provided to SA HARALDSEN. Additionally, he printed the index of the bit map files.

| 5. CONDUCTED BY SA PAUL L. HARALDSEN and THOMAS A. SMITH | 6. SIGNATURE Thomas A Smith |
|---|---|

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY.00102

| AFOSI FORM 40, JUL 92 (EF) | PREVIOUS EDITION MAY BE USED | Sept. 11-06 PAGE 1 OF  PAGES |
|---|---|---|

DEFS002279

## AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
### REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 24 JAN 2006 | eTreppid, LLC, Reno NV | |

**4. REMARKS**

VENABLES provided SA HARALDSEN with SUN's removable hard drive. Additionally, VENABLES provided a DVD with the partial sea images and and images five and six from the second set of sea images identified previously by TREPP. The images were copied from SUN's hard drive.

VENABLES and SA HARALDSEN conducted a review of SUN's hard drive. The review disclosed a folder identified as "SOCOM". A review of this folder disclosed     contained bit maps.

A sampling of the bit maps was conducted by VENABLES and SA HARALDSEN. The sampling disclosed aerial still pictures of desert environment containing people, buildings, vehicles etc. The pictures also displayed the coordinates, dates and other from the camera taking the picture.

VENABLES at the request of SA HARALDSEN printed out a sampling of the pictures.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| SA PAUL L. HARALDSEN | |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY.

AFOSI FORM 40, JUL 92 *(EF)*          PREVIOUS EDITION MAY BE USED          PAGE 1 OF      PAGES

00103

Sept. 11, 06

## AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS
### REPORT OF INVESTIGATIVE ACTIVITY

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. FILE NUMBER |
|---|---|---|
| 25 JAN 2006 | eTreppid, LLC, Reno NV | |

4. REMARKS

On 25 JAN 2006, TREPP explained that since the company did not possess any classified information prior to Nov 2005, than all aerial photography images on company hard drives prior to this date must be unclassified. He was specifically referencing SUN's hard drive labeled "ZEHANG-MATHLAB 04/27/05" which was discovered and reviewed by VENABLES.

| 5. CONDUCTED BY | 6. SIGNATURE |
|---|---|
| SA PAUL L. HARALDSEN | |

THIS DOCUMENT CONTAINS NEITHER RECOMMENDATIONS NOR CONCLUSIONS OF AFOSI. IT IS THE PROPERTY OF THE AFOSI AND IS LOANED TO YOUR AGENCY; THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY.

00104
Sept. 11'06

AFOSI FORM 40, JUL 92 (EF)    PREVIOUS EDITION MAY BE USED    PAGE 1 OF    PAGES

DEFS002281

*Haraldsen's Draft Report*

Here is the latest information from Reno:

*The preliminary inquiry into the nine missing SECRET hard drives has revealed the following:*

- Company was on contract with SOCOM and had a DD Form 254 authorizing access to classified information at another location.

- A company employee transferred SECRET media from Nellis AFB to the company's office in Reno.

- Company was not approved for storage of classified information

- Company was in possession of SECRET media since Mar 2005

- Company was not adequately controlling or protecting SECRET media. CTO was storing SECRET hard drives in a steel filing cabinet in the company's warehouse.

- Company's FSO was not aware of the SECRET material until Nov 05 when he accidentally discovered it in CTO's possession

- CTO was using an unclassified computer system to process SECRET material

- CTO is suspected of providing SECRET material to foreign nationals. An ~~Original Classification Authority review is required to determine if~~ information on a foreign national's computer was classified. This foreign national no longer has access to the hard drive.

- CTO made unauthorized copies of SECRET hard drives. The copies CTO made are accounted for, but the original hard drives are missing.

Ancillary to the preliminary inquiry, it was determined that the CTO deleted source code (intellectual property belonging to the company) from the company servers. The CTO was one of two employees with the appropriate level of access to delete the source code. The second employee was on vacation in Europe when the source code was deleted Additionally; the CTO removed from the company a computer system containing the source code. The CTO admitted to a company employee that he removed the computer containing the source code and that he brought it to his residence. CEO claimed without the source code the company will be dissolved.

I have a meeting with the Reno FBI today to discuss the aforementioned issues.

00105
Sept. 11'06

DEFS002282

REPORT OF INVESTIGATION

REPORT BY: SA PAUL L. HARALDSEN       FILE NR:

PERIOD OF REPORT: 19 Jan- 13 Feb 2006       DATE OF REPORT: 14 Feb 2006

MATTERS INVESTIGATED: Alleged Theft of Intellectual Property from eTreppid Technologies, Limited Liability Company, 775 Trademark Drive, Reno, NV, 89521 – Violation of 18 U.S.C section 1832 (Economic Espionage)

SUBJECT: DENNIS LEE MONTGOMERY, Male, ███████████████████

IMPACT: The Theft of the intellectual property prohibited the U.S. Government from awarding eTreppid Technologies a contract to develop technologies to be used for prosecuting the Global War on Terrorism

STATUS: Pending

OCTAVIO BAEZ, JR Commander
AFOSI Region 7,

DISTRIBUTION:

00106
Sept. 11' 06

DEFS002283

Case 1:15-cv-20782-JEM   Document 203-15   Entered on FLSD Docket 12/14/2015   Page 70 of 140

Case 3:06-cv-00263-PMP-VPC   Document 70-7   Filed 09/11/2006   Page 29 of 40
Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-3   Filed 09/11/2006   Page 29 of 40

TABLE OF CONTENTS

00107
Sept. 11'06

DEFS002284

2-1. **CLASSIFIED PROGRAM PARAGRAPH**

00108
Sept. 11'06

DEFS002285

1-1.   (U) SUMMARY **OF INVESTIGATION**:  Chief Executive Officer of eTreppid
LLC, Reno, NV, claimed SUBJECT stole and deleted eTreppid's intellectual
property (Source Code) during the period of 21 Dec 2005 - 8 January 2006.
Interviews of company employees revealed:

SUBJECT was observed removing Source Code from eTreppid's servers
and individual workstations;
SUBJECT told an employee he took a workstation containing the backup
Source Code to his residence;
SUBJECT on numerous occasions told this same employee he was going
to return the workstation, but never did;
SUBJECT told the Facility Security Officer "he (referencing the CEO)
needs to give me big money if he wants it (a reference to the Source Code)";
Only two employees – SUBJECT and FSO, had the appropriate passwords
to delete the Source Code from the servers, and the FSO was in Europe on
vacation when the deletion occurred.

00109
Sept. 11' 06

DEFS002286

Case 3:06-cv-00263-PMP-VPC   Document 70-7   Filed 09/11/2006   Page 32 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-3   Filed 09/11/2006   Page 32 of 40

2-2. (U) **INVESTIGATION REQUEST**: On 19 Jan 2006, an investigation was initiated into the alleged theft and deletion of intellectual property (Source Code) by SUBJECT from eTreppid Technologies, LLC, Reno, NV.

3-1. (U) NARRATIVE

A.   Interview of:  WARREN TREPP, Chief Executive Officer, eTreppid, LLC
     Date/Place:  19-23 JAN 2006/Telephonic, Hilton Hotel and eTreppid LLC
     Interviewer: SA PAUL L. HARALDSEN
     Asst Interviewer: SA THOMAS A. SMITH
     Associated Exhibit Numbers: Attachment 1

TREPP claimed SUBJECT unlawfully deleted and stole the company's Intellectual Property, specifically its Source Code used for data compression, object tracking and anomaly detection. TREPP initially became aware of the missing Source Code on either 9 or 10 January 2006 when his employees complained about their inability to operate their computer systems. TREPP asked SLOAN VENABLES, eTreppid Facility Security Officer (FSO) about the problem and was told that company's Source Code was deleted from the source server (subsequently identified as SRCSERVER), a system known as the ISA server (subsequently identified as ISASERVER) and all of eTreppids's workstations. TREPP said VENABLES and SUBJECT were the only eTreppid employees to have exclusive access and the appropriate passwords to delete the Source Code from the SRCSERVER, ISASERVER and all of eTreppid's individual workstations. TREPP said the company also had a back up of the Source Code on a separate stand-alone workstation located in eTreppid's warehouse. However, this system is also missing. SUBJECT had exclusive access to this workstation. TREPP said without the Source Code the company would go out of business. He was unable to estimate the monetary value of the Source Code, but said eTreppid was losing $10,000 daily because of non-productivity.

TREPP believed SUBJECT removed and deleted the Source Code from the SRCSERVER/ISASERVER and all workstations for the following reasons:

1)   VENABLES informed TREPP that SUBJECT admitted taking the backup computer system home;

2)   VENABLES was on vacation during the period when the Source Code was deleted. VENABLES denied removing the Source Code from the SRCSERVER/ISASERVER and workstations.

3)   VENABLES informed TREPP that SUBJECT told him "He (TREPP) will have to pay big bucks to get what he wants;"

4)   An employee named JAMES BAUDER, graphics designer, eTreppid, told TREPP he carried sealed boxes out of the company for SUBJECT during this time period.

00110
Sept. 11'06

DEFS002287

In an effort to substantiate TREPPS suspicions about SUBJECT, TREPP instructed VENABLES to review the internal security monitoring cameras to determine if "it captured MONGOMERY (SUBJECT) removing the workstation. However, TREPP said someone deleted the last four months of video. TREPP said SUBJECT had access to the video recordings and TREPP suspected SUBJECT deleted these video recordings.

On 9 JAN 06, TREPP confronted SUBJECT and was told by SUBJECT that the Source Code could be located on the 753 removable hard drives located at the company. TREPP asked SUJBECT why he was "doing this," to which SUBJECT said, "I did not do a thing." TREPP also asked SUBJECT why he deleted the files. SUBJECT said, "I didn't!" TREPP then asked who did and SUBJECT replied, "GRAY." TREPP said "GRAY" was a reference to Ms PATTY GRAY, eTreppid Business Manager. SUBJECT stormed out of the company and was followed by TREPP into the company's parking lot. TREPP plead with SUBJECT to let him help him. SUBJECT said, "You are not going to screw me. Just try to bring me down!" and drove off. Conversations between TREPP and SUBJECT on the 10th of January were the same as those addressed on the 9th of January. TREPP was unable to provide any "rationale" reason why SUBJECT would have maliciously removed and deleted the Source Code

TREPP instructed his employees to conduct an analysis of each of the company's 753 hard drives in an effort to locate the Source Code. The two-day analysis failed to locate the Source Code.

TREPP was told by VENABLES that it would have taken about two weeks to delete the Source Code from the SRCSERVEER and ISASERVER. TREPP believed the Source Code was deleted from the servers during VENABLES' vacation. TREPP said VENABLES was on vacation between 22 Dec 05 - 3 Jan 06. TREPP also believed that the Source Code was deleted from the company's individual workstations during the weekend of 7/8 January 2006. TREPP based this on the fact that the company's alarm log reflected user # 13 (SUBJECT's user number) disabled the facility alarm at 09:06:17 on Saturday 7 January 2006 and activated the alarm 21:33:36. On Sunday, 8 January 2006, USER NUMBER 13 again deactivated the alarm at 08:34:18 and activated the alarm at 17:24:33. TREPP provided a copy of the alarm code printout (Attachement1) reflecting the aforementioned information for the period of 26 Dec – 12 Jan 2006.

TREPP was told by VENABLES that on either the 21st or 22nd of December 2005, VENABLES was told by SUBJECT to stay at home and enjoy the holidays. However, VENABLES came to work and found SUBJECT working on the SRCSERVER and ISASERVER. VENABLES asked SUBJECT what he was doing, and SUBJECT said, "Cleaning up some files."

DEFS002288

TREPP said on an annual basis SUBJECT was required to provide copies of the Source Code to TREPP and did so for seven years. A review of the backup copies, consisting of CDs, DVDs and hard drives, by TREPP revealed the data on these media devices was worthless and did not contain the data SUBJECT was required to provide.

TREPP provided the following biographical and historical information regarding SUBJECT:

On 28 September 1998 SUBJECT was hired by eTreppid to become the Chief Technology Officer. SUBJECT was paid $1,300,000 and made a 50% partner in eTreppid in exchange for the data compression Source Code that he developed prior to his employment with eTreppid. During SUBJECT's ownership - SUBJECT required some liquidity and sold a two percent of stock in the company for $1.5 million. This stock was sold to two of TREPP's associates for $750,000 each. With the sale of the stock and other capital call dilutions SUBJECT reduced his stake in the company to 30%. TREPP was aware that SUBJECT was having financial difficulties and since Jan 1999, TREPP loaned SUBJECT a total of about $1.5 million to assist him with his financial burden. On 7 or 8 Dec 2005, SUBJECT asked to borrow an additional $270,000. When asked what the additional money was for, SUBJECT told TREPP that it was "to pay down casino and other debts." TREPP said he discovered through informal sources that SUBJECT owed $300,000 to various casinos.

During the period of 1999-2005 SUBJECT earned the following annual salaries:

| | |
|---|---|
| 1999-2000 - $132,000 | 2001 - $176,000 |
| 2002 - $192,000 | 2003-2005 - $300,000 |

TREPP said that on 20 Jan 06, Mr. Douglas J. Frye, General Counsel for eTreppid filed a temporary restraining order in the Second District Judicial Court of Nevada, Reno, NV, Washoe County, requesting SUBJECT return the Source Code to eTreppid.

TREPP said he was told by his attorneys that during the hearing SUBJECT informed the judge "eTreppid had shared classified information with foreign nationals." These same attorneys also told TREPP that SUBJECT made the comment "I don't have any source files, I have the source files in my head."

TREPP was unaware of any instance where a foreign national employee had access to classified information.

(S) TREPP said he asked GRAY about the SUBJECT's allegation regarding foreign nationals having access to classified information. GRAY informed TREPP that she suspected SUBJECT might have asked foreign national employees to work on classified aspects of the data from the United State Special Operations Command Predator videos. TREPP said if that was the case, a foreign national might have had access to SECRET predator images. TREPP was unaware of any specifics and suggested speaking with GRAY. Additionally, TREPP said when GRAY and SLOAN conducted an

00112
Sept. 11' 06

DEFS002289

inventory of classified holdings; they were unable to locate nine SECRET hard drives of predator video images and two SECRET videotapes (copied from the nine hard drives) made by eTreppid. He again said that GRAY and SLOAN would have additional information.

(The allegation of foreign national's having access to classified information was independently addressed in AFOSI Report of Investigation _____ )

TREPP said that sometime during the week of 16-20 Jan 06, Neil Azzinaro, Las Vegas, NV, a mutual friend of both SUBJECT and TREPP, called TREPP and informed him that SUBJECT said that he was looking for a US citizen, not an institution or corporation to start a new company and would require $10 Million. TREPP suspected SUBJECT was attempting to market and ultimately sell the stolen Source Code or partner with a financier to establish a new company.

SUBJECT was not permitted on company property after 10 Jan 06 and on 18 Jan 06, SUBJECT's employment was officially terminated from eTreppid.

B.      (U) Interview of:  TREPP
Date/Place:  eTreppid/23 JAN 2006
Asst Interviewer: SA Smith
Associated Exhibit Numbers: Attachments 2-19

TREPP provided a compact disc with electronic copies of the following relevant documents:

1.  *CONTRIBUTION AGREEMENT – between INTREPID (subsequently renamed as eTreppid) and SUBJECT and Brenda K. Montgomery (SUBJECT's wife), dated 28 Sep 1998.* Attachment 2

Agreement reflects payment of $1.3 million and transfer of 50% membership interest of INTREPID to SUBJECT and the MONTGOMERY Family Trust in exchange for SUBJECT's contributed assets identified as software compression technology. Furthermore, this agreement identified contributed assets to mean "...and include, collectively, all the following assets, together with all of the Contributor's (SUBJECT's) rights, title and interest, therein, tangible and intangible, present or future, including, but not limited to, all development, distribution and exploitation rights, or to any proceeds derived there from."

TREPP said the contribution agreement is the legal document wherein SUBJECT relinquished his rights to all technology – current and future- derived from the software compression technology, which SUBJECT provided, to eTreppid in exchange for financial compensation and partnership in the company.

