UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-20782-MARTINEZ/GOODMAN

DENNIS MONTGOMERY,

    Plaintiff,

v.

JAMES RISEN et al.,

    Defendants.

_____/

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW AS REQUIRED BY ORDER SCHEDULING HEARING ON DEFENDANTS' SPOLIATION SANCTIONS MOTION (WITH SPECIFIC, ADDITIONAL REQUIREMENTS), ECF NO. 191**

| | |
|---|---|
| **HOLLAND & KNIGHT LLP** | **DAVIS WRIGHT TREMAINE LLP** |
| Sanford L. Bohrer | Laura R. Handman (admitted *pro hac vice*) |
|   Sandy.Bohrer@hklaw.com |   laurahandman@dwt.com |
| Brian W. Toth | Micah J. Ratner (admitted *pro hac vice*) |
|   Brian.Toth@hklaw.com |   micahratner@dwt.com |
| 701 Brickell Avenue, Suite 3300 | 1919 Pennsylvania Ave., NW, Suite 800 |
| Miami, Florida 33131 | Washington, D.C. 20006 |
| Tel: (305) 374-8500 | Tel.: (202) 973-4200 |
| Fax: (305) 789-7799 | Fax: (202) 973-4499 |

*Counsel for Defendants*

**1.** Although courts have held that, depending on the kind of sanction imposed, either a preponderance-of-the-evidence or a clear-and-convincing standard could apply when evaluating facts on a motion for sanctions, the better-reasoned decisions state that only a preponderance-of-the-evidence standard should apply, regardless of the kind of sanction imposed. The Court should therefore use the lower standard of proof for Defendants' Motion for Sanctions, ECF No. 166. But even if the Court uses a higher standard of proof, it has been satisfied.

In *Wander v. American Airlines*, the Court discussed—though it did not need to decide—this topic in ruling on a motion for spoliation sanctions:

> The Eleventh Circuit has not decided the appropriate evidentiary standard to use when the requested sanctions are based upon the Court's inherent powers. Nevertheless, the Undersigned finds persuasive … *In re Brican Am. LLC Equip. Lease Litig.*, 977 F. Supp. 2d 1287, 1293 n.6 (S.D. Fla. 2013). In *Brican America*, the Court adopted two different evidentiary burdens, depending on the nature of the sanction imposed.
>
> For "issue-related" sanctions—"those that are fundamentally remedial rather than on the merits"—the proof must be by a preponderance of the merits. *Id.* (citing *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 938 F. Supp. 2d 103, 104–05 (D.D.C. 2013)). In contrast, for "fundamentally penal" sanctions—such as "dismissals and default judgments, as well as contempt orders, awards of attorneys' fees, and the imposition of fines"—the clear and convincing standard is used.

79 F. Supp. 3d 1285, 1300 (S.D. Fla. 2015) (Goodman, J.).[1] In *Wander*, the Court cited *Brican America*, which cited *Compton*, which, in turn, cited *Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469 (D.C. Cir. 1995), which is the seminal decision using two different evidentiary burdens depending on the kind of sanction imposed. But the *Shepherd* test—more broadly, the use of a clear-and-convincing standard in evaluating motions for sanctions—has been criticized. In a decision with facts analogous to those in this case, then Chief Judge Easterbrook explained:

> [Appellants] argu[e] that there is a strong presumption against dismissal as a sanction, and that only "clear and convincing evidence" can support outright dismissal. Although one recent opinion in this circuit uses a "clear and convincing evidence" standard, see *Maynard v. Nygren*, 332 F.3d 462, 268 (7th Cir. 2003), we have observed more recently that *Maynard* failed to discuss *Grogan v. Garner*,

---

[1] The Court expressly stated it was unnecessary to "engage in the nuanced analysis required to classify the sanctions [sought] into one of two categories because the result would be the same under *either* standard of proof." *Id.*

1

> 498 U.S. 279 (1991), and *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983), which hold that heightened burdens of proof do not apply in civil cases unless a statute or the Constitution so requires. Neither a statute nor the Constitution requires an elevated burden for dismissal as a sanction, when the burden in the underlying suit is the preponderance of the evidence. But we need not decide today whether the time has come to overrule *Maynard*, as the district court's findings suffice on any standard.

*Ridge Chrysler Jeep, LLC v. DaimlerChrysler Fin. Servs. Ams. LLC*, 516 F.3d 623, 625–26 (7th Cir. 2008) (citation omitted); *accord Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007) (Easterbrook, C.J.) (similar); *see also Ty Inc. v. Softbelly's Inc.*, 517 F.3d 494, 499 (7th Cir. 2008) (Posner, J.) ("[W]e are led to doubt that there is any utility in insisting on proof by clear and convincing evidence in a case such as this, and getting entangled in disputes over whether [a party's] conduct should be described as fraud and if not whether there should nevertheless be a category of litigation sanctions that required a heightened standard of proof.").