00113
Sept. 11'06

DEFS002290

2.  *AMENDED AND RESTATED OPERATING AGREEMENT OF ETREPPID
    TECHNLOGIES LLC, A NEVADA LIMITE LIABILITY COMPANY – DATED
    AND ADOPTED EFFECTIVE AS OF NOVEMBER 1 2002.* Attachment 3

    TREPP stated that according to paragraph 6.5 and 6.7 of this agreement,
signed by SUBJECT, SUBJECT agreed that "the services of Dennis
Montgomery.... so long as he is in serving as a Committee Member and/or Chief
Technology Officer pursuant to this agreement, shall be exclusive to the LLC, and
he shall devote substantially all of his full time and attention and efforts to the
Business and affairs of the LLC."

    Additionally, SUBJECT agreed in the Operating Agreement, that while he
was the CTO, he would not "compete with the LLC.... (1) By developing,
licensing or exploiting in any manner any software programs or other technology
which is competitive with the technology or the business of the LLC."

3.  *ETREPPID TECHNOLOGIES PATENT ASSIGNMENT APPLICATION
    DETAILS.* Attachments 4-13

    SUBJECT filed Ten Patent Assignment applications with the United
States Patent and Trademark Office during the period of Nov 2000 – Nov 2001.
The patents pertained to various technologies developed while SUBJECT was an
employee at eTreppid, each patent assigned the "full and exclusive rights, title and
interest of these technologies" to eTreppid.

- Assignment of U.S. Origin Patent Application, *Method and Apparatus for
  Encoding Information Using Multiple Passes and Decoding in a Single
  Pass,* filed 29 November 200, serial No. 09/727,096. Attachment 4
- Assignment of U.S. Origin Patent Application, *Method and Apparatus for
  Streaming Data Using Rotating Cryptographic Keys,* filed 29 Mar 2001,
  serial No. 09/823,278. Attachment 5
- Assignment of U.S. Origin Patent Application, *Optical Encoding of Audio
  Data,* filed 31 Oct 2001, serial No. 10/033,537.  Attachment 6
- Assignment of U.S. Origin Patent Application, *Method and Apparatus for
  Determining Patterns within Adjacent Blocks of Data,* filed 31 October
  2001, serial no. 09/999,776 Attachment 7
- Assignment of U.S. Origin Patent Application, *System and Method for
  Generating Alert Conditions in a Surveillance System,* filed 21 November
  2001, serial no. 09/991,490 Attachment 8
- Assignment of U.S. Origin Patent Application, *System and Method for
  Managing Memory in a Surveillance System,* filed 21 November 2001,
  serial No. 09/991,487. Attachment 9
- Assignment of U.S. Origin Patent Application, *Method and Apparatus for
  Detecting and Reacting to Occurrence of an Event,* filed 21 November
  2001, serial No. 09/990, 868. Attachment 10

<div style="text-align: right;">
00114<br>
Sept. 11'06
</div>

DEFS002291

- Assignment of U.S. Origin Patent Application, *Method and System for Size Adaptation and Storage Minimization, Source Noise Correction and Source Watermarking of Digital Data Frames,* filed 21 Nov 2001, serial No. 09/991,528. Attachment 11
- Assignment of U.S. Origin Patent Application, *Data Gathering in Games of Chance,* filed 21 November 2001, Serial No. 09/991,531. Attachment 12
- Assignment of U.S. Origin Patent Application, *Method and Apparatus for Storing Digital Video content Provided from a Plurality of Cameras,* filed 21 Nov 2001, serial no. 09/991,527. Attachment 13

TREPP said these ten patent assignments demonstrate and emphasize SUBJECT's knowledge and awareness that all technologies developed while an eTreppid employee became the intellectual property of the company, not SUBJECT.

4. *EMPLOYEE DECLARATIONS SUPPORTING A TEMPORARY RESTRAINING ORDER MOTION FOR A PRLEININARY INJUCTION AGAINST SUBJECT – filed in the Second Judicial District Court of the State of Nevada in and for the County of Washoe, 19 January 2006.* Attachments 14-17

- Four-page declaration and multiple page attachment by TREPP, date stamped 19 Jan 2006. Attachment 14
- Two-page declaration by BARJINDER BAL, eTreppid programmer, date stamped 19 Jan 2006. Attachment 15
- Three page declaration by VENKATA KALLURI, eTreppid programmer, date stamped 19 Jan 2006. Attachment 16
- Five-page declaration by VENABLES, date stamped 19 Jan 2006. Attachment 17

A review of these declarations is reflected in paragraph 3-1 D-G below.

5. In addition to the documents on the referenced CD, TREPP provided a copy of an eTreppid two page employee sick and annual leave printout (Attachment 18) for the period of 1-31 December 05. TREPP said this printout reflected VENABLES was on vacation during the period of 22 – 30 Dec 05, the time period in which TREPP suspected SUBJECT deleted the Source Code from the company servers.

6. TREPP also provided a copy of a statement from Mr. SNYDER (Attachment 19) dated 23 JAN 2006, concerning SUBJECT's statements made at the Temporary Restraining Order hearing on the 19 Jan 2006.

A review of the SNYDER statement is provided in paragraph 3-1 C. below.

00115
Sept. 11' 06

DEFS002292

Case 1:15-cv-20782-JEM   Document 203-15   Entered on FLSD Docket 12/14/2015   Page 79 of 140

Case 3:06-cv-00263-PMP-VPC   Document 70-7   Filed 09/11/2006   Page 38 of 40
Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-3   Filed 09/11/2006   Page 38 of 40

c. (U)  Review of SNYDER statement
      Date/Place:  eTreppid/23 JAN 2006
      Associated Exhibit Numbers:  Attachment 19

A review of a statement by SNYDER, concerning SUBJECT's statements made at the Temporary Restraining Order hearing was conducted and revealed:

SNYDER recalled that SUBJECT made the following remarks to the judge during the TRO hearing:

1.  SUBJECT said he did not have possession of eTreppid Source Code.

2.  SUBJECT said he owned all intellectual property interests in eTreppid's pattern recognition and anomaly detection software and had not transferred interest to eTreppid.

3.  SUBJECT stated that eTreppid was allowing foreign nationals without the appropriate security clearances to work on the subject software.

D. (U) Review of TREPP Declaration:
      Date/Place: eTreppid LLC/23 JAN 2006
      Associated Exhibit Numbers:  Attachment 14

A review of TREPP's declaration disclosed similar information as provided in the interview of TREPP in paragraph 3-I A above.  The declaration did reflect that TREPP said without the eTreppid Source Code, the eTreppid programmers couldn't perform their ordinary duties.  As a result, eTreppid is currently losing over $10,000 per day on wages and other administrative costs in order to retain key personnel even though they are idle.

E. (U) Review of BAL Declaration:
      Date/Place: eTreppid LLC/23 JAN 2006
      Associated Exhibit Number:  15

A review of the declaration disclosed that on 19 or 20 Dec 2005, BAL observed SUBJECT deleting certain (NFI) eTreppid Source Code files from BAL's workstation. SUBJECT told BAL he was doing so for security reasons. On 2 JAN 2006, BAL discovered that all of the eTreppid Source Code on his workstation's hard drive was deleted.

00116
Sept. 11' 06

DEFS002293

. (U)   Review of KALLURI Declaration:
  Date/Place:  eTreppid LLC/23 JAN 2006
  Associated Exhibit Number:  16

A review of the declaration disclosed KALLURI noticed that during Dec 2005, right before the Christmas holiday, eTreppid Source Code was deleted from his workstation hard drive.  KALLURI contacted SUBJECT and was told by SUBJECT he was backing up eTreppid Source Code.  Sometime during the workweek of 3-6 January 2006, KALLURI discovered that the eTreppid Source Code was also missing from the share directory (subsequently identified as the SRCSERVER) as well.

G. (U)   Review of VENABLES Declaration
  Date/Place:  eTreppid LLC/23 JAN 2006
  Associated Exhibit Numbers:  Attachment 17

A review of VENABLES' declaration disclosed that on 21 Dec 05, VENABLES discovered that a workstation containing a Redundant Array of Independent Drives (RAID) storage box used to backup eTreppid Source Code was missing from the company warehouse.  SUBJECT told VENABLES that he (SUBJECT) took the workstation and RAID box home.  Upon return from his vacation on 3 Jan 06, VENABLES discovered that the eTreppid Source Code was deleted from the company ISASERVER and SRCSERVER.  When confronted by VENABLES, SUBJECT said he was "cleaning stuff up" and this included deleting files that "weren't needed" from the SRCSERVER.  On the 9 JAN, VENABLES and the other employees discovered the eTreppid Source Code was missing from the eTreppid workstations. VENABLES and SUBJECT were the only two people with the administrator password necessary to accomplish the deletion of the Source Code from the SRCSERVER and ISASERVER. On 10 Jan 06, SUBJECT told VENABLES "he needs to give me big money if he wants it."  VENABLES said this comment was made in the context of TREPP's search for the Source Code

H. (U)   Interview of: VENABLES
  Date/Place:  eTreppid/23 Jan 2006
  Asst Interviewer:  SA Smith
  Associated Exhibit Number: Attachment 20

In addition to reiterating the information from his declaration, VEANABLES related the following information:

He has known SUBJECT since December 1999 and had both a professional and personal relationship with him. He believed SUBJECT was "nuts and a crazy compulsive liar." SUBJECT was unwilling to share his work with others and kept employees in the dark about company projects.

00117
Sept. 11' 06

SUBJECT was verbally abusive to subordinates and created an atmosphere of fear. SUBJECT created fictitious stories about TREPP and claimed that he (SUBJECT) was the actual majority owner of the company. VENABLES only learned that TREPP was actually the majority owner of eTreppid after SUBJECT was fired. SUBJECT would threaten subordinates and instruct them avoid engaging with TREPP. Consequently, problems or issues within the company were not elevated to TREPP.

VENABLES questioned SUBJECT's technical capabilities. His suspicion was reinforced when he discovered SUBJECT's workstation did not have the necessary applications installed to develop Source Code. Specifically SUBJECT's computer did not a compiler (application necessary to convert Source Code from human readable code to machine readable code). VENABLES found this peculiar since this was purportedly SUBJECT's primary responsibility as the Chief Technical Officer. Additionally, VENABLES designed the dual Zeon processors used by SUBJECT to operate as a cluster (multiple computers working in harmony as one powerful super computer). Unexplainably, SUBJECT changed the cluster's operating system to Windows XP, which then reconfigured the computers to operate as independent systems. VENABLES said SUBJECT's actions were irrational and divergent since it caused the cluster network to operate inefficiently.

A workstation containing a backup copy of eTreppid's Source Code was located in the company's warehouse. However, on 21 Dec 05, VENABLES noticed the workstation and RAID box controller housing eight drives was missing. The monitor and keyboard were still present in their normal location. VENABLES asked SUBJECT if he knew the whereabouts of the workstation and raid box. SUBJECT said without any further explanation "I took the workstation home." On 3 Jan 06, when VENABLES returned from vacation he discovered that the SRCSERVER and ISASERVER had been accessed. Each of the server's monitors displayed a "command prompt window" indicating an executable command had taken place. When VENABLES questioned SUBJECT about this, SUBJECT said he was "cleaning up old stuff." During the week of 3-6 JAN 06, VENABLES questioned SUBJECT numerous times about the workstation and raid box controller. Each time SUBJECT stated "I am bringing back the workstation." However SUBJECT never did.

On 10 JAN 06, when VENABLES arrived at work he discovered SUBJECT and TREPP in the warehouse arguing. SUBJECT stormed out of the building. TREPP instructed VENABLES to call SUBJECT and encourage him to return. VENABLES contacted SUBJECT and SUBJECT said, "He fucked me out of millions and is not going to get away with it." SUBJECT told VENABLES "I will think about returning.

DEFS002295

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription   02/23/2006

      Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, provided the attached ADT alarm access log eTreppid Technology, LLC, from November 1, 2005, through January 15, 2006.

Investigation on   02/14/2006   at   Reno, Nevada

ile # 295A-LV-39368                                    Date dictated   02/23/2006

by   SA Michael A. West:may

00039

Sept   11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002296

 **eTreppid Technologies, LLC**

755 Trademark Drive
Reno, NV 89521

www.eTreppid.com

Tel: (775) 337-6771
Fax: (775) 337-1877

## Facsimile Transmittal

Date: February 14, 2006
Time: 5:30 PM

To: Mike West          Fax Number: 775-823-2635

From: Sloan Venables          Pages (Including Cover): 5

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Re: ADT Logs Nov 1, 2005 to Jan 15, 2006

00040
Sept. 11 '06

DEFS002297

2/14/2008  5:04 pm

**Event History Report**

Page 1 of 4

CS# H008252770
Monitoring System AULOSA

Dates 11/01/2005 to 01/15/2006
Event Class All

Employee# All
Reporting Group All

| Date | Zone | Event | Description / Comment | Additional Info |
|---|---|---|---|---|
| CS# H008252770 | | | Site Name ETREPPID TECHNOLOGIES LLC  Address 755 TRADEMARK DR  RENO, NV 89521- Alt# | |
| 11/1/2005 8:09:02 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/1/2005 10:39:54 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/2/2005 7:21:43 am | 1O18 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 11/3/2005 1:30:44 am | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/3/2005 7:33:37 am | 1O16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 11/3/2005 8:16:40 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/4/2005 8:11:47 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/4/2005 10:45:29 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/5/2005 9:23:18 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/5/2005 4:30:48 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/6/2005 10:38:09 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/6/2005 5:32:27 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/7/2005 8:22:26 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/7/2005 10:13:04 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/8/2005 6:04:57 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/8/2005 8:00:40 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/9/2005 7:14:34 am | 1O16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 11/9/2005 8:18:44 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/10/2005 7:50:40 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/10/2005 6:36:26 pm | 1O16 | 97 | CL-CLOSE (LOG-LSL) | USER #16 |
| 11/10/2005 10:04:42 pm | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/10/2005 10:46:12 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/11/2005 7:13:40 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/11/2005 6:28:29 pm | 1O13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/12/2005 7:51:02 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/12/2005 6:30:20 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/13/2005 8:41:25 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/13/2005 3:50:59 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/14/2005 8:50:45 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/14/2005 9:52:38 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/15/2005 7:24:07 am | 1O16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 11/16/2005 1:16:29 am | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/16/2005 7:16:56 am | 1O16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 11/17/2005 1:01:53 am | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/17/2005 7:21:29 am | 1O16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 11/17/2005 8:12:04 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/17/2005 9:32:11 pm | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/17/2005 11:00:46 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/18/2005 8:02:32 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/18/2005 12:03:42 am | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/19/2005 8:29:38 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/19/2005 8:38:10 am | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/20/2005 3:01:18 pm | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/20/2005 6:07:46 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/20/2005 6:09:33 pm | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/20/2005 6:09:33 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/20/2005 7:51:03 pm | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/20/2005 7:51:09 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/21/2005 7:43:02 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/21/2005 7:30:31 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/22/2005 6:41:07 am | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/22/2005 8:18:13 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/22/2005 9:11:45 pm | 1O13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |

CS# H008252770

Page 1 of 4

00041
Sept. 11'06

DEFS002298

Case 3:06-cv-00263-PMP-VPC   Document 70-6   Filed 09/11/2006   Page 4 of 40

Feb 14 06 05:13p PMP-VPC *SEALED* Document 70-2 Filed 09/11/2006 Page 4 of 40
Case 3:06-cv-00263-PMP-VPC   Document 70-2   Filed 09/11/2006   Page 4 of 40

2/14/2006 5:04 pm                              **Event History Report**                                Page 2 of 4