Here, regardless of the standard applied, Defendants have shown that Plaintiff, based on his own sworn statements, spoliated evidence and violated court orders. It is therefore unnecessary to decide *which* standard applies in recommending as a sanction the dismissal of Plaintiff's case. But if the recommendation turns on the burden of proof, then the Court, for the following reasons, should apply only the preponderance-of-the-evidence standard.

*First*, using a clear-and-convincing standard in evaluating sanctions rests on shaky legal footing, for it fails to account for *Grogan v. Garner*, 498 U.S. 279 (1991), and *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983). In *Herman & MacLean*, a federal-securities-laws decision, the Court stated, "[w]here Congress has not prescribed the appropriate standard of proof and the Constitution does not dictate a particular standard, we must prescribe one." 459 U.S. at 389. The Court stated it had "required proof by clear and convincing evidence where particularly important individual interests or rights are at stake," but noted that "imposition of *even severe civil sanctions* that do not implicate such interests has been permitted after proof by a preponderance of the evidence." *Id.* at 389–90 (emphasis added). Because a "preponderance-of-the-evidence standard allows both parties to share the risk of error in roughly equal fashion," and

2

"[a]ny other standard expresses a preference for one side's interests," the Court ruled that the lower standard of proof should apply. *Id.* at 390–91. In *Grogan*, the Court, based on similar reasoning, concluded that the Bankruptcy Code did not "require[] a defrauded creditor to prove his claim by clear and convincing evidence in order to preserve it from discharge." 498 U.S. at 281. Together, these decisions compel the conclusion that the preponderance-of-the-evidence standard should apply, because the Motion for Sanctions involves neither "particularly important individual interests or rights" protected by the Constitution nor a statute requiring a heightened standard of proof. *See Ridge Chrysler Jeep* 516 F.3d at 625–26; *Wade*, 500 F.3d at 564.

*Second*, the test in *Shepherd*—and recited in *Wander*—is difficult to apply, and would be especially difficult to apply in this case. On the one hand, courts have labeled dismissal "fundamentally penal," warranting the use of a clear-and-convincing standard. *See, e.g.*, *Wander*, 79 F. Supp. 3d at 1300. But in this case, having access and being able to test the software is especially important to mounting a full and fair defense. Thus, dismissal ought equally to be regarded as an "issue-related" sanction, because only dismissal or a similarly severe sanction[2] would remedy Plaintiff's decision to "sequester what could be the most important evidence in the entire case." Order 6, ECF No. 122. Using just the preponderance-of-the-evidence standard would avoid, as this Court observed, having to "engage in the nuanced analysis required to classify the sanctions into one of two categories," *Wander*, 79 F. Supp. 3d at 1300, or, as Judge Posner put it, "getting entangled in disputes over … whether there should … be a category of litigation sanctions that require a heightened standard of proof," *Ty Inc.*, 517 F.3d at 499.

*Last*, most courts use a preponderance standard specifically for requests for spoliation sanctions, such as the Motion for Sanctions. *See, e.g.*, *Jacobs v. City of Pittsburgh*, 2015 WL

---

[2] The D.C. Circuit recently characterized as an "issue-related sanction" the "barring admission of evidence or considering an issue established for purpose of the action." *Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015). Even if the Court declines to dismiss Plaintiff's case, it should, at a minimum, consider established for this action that the software neither existed nor worked or bar admission both on summary judgment and at trial of any evidence by Plaintiff that the software existed or worked. If the Court did so, it would require, even under D.C. Circuit law, the use only of the preponderance-of-the-evidence standard.

3

7009443, at *10 n.9 (W.D. Pa. Nov. 12, 2015) ("[Movant] bears the burden of proving spoliation by a preponderance of the evidence."); *Compass Bank v. Morris Cerullo World Evangelism*, 2015 WL 2180436, at *9 (S.D. Cal. May 8, 2015) (same); *Dilworth v. Goldberg*, M.D., 3 F. Supp. 3d 198, 200 (S.D.N.Y. 2014) (same); *Ernest v. Lockheed Martin Corp.*, 2008 WL 2945608, at *1 (D. Colo. July 28, 2008) (same).[3]

However, the Court—as in *Ridge Chrysler Jeep* and in *Wander*—does not need to decide this question, because even if the Court used a higher standard, it has been satisfied based on the undisputed record of Plaintiff's own sworn statements about his own software. Dismissal is the appropriate sanction, not just a penalty, but as the unavoidable outcome where Plaintiff cannot possibly meet his burden of proof on falsity without such critical evidence. *See* Defs.' Mot. Summ. J. 22–24 (discussing Plaintiff's burden to prove substantial falsity), ECF No. 201.