CS# H008252770                          Dates: 11/01/2005 to 01/16/2006        Employee# All
Monitoring System AULOSA                Event Class All                        Reporting Group All

| Date | Zone | Event | Description / Comment | Additional Info |
|---|---|---|---|---|
| CS# H008252770 | | Site Name ETREPHD TECHNOLOGIES LLC   Address 755 TRADEMARK DR RENO, NV 89521- Alt# | | |
| 11/22/2005 10:40:28 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/23/2005 7:18:31 am | 1G19 | 98 | OP-OPEN (LOG-LSL) | USER #16 |
| 11/23/2005 8:41:50 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/23/2005 7:40:08 pm | 1C12 | 96 | OP-OPEN (LOG-LSL) | USER #12 |
| 11/23/2005 7:48:17 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/24/2005 7:51:55 am | 1C13 | 98 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/24/2005 5:11:24 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/25/2005 7:55:49 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/25/2005 6:10:36 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/26/2005 8:28:31 am | 1C13 | 98 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/26/2005 4:44:05 pm | 1C11 | 97 | CL-CLOSE (LOG-LSL) | USER #11 |
| 11/27/2005 7:46:34 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/27/2005 2:51:24 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/27/2005 3:36:37 pm | 1C11 | 96 | OP-OPEN (LOG-LSL) | USER #11 |
| 11/27/2005 4:49:02 pm | 1C11 | 97 | CL-CLOSE (LOG-LSL) | USER #11 |
| 11/28/2005 8:04:13 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/28/2005 10:00:35 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/29/2005 6:29:17 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 11/29/2005 7:43:23 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 11/29/2005 9:10:09 pm | 1C12 | 96 | OP-OPEN (LOG-LSL) | USER #12 |
| 11/29/2005 10:58:44 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 11/30/2005 7:27:37 am | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 11/30/2005 11:09:26 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/1/2005 8:09:02 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/2/2005 2:28:18 am | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/2/2005 7:29:15 am | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 12/2/2005 8:58:42 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/3/2005 7:28:02 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/3/2005 1:24:45 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/4/2005 10:06:58 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/5/2005 9:34:31 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/6/2005 7:26:38 am | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 12/6/2005 7:13:32 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/7/2005 7:30:31 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/7/2005 10:04:08 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/8/2005 7:44:01 am | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 12/8/2005 6:11:27 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/9/2005 6:45:29 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/10/2005 2:55:00 am | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/10/2005 10:16:11 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/10/2005 9:51:48 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/11/2005 8:08:27 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/11/2005 9:21:46 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/12/2005 8:09:07 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/12/2005 10:12:51 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/12/2005 10:44:11 pm | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 12/12/2005 10:46:58 pm | 1C16 | 97 | CL-CLOSE (LOG-LSL) | USER #16 |
| 12/13/2005 7:20:24 am | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 12/13/2005 6:46:45 pm | 1C16 | 97 | CL-CLOSE (LOG-LSL) | USER #16 |
| 12/13/2005 9:26:10 pm | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/13/2005 9:25:10 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/14/2005 7:21:35 am | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 12/14/2005 11:41:35 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |

CS# H008252770                                                                         Page 2 of 4

Case 3:06-cv-00263-PMP-VPC      Document 70-6      Filed 09/11/2006      Page 5 of 40

Feb 14 08 05:18p      *Employees*      Document 70-2      35186 09/11/2006      Page 5 of 40
Case 3:06-cv-00263-PMP-VPC "SEALED"

2/14/2006 5:04 pm                    Event History Report                    Page 3 of 4

CS# H008252770                          Dates 11/01/2005 to 01/15/2006      Employees All
Monitoring System AULOSA                 Event Class All                     Reporting Group A3

| Date | Zone | Event | Description / Comment | Additional Info |
|---|---|---|---|---|
| CS# H008252770 | | | Site Name ETREPPID TECHNOLOGIES LLC   Address 755 TRADEMARK DR  RENO, NV 89521- All# | |
| 12/15/2005 7:37:01 am | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 12/15/2005 6:20:46 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/16/2005 7:42:41 am | 1C16 | 96 | OP-OPEN (LOG-LSL) | USER #16 |
| 12/16/2005 4:31:19 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/17/2005 8:57:49 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/17/2005 4:36:15 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/18/2005 8:08:41 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/18/2005 9:59:33 am | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/18/2005 12:28:31 pm | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/18/2005 1:25:26 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/18/2005 6:09:40 pm | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/18/2005 6:09:46 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/19/2005 8:04:15 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/19/2005 8:21:42 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/20/2005 8:24:37 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/20/2005 7:27:58 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/21/2005 7:50:21 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/21/2005 5:23:51 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/21/2005 6:23:51 pm | 1C12 | 96 | OP-OPEN (LOG-LSL) | USER #12 |
| 12/21/2005 11:11:24 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 12/22/2005 7:42:05 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/22/2005 7:03:12 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/23/2005 8:09:09 am | 1C11 | 96 | OP-OPEN (LOG-LSL) | USER #11 |
| 12/23/2005 2:11:54 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/24/2005 8:00:30 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/24/2005 12:50:31 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/25/2005 7:12:42 pm | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/25/2005 1:33:12 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/26/2005 7:53:33 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/26/2005 3:56:59 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/27/2005 8:09:41 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/27/2005 6:16:31 pm | 1C16 | 97 | CL-CLOSE (LOG-LSL) | USER #16 |
| 12/27/2005 6:37:28 pm | | 4113 | DA-Cust Called ADT | SYSTEM ID |
| 12/27/2005 6:37:28 pm | | | Steven Montgomery called adt ggp to check on alarm e... | |
| 12/28/2005 7:51:54 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/28/2005 7:30:31 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/28/2005 7:30:35 pm | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/28/2005 7:31:50 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/29/2005 8:06:41 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/29/2005 7:40:22 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/30/2005 8:18:19 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/30/2005 9:06:53 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 12/31/2005 10:12:38 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 12/31/2005 6:18:09 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 1/1/2006 8:06:31 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/1/2006 7:35:55 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 1/2/2006 8:34:30 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/2/2006 8:07:52 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 1/3/2006 8:02:47 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/3/2006 7:35:08 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 1/4/2006 8:05:11 am | 1C13 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/4/2006 7:43:11 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |

CS# H008252770                                                      Page 3 of 4

DEFS002300

2/14/2006 5:04 pm | Event History Report | Page 4 of 4

CS# H008252770
Monitoring System AULOSA

Dates 11/01/2006 to 01/16/2006     Employee# All
Event Class All     Reporting Group All

| Date | Zone | Event | Description / Comment | Additional Info |
|------|------|-------|----------------------|-----------------|
| CS# H008252770 | | Site Name ETREPPID TECHNOLOGIES LLC   Address 755 TRADEMARK DR  RENO, NV 89521-  Alt# | | |
| 1/5/2008 7:59:53 am | 1013 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/5/2006 10:04:49 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 1/6/2006 8:11:47 am | 1013 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/8/2006 11:06:42 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 1/7/2006 9:06:17 am | 1013 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/7/2006 9:33:36 pm | 1C13 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 1/8/2006 8:34:18 am | 1013 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/8/2006 5:24:53 pm | 1013 | 97 | CL-CLOSE (LOG-LSL) | USER #13 |
| 1/9/2006 7:48:36 am | 1013 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/9/2006 8:07:47 pm | 1C12 | 97 | CL-CLOSE (LOG-LSL) | USER #12 |
| 1/10/2006 8:18:05 am | 1013 | 96 | OP-OPEN (LOG-LSL) | USER #13 |
| 1/10/2006 11:18:06 am | | 4113 | OA-Cust Called ADT | |
| 1/10/2006 11:18:06 am | | | ALTON BORA CALLING FOR SERVICE TODAY MADE WORK ORDER AND TRANSFERED TO FSD | |
| 1/10/2006 3:27:13 pm | | | TEST-ALL | |
| 1/10/2006 3:27:13 pm | | | 011006 1627 011006 1727 | |
| 1/10/2006 3:27:13 pm | | 4210 | OA-Place on Test | CAT: 2 |
| 1/10/2006 4:15:44 pm | | | LAST SET:011006 162713 | |
| 1/10/2006 4:15:44 pm | | | TEST-ALL | |
| 1/10/2006 4:18:46 pm | | 4211 | OA-Clear from Test | CAT: 2 |
| 1/10/2006 4:23:23 pm | 1C | 97 | CL-CLOSE (LOG-LSL) | ID #123 |
| 1/10/2006 4:23:29 pm | 1O2 | 96 | OP-OPEN (LOG-LSL) | MASTER CODE |
| 1/10/2006 8:32:21 pm | 1C4 | 97 | CL-CLOSE (LOG-LSL) | USER #4 |
| 1/11/2006 8:55:00 am | 1O8 | 96 | OP-OPEN (LOG-LSL) | USER #6 |
| 1/11/2006 7:45:47 pm | 1C4 | 97 | CL-CLOSE (LOG-LSL) | USER #4 |
| 1/12/2006 8:02:19 am | 1O6 | 96 | OP-OPEN (LOG-LSL) | USER #6 |
| 1/12/2006 10:33:26 pm | 1C4 | 97 | CL-CLOSE (LOG-LSL) | USER #4 |
| 1/13/2006 8:04:24 am | 1O6 | 96 | OP-OPEN (LOG-LSL) | USER #6 |
| 1/13/2006 7:38:59 pm | 1C4 | 97 | CL-CLOSE (LOG-LSL) | USER #4 |
| 1/13/2006 8:15:50 pm | 1O4 | 96 | OP-OPEN (LOG-LSL) | USER #4 |
| 1/13/2006 9:37:02 pm | 1C4 | 97 | CL-CLOSE (LOG-LSL) | USER #4 |
| 1/13/2006 9:37:02 pm | 1O4 | 96 | OP-OPEN (LOG-LSL) | USER #4 |
| 1/13/2006 9:37:03 pm | 1C4 | 97 | CL-CLOSE (LOG-LSL) | USER #4 |
| 1/14/2006 11:15:21 am | 1O3 | 96 | OP-OPEN (LOG-LSL) | USER #3 |
| 1/14/2006 3:32:44 pm | 1C3 | 97 | CL-CLOSE (LOG-LSL) | USER #3 |
| 1/15/2006 2:28:29 pm | 1O3 | 96 | OP-OPEN (LOG-LSL) | USER #3 |
| 1/15/2006 2:35:26 pm | 1C3 | 97 | CL-CLOSE (LOG-LSL) | USER #3 |

CS# H008252770

Page 4 of 4

00044
Sept. 11'06

DEFS002301

Case 3:06-cv-00263-PMP-VPC     Document 70-6     Filed 09/11/2006     Page 7 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-2   Filed 09/11/2006   Page 7 of 40

FD-302 (Rev 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription   02/23/2006

       Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, provided the attached document relating to text messages received on his cellular phone from December 25, 2005, and January 17, 2006.

Investigation on   02/14/2006   at   Reno, Nevada

File #   295A-LV-39368                         Date dictated   02/23/2006

by   SA Michael A. West:maw

00045

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002302

| m | Message | Date and Time ▼ |
|---|---|---|
| Dennis | No..Was on way homd from from meetng | 1/17/2006 8:17 PM |
| Dennis | Ok...Good luck... | 1/17/2006 8:12 PM |
| Dennis | U stil alone there..B carful..He wil blame u nxt.. | 1/17/2006 7:34 PM |
| Dennis | Brenda is havn surgery on 26th..We wil leave aftr that..1st week feb | 1/17/2006 5:46 PM |
| Dennis | This is gong 2 get ugly..U btr transfur u phone 2 u.. | 1/17/2006 4:46 PM |
| Dennis | Good luck..He has threatnd me 4 last time..Whn u contact gov agency notify me..Thnx | 1/17/2006 1:45 PM |
| Dennis | Did u get bonus? | 1/17/2006 1:06 PM |
| Dennis | Ok..Nite | 1/16/2006 7:04 PM |
| Dennis | Jst send me txt whn u contact gov..Thnx | 1/16/2006 6:52 PM |
| Dennis | I have movd on....He wil nevr get what he wants..Jale amd patty fucked him! | 1/16/2006 4:26 PM |
| Dennis | Wheo i told warn amd joel what i was going 2 say..Joel cvrd his ears! | 1/16/2006 4:18 PM |
| Dennis | Patty and jale wil drive hiw down! | 1/16/2006 4:04 PM |
| Dennis | I cant belve he would alliw he wovld allow me 2 say what i know..He is so errogant! | 1/16/2006 4:02 PM |
| Dennis | I can hear the justce dept laughin! | 1/16/2006 4:00 PM |
| Dennis | He was accused of robbn 1 milon people life savngs | 1/16/2006 3:59 PM |
| Dennis | I have quit a bit aftr 8 years! I would like 2 hear poor warren tel the us gnv he has been defraudf! | 1/16/2006 3:56 PM |
| Dennis | I wil sure have sum info 4 them! | 1/16/2006 3:53 PM |
| Dennis | Do what u must.. | 1/16/2006 3:52 PM |
| Dennis | He cant do what he did 2 me..Minorty shareholdr llc. | 1/16/2006 3:51 PM |
| Dennis | Disable brenda email acct..My email..Etreppid@hotmail.Com | 1/16/2006 3:49 PM |
| Dennis | Wel mayb he shld havd thougt b 4 he fucked me! | 1/16/2006 3:47 PM |
| Dennis | Disgwarh or patty can do | 1/15/2006 3:44 PM |
| nnls | Survilance at pepprml..Lovd his disguse! | 1/16/2006 3:15 PM |
| nls | No movn as soon as house goes.. | 1/16/2006 3:13 PM |
| Dennis | Askd 4 video tape a classic! | 1/16/2006 3:12 PM |
| Dennis | Hope al is wel with u..Movn 2 bay area..B safe | 1/16/2006 3:06 PM |
| Dennis | N his usual atre..Tee shirt amd torn sweat pants | 1/16/2006 3:05 PM |
| Dennis | Went 2 unr game sat nite..Saw joel at el dorado.Drunk! Like a main stret bum! | 1/16/2006 3:04 PM |
| Dennis | A 80 yr old guard threw him out! | 1/16/2006 3:01 PM |
| Dennis | He really thnk he special forces! | 1/16/2006 3:00 PM |
| Dennis | He was n a stupd disguse..Hidn behnd a plant! | 1/16/2006 2:59 PM |
| Dennis | Caught him at peppmil..Not 2 devr! | 1/16/2006 2:57 PM |
| Dennis | Dishwarhero has been follwn me | 1/16/2006 2:56 PM |
| Jesse | No was eating lunch looked like he was drunk hair was mess | 1/15/2006 2:15 PM |
| Jesse | Looks like been gambling all night | 1/15/2006 12:19 PM |
| Jesse | At peppermill dennis here looks bad | 1/15/2006 12:13 PM |
| Dennis | B safe | 1/13/2006 6:35 PM |
| Dennis | Did u get bonus | 1/13/2006 6:33 PM |
| Dennis | I hope all is wel..Miss u friendship! | 1/13/2006 6:31 PM |
| Dennis | U r dealing withanti christ! | 1/12/2006 4:01 PM |
| Dennis | Etrpid has milons and he is gong 2 cut off money and medical! That is no friend! | 1/11/2006 7:47 PM |
| Dennis | That what friends r 4! | 1/11/2006 7:44 PM |
| Dennis | Sorry 4 this..I am always u friend. | 1/11/2006 7:15 PM |
| Dennis | Al he does is threats | 1/11/2006 4:01 PM |
| Dennis | I am at atty wil cal whm done | 1/11/2006 12:35 PM |
| Dennis | Tomrw whn u come n | 1/10/2006 9:06 PM |
| 758134776 | Hogy van a jo orvos? | 12/25/2005 12:18 PM |
| 758134776 | Vidam karasony.. | 12/25/2005 12:16 PM |

DEFS002303

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/23/2006

     Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, provided the attached log generated by XXCopy for files copied from the Source Code Server folder F:\eTDevelopment\[Server-Backups]\ on December 21, 2005, at 15:08:45 hours.