**2–3.** The second and third questions, which are related, ask whether a sanctions order can be entered if there is a dispute on a material factual issue (the second question) and whether spoliation sanctions orders must always be based on a factual record containing agreed facts, unrebutted facts, or non-disputed facts (the third).

The facts are not disputed. Plaintiff has given inconsistent sworn statements about what he did with the software and whether he ever had access to it. Despite those statements, the Court can and should sanction Plaintiff because, under any standard of proof, the record shows that Plaintiff spoliated the software and violated three court orders and, as a result, "critical evidence" is not available. *See* Mot. Sanctions 3–11. Certain of the core facts that support this finding are worth recounting, because these facts—all of which are undisputed—give rise to a compelling inference that Plaintiff committed and fully intended to commit spoliation, which is defined

---

[3] In a brief decision, the U.S. Bankruptcy Court for the Southern District of Florida stated that "[f]or the Court to grant relief for spoliation … the Plaintiff was required to demonstrate through clear and convincing evidence that the Defendant intentionally destroyed, mutilated, altered or concealed evidence." *In re Justo*, 2011 WL 2132831, at *1 (Bankr. S.D. Fla. May 27, 2011). For that proposition, the bankruptcy court cited three decisions, none of which discussed the burden of proof. The statement in *In re Justo* is neither supported nor persuasive.

broadly as "[t]he intentional destruction, mutilation, alteration, or concealment of evidence," BLACK'S LAW DICTIONARY 1531 (9th ed. 2009), or the "failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation," *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

    The undisputed facts are these. From the outset of discovery, Defendants requested that Plaintiff produce the software—which is "'highly relevant' for the case," Order 5, ECF No. 122—and information about it, including its whereabouts, *see* Mot. Sanctions 3. Plaintiff objected, but *not* on the ground that he did not have possession, custody, or control of the software. *See id.* 3.[4] Defendants' counsel informed Plaintiff's counsel, both in briefs, ECF No. 94, and in conferences, of the importance of the software, and Defendants scheduled a hearing chiefly to compel the production of the software and information, first, on August 7, 2015, ECF No. 90, and the Court rescheduled to August 21, ECF No. 101. Despite all this, when asked about the location of the software at his deposition just one day before the August 21 hearing, Plaintiff testified unequivocally and under oath that, on the preceding day—that is, Wednesday, August 19—he gave his only copy of the software to the Government and that he had it until that time. *See* Mot. Sanctions 4–5.[5] The next day, Plaintiff's counsel confirmed this story in open court, *see id.* 5–6, and it is undisputed that neither Plaintiff nor his counsel told Defendants or the Court in advance about this unilateral decision to give the software away. The only finding the Court can make about this astonishing behavior is that Plaintiff and his counsel intentionally gave (or certainly intended to give) the software to the Government *knowing* that Defendants requested and sought to obtain

---

[4] The Court should conclude Plaintiff waived any objection on this ground. *See* Defs.' Reply Support Mot. Sanctions 3, ECF No. 184. Additionally, Plaintiff's failure to object that he did not possess the software strongly suggests he had possession of the software in July. Were it otherwise, in addition to objecting on grounds of relevance, classified, and the like, Plaintiff would have stated—loudly—that he did not possess the software, his other objections notwithstanding.
[5] Pl. Dep. Tr. 128:11–18, Aug. 20, 2015, ECF No. 166-2 ("Q. The software that you used to do the Al Jazeera Work …. Did you find it? … A. Well, I've turned it over to the government, I just told you that."); *id.* 131:12–22 (Q. So when did you stop having a copy of it? A. When I turned it all over to the government. A. And when was that? … A. Wednesday.").

5

it, *knowing* that the Court had scheduled a hearing on whether Plaintiff must produce it, and *knowing* that it would be buried among 51 million files and, thus, effectively lost. That is spoliation, and Plaintiff's self-serving reversal does not change this.