Investigation on    02/14/2006    at    Reno, Nevada

File #  295A-LV-39368                                    Date dictated    02/23/2006

by    SA Michael A. West:maw

00047

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002304

xxcopy-errors3.txt

```
===================================================================
XXCOPY Ver 2.92.6   2005-12-21 15:08:45   Windows Ver 5.2.3790
 Command Line  = xxcopy F:\eTDevelopment\[Server-Backups]\*.* Y:\ /e /c /h /r /k /y
/pb /oNC:\xxcopy-errors.txt
-------------------------------------------------------------------
Switch Parameters
 /AO /BO /C /CA /CBO /CCY /CK /CR3 /DO /DLO /E /ECO /EDO /ERO /FO /FMO /FFO
 /FL /FTO /FW /H /IO /IN*.* /KS /LO /NO /NPO /NXO /NIO /NW /NCO
 /ONC:\xxcopy-errors.txt /oD1 /oEO /oF1 /oIO /oPO /oSO /oXO /PO /PB1M /PBH
 /PCO /PDO /PN /PoO /PZO /QO /QFO /QBO /QSO /R /S /SPO /SGO /SXO SZ:- /TO
 /TROO /TSO /TDO /TTAO /TCAO /TCCO /TCW /TMO /UO /VO /WO /WD /Y /ZO /ZEO /ZSO
 /ZXO
-------------------------------------------------------------------
Source base directory = "F:\eTDevelopment\[Server-Backups]\"
Destination directory = "Y:\"
File name template    = "*.*"
Directories processed = 4
Total data in bytes   = 518,274,175,933
Elapsed time in sec.  = 18,644
Action speed (MB/min) = 1668
Files copied          = 23
Directories created   = 3
Log File Created      = C:\xxcopy-errors.txt
Exit code             = 0 (No error, Successful operation)
```

00048
Sept. 11' 06

DEFS002305

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription     03/13/2006

      Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, provided the attached copy of Dennis Lee Montgomery's Office of Personnel Management, Security Clearance Application, Standard Form 86, maintained on file by eTreppid Technologies, LLC.

Investigation on     02/14/2006     at     Reno, Nevada

File #     295A-LV-39368                                        Date dictated     03/13/2006

by     SA Michael A. West:maw

00049

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency

DEFS002306

Office of Personnel Management
SECURITY CLEARANCE APPLICATION
Date: 2006/01/23
Standard Form 86, Sep. 95

SSN:
O   3. No. 3206-0007
—   Time: 15:12:19

TGOMERY
NIS, LEE                                                                          Page: 1

Personal Information
Name MONTGOMERY
          DENNIS, LEE
                                                  Sex Male

Place Of Birth MENA, AR
County
          UNITED STATES

Height 5-_7     Weight 155     Hair Color BROWN     Eye Color BROWN

2.   Other Names Used
NO Have you ever used or been known by another name?

3.   Citizenship
Current Citizenship U.S. Citizen
Mother's Maiden Name GIBSON
                              BETTY, JEAN
Citizenship Type Born in the U.S.
NO Are you now or were you a dual citizen of the U.S. and another country?

4.   Where You Have Lived
     FROM        TO        ADDRESS
1.   1999/11/01  PRES

     Person Who Knows You
     TREPP
     WARREN, UNKNOWN

NO Is this residence address hard to find?

2.   1986/03/01   1999/11/01

5.   Where You Went To School
NO Have you attended school beyond Junior High School within the last 10 years?
YES Have you attended school beyond high school? (If all education occurred
     more than 10 years ago, list most recent education beyond high school
     regardless of date.)
     FROM        TO        TYPE/ADDRESS
1.   1971/09/03  1973/06/01 College/University/Military College
     Degree/Diploma/Other  GROSSMONT COLLEGE
     AS BIOMEDICAL TECH     8800 GROSSMONT COLLEGE DR
     Award Date 1973/06/01  EL CAJON, CA 92020

6.   Your Employment Activities
     FROM        TO        TYPE OF EMPLOYMENT
1.   1998/11/01  PRES      Self-employment
          Company Name ETREPPID TECHNOLOGIES
          Company Address 755 TRADEMARK DR
                              RENO, NV 89521
Verifying Individual TREPP
                     WARREN, UNKNOWN
                     5625 FORET CIRCLE DR
                     RENO, NV 89521

00050
Sept. 11'06

DEFS002307

Case 3:06-cv-00263-PMP-VPC *SEALED*                              Page: 2

6.  Your Employment Acti̲ ies (Continued)

                                            10/2005

                Phone

.    1992/01/01    1598/11/01 Self-employment
        Company Name PACIFIC CONSULTING
        Company Address 818 CHENEY CT
                  LODI, CA 95242
Verifying Individual MONTGOMERY
             BRENDA, KATHLEEN

NO Were you in the Federal Civil Service prior to the last 10 years?

    (Do not list any Federal Civil Service previously entered in this module.)

7.  People Who Know You Well

| FROM | TO | REFERENCE NAME/ADDRESS |
|---|---|---|
| 1. 1991/01/01 | PRES | CLARK<br>GREG, UNKNOWN |
| | Home Address | |
| | Day Phone | |
| 2. 1991/03/01 | PRES | SCHULTZ<br>RICK, UNKNOWN |
| | Home Address | |
| | Day Phone | |
| 3. 1991/01/01 | PRES | ROSTER<br>JIM, UNKNOWN |
| | Home Address | |
| | Day Phone | |

8.  Your Spouse
What is your current marital status? Married

| STATUS/DATES | NAMES/LOCATION |
|---|---|
| 1. Married | MONTGOMERY<br>BRENDA, KATHLEEN<br>POB LA MESA, CA |
| Marriage 1975/07/05 | EL CAJON, CA |
| | Maiden TATE<br>BRENDA, KATHLEEN |

NO Is your current spouse's address different from yours?
NO Has your current spouse, to your knowledge, ever used another name (other than maiden name)?
Country(ies) of Citizenship UNITED STATES

9.  Your Relatives and Associates

| RELATIONSHIP | NAME/PLACE OF BIRTH |
|---|---|
| 1. Mother | MONTGOMERY<br>BETTY, JEAN<br>POB UNITED STATES |

NO   the family/associate you listed deceased?
        Current Address

DEFS002308

DENNIS  LEE0263-PMP-VPC *SEALED*   Document 70-2   SFiled 09/11/2006   Page 14 of 40

Case 3:06-cv                                                                    Page: 1

9.  Your Relatives and As    iates (Continued)

Country(ies) of Citizenship UNITED STATES

    Father

                        MONTGOMERY
                        DAVID, THEODORE
                        POB UNITED STATES
    NO Is the family/associate you listed deceased?
                    Current Address

    Country(ies) of Citizenship UNITED STATES

    3.  Brother

                        MONTGOMERY
                        DAVID, THOMAS
                        POB UNITED STATES
    NO Is the family/associate you listed deceased?
                    Current Address

    Country(ies) of Citizenship UNITED STATES

    4.  Sister

                        MONTGOMERY
                        SANDY, JEAN
                        POB UNITED STATES
    NO Is the family/associate you listed deceased?
                    Current Address

    Country(ies) of Citizenship UNITED STATES

        Sister

                        MONTGOMERY
                        SHARON, ANN
                        POB UNITED STATES
    NO Is the family/associate you listed deceased?
                    Current Address

    Country(ies) of Citizenship UNITED STATES

    6.  Sister

                        MONTGOMERY
                        DEBBIE, JEAN
                        POB UNITED STATES
    YES Is the family/associate you listed deceased?
    Country(ies) of Citizenship UNITED STATES

    7.  Child (adopted also)

                        MONTGOMERY
                        BRIAN, THOMAS
                        POB UNITED STATES
    NO Is the family/associate you listed deceased?
                    Current Address

    Country(ies) of Citizenship UNITED STATES

    8.  Child (adopted also)

                        MONTGOMERY
                        STEVEN, LEEE
                        POB UNITED STATES
        i the family/associate you listed deceased?

                                        00052
                                        Sept. 11'06

DEFS002309

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-2   Filed 09/11/2006   Page 15 of 40

MONTGOMERY
BESTUS CVTEN                                                    Page: 4

9.   Your Relatives and Associates (Continued)

          Current Address ████████████████

   Country(ies) of Citizenship UNITED STATES
9.   Child (adopted also)
                    MONTGOMERY
                    KATHLEEN, ANN
          ████████████████  POB UNITED STATES
   NO  Is the family/associate you listed deceased? ████████
          Current Address ████████████████

   Country(ies) of Citizenship UNITED STATES

10.  Citizenship of Your Relatives and Associates
     RELATIONSHIP              NAME

11.  Your Military History
   NO  Have you ever served in the military? (If yes, provide in chronological
       order your military history: begin with the most recent period and include
       Reserves, National Guard, Merchant Marines, and Foreign Military service.)

12.  Your Foreign Activities - Property
   NO  Do you have any foreign property, business connections, or financial
       interests?

13.  Your Foreign Activities - Employment
   NO  Are you now or have you ever been employed by or acted as a consultant
       for a foreign government, firm, or agency?

**.  Your Foreign Activities - Contact with Foreign Government
       Have you ever had any contact with a foreign government, its
       establishments (embassies or consulates), or its representatives, whether
       inside or outside the U.S. other than on official U.S. Government
       business? (Does not include routine visa applications and border crossing
       contacts.)

15.  Your Foreign Activities - Passport
   NO  In the last 7 years, have you had an active passport that was issued by a
       foreign government?

16.  Foreign Countries You Have Visited
   YES  Have you traveled outside the United States on other than official U.S.
        Government orders in the last 7 years? (Travel as a dependent or contractor
        must be listed.) Do not repeat travel covered in modules 4, 5, and 6.
        FROM/COUNTRY    TO                PURPOSE
   1.   1997/01/01      PRES
        MEXICO                            Pleasure
        ITALY                             Pleasure

17.  Your Military Record
   NO  Have you ever received other than an honorable discharge from the military?

18.  Your Selective Service Record
   NO  Are you a male born after December 31, 1959?

00053
Sept. 11'06

MONTGOMERY
Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-2   Filed 09/11/2006   Page *6 of 40

Page: 5

**19. Your Medical Record**
NO In the last 7 years, have you consulted a mental health professional
(psychiatrist, psychologist, counselor, etc.) or have you consulted with
another health care provider about a mental health related condition?

**20. Your Employment Record**
NO Has any of the following happened to you in the past 7 years?

    - Fired from job

    - Quit a job after being told you'd be fired

    - Left a job by mutual agreement following allegations of

    misconduct

    - Left a job by mutual agreement following allegations of

    unsatisfactory performance

    - Left a job for other reason under unfavorable circumstances

**21. Your Police Record - Felony Offenses**
NO Have you ever been charged with or convicted of any felony offense?
(Include those under the Uniform Code of Military Justice.) For this item,
report information regardless of whether the record in your case has been
"sealed" or otherwise stricken from the record. The single exception to
this requirement is for certain convictions under the Federal Controlled
Substances Act for which the court issued an expungement order under the
authority of 21 U.S.C. 844 or 18 U.S.C. 3607.

**Your Police Record - Firearms/Explosives Offenses**
Have you ever been charged with or convicted of a firearms or explosives
offense? For this item, report information regardless of whether the
record in your case has been "sealed" or otherwise stricken from the court
record. The single exception to this requirement is for certain
convictions under the Federal Controlled Substances Act for which the court
issued an expungement order under the authority of 21 U.S.C. 844 or 18
U.S.C. 3607.

**23. Your Police Record - Pending Charges**
NO Are there currently any charges pending against you for any criminal
offense? For this item, report information regardless of whether the
record in your case has been "sealed" or otherwise stricken from the
record. The single exception to this requirement is for certain
convictions under the Federal Controlled Substances Act for which the court
issued an expungement order under the authority of 21 U.S.C. 844 or 18
U.S.C. 3607.

**24. Your Police Record - Alcohol/Drug Offenses**
NO Have you ever been charged with or convicted of any offense(s) related to
alcohol or drugs? For this item, report information regardless of whether
the record in your case has been "sealed" or otherwise stricken from the
record. The single exception to this requirement is for certain
convictions under the Federal Controlled Substances Act for which the court
issued an expungement order under the authority of 21 U.S.C. 844 or 18
U.S.C. 3607.

00054
Sept. 11'06

DEFS002311

**25. Your Police Record - 1   tary Court**
NO In the last 7 years, have you been subject to court martial or other
disciplinary proceedings under the Uniform Code of Military Justice?
(include non-judicial, Captain's mast, etc.)   For this item, report
information regardless of whether the record in your case has been "sealed"
or otherwise stricken from the record.  The single exception to this
requirement is for certain convictions under the Federal Controlled
Substances Act for which the court issued an expungement order under the
authority of 21 U.S.C. 844 or 18 U.S.C. 3607.

**26. Your Police Record - Other Offenses**
NO In the last 7 years, have you been arrested for, charged with, or
convicted of any offense(s) not listed in modules 21, 22, 23, 24, or 25?
(Leave out traffic fines of less than $150 unless the violation was alcohol
or drug related.)  For this item, report information regardless of whether
the record in your case has been "sealed" or otherwise stricken from the
record.  The single exception to this requirement is for certain
convictions under the Federal Controlled Substances Act for which the court
issued an expungement order under the authority of 21 U.S.C. 844 or 18
U.S.C. 3607.

**27. Your Use of Illegal Drugs and Drug Activity-Illegal Use of Drugs**
NO Since the age of 16 or in the last 7 years, whichever is shorter, have
you illegally used any controlled substance, for example, marijuana,
cocaine, crack cocaine, hashish, narcotics (opium, morphine, codeine,
heroin, etc.), amphetamines, depressants (barbiturates, methaqualone,
tranquilizers, etc.), hallucinogenics (LSD, PCP, etc.), or prescription
drugs?

**28. Your Use of Illegal Drugs and Drug Activity-Use in Sensitive Positions**
NO Have you EVER illegally used a controlled substance while employed as a
law enforcement officer, prosecutor, or courtroom official; while
possessing a security clearance; or while in a position directly and
immediately affecting public safety?

**29. Your Use of Illegal Drugs and Drug Activity-Drug Activity**
NO In the last 7 years, have you been involved in the illegal purchase,
manufacture, trafficking, production, transfer, shipping, receiving, or
sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis for
your own intended profit or that of another?

**30. Your Use of Alcohol**
NO In the last 7 years has your use of alcoholic beverages (such as liquor,
beer, wine) resulted in any alcohol-related treatment or counseling (such
as for alcohol abuse or alcoholism)? Do not repeat information reported in
EPSQ Module 19 (Section 21 from the SF86).

**31. Your Investigation Record - Investigations/Clearances Granted**
NO Has the United States Government ever investigated your background and/or
granted you a security clearance? (If you can't recall the investigating
agency and/or the security clearance received, enter (Y)es and follow
instructions in the help text for the fields on the next screen. If you
can't recall whether you've been investigated or cleared, enter (N)o.)

**32. Your Investigation Record - Clearance Actions**
NO To your knowledge have you ever had a clearance or access authorization
denied, suspended, or revoked, or have you ever been debarred from
government employment? (Note: An administrative downgrade or termination of
a security clearance is not a revocation.)

DENNIS, LEE   Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-2   Filed    18 of 40   Page: 7

Your Financial Record - Bankruptcy
NO In the last 7 years, have you filed a petition under any chapter of the
   bankruptcy code (to include Chapter 13)?

   Your Financial Record - Wage Garnishments
O In the last 7 years, have you had your wages garnished for any reason?

35. Your Financial Record - Repossessions
NO In the last 7 years, have you had any property repossessed for any reason?

36. Your Financial Record - Tax Lien
NO In the last 7 years, have you had a lien placed against your property for
   failing to pay taxes or other debts?

37. Your Financial Record - Unpaid Judgements
NO In the last 7 years, have you had any judgements against you that have
   not been paid?

38. Your Financial Delinquencies - 180 Days
NO In the last 7 years, have you been over 180 days delinquent on any debt(s)?

39. Your Financial Delinquencies - 90 Days
NO Are you currently over 90 days delinquent on any debt(s)?

40. Public Record Civil Court Actions
YES In the last 7 years, have you been a party to any public record civil
    court actions not listed elsewhere on this form?
    DATE              NATURE/RESULT OF ACTION
1.  1998/03/01        SUED FOR BREACH OF CONTRACT
                      LOST SUIT
          Court Name SACRAMENTO MUNICIPAL COURT
          County
          Address SACRAMENTO, CA 95814
   Party(ies) to This Action
   SNET - JAMES CAMERON - AND OTHERS

41. Your Association Record - Membership
NO Have you ever been an officer or a member or made a contribution to an
   organization dedicated to the violent overthrow of the United States
   Government and which engages in illegal activities to that end, knowing
   that the organization engages in such activities with the specific intent
   to further such activities?