At the August 21 hearing, Plaintiff's counsel stated Plaintiff had a right of access to the software, and the Court ordered Plaintiff to use that right to get it back from the FBI. *See* Order 2–3, ECF No. 107. Rather than try seriously to comply with the Court's order, Plaintiff limply forwarded a copy of the order to the FBI. *See* ECF No. 108. In response, the general counsel of the FBI wrote to Plaintiff's counsel stating he provided no "information which would assist the Government in locating and producing the software at issue in *Montgomery v. Risen*" and requesting that he provide specific instructions. *See* Letter from James A. Baker to Larry Klayman 3–4 (Sept. 8, 2015) ("Baker Letter"), ECF No. 126. When Plaintiff failed to do so, the Court, after another hearing, ordered Plaintiff by October 21 to provide "a comprehensive set of instructions … how to pinpoint the software amidst the massive amount of data that was turned over to the FBI." Order 2–3, ECF No. 154. When it finally came time to provide these instructions—when the prospect of locating and exposing the software to scrutiny, or not locating it, became real—Plaintiff changed course, declaring inexplicably that, "upon searching my memory, I do not believe that I have had access to any of the subject software, nor did I provide it to the [FBI]." Decl. Montgomery ¶ 1 (the "Declaration"), ECF No. 158-1. And, regarding the instructions that were given, the FBI has twice stated that they are insufficient to identify the software and that the FBI would not be searching for it. *See* E-mail from Ted Schwartz to Larry Klayman ("First Schwartz E-mail") (Oct. 23, 2015 3:44 PM), ECF No. 166-4; E-mail from Ted Schwartz to Larry Klayman ("Second Schwartz E-mail") (Dec. 11, 2015 10:43 AM), ECF No. 196-1.

These facts are undisputed, and, under any standard of review, they show that Plaintiff intentionally concealed[6] the software, *see* BLACK'S at 1531, and "fail[ed] to preserve [the software]

---

[6] To conceal means "[t]o keep from being observed or discovered; hide." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 380 (5th ed. 2011). By giving the only copy of the software to the FBI, Plaintiff has kept the software from being observed or discovered not only by Defendants and the Court, but also—because the alleged software is hidden among a massive

for another's use as evidence in pending … litigation," *Graff*, 310 F. App'x at 301. Crediting Plaintiff's own testimony and his counsel's statements, Plaintiff, at first, gave or clearly intended to give the software to the FBI on August 19, even though they knew it was highly sought after by Defendants and the subject of the August 21 hearing. *Cf. Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005) ("[P]laintiff was fully aware that defendant wished to examine the vehicle. Knowing this, plaintiff ignored defendant's request and allowed the vehicle to be sold for salvage without notification to defendant of its planned removal."). Then, when ordered to instruct the FBI how to find the software, Plaintiff altered his story by declaring that he now thinks he may not have given it to the FBI at all, but does not have access to his *own* software and has not said who, if anyone, does. The inference to be drawn by this about-face is not that Plaintiff was mistaken in his prior testimony; it is that Plaintiff changed his story in a last-ditch effort to escape exposure that his software does not exist, work, or both.[7] This inference is stronger in light of the fact that Plaintiff has been found before to have lied in a sworn declaration. *See* Notice 5 n.16, ECF No. 119. And this inference is even stronger in light of Plaintiff's judicially noticeable failures in the Nevada and bankruptcy litigation to produce the software as required by court orders. *See* Mot. Sanctions 4. *This is what Plaintiff does: it is a pattern*. The Court does not need to resolve which of these two tales is correct to sanction Plaintiff; the Court, rather, may ignore the Declaration or view it for what it is—a desperate attempt to avoid sanctions or being exposed as a fraud.

---

pile of data stored in a massive amount of hard-drives—by the FBI. *See* Baker Letter 4 ("In view of the massive amount of information on the hard drives, there is no reasonable way for the Government to locate and provide the alleged software, absent specific instructions from your client."); First Schwartz E-mail ("Mr. Montgomery has not provided us with the detailed information requested … which would allow us, without undue burden, to locate the software among the 51.6 million files which he claims to have provided us."); Second Schwartz E-mail (similar). And, if he did not give it to the FBI, he has concealed where it can be found. *Thus, to answer the Court's ninth question, yes, Plaintiff concealed the software, which constitutes spoliation.*
[7] Plaintiff, it bears mentioning, could have reviewed his deposition transcript and "sign[ed] a statement listing [any] changes [thereto] and the reasons for making them." Fed. R. Civ. P. 30(e). Plaintiff did not do so—further suggesting that his about-face was strategic.

7

The Seventh Circuit's decision *Ridge Chrysler Jeep*, which involves a similar set of facts, supports this position. In that case, the Seventh Circuit affirmed an order dismissing claims brought by car dealerships "as a sanction for misconduct during the course of litigation." 516 F.3d at 625. Instructive is the panel's discussion of the facts leading up to the dismissal sanction, and its express approval of the lower court's crediting the dealerships' owner's earlier story over his later story. In obtaining a preliminary injunction, the dealerships relied on the owner's affidavit, which contained a false statement. Later, the owner "conceded during his deposition" to the existence of facts different from those in the affidavit. *Id.* at 626. "When the consequences of this statement—it confesses to perjury in the affidavit filed with [the lower court]—became clear, [the owner] filed another affidavit taking another tack. *The district court didn't have to buy the latest story*." *Id.* (emphasis added).