42. Your Association Record - Activities
NO Have you ever knowingly engaged in any acts or activities designed to
   overthrow the United States Government by force?

43. General Remarks
NO Do you have any additional remarks to enter in your application?

CERTIFICATION BY PERSON COMPLETING FORM
My statements on this form, and any attachments to it, are true, complete,
and correct to the best of my knowledge and belief and are made in
good faith. I understand that a knowing and willful false statement on
this form can be punished by fine or imprisonment or both.
(See section 1001 of title 18, United States Code).

   Name MONTGOMERY
        DENNIS, LEE

                                                       00056
                                                       Sept. 11'06

DEFS002313

Signature (Sign in ink)                          Date

00057
Sept. 11' 06

DEFS002314

Category: Agency Check Secu.  7 Information
Date: 2006/01/23

PSQ Version 2.2
Time: 15:12:22

C O - S U B J E C T   R E P O R T

MONTGOMERY
NIS, LEE                                              SF86
Current Spouse                                                      Page: 9

                          MONTGOMERY
                          BRENDA, KATHLEEN
                   POB  LA MESA, CA
MARRIAGE 1975/07/05       EL CAJON, CA
            Maiden TATE
                          BRENDA, KATHLEEN

NO Is your current spouse's address different from yours?
NO Has your current spouse, to your knowledge, ever used another name (other
   than maiden name)?

Country(ies) of Citizenship UNITED STATES

00058
Sept. 11'06

DEFS002315

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

Form approve
O.M.B. No. 3___-0007
NSN 7540-00-634-4036
86-111

UITED STATES OF AMERICA
Authorization for Release of Information
Carefully read this authorization to release information about you, then sign and date it in ink.

I Authorize any investigator, special agent, or other duly accredited representative of the authorized Federal agency conducting my background investigation, to obtain any information relating to my activities from individuals, schools, residential management agents, employers, criminal justice agencies, credit bureaus, consumer reporting agencies, collection agencies, retail business establishments, or other sources of information. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, disciplinary, employment history, criminal history record information, and financial and credit information. I authorize the Federal agency conducting my investigation to disclose the record of my background investigation to the requesting agency for the purpose of making a determination of suitability or eligibility for a security clearance.

I Understand that, for financial or lending institutions, medical institutions, hospitals, health care professionals, and other sources of information, a separate specific release will be needed, and I may be contacted for such a release at a later date. Where a separate release is requested for information relating to mental health treatment or counseling, the release will contain a list of the specific questions, relevant to the job description, which the doctor or therapist will be asked.

I Further Authorize any investigator, special agent, or other duly accredited representative of the U.S. Office of Personnel Management, the Federal Bureau Investigation, the Department of Defense, the Defense Security Service, any other authorized Federal agency, to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for access to classified information and/or for assignment to, or retention in, a sensitive National Security position, in accordance with 5 U.S.C. 9101. I understand that I may request a copy of such records as may be available to me under the law.

I Authorize custodians of records and other sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary.

I Understand that the information released by records custodians and sources of information is for official use by the Federal Government only for the purposes provided in this Standard Form 86, and that it may be redisclosed by the Government only as authorized by law.

Copies of this authorization that show my signature are as valid as the original release signed by me. This authorization is valid for five (5) years from the date signed or upon the termination of my affiliation with the Federal Government, whichever is sooner. Read, sign, and date the Medical Release page if you answered "Yes" to the question posed in Module 19 "Your Medical Record".

Signature (Sign in ink) _____        Date

00059
Sept. 11'06

DEFS002316

standard Form 86
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

Form approved
O.M.B. No.    6-0007
NSN 7540-00-634-4036
86-111

TED STATES OF AMERICA
THORIZATION FOR RELEASE OF MEDICAL INFORMATION

(Carefully read this authorization to release information about you, then
sign and date it in ink.)

Instructions for Completing this Release

This is a release for the investigator to ask your health practitioner(s) the
three questions below concerning your mental health consultations.  Your
signature will allow the practitioner(s) to answer only these questions.

I am seeking assignment to or retention in a position with the Federal
government which requires access to classified national security information
or special nuclear information or material.  As part of the clearance
process, I hereby authorize the investigator, special agent, or duly
accredited representative of the authorized Federal agency conducting my
background investigation, to obtain the following information relating to my
mental health consultations:

> Does the person under investigation have a condition or treatment
> that could impair his/her judgement or reliability, particularly in
> the context of safeguarding classified national security information
> or special nuclear information or material?

> If so, please describe the nature of the condition and the extent and
> duration of the impairment or treatment.

> What is the prognosis?

I understand the information released pursuant to this release is for use by
Federal Government only for purposes provided in the Standard Form 86 and
it may be redisclosed by the Government only as authorized by law.

Copies of this authorization that show my signature are as valid as the
original release signed by me.  This authorization is valid for 1 year from
the date signed or upon termination of my affiliation with the Federal
Government, whichever is sooner.

_____                    _____
Signature (Sign in ink)                                Date

            Name  MONTGOMERY
                  DENNIS, LEE
Other Names Used  NONE
         Address

00060
Sept. 11' 06

DEFS002317

FD-302 (Rev 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription ___03/20/2006___

    Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, provided one DVD disk containing Dennis Montgomery's email files located on eTreppid Technologies computers.

    This disk was placed in the 1A section of the case file.

Investigation on ___02/14/2006___ at Reno, Nevada

File # 295A-LV-39368                    Date dictated ___03/20/2006___

by ___SA Michael A. West:maw___

00061

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency

DEFS002318

Case 3:06-cv-00263-PMP-VPC    Document 70-6    Filed 09/11/2006    Page 24 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*    Document 70-2    Filed 09/11/2006    Page 24 of 40

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/23/2006

        Warren Trepp, Chief Executive Officer, eTreppid
Technology, LLC., 755 Trademark Drive, Reno, Nevada, telephone
(775) 337-6771, provided the attached listing of ADT alarm code
user names and user numbers.

Investigation on    02/14/2006    at    Reno, Nevada

File #    295A-LV-39368    Date dictated    02/23/2006

by    SA Michael A. West:maw

00062

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

DEFS002319

Case 3:06-cv-00263-PMP-VPC   Document 70-6   Filed 09/11/2006   Page 25 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-2   Filed 09/11/2006   Page 25 of 40

**Vista 100**
**ADT**

Alarm Setup
03/13/03

**Keypad:**

1) Enter Setup Code: 0465
2) Enter 8
3) Enter Location Code (3 digits)
4) Enter Code (4 digits) 1 – Can change all codes. 2 – Everything but change master code. (To delete, enter master code again.)

Installation to 03/11/03

| Code # | Name | Code |
|--------|------|------|
| Code #000 | Unused | |
| Code #001 | Unused | |
| Code #002 | Unused | |
| Code #003 | Unused | |
| Code #004 | Unused | |
| Code #005 | Unused | |
| Code #006 | Unused | |
| Code #007 | Unused | |
| Code #008 | Unused | |
| Code #009 | Unused | |
| Code #010 | Unused | |
| Code #011 | Warren | 3586 |
| Code #012 | Sloan | 1515 |
| Code #013 | Dennis | 3537 |
| Code #014 | Patty | 4993 |
| Code #015 | Cindy | 4336 |
| Code #016 | Mike | 0911 |

00063
Sept. 11' 06

DEFS002320

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/23/2006

Warren Trepp, Chief Executive Officer, eTreppid Technology, LLC., 755 Trademark Drive, Reno, Nevada, telephone (775) 337-6771, was interviewed at the Reno Resident Agency of the Federal Bureau of Investigation by Special Agents John Piser III and Michael A. West, regarding the theft of trade secrets and classified information from eTreppid Technology, LLC.

Trepp considers eTreppid's trade secrets to be various software programs relating to data compression and pattern recognition to include the following:

1. Lossless or Lossy Compression - A propriety algorithm used to compress audio or video data which is superior to the industry standard.
2. Multi-Pass Re-Compression - A propriety process to re-compressed already compressed data.
3. Pattern Recognition - A propriety process to identify a known image against a video stream to locate a known image.
4. Change Detection - A propriety software designed to identify changes in topography or landscape over a period of time.
5. Anomaly Detection - A propriety process to locate an image not normally found in a given video stream or frame.

eTreppid has earned in excess of ten million dollars in revenues since 1998 from various government and commercial contracts.   Trepp anticipates that eTreppid's development efforts will result in other multi-million dollar contracts.

Trepp advised that Chief Technical Officer Dennis Lee Montgomery filed ten Patent Assignment applications with the United States Patent and Trademark Office during the period of November 2000 to November 2001 for patents pertaining to various technologies developed by Montgomery while an employee at eTreppid and on each patent Montgomery assigned full and exclusive rights, title, and interest of these technologies to eTreppid.

Trepp advised that eTreppid has taken reasonable steps to keep its information and development efforts secret by requiring

| | | |
|---|---|---|
| Investigation on | 02/14/2006 | at Reno, Nevada |

File # 295A-LV-39368   Date dictated 02/23/2006
SA John Piser
by SA Michael A. West:maw

Sept. 11' 06

00064

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002321

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of ___Warren Trepp_____ , On 02/22/2006 , Page ___2___

Programmers or Software Developers to use unique user names and
passwords to log onto eTreppid computers with limited access to
prevent unauthorized duplication, modification, or deletion of
Source Codes.  Software Developers store their work or Source Code
on a hard drive installed in their workstation and on a Source Code
Server, a high capacity data storage device, which uses Redundant
Array of Inexpensive Disks (RAID) storage to maintain and ensure
reliable accessibility to the Source Code files produced by all
Software Developers.  The Source Code Server is backed up by the
Internet Security Accelerator (ISA) Server which also uses RAID
storage to maintain and ensure reliable accessibility to the Source
Code files.  Only two eTreppid employees, Montgomery and Director
of Research and Development Sloan Venables, had the access rights
to duplicate, modify, or delete Source Code files maintained on the
Source Code and ISA Servers.

Trepp advised that Montgomery was responsible for and
regularly maintained a separate backup copy of the Source Code
Server data on eTreppid equipment located in a work area occupied
by Montgomery in the eTreppid warehouse.

As an additional security measure, Trepp required
Montgomery to provide him with periodic copies of eTreppid's
current Source Code files on compact disks or hard drives over the
past seven years which Trepp stored in a secure off-site location.

Trepp advised that eTreppid's facility is physically
secured by door locks, access control devices, and  a monitored
alarm system.  eTreppid also maintains a video surveillance system
that records sixteen surveillance cameras covering internal and
external views of eTreppid's facility.

00065
Sept. 11' 06

DEFS002322

Case 3:06-cv-00263-PMP-VPC   Document 70-6   Filed 09/11/2006   Page 28 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-2   Filed 09/11/2006   Page 28 of 40

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription   02/23/2006

Special Agent Paul Haraldsen, Air Force Office of Special Investigations, Pentagon, Washington, D.C., telephone number (703) 908-9441, provided a compact disk containing the following documents regarding agreements and legal filings regarding eTreppid Technology, LLC, and Dennis Lee Montgomery.

These documents include the following:

Contribution Agreement between Intrepid Technologies, LLC, and Dennis Lee Montgomery, signed and dated September 28, 1998.

Amended and Restated Operating Agreement of eTreppid Technologies, LLC, Dated and Adopted Effective as of November 1, 2001.

Ten U.S. Patent and Trademark Office web page printout representing Dennis Lee Montgomery's patent assignments to eTreppid Technologies, LLC.

Correspondence between Eric A. Pulver, Esq., Logan & Pulver, 225 South Arlington Avenue, Suite A, Reno, Nevada, from Douglas J. Frye, 24955 Pacific Coast Highway, Suite A201, Mabilu, California.

Declaration of Warren Trepp, in support of eTreppid Technologies, LLC, Ex-Parte Application for a Temporary Restraining Order and Order to show cause RE Preliminary Injunction against Dennis Montgomery, filed January 19, 2006.

Declaration of Venkata Kalluri in support of eTreppid Technologies, LLC, Ex-Parte Application for a Temporary Restraining Order and Order to show cause RE Preliminary Injunction against Dennis Montgomery, filed January 19, 2006.

Declaration of Barjinder Bal in support of eTreppid Technologies, LLC, Ex-Parte Application for a Temporary Restraining Order and Order to show cause RE Preliminary

Investigation on   02/16/2006   at   Reno, Nevada

File #   295A-LV-39368                                       Date dictated   02/23/2006

by   SA Michael A. West:maw

00066
Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Case 3:06-cv-00263-PMP-VPC    Document 70-6    Filed 09/11/2006    Page 29 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*    Document 70-2    Filed 09/11/2006    Page 29 of 40

FD-302a (Rev. 10-6-95)

295A-LV-39368

Continuation of FD-302 of _____ , On 02/14/2006 , Page __2__

Injunction against Dennis Montgomery, filed January 19, 2006.

Declaration of Sloan Venables in support of eTreppid Technologies, LLC, Ex-Parte Application for a Temporary Restraining Order and Order to show cause RE Preliminary Injunction against Dennis Montgomery, filed January 19, 2006.

00067
Sept. 11' 06

DEFS002324

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/23/2006

On February 22, 2006, Warren Trepp, Chief Executive Officer, eTreppid Technologies, LLC, 775 Trademark Drive, Reno, Nevada, provided Special Agent Michael A. West with the attached copy of a Consent to Search Agreement between eTreppid Technologies, LLC, and Special Agent Paul Haraldsen, Air Force Office of Special Investigation.

Trepp provided a signed copy of this agreement to SA Haraldsen.

---

Investigation on   02/22/2006   at   Reno, Nevada

File #   295A-LV-39368                         Date dictated   02/23/2006

by   SA Michael A. West:maw

00068
Sept. 11'06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002325

I, WARREN TREPP, Chief Executive Officer, eTreppid Technologies, LLC, whose address is 775 Trademark Drive, Reno, N V, state that, PAUL HARALDSEN was identified to me as a Special Agent of the Air Force Office of Special Investigations. Mr. Haraldsen informed me that his office and the Federal Bureau of Investigations are conducting an investigation into the alleged theft and deletion of eTreppid's intellectual property, including proprietary source code (the "Investigation").

I agree to provide SA Haraldsen, the Air Force Office of Special Investigations, the Department of Defense Computer Forensic Laboratory, the FBI and third parties SA Haraldsen or his supervisors designate, all of which shall be bound by this instrument to the extent permitted by law, from time to time, the revocable authority to receive, possess and analyze eTreppid's computer media under my control, subject to the following: in any case where such possession and analysis would involve individuals other than members or employees of the Department of Defense or the Department of Justice (including the FBI), such access will be subject to my prior written approval of such third parties; all access granted to the subject computer media granted by this instrument shall be solely in connection with the Investigation and for no other purpose and may be revoked by me at any time, in which event all such computer media provided shall be promptly returned to eTreppid unless retention by the government is otherwise authorized by law; it is understood that eTreppid is exclusively maintaining all its rights to its intellectual property and proprietary source code and all other computer media provided as well as all derivative rights to all work product of any analysis or recovery efforts performed by means of this instrument ("Work Product"); it is also understood that the Department of Defense will, upon eTreppid's request, provide eTreppid with a copy of the Work Product; it is also understood that all persons obtaining access to eTreppid's intellectual property by means of this instrument will be informed of the terms of this instrument and will be bound to maintain the confidentiality of, and not disclose to any other person or entity not covered by this instrument eTreppid's intellectual property, including proprietary source code or other "computer media" and the Work Product, without eTreppid's prior written consent, unless required by operation of law.

Additionally, with my prior consent, the investigators, may take copies of letters, papers, materials, articles, or other property they identify and consider to be evidence of the aforementioned offense, for use as evidence in any criminal prosecution of Dennis Montgomery, and for no other purpose unless otherwise authorized by law.

I am giving my consent voluntarily and of my own free will, without having been subjected to any coercion, unlawful influence or unlawful inducement and without any promise of reward, benefit, or immunity having been made to me.