As in *Ridge Chrysler Jeep*, here, when the consequences of having to provide a comprehensive set of instructions to the FBI to locate the software—finally exposing that the software did not exist or work—became clear, Plaintiff filed the Declaration taking another tack. And here, as in *Ridge Chrysler Jeep*, the Court does not have to buy Plaintiff's latest story. Nor should it, for "[r]ecantation[8] testimony is properly viewed with great suspicion." *Dobbert v. Wainwright*, 468 U.S. 1231, 1233 (1984) (Brennan, J., dissenting from denial of certiorari); *accord Baldree v. Johnson*, 99 F.3d 659, 663 (5th Cir. 1996) ("[A]ffidavits which recant witnesses' trial testimony are viewed with extreme suspicion."); *Johnson v. United States*, 291 F.2d 150, 154 (8th Cir. 1961) (similar).

Thus, the Court may enter a sanctions order even if there is a "factual dispute" about what Plaintiff did with the software, because the Court may, and should, credit Plaintiff's initial testimony about what he did with his software over his later recantation, which is suspicious and smacks of desperation. *See Montos v. Smith*, 406 F.2d 1243, 1245 n.3 (5th Cir. 1969) ("This

---

[8] By taking in the Declaration a completely contradictory position about the software, Plaintiff effectively recanted his prior testimony under oath. *See* BLACK'S at 1382 (defining "recant" as "[t]o withdraw or renounce (prior statements or testimony) formally or publicly").

8

[subsequent] testimony … is inconsistent with prior testimony and the statement of his counsel at the evidentiary hearing, and the district judge, as the trier of fact, was free to reject it."). Whichever reason the Court credits, Defendants are nowhere closer to having the "critical evidence" in this case.

**4–5.** Questions four and five are also related. The Court asks whether a party can avoid a spoliation-sanctions award by changing its testimony or position on the alleged spoliation after it has been raised and, if not, whether any circumstance would permit a party to avoid an award after modifying, clarifying, or changing its position (and whether such circumstances would apply here). The Court asks whether Plaintiff should be bound by his initial testimony.

Defendants have not found a decision addressing these questions as framed, perhaps because the behavior here is so extraordinary. But an analogous situation arises in the context of summary judgment. Under the sham-affidavit rule, "a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 656 (11th Cir. 1984); *accord Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1313 (S.D. Fla. 2012) (Jordan, J.) ("[Plaintiff] offers no explanation for the change in testimony. Consequently, I need not consider the assertion in the affidavit.").

> This idea is associated with judicial estoppel (not just simple credibility questions about a witness). This idea has to do, to a significant degree, with guarding the integrity of the judicial process; with demanding respect for the oath to tell the truth; and with defining how a party is to deal properly with the Court from whom the party is seeking relief.

*Am. Civil Liberties Union of Fla., Inc. v. Dixie Cnty., Fla.*, 690 F.3d 1244, 1252 n.1 (11th Cir. 2012) (Edmonson, J., concurring in part and dissenting in part). Although the sham-affidavit rule arises typically in the summary-judgment context, at least one court has suggested that it could apply in deciding a motion for spoliation sanctions (though it declined to find that the declaration was a sham in that case). *See Chapman v. BOK Fin. Corp.*, 2014 WL 3548844, at *2 n.2 (N.D.

9

Okla. July 17, 2014); *see also id.* ("In the Tenth Circuit, the [sham-affidavit] doctrine has also been applied outside the summary judgment context.").

Under this doctrine, the Court should disregard the Declaration as a sham. Plaintiff submits the Declaration to get out of his previously clear, unequivocal testimony given under oath—as well as Plaintiff's counsel's equally clear, unequivocal statements made in open court—without giving any explanation, leave alone a valid one. "Searching one's memory"—whatever that means—cannot be enough, especially not after months of litigation and about "critical" evidence that Plaintiff's counsel knew from "day one" would be an issue. *See* Mot. Sanctions 10 n.16. It gives no explanation for why Plaintiff testified clearly, directly, and unflinchingly, just the day before the August 21 hearing, that he gave the software just one day before that to the FBI. It gives no explanation for his counsel's confirming everything in open court. It is simply incredible.[9] Thus, in answer to the Court's question—and to "guard[] the integrity of the judicial process," to "demand[] respect for the oath to tell the truth," and to ensure "how a party is to deal properly with the Court from whom the party is seeking relief," *ACLU*, 690 F.3d at 1252 n.1—the Court should not consider the Declaration. Whether there are any circumstances that might ever permit a different conclusion where, as here, Plaintiff radically changed his story after knowing that Defendants had raised the spoliation issue is entirely hypothetical and not supported by any facts in the record before the Court.[10]