(Completed and signed on the following page)

1

00069
Sept. 11' 06

DEFS002326

Except as expressly provided herein, neither Warren Trepp nor eTreppid Technologies, LLC are waiving any rights of any nature.

Acknowledged and agreed to the __ day of February, 2006, at Reno, Nevada.

eTREPPID TECHNOLOGIES, LLC.
a Nevada limited liability company

By: _____
      Warren Trepp, Chairman

AIR FORCE OFFICE OF SPECIAL INVESTIGTIONS

By: _____
      Paul Haraldsen

2

00070
Sept. 11' 06

DEFS002327

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/13/2006

     Warren Trepp, Chief Executive Officer, eTreppid Technology, LLC., 755 Trademark Drive, Reno, Nevada, telephone (775) 337-6771, provided the attached copy of a Defense Security Services (DSS) Incident Report for Dennis Lee Montgomery.

     Trepp advised that DSS was made aware of security violations relating to Montgomery on January 20, 2006.

     Trepp reviewed information contained in Montgomery's original Standard Form 86 discovered that Montgomery failed to list employment at 3Net Systems, Inc.  Trepp located a court case on the Internet in which Montgomery was named in court documents filed in Superior Court of Sacramento County, No. CV536169 as an employee of 3Net Systems in 1993.

     Trepp further advised that DSS suspended Montgomery's access to classified information on January 20, 2006.

---

Investigation on    03/01/2006    at   Reno, Nevada

File #  295A-LV-39368                                    Date dictated   03/13/2006

by    SA Michael A. West:maw

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

00071

Sept. 11' 06

295A-LV-39368-31

DEFS002328

## Incident Report

**MONTGOMERY, DENNIS LEE**

Place of Birth: Arkansas
Citizenship: U.S. Citizen

Open
Investigation: N/A

Marital Status: N/A

PSQ Sent Date: N/A

Incident Report: 2006 01 20

Polygraph: N/A

Foreign Relation: N/A

*(handwritten)* ✳ O.S.S. CONTACT–JAY DIXON
602-674-9066

Select An Existing
Incident: 2006 01 20, Follow-up

*Incident Status: ○ Initial     ⦿ Follow-up     ○ Final

*Date of Incident: 2006 01 20

Action: ☑ Suspend Access          Suspension Start Date: 2006 01 20

*Select CAF: DISCO

*Incident Criteria:

☐ Allegiance to the United States   ☑ Financial Considerations   ☑ Security Violations
☐ Foreign Influence                ☐ Alcohol Consumption         ☐ Outside Activities
☐ Foreign Preference               ☑ Drug Involvement            ☑ Misuse of Information Technology Systems
☑ Sexual Behavior                  ☑ Emotional, Mental and Personality Disorders
☑ Personal Conduct                 ☑ Criminal Conduct

### Incident Report

| Status | Date | Description |
|---|---|---|
| Initial | 2006 01 20 | Dennis Montgomery's employment with eTreppid Technologies, LLC has been terminated effective 20 Jan 2006. The reason for said termination are these actions alleged to have been taken by Dennis Montgomery: 1) deleting the company's proprietary computer source code from the company's computers systems, 2) removing backups of such source code from the company premises, and 3) removing company computer hardware containing said backups from the company premises. Mr. Montgomery no longer has access to the company premises. Alarm codes and keys have been changed. |
| Follow-up | 2006 02 28 | 1) Dennis Montgomery did not report full-time employment on SF86 application. He worked for 3Net Systems in the early 90's and concealed this by saying he worked for Pacific Consulting during this time period. 2) Dennis Montgomery is suspected of giving classified material (computer video files) to one or more foreign nationals who work for eTreppid. 3) emails on Dennis Montgomery's computer reveal that he had elicit sexual activities with high priced prostitutes in Las Vegas. 4) further searches reveal more sexual misconduct in that Dennis Montgomery was involved in a sexual harrassment lawsuit against him when he worked for 3Net Systems: http://online.ceb.com/calcases/CA4/31CA4t1206.htm |

*Unclassified Description of Incident: (Only required for Initial and Follow-up Incident Status)

00072
Sept. 11 '06

DEFS002329

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/09/2006

Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, was interviewed by Special Agent (SA) Michael A. West regarding items or names used at eTreppid Technologies, LLC.

Venables advised that Dennis Lee Montgomery used the letters "XYZ" on everything related to a "Special Access" program operated by another government agency.

Venables recalled seeing the letters "DEO" as a folder name on the RAID Unit maintained by Montgomery that is now missing. Venables advised that Montgomery never told him what "DEO" stood for or what was in the folder.

Venables was not certain of the letters "DSU" but believed they stood for Driver Software Utilities.

Venables advised that "Gianna" was a former employee of eTreppid and girlfriend of Montgomery. "Michael" was a former employee who left eTreppid in 2001.

Venables advised that he never knew Montgomery to purchase computer hardware with his own money and eTreppid maintains records of hardware purchases.

---

Investigation on   03/02/2006   at   Reno,, Nevada

File #   295A-LV-39368                        Date dictated   03/09/2006

by   SA Michael A. West:maw

00073

Sept. 11' 06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002330

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/09/2006

Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, provided the following information to Special Agent (SA) Michael A. West:

Venables advised that during the week of February 27, 2006, he was instructed by Jay Dixon, Defense Security Service, Phoenix, Arizona, to search every computer at eTreppid Technologies, LLC, for classified data.

Venables advised that he conducted the search with input from another DSS technical employee (not further identified) and located what appeared to be classified data on computer workstations used by Yung Mai and Zheng Sun.  Venables advised that DSS technical employee who instructed Venables to delete the information.

Venables advised that neither Mai or Sun knew the data was on their hard drives and the data was located deep in sub folder.

Venables subsequently contacted Dixon who advised that deleting the information was a mistake and instructed to secure the two hard drives in a GSA approved container.

Venables removed the two hard drives and placed them in a safe with other classified material.

Investigation on    03/02/2006    at   Reno, Nevada

File #   295A-LV-39368                    Date dictated   03/09/2006

by    SA Michael A. West:maw

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

00074

SEP 11 '06

DEFS002331

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    03/09/2006

    Sloan Sterling Venables, Director of Research and Development and Facility Security Officer, eTreppid Technology, LLC, 755 Trademark Drive, Reno, Nevada, telephone number (775) 337-6771, was interviewed by Special Agent (SA) Michael A. West regarding items or names used at eTreppid Technologies, LLC.

    Venables advised the name "DEVSERVER" is the name of the server used at eTreppid Technologies to maintain all software used by programmers at eTreppid Technologies to develop Source Code.

---

'nvestigation on    03/03/2006    at  Reno, Nevada

File #  295A-LV-39368                                    Date dictated  03/09/2006

by    SA Michael A. West:maw

00075
Sept.  11'06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002332

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription   03/13/2006

Gerald Gedrimas (Protect Identity), Manager, Double R Self-Storage, 888 Maestro Drive, Reno, Nevada, telephone number (775) 853-4466, was interviewed by Special Agent Michael A. West regarding storage units rented by Dennis Lee Montgomery.

Gedrimas advised that Dennis Montgomery rents storage unit numbers 136, 140, 141, 142, and 143.

Gedrimas advised that Montgomery is given a passcode which opens the access gate and disarms the alarm to each unit that Montgomery has access. Gedrimas further advised that the access control system records the date and time of the customer enters the facility and the date and time they open and close each of their units.

Gedrimas provided reports generated by the access control system for storage unit number 136, 140, 141, 142, and 143, which are attached to and considered a part of this report.

Gedrimas further advised that on March 2, 2006, Montgomery paid the rental fee on storage unit number 132 which was rented by Istvan Burgyan. Gedrimas provided a report generated by the access control system for storage unit number 132 which is also attached to and considered a part of this report.

Investigation on   03/03/2006   at   Reno, Nevada

File #   295A-LV-39368   Date dictated   03/13/2006

by   SA Michael A. West:maw

00076

SEP 11 '06

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DEFS002333

| Preferred Technology, Inc. | 8271 E. Gelding Dr. Scottsdale, AZ 85260 | (480) 991-1259 |
|---|---|---|

## Unit Activity By Unit Number - 0132

| Time | Remote # | Description | Data | Tenant |
|---|---|---|---|---|
| **Friday, March 03, 2006** | | | | |
| 8:01:00 AM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 7:55:00 AM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 7:53:00 AM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 7:49:00 AM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| **Sunday, February 26, 2006** | | | | |
| 8:22:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 8:21:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 8:10:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 8:08:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| **Saturday, February 11, 2006** | | | | |
| 12:41:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 12:39:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 12:35:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 12:34:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| **Monday, January 30, 2006** | | | | |
| 9:03:00 AM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 9:02:00 AM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 9:01:00 AM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 9:00:00 AM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 8:50:00 AM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 8:49:00 AM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 8:48:00 AM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 8:45:00 AM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| **Tuesday, January 24, 2006** | | | | |
| 8:36:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 8:35:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 8:29:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 8:28:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 3:16:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 3:14:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 2:23:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 2:22:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 2:07:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 2:04:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 1:52:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 1:51:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 12:40:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 12:39:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 12:29:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 12:18:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 11:13:00 AM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 11:11:00 AM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 11:11:00 AM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 11:10:00 AM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |

DEFS002334

Case 3:06-cv-00263-PMP-VPC   Document 70-6   Filed 09/11/2006   Page 40 of 40

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-2   Filed 09/11/2006   Page 40 of 40

Preferred Technology, Inc.          8271 E. Gelding Dr. Scottsdale, AZ 85260          (480) 991-1259

# Unit Activity By Unit Number - 0132

| Time | Remote # | Description | Data | Tenant |
|---|---|---|---|---|
| **Sunday, January 22, 2006** | | | | |
| 7:02:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 7:01:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 6:58:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 6:58:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 12:32:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 12:31:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 12:29:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 12:29:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| **Saturday, January 21, 2006** | | | | |
| 7:02:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 7:01:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 7:00:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 6:59:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 3:47:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 3:46:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 3:38:00 PM | 18- | Door Open | 0132 | ISTVAN BURGYAN |
| 3:38:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 1:13:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 1:12:00 PM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 1:08:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 1:04:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| 8:02:00 AM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 8:00:00 AM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 7:59:00 AM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 7:58:00 AM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| **Friday, January 20, 2006** | | | | |
| 10:30:00 AM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 10:28:00 AM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 10:25:00 AM | 18- | Door Open | 0132 | ISTVAN BURGYAN |
| 10:24:00 AM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| **Thursday, January 19, 2006** | | | | |
| 11:06:00 AM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 11:04:00 AM | 16- | Door Close | 0132 | ISTVAN BURGYAN |
| 11:03:00 AM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 11:02:00 AM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |
| **Wednesday, January 18, 2006** | | | | |
| 12:05:00 PM | 2- | Exit Area | 0132 | ISTVAN BURGYAN |
| 12:04:00 PM | 18- | Door Close | 0132 | ISTVAN BURGYAN |
| 12:02:00 PM | 16- | Door Open | 0132 | ISTVAN BURGYAN |
| 12:02:00 PM | 1- | Enter Area | 0132 | ISTVAN BURGYAN |

00078
Sept. 11'06

DEFS002335

VENABLES confirmed he and SUBJECT were the only employees with the administrator password necessary to access the SRCSERVER and ISASERVER, therefore they were the only two employees who could have deleted the Source Code. VENABLES denied deleting the Source Code.

VENABLES said that only the individual programmers and SUBJECT had the passwords necessary to delete the Source Code from the individual workstations. VENABLES further said the passwords on the workstations were established and set by SUBJECT. VENABLES said he established his own password on his workstation; therefore his information was not deleted. Additionally, SUBJECT had the building alarm codes for all of the company employees. VENABLES said SUBJECT possessed the necessary accesses and passwords to access the surveillance cameras within the facility and could have deleted the last four months worth of video recordings.

VENABLES said he would attempt to obtain the workstation motherboard and RAID controller serial numbers for the equipment SUBJECT took home.

VENABLES was aware SUBJECT had several storage units around the Reno, NV area. He believed that SUBJECT often used different storage unit locations. He was unaware of the specific locations of these storage units.

VENABLES provided a copy of SUBJECT's signed CLASSIFIED INFORMTION DNONDISCLOSURE AGREEEMNET (Attachment 20), Standard Form 312, and signed by SUBJECT on 16 Sep 2003.

I. (U)  Interview of: GRAY
        Date/Place: eTreppid/24 JAN 2006
        Asst Interviewer: SA Smith
        Associated Exhibit Numbers:

GRAY stated that she has been employed by eTreppid for approximately three years and four months. She indicated that she has known SUBJECT for a little more than six years; three of those years were prior to employment with ETREPPID, as she had done some work with eTreppid when she was employed by INTEL CORPORATION. GRAY stated that she came to work for eTreppid because she believed that she could help bring its products to the marketplace.

GRAY stated eTreppid was awarded a contract from US Special Operations Command, Fort Bragg, NC, to develop Automatic Target Recognition. The contract was awarded on 12 March 2003 and required the company to have access to SECRET material at other contractor and government locations.

On 1 August 2005, US SOCOM amended the Department of Defense Contract Security Classification Specification, DD Form 254, permitting eTreppid to have storage and Automated Information System processing at the facility.

00119
Sept. 11' 06

DEFS002336

During the period of 9-18 Nov 2005, GRAY recorded SECRET predator video images onto nine eTreppid hard drives. The video images were recorded at the predator operations center, Nellis AFB, NV. Upon completion of the recordings, GRAY was instructed by contractor personnel (NFI) to mark the hard drives with a SECRET sticker, which she did. GRAY subsequently mailed the hard drives to eTreppid. The hard drives were stored at eTreppid in a GSA approved safe in a room secured by a cipher lock.

GRAY related that on 06 Dec 2005 she discovered that the nine SECRET hard drives were not in the GSA approved safe at eTreppid's office. GRAY said she and SUBJECT were the only two employees with the safe combination; therefore she suspected SUBJECT had the SECRET hard drives. She notified TREPP who, in turn, informed SUBJECT to return the hard drives to the safe. GRAY again checked the safe on 7 Dec 2005 and found that the hard drives were once again missing. GRAY asked SUBJECT about the location of the SECRET hard drives and SUBJECT told her that they were all in the file cabinet in the warehouse. GRAY informed SUBJECT that this was not the correct location to store the hard drives and informed TREPP of the incident. GRAY was uncertain if SUBJECT returned the SECRET hard drives to the safe.

On 8 Dec 2005, GRAY e-mailed SUBJECT, copying TREPP on the e-mail to remind SUBJECT that all classified material should be stored in one safe. GRAY said that as a result of this e-mail all original nine original SECRET hard drives were returned to the safe.

GRAY said that on 12 Dec 2005, TREPP asked her to generate some test tapes for internal testing from the nine SECRET hard drives. TREPP requested that four DV tapes be made, two for SUBJECT and two for TREPP. TREPP wanted the two tapes so he could perform a "blind test." GRAY retrieved one of the nine SECRET hard drives used for classified recording and started making copies for TREPP.

GRAY related that on 13 Dec 2005, when she went to retrieve another hard drive she discovered that once again the nine SECRET hard drives were missing. GRAY informed TREPP that the nine SECRET hard drives were not properly stored. TREPP had SUBJECT return the hard drives to the safe. GRAY also related that while generating test tapes, SUBJECT came into her work area and placed a new label on one of the hard drives that she was using to generate test tapes. GRAY said that SUBJECT told her he was condensing the original nine SECRET hard drives that were used at Nellis AFB because some were only partially full. As per TREPP, GRAY also gave SUBJECT two SECRET test tapes.

GRAY changed the safe's upper drawer combination and placed TREPP's two copies of test tapes into this drawer. The original nine SECRET hard drives were secured in the safe's bottom drawer, to which both GRAY and SUBJECT had the combination.