**6.** The Court does not need to find that Plaintiff conclusively "lied" in his Declaration in order to sanction him. The Court, using the sham-affidavit doctrine, could purposefully disregard

---

[9] Under the sham-affidavit rule, courts "may *only* disregard an affidavit that contradicts, without explanation, previously given *clear* testimony." *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986). This situation fits squarely within the rule.

[10] It is perhaps the irony of ironies that Plaintiff's essential claim in this case is that Defendants defamed him by holding him out as a con man based on the illusory nature of his software. And now, here, at the eleventh hour, that software is hidden from Defendants and the Court; Plaintiff's sworn testimony (he had the software and gave it to the FBI) versus his Declaration (Plaintiff now believes he did not have his own software and did not give it to the FBI), is perhaps the epitome of a hoax, now on Defendants and the Court. The Court should not reward such behavior with less than seriously consequential sanctions.

10

the Declaration in its entirety. *See Van T. Junkins & Assocs*, 736 F.2d at 656; *Gomez*, 839 F. Supp. 2d at 1313. Or the Court could—if it does not entirely disregard Plaintiff's second wholly and inexplicably different position—view it with keen skepticism. *See Dobbert*, 468 U.S. at 1233; *Baldree*, 99 F.3d at 663; *Johnson*, 291 F.2d at 154. The Court is free to credit Plaintiff's clear, unequivocal testimony over his self-serving Declaration. *See Ridge Chrysler Jeep*, 516 F.3d at 626; *Montos*, 406 F.2d at 1245 n.3.

**7.** Why should the Court not find that Plaintiff was mistaken when he testified that he gave the software to the FBI? On the other hand, why should it permit him to avoid a sanctions motion by changing his story about the software? What are the consequences?

Even if the Court were to take the Declaration as true and resolve all *reasonable* inferences in Plaintiff's favor, the Court could not find that he was merely mistaken. Among other reasons, Plaintiff has given no plausible explanation in his Declaration suggesting that his earlier deposition testimony was a mistake (or, for that matter, why he does not have access to his own software or why he does not say who does). Any effort to do so now—in this memorandum of law (not fact)—or at the hearing should be deemed too little, too late and not considered.

Recall: Defendants' counsel asked Plaintiff at his deposition whether he "ha[d] the software that [he] used for the Al Jazeera work[.]" *See* Mot. Sanctions 5; Reply Support Mot. Sanctions 5. Plaintiff testified that he had a copy until he "gave it to the government" just a day before the deposition. Mot. Sanctions 5. In light of this question and unambiguous testimony—and considering that a hearing to compel production of the software was scheduled to take place the very next day—to find that Plaintiff was simply mistaken would be unreasonable, unsupported, and clearly erroneous. *See United States v. Robertson*, 493 F.3d 1322, 1335 (11th Cir. 2007) ("[A] finding of fact [is] clearly erroneous if the record lacks substantial evidence to support it."). This is especially so given the importance of his own software—the "critical" evidence in this action.

The Court is correct in its concerns about setting a precedent that would allow a party to escape a meritorious sanctions motion by changing his story. A decision by this highly respected Court to allow this Plaintiff to avoid sanctions on the basis of such a conclusory, vapid, self-

11

serving, and self-contradicting Declaration would not only be disappointing, but it would surely be cited by others as a basis to avoid the consequences of spoliating evidence and giving contradictory statements under oath. Fortunately, the Court has options in dealing with Plaintiff's about-face. The Court, drawing on the summary-judgment decisions, could treat the Declaration as what it is—a sham—and disregard it. *See Van T. Junkins & Assocs.*, 736 F.2d at 656; *Gomez*, 839 F. Supp. 2d at 1313. Or the Court could view Plaintiff's recantation of his prior testimony skeptically, and credit Plaintiff's sworn testimony instead. *See Dobbert*, 468 U.S. at 1233; *Ridge Chrysler Jeep*, 516 F.3d at 626; *Baldree*, 99 F.3d at 663; *Montos*, 406 F.2d at 1245 n.3; *Johnson*, 291 F.2d at 154. But there is no evidence that Plaintiff's prior testimony could be a mistake.[11]

**8.** May the Court enter a sanctions award based on a non-binding finding that Plaintiff rendered the software unavailable but permitting the jury to make the *final* determination? If so, what are the consequences flowing from a sanctions order based on a judicial finding that Plaintiff "spoliated" the software and a later jury finding that Plaintiff did not actually have the software and therefore did not turn it over to the FBI?