DEFS002337

GRAY related that on 15 Dec 2005, she discovered that all of the SECRET hard drives were once again missing from the safe.  When GRAY approached SUBJECT about the SECRET hard drives he told her he wanted to store the hard drives in the file cabinet in the warehouse for his convenience.  GRAY told SUBJECT he could not store the SECRET hard drives in the warehouse and was risking losing his clearance.  GRAY said SUBJECT replied, "I don't care about my clearance.  They'll always give me my clearance because they want me to do the work."  GRAY informed TREPP about the incident and he determined that the classified material needed to be restricted.  TREPP had SUBJECT return the SECRET hard drives and tapes to the safe.  GRAY said TREPP then asked her to move all of the classified material to the top drawer of the safe and not give SUBJECT the combination. GRAY complied.

GRAY said that on 18 Dec 2005, SUBJECT tried to contact her via text message, but she did not respond.  Eventually she was contacted by TREPP who instructed her to give the top drawer safe combination to SUBJECT.  GRAY related to TREPP that she had concerns that SUBJECT would make copies of the classified material he would have access to the two SECRET tapes that GRAY had segregated for the blind test.  GRAY said that TREPP instructed her to give SUBJECT the combination so SUBJECT could perform work.  TREPP told her to change the combination when she returned from the weekend.  GRAY said that TREPP said he would speak with SUBJECT and have him re-secure the SECRET hard drives and tapes when she returned on 19 Dec 2005.

GRAY said that on 21 Dec 2005, at approximately 1030 hours, she had a closed door meeting with TREPP where she told TREPP that she had reason to believe SUBJECT had not written significant software for the company.  She also speculated that she observed what may have been classified imagery on a computer used by Zehang SUN, programmer, eTreppid, who is a Chinese National. GRAY said the images appeared to be predator aerial images taken in Iraq from the predator and displayed the geo-coordinates.  She said that she was told Mr. Lance Lombardo, Program Manager, US SOCOM, that any images reflecting the geo-coordinates were classified SECRET.  GRAY said she tried to copy what appeared to be the classified content from SUN's shared folder.  But, as she was trying to copy it to her computer the file was deleted.  GRAY believed that SUBJECT deleted it because SUBJECT learned of her conversation with TREPP and because SUBJECT was allowed access to all of the engineer's folders.  GRAY also informed TREPP that she had fairly complete information that led her to believe SUN had worked on a classified project involving ocean images.

These ocean images were later determined by the U.S Government to be unclassified.

DEFS002338

GRAY stated that soon after her meeting with TREPP she received a call from JESSE ANDERSON, programmer, eTreppid asking her what was going on in the building. ANDERSON told GRAY that he had just received a call from SUBJECT who told him that TREPP and GRAY were "ganging up on him." ANDERSON also told GRAY that SUBJECT asked if any Source Code was resident on ANDERSON's computer. GRAY told him that she didn't know what he was talking about and her conversations with TREPP were private. GRAY said that almost immediately after her conversation with ANDERSON, VENABLES called her on the office intercom and said he just received call from SUBJECT who told him that TREPP and GRAY were "ganging up on him" and accusing VENABLES of "stuff" (NFI).

GRAY believed that her conversation with TREPP earlier in the day was either overheard or somehow monitored. GRAY informed TREPP of her conversations with ANDERSON and VENABLES and of her belief that their conversation had been monitored. GRAY said VENABLES called at approximately 1530 hours on the office intercom and inquired as to why SUBJECT was leaving the building with hard drives. GRAY told TREPP about VENABLES call. She and TREPP went to the company's warehouse and GRAY observed TREPP and SUBJECT engage in a conversation. She was not privy to the conversation.

GRAY said that on 8 Jan 2006, LALITH TENNETI, software engineer, eTreppid told GRAY that eTreppid's Source Code was deleted from all of the engineer's systems between Christmas 2005 and New Year's 2006.

GRAY said that on 9 January 2006 she found 7 hard drives, which were copies of the original nine SECRET hard drives, in SUBJECT's file cabinet in the warehouse. GRAY stated an inspection of the safe revealed another 7 hard drives, also copies of the original nine SECRET hard drives. GRAY said a search of eTreppid's facility failed to locate the original nine SECRET hard drives. GRAY said that she knows the original 9 SECRET hard drive disks were missing because the hard drives at ETREPPID offices are not the original ones which she "personally placed descriptive labels on" in Nov 2005. Furthermore, GRAY related that the nine missing SECRET hard drives had actual Predator missions on them. In addition to the nine missing SECRET hard drives, GRAY related that 2 of the 4 SECRET test tapes made for the blind test were missing from the safe. GRAY stated that between 9 Jan and 13 Jan 2006 she and the rest of the company's employees searched the company for the nine original SECRET hard drives and two SECRET test tapes but were unable to locate them. GRAY was unable to explain the disappearance of the hard drives but knows she does not have them and the only other person with access to the missing original nine SECRET hard drives was SUBJECT.

GRAY also added that she believes SUBJECT processed classified information on an unclassified stand-alone system that was not part of eTreppid's computer network/domain. She suspected this, because SUBJECT had to use a computer system to make copies of the nine original SECRET hard drives and the company did not have approval to process classified information on any system.

00122
Sept. 11' 06

DEFS002339

J. (U)  Interview of: ANDERSON
        Date/Place: eTreppid
        Asst Interviewer: SA Smith
        Associated Exhibit Numbers:

ANDERSON said he was an employee of eTreppid for approximately five years and had both a personal and professional relationship with SUBJECT. ANDERSON stated that he, SUBJECT and other employees met each other socially on numerous occasions. ANDERSON characterized SUBJECT's recent demeanor as "unstable, needs to be hospitalized and needs psychological help."

ANDERSON stated that on 22 or 23 Dec 2005 SUBJECT called him and asked if he had any Source Code resident on his computer. ANDERSON told him he did not. ANDERSON said that this call took place when he was on vacation 21-28 Dec 2005. ANDERSON said that he called GRAY and said, "Dennis (SUBJECT) just called me and asked if I had any Source Code on my computer, what's going on?" ANDERSON said that he could not recall GRAY's response.

ANDERSON said that on 28 or 29 Dec 2005, TENNETI informed him that eTreppid Source Code was missing from his eTreppid computer workstation.

ANDERSON said that on 7 JAN 2006, JALE TREPP (JTREPP), TREPP's wife, told him that GRAY had called her and said that he might have some information about SUBJECT's activities at eTreppid. ANDERSON agreed to meet JTREPP at a Barnes & Noble store located at 5555 South Virginia Street, Reno NV 89502. ANDERSON related to JTREPP that SUBJECT was using open Source Code to develop eTreppid's Source Code, not writing software, does not possess adequate technical abilities, and was dishonest. ANDERSON also informed JTREPP that SUBJECT said that he owned 51% of the company, TREPP was just an investor and that GRAY was going away for some time. JTREPP told ANDERSON to discuss these issues with TREPP.

ANDERSON stated that on 8 Jan 2006, he met TREPP at the Tamarack Junction Restaurant Casino located at 13101 South Virginia Street, Reno, NV 89511. ANDERSON said that he voiced his concerns about SUBJECT's continued claims that he was the majority shareholder in the company, had "lots of cash" invested in the company and that TREPP was only an investor. ANDERSON also informed TREPP that SUBJECT was using open source to develop eTreppid Source Code, SUBJECT was dishonest, SUBJECT said GRAY would be going away for some time. He also told TREPP that as long as five years ago he had suspicions that SUBJECT was less technically competent than he led people to believe.

00123
Sept. 11' 06

DEFS002340

ANDERSON said that he had suspicions that SUBJECT was using open Source Code to develop eTreppid Source Code for almost two years. ANDERSON said that he confronted SUBJECT about eTreppid's use of open Source Code to develop its Source Code when he was at Fort Bragg, NC conducting some training. SUBJECT told him that the "government knew about it" and that TREPP knew about it and TREPP was "O.K with it".

ANDERSON recommended to TREPP that he speak with VENABLES and TENNETI so TREPP could be further informed of SUBJECT's activities.

ANDERSON said that on 10 Jan 2006, while he was at ETREPPID's office SUBJECT said to him that, "You're an asshole" and, "We'll meet again". ANDERSON asked SUBJECT, "Is that a threat?" and SUBJECT replied, "No". ANDERSON stated that he had suspicions that his phone conversations and his conversations at work may have been monitored. He felt this was the only way in which SUBJECT could have learned about the conversation he and TREPP had about SUBJECT. ANDERSON feared that SUBJECT may harm him in some way and believes that SUBJECT has the capacity to do so.

ANDERSON related that on 11 and 12 Jan 2006, he was asked by TREPP to look at all of ETREPPID's computers and talk with employees to ascertain if there was any Source Code resident on eTreppid's computers. ANDERSON stated that eTreppid Source Code had been deleted from all of the computers. ANDERSON stated that a program known as "Wipe N Clean" was resident on all of ETREPPID's programmer's computers and that program had been resident on the computers prior to the deletion of eTreppid Source Code. "Wipe N Clean" is a program used to permanently delete data from computers. ANDERSON stated that a portion of eTreppid Source Code was resident on his computer and had not been deleted. ANDERSON stated that approximately three years ago SUBJECT instructed all eTreppid personnel to save the Source Code in a file named "Current_Source" located on their individual workstations. ANDERSON said this easily permitted SUBJECT access to the Source Code and would have facilitated the ease in which the Source Code was located and subsequently deleted.

ANDERSON said that on 15 Jan 2006, he saw SUBJECT at the Peppermill Hotel Casino located at 2707 South Virginia Street, Reno, NV 89502. ANDERSON was at the casino to have lunch with his girlfriend's family. ANDERSON said that while he was waiting on line for lunch service he observed SUBJECT-playing blackjack at one of the casino's blackjack tables. ANDERSON said that SUBJECT looked like he had been playing cards all night as SUBJECT look tired, intoxicated, although he did not have a drink glass in front of him and his hair was a mess. ANDERSON said that SUBJECT looked up and said to him, "Get the fuck out of here!" and asked a casino security guard to make ANDERSON move. The security guard asked ANDERSON to move and ANDERSON refused informing the security guard that he was just watching the game on TV and waiting in line for lunch. SUBJECT again asked the security guard to move ANDERSON and this time ANDERSON complied so SUBJECT would "not cause a scene."

00124
Sept. 11' 06

DEFS002341

ANDERSON stated he did not have access to the nine missing SECRET hard drives or two missing SECRET mini DV tapes. ANDERSON said he did not possess the combinations to the company's safes. ANDERSON stated that he had nothing to with the deletion of Source Code from eTreppid's computers.

ANDERSON also provided that approximately four months ago SUBJECT gave him electronic TIF files (images), of what ANDERSON said he believed to be the ocean, and directed him to divide the TIF images into 1k x 1k pixels. ANDERSON said that he compiled the images and they remained resident on his computer.

ANDERSON subsequently provided these images to SA HARALDSEN and deleted them from his workstation.

ANDERSON said that during an Automatic Target Recognition demonstration in 2003 (NFI), and upon the direction of SUBJECT, ANDERSON was told to monitor a display on ANDERSON's computer. SUBJECT instructed ANDERSON to strike the "A" key on his computer's keyboard each time a bazooka held by SUBJECT came into view on the video screen. ANDERSON said that he did this for approximately forty separate demonstrations. ANDERSON stated that sometime in October or November of 2005, he learned from GRAY that representatives from the Department of Homeland Security (DHS) were coming to see the ATR product and that this visit was in relation to a potential contract award. ANDERSON said that to his knowledge his prior participation in the ATR product was limited to bazooka demonstrations. ANDERSON did not want to participate "if eTreppid was going to be paid by the DHS." ANDERSON told SUBJECT that he did not want to participate when DHS arrived and he did not. ANDERSON said that subsequent to that date SUBJECT no longer spoke with him and ceased all social contact.

K. (U)   Interview of: BAUDER
         Date/Place: 25 JAN/eTreppid LLC
         Asst Interviewer: SA Smith
         Associated Exhibit Numbers: 21

BAUDER said he worked for eTreppid since April 2000 and was hired by SUBJECT. His relationship with SUBJECT was strictly professional. He characterized SUBJECT as eccentric with minimal personal skills. Because of BAUDER's size, "a large man," SUBJECT would often ask him to move heavy "stuff."

On Friday, 23 Dec 2005, SUBJECT asked BAUDER to move approximately six boxes from SUBJECT's office and office closet to the warehouse's back door. BAUDER accomplished this task. He said the box flaps were closed therefore he was unable to determine the boxes' contents. BAUDER observed SUBJECT load at least two of the boxes into his (SUBJECT's) truck. BAUDER thought this was a little peculiar since he never witnessed SUBJECT remove anything from the facility.

00125
Sept. 11' 06

DEFS002342

BAUDER said about one year ago, SUBJECT requested he purchase some open Source Code called MICATOGE XPLAYER. This purchase was an online purchase using BAUDER's PayPal account. The cost of the Source Code was about $100. BAUDER said that SUBJECT claimed he did not have a PayPal account and required the open Source Code for work.

BAUDER subsequently provided a copy of the PayPal receipt (Attachment 21) to SA HARALDSEN. A review of the receipt is reflected in paragraph 3-1 L.

BAUDER said he assisted SUBJECT with some work regarding "images of the ocean." He said SUBJECT instructed him to place symbols on the images. BAUDER was unaware of why he was accomplishing this task, but surmised it had to do with "terrorist boats." SUBJECT never explained why this work was being performed or for whom.

Sometime in JAN 2006, BAUDER assisted the eTreppid employees with a search of the facility to determine if they could locate any media containing the company's Source Code. While conducting this search BAUDER, observed GRAY, holding two hard drives with red stickers on them. He said these hard drives were found in a warehouse filing cabinet used by SUBJECT. He said he looked in the cabinet drawer and saw additional hard drives in the drawer. He was uncertain how many hard drives were in the cabinet drawer. When he tried to assist GRAY, she explained that BAUDER did not have the appropriate clearance level to take possession of the hard drives.

BAUDER further said that during the summer of 2003 SUBJECT made a peculiar request of BAUDER. SUBJECT invited BAUDER to his office and when BAUDER arrived SUBJECT shut the office door and closed the blinds. SUBJECT instructed BAUDER to "hit the space bar on his (meaning SUBJECT's) keyboard" whenever BAUDER heard an audible tone on his phone. BAUDER explained that SUBJECT was demonstrating a "bazooka" test to some unidentified customers. SUBJECT would hold a simulated bazooka and walk into the field behind the company. While SUBJECT held the bazooka, a camera was trained on SUBJECT. This camera was connected to a laptop computer in the company warehouse and the customers were observing the laptop display. As the camera was trained on the bazooka, SUBJECT would send BAUDER an audible tone to BAUDER's phone. When BAUDER heard the tone he hit the space bar. He was uncertain what "hitting the space bar did" but suspected it highlighted the bazooka on the laptop display. The demonstration lasted about 5-10 minutes. SUBJECT explained that this was for demonstration purposes only and not to worry about it. BAUDER knew better than to pursue this line of questioning because if you questioned SUBJECT you were "eventually fired." BAUDER believed SUBJECT was using "trickery" during this demonstration.

DEFS002343

L. (U)  Review of PayPal Receipt
          Date/Place: 25JAN 2006/eTreppid
          Associated Exhibit Number: 21

On 25 JAN 2006, SA HARALDSEN reviewed the copy of the PayPal receipt provided BAUDER. The review disclosed that the receipt was identified by the following data:

"Web Accept Payment Sent ID number 0XM90015NS3987849
Original transaction date 30 Nov 2004,
Payment to XIAO CAN YANG, for the amount of 99.00
Item Title: Micatoge XPlayer
Item Number:  Source Code License
Time: 0719:07 PST
Shipping Address:
 JIM BAUDER ▮▮▮▮▮▮▮▮▮▮▮▮▮

 United States

M. (U) Interview of:  VENABLES
          Date/Place:  26 JAN 2006/eTeppid LLC
          Asst Interviewer: SA Smith
          Associated Exhibit Numbers: 22

VENABLES provided a copy of the VISTA 100, ADT Alarm Setup Codes (Attachment 22) for eTreppid, LLC.  VENABLES indicated that user #13 was assigned to SUBJECT.  A review of the attachment confirmed the information originally provided by TREPP in paragraph 3-1 A.  Additionally, VENABLES said that SUBJECT was also aware of all the user alarm codes.