The Court should recommend an order dismissing Plaintiff's action with prejudice. If not that, the Court should issue an order considering established for purposes of this action that the software either did not exist or did not work or, alternatively, forbidding Plaintiff from introducing any evidence on summary judgment or at trial that Plaintiff's software existed or worked.[12]

---

[11] Plaintiff's entire case is staked on the alleged existence and efficacy of his counter-terrorism software. But Plaintiff has followed his old pattern of refusing to turn over that software in cases in which it is relevant and where his own partner, employees, and lawyer have doubted that the software exists or works, and Plaintiff has suffered the sanctions attendant to those refusals in those cases. *See* Defs.' Mot. Summ. J. 6–11; Mot. Sanctions 4. Here, too, he has tried every trick to avoid turning over his alleged software and subjecting it to scrutiny. He has given no explanation for his new memory or any lapse in memory. Plaintiff's prior testimony was no mistake.

[12] Defendants maintain that either of these sanctions would have litigation-ending consequences for Plaintiff, suggesting, at first blush, the requirement of a report and recommendation. *See Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, at *2–3 (S.D. Fla. Apr. 5, 2011) (Goodman, J.) ("[M]agistrate judges have jurisdiction to enter sanctions orders for discovery failures which do not strike claims, completely preclude defenses or generate litigation-ending consequences."). But the Court cited favorably *Moore v. Napolitano*, 723 F. Supp. 2d 167 (D.D.C. 2010), in which a district judge affirmed "the magistrate judge's order precluding the

The Court could enter an order "allowing the jury to be informed" of all Plaintiff's actions in discovery—from his initial objections to his testimony to his Declaration to his ongoing correspondence with the FBI. *See* Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment; *see also id.* advisory committee's note to 2015 amendment ("[S]ubdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision [on an adverse inference]."); *Point Blank*, 2011 WL 1456029, at *8 ("Parties are permitted to ask the trial courts to permit them to introduce into evidence at trial the circumstances surrounding their opposition's failure to retain and produce evidence … even when the trial court rejects the request for an adverse inference jury instruction."). If the Court were to enter such an order, then the jury, after learning of all Plaintiff's actions, would come to its own conclusions about the motives behind Plaintiff's shell game—i.e., that the software never existed or did not work. But such a sanctions award would not assist Defendants in summary judgment, nor properly compensate for the loss of critical evidence that Defendants sought to use to mount a full and fair defense,[13] nor make up for the costly wild goose chase through which Plaintiff has put Defendants, the Court, and the FBI.

**9.** For the reasons stated, *see supra* note 6, Plaintiff's turning the software over to the FBI without maintaining a copy constitutes spoliation and should be deemed "concealed." The FBI has repeatedly made clear that the software—which is assumptively buried among 51.6 million files stored on 49 hard-drives—is unable to be found with the information Plaintiff has provided and, thus, the FBI is not searching for it. "Discovery must have an end point," *Stevo v. Frasor*,

---

defendant from offering any legitimate, nondiscriminatory reason to rebut any prima facie case of disparate treatment." *Id.* at *3. Based on *Moore*, and given that Plaintiff will surely disagree that either of these sanctions would have litigation-ending consequences, the Court, it appears, could issue an order granting these sanctions.

[13] It must be emphasized: If Plaintiff's gambit succeeds, then he presumably will seek to testify, based, presumably, on his claimed personal knowledge, that the software existed and worked. If allowed, Defendants will be extremely prejudiced, for they will have seen no evidence that the software exists or works, and will not have had the opportunity to test it themselves.

662 F.3d 880, 886 (7th Cir. 2011), and that point has passed. So even if the software is only "temporarily" unavailable, it is, for purposes of this case, gone.[14]

      **10–11.** By its plain terms, new Federal Rule of Civil Procedure 37(e) would appear to govern the Motion for Sanctions to the extent that it concerns the spoliation of the software. "If [ESI] that should have been preserved … is lost … the court," "only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation may:" "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e). In anticipation of and during the beginning part of this litigation, Plaintiff was indisputably in possession of 49 hard-drives that contained ESI and that Plaintiff—at least as of August 20—swore contained the software (and if he was not, he should not have commenced this action in the first place and could be subject to Rule 11 sanctions). That ESI (that is, the software) should have been preserved, but it was "lost," because, by giving the hard-drives containing the ESI to the FBI, it was "[n]o longer in the possession, care, or control[15] of" Plaintiff. AMERICAN HERITAGE DICTIONARY at 1037 (defining "lost").[16] For the reasons stated, the Court may readily find that Plaintiff acted with the intent to deprive Defendants of the use of that ESI in this litigation. And, based on that finding, the Court may "presume that the lost information was unfavorable to"[17] Plaintiff or "dismiss the action."[18]