N. (U) Interview of:  TREPP
          Date/Place:  27 Jan 2006/Telephonic
          Associated Exhibit Number: 23

TREPP forwarded an email (Attachment 23) referencing AZZINARO's conversation with SUBJECT.  A review of the email determined SUBJECT asked AZZINARO if he knew someone who he (SUBJECT) could borrow $5-$10 million. Additionally, the email reflected that SUBJECT was looking for a potential investor "from the United States & not from a foreign country."

TREPP's opinion is that SUBJECT is looking for an investor to sell eTreppid's Source Code.

00127
Sept. 11'06

DEFS002344

O. (U) Interview of: TREPP
    Date/Place: 31 Jan 2006/Telephonic/Email
    Associated Exhibit Number: 24

TREPP forwarded an email (Attachment 24) from VENABLES reflecting that the nomenclature and serial number for the missing RAID stand-alone workstation. The nomenclature and serial was identified as: 1-8-drive IDE RAID with a serial number of: 6564737.

P.(U) Interview of TREPP
    Date/Place: 9 Feb 2006/Telephonic
    Associated Exhibit Number 25

TREPP said that District Court Judge ROBERT H. PERRY, 2nd Judicial District Court of the State of Nevada in and for the County of Washoe, Reno, NV, concluded that a preliminary injunction was warranted in the present context. TREPP read the court order, which reflected the following:

SUBJECT was ordered to restrain from destroying, hypothecating, transferring, modifying, and/or assigning the eTreppid Source Code, from discussing any eTreppid technology, including anomaly detection and pattern recognition software, with any third party, except experts or other persons and witnesses necessary to Defendant's case. TREPP said the court issued this injunction to maintain the status quo and to avert any irreparable harm that eTreppid may suffer and based on the risk that SUBJECT could delete and or transfer the last version of the eTreppid Source Code that remains in tact.

TREPP said his attorneys were filing motions to have the judge to order SUBJECT to return the Source Code by a specific date.

TREPP provided a copy of the court order (Attachment 25), dated 8 February 2006.

4-1. SUBJECT INTERVIEW:

Interview of: SUBJECT
Date/Place: 7 February 2006/Telephonic

SUBJECT telephoned SA HARALDSEN and requested a point of contact at the XXX who would "be able to give me permission to testify about working for them and the types of products I developed." SUBJECT said he was going to testify at the civil hearing regarding the TRO, which TREPP had filed against him. He said he needed to be able to defend himself and felt he would not be able to if he were not permitted to tell the judge about whom he worked for. He said "I am afraid of being held in contempt of court when I have to explain to the judge that I can't give this information out."

00128
Sept. 11'06

DEFS002345

Case 3:06-cv-00263-PMP-VPC   Document 70-8   Filed 09/11/2006   Page 11 of 19

Case 3:06-cv-00263-PMP-VPC *SEALED*   Document 70-4   Filed 09/11/2006   Page 11 of 19

SUBJECT further said "I signed a letter of treason saying that I will go to jail if I divulge that I worked for them (inferring the XXX)" He further said "I need something so I can divulge everything. Obviously Paul (referring to SA HARALDSEN) you have only heard one side of the story." SUBJECT did not provide any additional information.

5-1. (U) **FBI REFERALL**:

A. On 26 Jan 2006, SA Mike McKinley, Resident Agent in Charge and SA John Piser, FBI Field Office, Reno Nevada was briefed regarding the deletion and removal of company Source Code. SA McKinley said they would review the information provided, but based upon the briefing he believed they would initiate an investigation.

B. 30 Jan 2006, SA PISER said the FBI was assuming investigative jurisdiction regarding the alleged deletion and theft of eTreppid Source Code by SUBJECT.

C. On 2 Feb 2006, SA PISER said the FBI opened an economic espionage and theft of intellectual property investigation.

5-2 **Local Agency Check**:

A. On 13 Feb 2006, SA DERMOT O'REILLY conducted a review of the AFOSI Investigative Information Management System and determined that SUBJECT was not reflected in this database.

B. On _____ SA _____ conducted a review of the Reno Police Department criminal records which revealed.

6-1 National Agency Check

A. On 23 January 2006, SA HARALDSEN conducted a review of the Joint Personnel Adjudication System, which reflected SUBJECT's Sensitive Compartmented Intelligence eligibility was listed as: DCID 6/4, 2005 10 06 AFCAF.

B. On 23 January 2006, SA HARALDSEN conducted a review of the Joint Clearance Access Verification System, which revealed the following information regarding SUBJECT: SUBJECT possessed a Top Secret security clearance with SCI access based upon a single scope background investigation (SSBI) conducted by Defense Security Service. The SSBI was opened on 04 April 2004 and closed on 13 Feb 2004 without any derogatory information being identified. The Defense Information Security Office, DSS, adjudicated the Personal Security Investigation favorably on 21 Feb 2004.

C. (U) On 13 Feb 2006, SA ORIELLY conducted a review of the Defense Central Index of Investigations _____ -----

7-1EXHIBITS

00129
Sept. 11' 06

DEFS002346

**West, Michael**

| | | | |
|---|---|---|---|
| **From:** | West, Michael A. | **Sent:** | Fri 2/10/2006 7:58 PM |
| **To:** | warren@etreppid.com | | |
| **Cc:** | | | |
| **Subject:** | Additional Questions | | |
| **Attachments:** | | | |

Warren,

Here are a few additional questions I would like to talk to you in person about the first of next week.

- Describe Etreppid's trade secrets.
- What security procedures are in place to protect the trade secrets.
- Is there a non-disclosure agreement signed by Montgomery.
- What is the value of Etreppid's trade secrets.

Thank you

**Michael West**
**Special Agent**
**Federal Bureau of Investigation**
**Reno, Nevada**
**(775) 825-6600**

00130
Sept. 11' 06

DEFS002347

**West, Michael**

| | | |
|---|---|---|
| **From:** | West, Michael A. | **Sent:** Fri 2/17/2006 12:28 AM |
| **To:** | paul.haraldsen@pentagon.af.mil | |
| **Cc:** | | |
| **Subject:** | Concurrence for Telephone Recording | |
| **Attachments:** | | |

Paul,

Thanks again for coming out to Reno, Nv on short notice.  Your trip was very successful.

On 2/15/2006, Chief Assistant U.S. Attorney Ronald C. Rachow, Reno, Nv, and Acting/SAC W. Woerner, Las Vegas, Nv, authorized you to make consensually monitored telephone calls in this matter.

I will document the approval to my case file and prepare a report.

Let me know if you would like a copy.

Thanks

**Michael West
Special Agent
Federal Bureau of Investigation
Reno, Nevada
(775) 825-6600**

00131
Sept. 11' 06

DEFS002348

⚠ Attachments can contain viruses that may harm your computer. Attachments may not display correctly.
Access to the following potentially unsafe attachments has been blocked: fbplayer.exe

**West, Michael**

| | |
|---|---|
| **From:** | West, Michael A. |
| **To:** | Haraldsen Paul Civ SAF/AAZ |
| **Cc:** | |
| **Subject:** | RE: Program Update |

**Sent:** Tue 2/21/2006 7:31 PM

**Attachments:** ☐ comctl32.dll(438KB)  ☐ fbplayer.dll(156KB)  ☐ vcl40.bpl(1MB)  ☐ vclx40.bpl(246KB)  ☐ vdcomponents.bpl(24KB)

**Michael West**
**Special Agent**
**Federal Bureau of Investigation**
**Reno, Nevada**
**(775) 825-6600**

---

**From:** Haraldsen Paul Civ SAF/AAZ [mailto:Paul.Haraldsen@pentagon.af.mil]
**Sent:** Sat 2/18/2006 12:51 PM
**To:** West, Michael A.
**Subject:** RE: Program Update

Mike,

I still am unable to get this working.  Would you please send me another copy or clue me in how to get this working.
Thanks Paul

    -----Original Message-----
    **From:** West, Michael A. [mailto:Michael.West2@ic.fbi.gov]
    **Sent:** Fri 2/17/2006 2:18 PM
    **To:** Haraldsen Paul Civ SAF/AAZ
    **Cc:**
    **Subject:** Program Update


    Paul,

    I tried the CD this morning & the FBPlayer file which plays the record did not work.

    Attached is a good copy of this program.  Copy it into a directory with all the other file and it showed run.

    If not, I will send you a working copy.

    Mike

    Michael West
    Special Agent
    Federal Bureau of Investigation
    Reno, Nevada
    (775) 825-6600

DEFS002349

**West, Michael**

| | | | |
|---|---|---|---|
| **From:** | Haraldsen Paul Civ SAF/AAZ [Paul.Haraldsen@pentagon.af.mil] | **Sent:** | Sat 2/18/2006 10:43 AM |
| **To:** | West, Michael A. | | |
| **Cc:** | | | |
| **Subject:** | RE: Concurrence for Telephone Recording | | |
| **Attachments:** | | | |

Mike,

A report would be good to assuage the concerns of my General Counsel. I am working to make it out there next week. It may have to be later in the week, depending on my wife's doctor's appointments. I will keep you up to speed on my projected arrival times and dates. Call me when you get a chance – cell phone 703-980-9441. By the way the file still did not work. I still am unable to run the audio. Please send me all the files again or if you can convert it to windows media player that would be great. Thanks.

//signed//

PAUL L. HARALDSEN

Special Agent, AFOSI Region 7

Pentagon, Washington, DC

-----Original Message-----
From: West, Michael A. [mailto:Michael.West2@ic.fbi.gov]
Sent: Fri 2/17/2006 12:28 AM
To: Haraldsen Paul Civ SAF/AAZ
Cc:
Subject: Concurrence for Telephone Recording

Paul,

Thanks again for coming out to Reno, Nv on short notice. Your trip was very successful.

On 2/15/2006, Chief Assistant U.S. Attorney Ronald C. Rachow, Reno, Nv, and Acting/SAC W. Woerner, Las Vegas, Nv, authorized you to make consensually monitored telephone calls in this matter.

I will document the approval to my case file and prepare a report.

Let me know if you would like a copy.

Thanks

Michael West
Special Agent
Federal Bureau of Investigation
Reno, Nevada
(775) 825-6600

00133
Sept. 11'06

DEFS002350

---

ⓘ The sender of this message has requested a read receipt. Click here to send a receipt.

**West, Michael**

| | |
|---|---|
| **From:** | Haraldsen Paul Civ SAF/AAZ [Paul.Haraldsen@pentagon.af.mil]    **Sent:** Mon 2/27/2006 7:19 AM |
| **To:** | West, Michael A. |
| **Cc:** | |
| **Subject:** | RE: Program Update |
| **Attachments:** | |

Mike,

At about 8pm on Sunday, I received a phone call from SUBJECT. He said he was concerned about violating the TRO if he provided copies of the anomaly detection and pattern recognition technical capabilities to the government. He said the government needed "to remove the TRO" if they were truly interested in these capabilities." He is looking for the government to take action to nullify the TRO. He implied that his attorney either met with or phoned the other government agency counsel to discuss the TRO too.

It appears that SUBJECT's attorney is warning him not to violate the TRO. This will hamper our concept of ops for recovering the source code and we will most likely have to revise our approach. SUBJECT said he was still willing to meet with me and discuss any issues, but would not be able to provide examples of the capabilities until the TRO is lifted.

Call me when you get in.

Paul

//SIGNED//
PAUL L. HARALDSEN, DAFC, USAF
Director of Policy (SAF/AAZ)
Email (SAF/AAZ):  Paul.Haraldsen@pentagon.af.mil
Email (AFOSI - HQ Region 7):  Paul.Haraldsen@ogn.af.mil
Office: (703) 693-2013 (SAF/AAZ)
U/Fax: (703) 693-2059 (SAF/AAZ)
S/Fax: (703) 521-4279 (SAF/AAZ)

-----Original Message-----
From: West, Michael A. [mailto:Michael.West2@ic.fbi.gov]
Sent: Tuesday, February 21, 2006 11:06 PM
To: Haraldsen Paul Civ SAF/AAZ
Subject: RE: Program Update

Excellent!!!

Michael West
Special Agent
Federal Bureau of Investigation
Reno, Nevada
(775) 825-6600

00134
Sept. 11'06

DEFS002351

From: Haraldsen Paul Civ SAF/AAZ [mailto:Paul.Haraldsen@pentagon.af.mil]
Sent: Tue 2/21/2006 8:49 PM
To: West, Michael A.
Subject: RE: Program Update


Mike,

All files work properly.  Thanks for you help.  Talk with you soon.

Paul

PAUL L. HARALDSEN, SA
AFOSI Region 7
Pentagon, Wash, DC,

> -----Original Message-----
> From: West, Michael A. [mailto:Michael.West2@ic.fbi.gov]
> Sent: Tue 2/21/2006 7:31 PM
> To: Haraldsen Paul Civ SAF/AAZ
> Cc:
> Subject: RE: Program Update
>
>
>
> Michael West
> Special Agent
> Federal Bureau of Investigation
> Reno, Nevada
> (775) 825-6600
>
>
> From: Haraldsen Paul Civ SAF/AAZ [mailto:Paul.Haraldsen@pentagon.af.mil]
> Sent: Sat 2/18/2006 12:51 PM
> To: West, Michael A.
> Subject: RE: Program Update
>
>
> Mike,
>
>     I still am unable to get this working.  Would you please send me another copy or clue me in how to get this working.  Thanks Paul
>
> > -----Original Message-----
> > From: West, Michael A. [mailto:Michael.West2@ic.fbi.gov]
> > Sent: Fri 2/17/2006 2:18 PM
> > To: Haraldsen Paul Civ SAF/AAZ
> > Cc:
> > Subject: Program Update

00135
Sept. 11' 06

DEFS002352

Paul,

I tried the CD this morning & the FBPlayer file which plays the record did not work.

Attached is a good copy of this program.  Copy it into a directory with all the other file and it showed run.

If not, I will send you a working copy.

Mike

Michael West
Special Agent
Federal Bureau of Investigation
Reno, Nevada
(775) 825-6600

00136
Sept. 11'06

DEFS002353

**West, Michael**

| | | | |
|---|---|---|---|
| **From:** | Sloan S. Venables [sloan@eTreppid.com] | **Sent:** | Thu 3/2/2006 8:34 PM |
| **To:** | 'Dixon, James, CIV, DSS' | | |
| **Cc:** | West, Michael | | |
| **Subject:** | classified materials findings | | |
| **Attachments:** | | | |

Jay,

As you instructed me to do, starting on Tuesday of this week I went to every computer machine in the building and searched for the classified (secret) files that Patty Gray said she saw on Yongmian's computer. Patty explained to me that the file(s) she saw were a video sequence totaling several hundred megabytes with the first file in the video sequence named 000000.bmp She also said that the files could be identified as originating from the classified video footage by the date 11/11/05 time-stamped on the video and the particular scenario in the video. Having previously reviewed with Paul Haraldsen the original MiniDV tapes that these files originated from, I knew what to look for when searching the computers in our building.

I found 2 instances of these files still in existence on computers in the building. The 2 computers were named "Yongmian" belonging to Yongmian Zhang and "Xilinx1" belonging to Zehang Sun as his secondary testing machine. Both of these people said that they did not know that these files existed on their machines. This was backed up by the fact that these files were located in folders that Dennis Montgomery had created on their hard drives and only he had network sharing access to them. These two employees further said that Dennis routinely copied "sample files" to their machines for them to experiment with and that he did this so often that they could never keep track of what files Dennis had copied to their machines.

As instructed by the person you had on the conference call with us on Tuesday, to remove the files from these machines I ran a wipe and delete on the folders containing these files on both of these computers. After our phone call today I went and removed the hard drives from these 2 machines and placed them in our classified material container.

I also checked the emails of everyone in the building and found no evidence of anyone sending or receiving this video sequence or any other large number of files or video sequences.

Sloan S. Venables
Facility Security Officer
Director of Research & Development
eTreppid Technologies, LLC
755 Trademark Drive
Reno, NV 89521
sloan@eTreppid.com
Tel: (775) 337-6795
Fax: (775) 337-1877

00137
Sept. 11' 06

DEFS002354