---

[14] The software is not *temporarily* unavailable. *See* BLACK'S at 1602 (defining "temporary" as "[l]asting for a time only"). It is *indefinitely* unavailable. The FBI has stated twice that it is not looking for the software, and it is under no court order to do so.

[15] "Control," to be sure, "include[s] not just a legal right, but also a practical ability to obtain the materials on demand." *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. Nov. 17, 2011). But, after having had control, Plaintiff gave it away—keeping no copy of the software or, apparently, a roadmap about how to locate it; Plaintiff now has neither the legal right nor the practical ability to obtain the software on demand. *See* Baker Letter 4.

[16] "The Federal Rules of Civil Procedure, like any statutory scheme, should be given their plain meaning." *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995).

[17] One U.S. Magistrate Judge, prospectively applying then proposed Rule 37(e), recommended an "issue sanction in the form of a finding that [the spoliated evidence] is false." *HM Elecs., Inc. v. R.F. Techs., Inc.*, 2015 WL 4714908, at **30–32 (S.D. Cal. Aug. 7, 2015).

**12.** The Advisory Committee Notes are silent on the burden of proof. Thus, only the preponderance standard should apply. *See Ridge Chrysler Jeep*, 516 F.3d at 625–26.

As for who should resolve the issues, the Notes suggest that either the Court or the jury could resolve them. Given that choice, the Court should resolve them. *First*, the Notes permit the Court to do so. *Second*, a decision by this Court (if less than dismissal) would and should influence summary judgment. Indeed, if Defendants had the software in the first place, then they may have submitted additional evidence about the inefficacy of the software in support; that opportunity is now gone. If the Court were to allow the jury to resolve the issues of the existence, location, and efficacy of the software, then Defendants on their summary-judgment motion will have been robbed of this opportunity. *Third*, the time and cost associated with "the failure to dismiss a libel suit … would themselves offend … [First Amendment principles] because of the chilling effect of such litigation." *Time, Inc. v. McLaney*, 406 F.2d 565, 566 (5th Cir. 1969); *see also* Defs.' Mot. Summ. J. 2, 15 & nn.4–5 (collecting cases). All the more need for relief now, and not at trial, where the result will be the same—Plaintiff's failure to carry his burden to prove falsity. *Finally*, the software is the critical evidence in this case, Defendants have been irreparably prejudiced by being unable to examine it, and the Court, along with Defendants, have been disrespected by Plaintiff's failure to engage fully, honestly, and fairly in producing this evidence.[19]

---

[18] The new Rule 37(e) would govern conduct that occurs before December 1, 2015. The amendments taking effect on December 1, 2015 "shall govern in all proceedings in civil cases thereafter commenced and, *insofar as just and practicable*, all proceedings then pending." Order of April 29, 2015, — F.R.D.— (2015) (emphasis added). Drawing on similar language taken from an order about earlier amendments, the former Fifth Circuit stated that "to the maximum extent possible, the amended Rules should be given retroactive application." *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 823 & n.13 (5th Cir. 1967). It would not be unjust or impracticable to apply new Rule 37(e) to Plaintiff's conduct in this case, egregious under any version of the Rule.

[19] The Court should not entertain Plaintiff's supplemental filing, ECF No. 188, which is an unauthorized out-of-time reply in support of Plaintiff's objections, *see* M.J. Rule 4(a)(1), an unauthorized sur-reply on the Motion for Sanctions, *see* S.D. Fla. L.R. 7.1(c), or both.

Dated: December 28, 2015          Respectfully submitted,

           s/Brian W. Toth
Sanford L. Bohrer
Florida Bar No. 160643
sbohrer@hklaw.com
Brian W. Toth
Florida Bar No. 57708
brian.toth@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Fax: (305) 789-7799

– and –

Laura R. Handman (admitted *pro hac vice*)
laurahandman@dwt.com
Micah J. Ratner (admitted *pro hac vice*)
micahratner@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, D.C. 20006
Tel.: (202) 973-4200
Fax: (202) 973-4499

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on December 28, 2015, I filed this document with the Clerk of Court using CM/ECF, which will serve this document on all counsel of record.

           s/Brian W. Toth